**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **JONATHAN VILLAREAL,** | § | |
| **individually and derivatively on behalf** | § | |
| **of ZROBLACK, LLC.** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **JOHN SAENZ, MIGUEL** | § | |
| **VILLARREAL, JR., and GUNN,** | § | |
| **LEE, & CAVE, P.C.** | § | |
| | § | |
| **Defendants** | § | |

---

### PLAINTIFF'S ORIGINAL COMPLAINT

---

Plaintiff, JONATHAN VILLAREAL, individually and derivatively on behalf of ZROBLACK, LLC, (collectively the "Plaintiffs"), files this *Plaintiff's Verified Complaint*, to bring direct and derivative claims against Defendants, JOHN SAENZ, MIGUEL VILLARREAL, Jr., and GUNN, LEE, & CAVE, P.C. (collectively, the "Defendants") and would respectfully show as follows:

### I.    NATURE OF THE ACTION

1.    This is a lawsuit involving computer technology that can wirelessly delete data from password protected cell phones. The software was designed by Plaintiff Jonathan Villareal and is owned by Plaintiff ZroBlack, LLC (pronounced "ZeroBlack" and hereinafter referred to as "ZroBlack"). Defendant John Saenz is the former CEO of ZroBlack and has misappropriated that technology by refusing to return a ZroBlack laptop containing the software code; he has also refused to return the keys to ZroBlack's mailbox, and ZroBlack's domain name, webpage, and

email server after parting ways with ZroBlack. Saenz has also destroyed data owned by ZroBlack, including ZroBlack's webpage and email server, which were hosted on a GoDaddy account owned by ZroBlack.

2.      This lawsuit also involves an attorney and law firm who—despite the existence of a clear conflict of interest—represented both Jonathan and Saenz in a dispute over Saenz's conduct while CEO of ZroBlack. Not only did he represent the pair while a conflict of interest existed, but his conduct fell below the professional standard of care because he drafted a release that failed to adequately recapture ZroBlack's personal and intellectual property, technology or trade secrets— an absolute must any time a senior executive with access to sensitive information departs a technology company—and thus necessitated this litigation to recapture those assets.

## II.    JURISDICTION AND VENUE

3.      This Court has original federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because Plaintiff has asserted a cause of action arising under the laws of the United States, specifically 18 U.S.C. § 1836 (Defend Trade Secrets Act), 18 U.S.C. § 1030(g) (Computer Fraud and Abuse Act), and 15 U.S.C. § 1125(d) (Anti-cybersquatting Consumer Protection Act).

4.      This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 to hear Plaintiffs' other causes of action, all of which are so related that they form part of the same case or controversy under Article III of the United States Constitution.

5.      This Court has personal jurisdiction over Defendants as Defendants are in and carry on their business in the State of Texas. Defendants John Saenz and Miguel Villareal, Jr. both reside within the Western District of Texas and Gunn, Lee, & Cave, P.C. is headquartered in Bexar County within the Western District of Texas.

6.      Venue in this Judicial District is proper under 28 U.S.C. § 1391(b)

## III.   PARTIES

7.      Plaintiff, Jonathan Villareal ("Jonathan") is an individual with his place of residence in Boerne, Kendall County, Texas. Jonathan brings this suit individually and derivatively as the sole member on behalf of ZroBlack, LLC ("ZroBlack").

8.      Defendant John Saenz ("Saenz") is an individual who resides in Bexar County, Texas and may be served at his residence at 28710 Estin Height St., San Antonio, Texas 78260 or wherever he may be found.

9.      Defendant Miguel Villarreal, Jr. ("Mike" ) is an individual who works as an attorney in Bexar County, Texas and may be served at his place of business, the law offices of Gunn, Lee, & Cave, P.C., 8023 Vantage Dr., Ste 1500 San Antonio, TX 78230 or wherever he may be found.

10.     Defendant Gunn, Lee, & Cave, P.C. ("Gunn Law Firm") is a corporation doing business in Bexar County, Texas and may be served at its office location of 8023 Vantage Dr Ste 1500 San Antonio, TX 78230 or wherever it may be found.

## IV.   FACTUAL BACKGROUND

11.      Jonathan Villarreal is a talented programmer who suffers from agoraphobia, a condition which, due to acute anxiety, prohibits him from having too many people around him. Jonathan developed proprietary technology which allows one to access cell phones, including iPhones. This technology can be used to access a cell phone wirelessly and wipe the data. This is useful in that if a user's phone is stolen, the owner can wipe its data remotely even if the security password has been changed. Jonathan's company, Plaintiff ZroBlack, is one of the few companies in the world that can do this.

**A. Formation of ZroBlack**

12.     In January of 2019 Jonathan was negotiating with a foreign company ("Foreign Customer") for the licensing of the technology. John Saenz ("Saenz"), who is married to Jonathan's cousin, wanted a piece of the action. Saenz claimed that he could fill voids Jonathan's previous partner could not fill. Saenz falsely represented to Jonathan that he had the business experience and government contacts to market the technology to the government. He falsely represented that he could use his "contacts" in the military and technology business sectors to bolster sales and proposed forming a company as a vehicle to market the technology. That company was to be ZroBlack. Jonathan believed him and, as a family member, trusted him. They agreed to form a limited liability company to market the software to Jonathan's Foreign Customer, with Saenz as CEO and Jonathan taking on the technology role.

13.     On January 11, 2019, Saenz purchased ZroBlack's domain name, www.zroblack.com, from GoDaddy. He held the name behalf of ZroBlack. The login and password information for accessing ZroBlack's GoDaddy account is a trade secret of ZroBlack.

14.     On January 14, 2019, Jonathan and Saenz formed ZroBlack, LLC, organized under the laws of the State of Delaware. They were its founding members and each owned fifty percent. ZroBlack was founded as an IT company to provide applications and services regarding cell phone data capture and erasure. ZroBlack planned to offer two different types of software, one for commercial use and one for governmental use. Saenz took the title of CEO and relegated Jonathan the title of Security Engineer. Jonathan Villareal was charged with performing all the in-house coding and servicing of the technology. Saenz was charged with client engagement and promoting the company.

15.     Jonathan and Saenz executed a Limited Liability Company Operating Agreement for ZroBlack, LLC (hereinafter, "Operating Agreement"). A key term of that agreement pertained to ZroBlack's ownership of property. Section 4.7 of the ZroBlack's Limited Liability Company Agreement states:

> Title to the Company's assets will be held in the Company's name or in the name of any nominee designated by the Members. The Members have power to enter into a nominee agreement with any person, and that agreement may contain provisions indemnifying the nominee, except for his or her willful misconduct.

16.     After the formation of ZroBlack, on March 31, 2019, Jonathan assigned to ZroBlack his intellectual property rights, which included the code for accessing cell phones wirelessly. ZroBlack's trade secrets included Villareal's code for wiping information from cell phones, and the code for the software identified the intellectual property assignment.

17.     In connection with his duties as CEO, Saenz purchased 15-inch Apple MacBook Pro on May 2, 2019 for $2,631.00. The purchase order reflects that the laptop was ordered "John Saenz, Zroblack, at 1150 N. Loop 1604-W, Ste 108-259, San Antonio, Texas 78248," which was ZroBlack's address. It was purchased with a debit card ending with the number 8032, which was a debit card issued in ZroBlack's name.

18.     After procuring a contract with its potential Foreign Customer, ZroBlack grew to as many as ten employees.

**B.  ZroBlack Signs a Contract**

19.     ZroBlack was successful in securing a contract. Prior to signing the contract, ZroBlack and its Foreign Customer signed a Non-Disclosure Agreement ("NDA"). The purpose of the NDA was to allow ZroBlack and its Foreign Customer to disclose trade secrets during

contract negotiations while maintaining the secrecy of those trade secrets. The trade secrets included the software code.

20.     ZroBlack and its Foreign Customer signed a Professional Services Agreement ("PSA") on or about April 15, 2019, wherein ZroBlack would pass down its knowledge of mobile devices, consult with its Foreign Customer on its software development and coding, hardware development, and organize and document the process of supporting ability to identify, diagnose, clear, and validate certain devices. The contract price was One Million Five Hundred Thousand Dollars ($1,500,000.00) up front and a fourteen and one-half percent (14.5%) earn out on new customer revenue and existing customer growth. The $1.5 million was wired into ZroBlack's Wells Fargo business account. Saenz then transferred $740,000 of those funds to his personal account.

21.     ZroBlack retained the services of Gunn, Lee & Cave (hereinafter, "Gunn, Lee law firm") and specifically attorney Mike Villareal (hereinafter, "Mike")[1] to advise them on the contract negotiations. Shortly before signing, on or about April 12, 2019, Jonathan emailed Mike discussing negotiations. In the mail, Jonathan stated:

> John and I went through it last night, he had concerns, but at the end of our talks we worked out the logic behind the revenue sharing. I hope this closes today too, hard lessons have been learned for sure. If we sign today, it's basically as though we are getting a $750,000 salary each for 2019. Do you have a recommendation for an attorney that can setup a trust for me?

The email demonstrates that $1.5 million dollars was to constitute salary for Jonathan and Saenz through the end of 2019. The money was not a gift, nor was it deemed earned upon the signing of the contract.

---

[1] Attorney Michael Villareal is not related to Jonathan.

22.     The PSA also included confidentiality provisions. Section 7.1 provided that all deliverables and inventions and all other information (including computer programs, technical drawings, algorithms, know-how, formulas, processes, ideas, inventions (whether patentable or not), schematics, and other technical, business, financial, and customer and product development plans, forecasts, strategies and information) that ZroBlack, Jonathan, and Saenz developed, learned, or obtained in connection with the services they rendered under the PSA constituted the proprietary information of ZroBlack's Foreign Customer. ZroBlack, Jonathan, and Saenz were required to hold that information in confidence and not use or disclose it. Section 7.2 of the PSA also stated that upon termination of the PSA or as otherwise requested by the customer, ZroBlack, Jonathan, and Saenz would promptly return to the customer all items and copies containing or embodying proprietary information including all deliverables and work-in-progress.

### C.  Saenz Attempts to Shop Secret Code to Others

23.     Although ZroBlack had signed the NDA and later the PSA (with its own confidentiality provisions) with its Foreign Customer, Saenz tried to shop the technology to others, including an individual named Roger Graham, who was formerly with UBS Financial and, at the time, employed by Wells Fargo; he is currently a Senior Vice President-Investment Officer and PIM Portfolio  Manager. Jonathan warned Saenz that he was in violation of the NDA and the confidentiality provisions of the PSA. Saenz threatened to continue to try to market the code.

### D.  Saenz Misappropriates $740,000 while Missing Key Meetings with Customer and Providing No Services to ZroBlack

24.     While Saenz talked big, he did little to help the company.  After ZroBlack signed the contract with its Foreign Customer, Saenz took half of the upfront payment ($740,000) and then performed very little work for ZroBlack.

25.     For example, in May 2019, both Jonathan and Saenz were required to travel to Finland. Saenz initially refused to leave at the same time as Jonathan, but eventually showed seven-days late. After arriving in Finland, Saenz sent ZroBlack's Foreign Customer an email stating that Jonathan would take care of 100% of the technical and that he (Saenz) would no longer be attending morning meetings but would check up from time to time:

> I wanted to send you a note to clarify my role on these calls. I will be on from time to time as an observer and to offer guidance from ZroBlack's point of view. Jonathan can handle all the technical side of the conversations.

26.     Jonathan was required to return to Finland during the week of June 8 to 15, 2019; Saenz refused to accompany him. Saenz was also charged with completing tax returns and paying the quarterly business taxes; he did not.

27.     Rather than working to promote ZroBlack, Saenz was living the high life. Upon information and belief, Saenz used most of the $740,000 he took from ZroBlack. Saenz invested around $305,000 into the stock market. Saenz also used around $423,850 in property renovations. As a result of Saenz's refusal to perform his work, on or about June 26, 2019, Villareal notified Saenz by text message that he wished to dissolve ZroBlack. In the notification, Jonathan took Saenz to task for not doing any work, stating:

> You can't sit back and expect a paycheck. You can't say you front loaded the contract then dip out. Besides, I did a huge part to close out the contract, I did the entire due diligence and put the entire BRIX document together. I expected you to do work after we got paid, this isn't a free ride man. [Foreign Customer] only wants to go forward with me for a reason and I don't know what happened to you. I don't know why you stopped working after getting paid $750k.

### E.  Gunn, Lee, & Cave, P.C. and Michael Villareal's Further Involvement

28.     When Mike and the Gunn, Lee law firm represented ZroBlack, the representation began as a normal corporate representation, where the law firm and the attorney (Mike) were

advising the members on matters regarding the company. Soon after ZroBlack executed the PSA with its Foreign Customer, however, Jonathan and Saenz came to cross purposes over Saenz's lack of performance and misappropriation of company funds.

29.     After Jonathan threatened to dissolve ZroBlack, Saenz got Mike further involved. Though an obvious conflict of interest existed, Mike and the Gunn, Lee law firm undertook to represent both Jonathan and Saenz in negotiations to settle their dispute. One of the main concerns was the $740,000 Saenz withdrew from the $1.5 million deposit that ZroBlack's Foreign Customer paid under the PSA. Those monies were paid in advance, and the customer expected ZroBlack, Saenz, and Jonathan to perform under the contract. But Saenz refused to perform his obligations to ZroBlack and the customer. Nor would Saenz to agree to steps to ensure his performance, despite being told by Mike during a meeting in Mike's office in July 2019 that he (Saenz) had breached his fiduciary duty to the company. To salve the relationship, on or about July 27, 2019, Mike suggested that Jonathan set tasks for Saenz (the putative CEO of ZroBlack). Saenz refused to have the tasks incorporated into any agreement, sending a text message to Jonathan stating he would not "agree to tie a contract to daily tasks because that could be easily manipulated." Jonathan responded, "Seriously. Please dude. That's not fair. I literally have my work planned out for an entire year I'm asking you for one month. Hello? How can I help you with it?" Saenz also refused Mike's suggestion that his CEO duties be incorporated into the company operating agreement. Once he had $740,000 in his pocket, Saenz simply did not want to do any more work for ZroBlack or the customer.

30.     After Defendant Saenz took the $740,000, ZroBlack was forced to cut salaries of its employees. Saenz refused to assist ZroBlack in paying bills and Jonathan was not able to make the tax payment. Jonathan was forced to incur serious debt in order to get the capital to complete

the obligations required under the PSA. Jonathan began selling his personal property including electronics and his wife's wedding ring to ensure that ZroBlack could maintain working capital.

31.     Because Saenz was married to Jonathan's cousin, their falling out began to cause strife in the family. The Family relationship was very important to Jonathan, and Mike began pressuring Jonathan that he needed to settle with Saenz by "thinking about the family."

32.     In about July 2019 Jonathan and Saenz decided it was time to part ways. The money that Saenz had stolen from the company was to be returned, on a basis to be structured by Mike and the Gunn, Lee law firm. Although Mike represented both Jonathan and Saenz and issued a waiver of conflict letter, no reasonable lawyer could believe that such representation of each client would not be materially affected. Moreover, he did not advise Jonathan or ZroBlack as to the consequences of what they were doing and structured an agreement that hurt both Jonathan Villarreal and ZroBlack.

33.     On or about July 17, 2019, Jonathan sent a text message to Saenz, saying:

Thanks for the call, it's disappointing that you had no idea we had a product released already. It's disappointing that you were not on the phone call this morning for our morning meeting. It's disappointing that you never responded to may emails letting me know what you did for our client that paid our company $1.5 million, it's disappointing that you say you're going to taking [sic] legal action against [Foreign Customer], it's disappointing that you cannot provide me with what you have done for our client for the last 2 months.

34.     Saenz began demanding that the $740,000 he took from ZroBlack be characterized as a "gift" for tax purposes; this, Jonathan refused to do as it would violate the law. For example, in a text message July 27, 2019 Saenz offered to assign all interest in ZroBlack to Jonathan if the $740,00 would be characterized as a gift.

35.     Mike and the Gunn, Lee law firm eventually prepared a document titled "Release." The Release stated that Saenz would receive as consideration 2% (and ZroBlack 12.5%) of the 14.5% Earn-Out Obligation under the PSA.

36.     Although the Release assigned all of John Saenz's interest in ZroBlack to Jonathan, it made no express provision for the return of the $740,000 to ZroBlack. The Release also contained no express requirement that Saenz return personal property to ZroBlack, which included not only the $740,000 and a laptop computer belonging to ZroBlack, but also ZroBlack's proprietary and trade secret information, as well as ZroBlack's domain name, webpage, and email server. Although it is ZroBlack's contention that Saenz's assignment of all his interest in ZroBlack nonetheless requires return of the money, the computer and trade secrets, and the domain name, webpage, and email server, the lack of an express provision in the Release in this regard has necessitated this lawsuit because Saenz has refused to return all of these things.

37.     Jonathan and Saenz executed the Release on August 9, 2019. Section 7 of the Release states that "Each Party hereto fully releases the other Parties from all claims and demands, known or unknown." Section 7 goes on the discuss claims that are known and unknown. It does not address inchoate claims or claims that had not yet accrued.

38.     Jonathan and Saenz also executed a Unanimous Written Consent In Lieu of Meeting by ZroBlack's membership (hereinafter, "Consent"). The second "WHEREAS" in the Consent stated, "the undersigned wish to memorialize John Saenz's assignment of his entire interest in ZroBlack LLC to Jonathan Villareal." The first "RESOLVED" stated that "John Saenz hereby assigns his entire interest in ZroBlack LLC to Jonathan Villareal pursuant to Article VII of the 'Limited Liability Company Operating Agreement for ZroBlack LLC' dated January 14, 2019 and applicable laws, …" Thus, Saenz assigned all his ownership interest to Jonathan, and relinquished all claims of any ownership of ZroBlack's property.

39.     After the deal for Saenz to exit ZroBlack was struck, Saenz refused to return the $740,000. Instead, Saenz continued to want the money he had taken from the company to be

construed as a "gift." This was an ongoing dispute between Saenz and Jonathan, who anticipated providing service to the United States federal government. Jonathan told Saenz the he (Jonathan) would never agree to qualify $740,000 Saenz embezzled as a gift. In fact, Jonathan gave Saenz an ultimatum: return stolen money, or face the harsh consequences. This was the same discussion he had with attorney Mike Villareal and his law firm, the Gunn, Lee law firm.

40.    On August 15, 2019, Jonathan asked Saenz to release ZroBlack's webpage. Saenz said he would "look into it." Despite requests for return, Saenz continues to hold the domain name. Adding insult to injury, Saenz blackmailed ZroBlack over the domain name, webpage, and email server, offering to sell it back to ZroBlack for $7,000. Saenz has taken the website down effectively terminating ZroBlack's ability to gain new clients. Saenz also deleted the email server, thereby destroying hundreds of emails and documents supporting Jonathan's claims, ZroBlack's projects for its Foreign Customer, and other matters. Saenz currently holds access to ZroBlack's domain name hostage, so Jonathan has no access to the site and no opportunity to attempt to recover the webpage and emails. GoDaddy is the service provider.

41.    Jonathan asked Saenz to return the laptop computer belonging to ZroBlack. Saenz refused this request also. This computer contains proprietary code related to ZroBlack's phone security project.

42.    On September 13, 2019, Jonathan emailed Mike advising him that Saenz had deleted all his emails. Then, on September 13, 2019, Jonathan emailed Mike pleading for help:

> I'm beside myself right now, and really struggling with everything, I can't eat, I can't sleep, my anxiety and stress is so high, and for the next 3 years if I continue like this I'll end up losing my contracts and not be able to work.
>
> I have worked too hard to allow myself to slip like this. I need help Mike, this is not right. I've done nothing wrong. John got $750,000 cash, and there has to be a way for me to stop this madness, get him to give up the 2%, get my company website, my company documents, and my company computer. Like I said, I have a company that pays real taxes,

has 10 real employees, we have a real physical location, and I can't even put up my company website.

Mike continued to try to negotiate a resolution between Jonathan and Saenz.

43.    On or about September 19, 2019, Jonathan again emailed Saenz, copying Mike, demanding the return of ZroBlack's property, including the laptop containing proprietary code, ZroBlack's web domain and webpage, and ZroBlack's emails. He also demanded return of the $740,000 Saenz misappropriated from ZroBlack. Jonathan sent a similar email to Saenz and Mike on September 20, 2019, explaining why he believed Saenz should return the $740,000 and other property of ZroBlack.

44.    On or about September 26, 2019, Mike Villareal tried to arrange a meeting between Jonathan and Saenz to discuss settling their disagreement and offered his offices as a place to have the discussions. Mike gave his available days and stated that "we are trying to resolve your difference, not attempting to take advantage of each other. I appreciate you both willing to show good faith on both your parts in coming together and seeing if a resolution can be reached."

45.    Despite promises to appear for a meeting, Saenz kept putting it off with a litany of excuses until Jonathan, fed up, stated he would not be attending a meeting and had decided to go in a different direction  As of the filing of the complaint, Saenz has not returned the money he took from ZroBlack, nor has he returned the web domain and webpage, emails, laptop, and proprietary information belonging to ZroBlack. Saenz continues to hold on to ZroBlack's property and refuses to return it, including the ZroBlack laptop containing proprietary information and trade secrets belonging to ZroBlack. Saenz also threatened Jonathan that he would "muck up" his life if Jonathan did not turn over the company and assign it to him. Jonathan begged Saenz not to do this to him.

46.     Furthermore, Jonathan Villareal rightfully placed his absolute trust in Michael Villareal and the Gunn, Lee law firm. Jonathan Villareal is not an attorney and is not familiar with legal issues. He is, however, highly skilled in IT matters. He trusted and relied on Michael Villareal and his firm to guide him and navigate the transaction with Saenz. At all times relevant and material to this lawsuit, Jonathan Villareal rightfully placed his trust in his lawyer and law firm, just as ZroBlack did with its corporate counsel.

47.     Unfortunately, Mike Villareal has a conflict of interest that he ignored. He also failed to disclose the extent of his relationship with Saenz to Jonathan. Mike's relationship with Saenz was so cozy that Mike was cutting Saenz a discount of the share of fees he charged Saenz, while charging Jonathan for the full amount of Jonathan's share. Mike continued to pressure Jonathan to resolve the dispute for "the sake of the family." Neither Jonathan Villareal nor ZroBlack anticipated they would be betrayed in the way they were.

**F.  Final Attempts to get Saenz to Return Money and Property owed to ZroBlack**

48.     On or about February 22, 2020, Jonathan Villareal attempted to contact Defendant Saenz to collect back the money that he had took. After the parties agreed to sign ZroBlack over to Jonathan, Saenz failed to turn in all company assets to include, money, computers, email servers, website, non-disclosure agreements, company contacts, original documents, and everything else that belonged to ZroBlack.

## V.   CAUSES OF ACTION

### Count 1: Violations of the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836, and the Texas Uniform Trade Secrets Act ("TUTSA")

49.     Plaintiffs hereby adopt and re-allege the allegations previously set forth in this Complaint as if fully set forth herein.

50.     The Defend Trade Secrets Act defines trade secrets to encompass "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing." 18 U.S.C §1839(3). The Texas Uniform Trade Secrets Act defines trade secrets to mean "all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing." TEX. CIV. PRAC. & REM. CODE § 134A.002(6).

51.     Under both statutes the owner must have taken steps reasonable under the circumstances to keep the information secret and the information must derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means, by another person who can obtain economic value from disclosure. 18 U.S.C §1839(3)(A), (3)(B); TEX. CIV. PRAC. & REM. CODE § 134A.002(6)(A), (6)(B).

52.     An owner of a trade secret that is misappropriated may bring a civil action under the Defend Trade Secrets Act if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce. 18 U.S.C. § 1836(b)(1). Likewise, Texas' Uniform Trade Secrets Act authorized a private cause of action for trade secret misappropriation. TEX. CIV. PRAC. & REM. CODE § 134A.001 et seq.

53.     Misappropriation means acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or disclosure or use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret. 18 U.S.C §1839(5). Improper means includes theft or breach of a duty to maintain secrecy. 18 U.S.C §1839(6). Misappropriation of a trade secret under the Texas Uniform Trade Secrets Act includes acquiring the trade secret with knowledge it was acquired by improper means. TEX. CIV. PRAC. & REM. CODE § 134A.002(3)(B)(i). Improper means includes theft.

54.     ZroBlack is the owner of trade secrets related to a product or services used in interstate and foreign commerce. ZroBlack's trade secrets were composed of its proprietary software code built and maintained by Jonathan and which could be used to access cell phones wirelessly, its login and password information for accessing its GoDaddy account (where its webpage and email server were hosted), and other information.

55.     ZroBlack derived independent economic value from its trade secrets not being generally known or readily ascertainable by legal means. ZroBlack is one of the only companies in the world that can perform the erasure services giving them an economic advantage over competitors in similar markets. The economic value of ZroBlack's trade secrets is evidenced by its contract with its Foreign Customer.

56.     ZroBlack took steps that were reasonable under the circumstances to maintain the secrecy of the trade secrets. The software code, login and password information, and other information were known only to those in managerial positions; as the chief executive officer and a trusted employee, Saenz was a member of that exclusive club. This information was not shared with others outside of management and was secured.

57.     Saenz misappropriated the trade secrets by refusing to return the ZroBlack laptop that contained the software code. Per the terms of the Release, Saenz relinquished all interest in ZroBlack, including all interest in any property owned by ZroBlack. That property included the laptop and the proprietary code and other proprietary data on the laptop. The laptop also had the software that controlled the emails and website URL for ZroBlack.

58.     After Saenz parted ways with ZroBlack, his authorization to use the laptop and access the information on it was revoked. Furthermore, the Release and assignment of all his rights in ZroBlack included the assignment of rights in ownership of the laptop and the proprietary code on that laptop. Saenz refused requests to return the laptop, and his continued possession is unauthorized. Saenz knew he used improper means to acquire the trade secrets, thus misappropriating the trade secrets. Those trade secrets included the software code created and maintained by ZroBlack and ZroBlack's login and password information for its GoDaddy account.

59.     Defendant Saenz has the intent to convert the trade secret and knew the offense would injure the owner of the of the trade secret.

*Count 2: Violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(g)*

60.     Plaintiffs hereby adopt and re-allege the allegations previously set forth in this Complaint as if fully set forth herein.

61.     Any person who suffers damage or loss by reason of a violation of 18 U.S.C. § 1030 may maintain a civil action against the violator to obtain compensatory damages and injunctive relief. 18 U.S.C. § 1030(g). A civil action may only be brough if the conduct involves one of the factors set forth in 18 U.S.C. § 1030(c)(4)(A)(1)(I-V), including loss to one or more persons during any 1-year period aggregating at least $5,000 in value. 18 U.S.C. § 1830(g); 18 U.S.C. § 1030(c)(4)(A)(1)(I). "Loss" is defined under the CFAA as "any reasonable cost to [the] victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). The term "loss' encompasses only two types of harm: costs to investigate and respond to a computer intrusion, and costs associated with a service interruption. *Quantlab Technologies Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 776 (S.D.Tex 2010); *see also Frisco Medical Center, L.L.P. d/b/a Baylor Medical Center at Frisco v. Bledsoe,* 147 F. Supp. 3d 646, 659 (E.D. Tex. 2015).

62.     Saenz's deletion of ZroBlack's webpage and email server interrupted GoDaddy's service to ZroBlack, cause a loss of more than $5,000. Furthermore, Saenz's deletion of the email server and webpage caused a loss of more than $5,000 in data. Finally, ZroBlack has spent in excess of $5,000 trying to obtain return of the lap top computer and domain name and trying to resolve the loss of emails and documents resulting from the deletion.

63.     If the above threshold is met, civil liability may be imposed under the CFAA where a defendant:

        a.   Intentionally accesses a computer without authorization or exceeds authorization and obtains information from that computer, 18 U.S.C. § 1030(a)(2)(c);

b.   knowingly (and with intent to defraud) accesses a protected computer without authorization, or exceeds authorized access, and obtains anything of value, 18 U.S.C. § 1030(a)(4);

c.   intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage (18 U.S.C. § 1030(a)(5)(B)); or,

d.   intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage, 18 U.S.C. § 1030(a)(5)(B); or

e.   intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage or loss, 18 U.S.C. § 1030(a)(5)(C).

See also *Frisco*, 147 F. Supp. 3d at 658-659; *eBay Inc. v. Digital Point Solutions, Inc.*, 608 F. Supp. 2d 1156, 1163-64 (N.D. Cal. 2009).

64.    After execution of the Release and Consent, Saenz was required to return ZroBlack's property to it upon request. Saenz refused to return the laptop and proprietary information and refused to release ZroBlack's domain name. Instead, Saenz intentionally accessed the computer without authorization or exceeded authorized access and thereby obtained information from a protected computer. That information was ZroBlack's proprietary information, including its code. Once Saenz and ZroBlack parted ways, his authorization to access the laptop was revoked. Saenz' theft and withholding of the computer violates 28 U.S.C. § 1030(a)(2)(c). That conduct also violated 18 U.S.C. § 1030(a)(4) because Saenz intended to defraud.

65.    Saenz also intentionally accessed ZroBlack's domain on GoDaddy and deleted ZroBlack's webpage and email server. The domain, including the webpage and email server, were the property of ZroBlack. Saenz held the domain as nominee of ZroBlack. Once ZroBlack and Saenz parted ways, Saenz's authorization to hold the domain as ZroBlack's nominee was no longer

authorized and he was required to hand over all access rights to ZroBlack. Because he no longer had authorization to access the domain, his access and deletion of the webpage and email server was unauthorized and violated 18 U.S.C. § 1030(a)(2)(c). His unauthorized access to the domain also violated 18 U.S.C. § 1030(a)(5)(B) and 18 U.S.C. § 1030(a)(5)(C) because it caused damage when he deleted the webpage and email server.

### Count 3: Violations of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).

66.     Plaintiffs hereby adopt and re-allege the allegations previously set forth in this Complaint as if fully set forth herein.

67.     In order to prevail on an ACPA claim, Plaintiff must show that (1) its mark is a distinctive or famous mark entitled to protection; (2) the domain names are identical or confusingly similar to Plaintiff's mark; and (3) the defendant uses the domain name with bad faith intent to profit from them. 15 U.S.C. § 1125(d)(1)(A); *See Southern Co. v. Dauben Inc.*, 324 Fed. Appx. 309, 314 (5th Cir. 2009).

68.     ZroBlack has a common law interest in its name under section 43(a) of the Lanham Act. 15 U.S.C. § 1125. The "ZroBlack" name is a distinctive identifier for the products and services ZroBlack provides. The www.zroblack.com domain is identical or confusingly similar to ZroBlack's mark. Saenz has no trademark or other intellectual property rights in the domain name.

69.     Saenz maintains control and use of the ZroBlack website with a bad faith intent. After his termination, Saenz intended to divert consumers from ZroBlack's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site. Saenz also sought to sell the domain back to ZroBlack, and deleted ZroBlack's webpage and email server.

*Count 4: Breach of Contract.*

70.     Plaintiffs hereby adopt and re-allege the allegations previously set forth in this Complaint as if fully set forth herein.

71.     The elements of a cause of action for breach of contract are (1) a valid contract exists, (2) the plaintiff performed or tendered performance as contractually required, (3) the defendant breached the contract by failing to perform or tender performance as contractually required, and (4) the plaintiff sustained damages due to the breach. Both Saenz and Jonathan Villareal signed the Release. The Release is a settlement which is enforced as a contract under Texas law.

72.     The Release specifically recited that Saenz and Jonathan wished to memorialize the assignment of Saenz's entire interest in ZroBlack to Jonathan. Section 6 of the Release, titled "Assignment" imposed on Jonathan and Saenz an obligation to execute a Unanimous Written Consent in Lieu of a Meeting of the Members of ZroBlack, LLC ("Consent"). That Consent itself showed the Members entered a resolution that Saenz was assigning his entire interest in ZroBlack, LLC to Jonathan. The Release and Consent were executed on the same day, and upon their execution, Saenz became obligated to release all rights he had in ZroBlack, including any rights to the ownership to ZroBlack property, including the laptop, proprietary code and information, and rights as ZroBlack's nominee in ZroBlack's domain name, which were the property of ZroBlack. Post-release ZroBlack requested return of that property, and Saenz refused, thereby breaching the terms of the Release.

73.     Saenz also breached the release by failing and refusing to return the $740,000 he took from ZroBlack. The Release specifically recited that Saenz was assigning all his interest in ZroBlack to Jonathan. The money paid to ZroBlack under the terms of the PSA was money

belonging to ZroBlack. Once he assigned all his rights to ZroBlack to Jonathan, Saenz was obligated to return the $740,000 that belonged to ZroBlack. Nor was the $740,000 consideration for the release. Section 2 of the Release discusses the consideration, which is the 2% of the earn-out from the contract Saenz was to receive. No mention is made of the $740,000. By failing and refusing to return the $740,000 Saenz breached the Release.

74.    Jonathan and ZroBlack performed as contractually required. Saenz breached the contract by failing to return property owned by ZroBlack. Plaintiff has suffered damages as a result of Saenz' breach.

### Count 5: Breach of Fiduciary Duty.

75.    Plaintiffs hereby adopt and re-allege the allegations previously set forth in this Complaint as if fully set forth herein.

76.    Defendant Saenz is liable to Plaintiff individually and on behalf of ZroBlack for breach of fiduciary duty. The elements of a cause of action for breach of fiduciary duty are (1) the plaintiff and defendant had a fiduciary relationship, (2) the defendant breached its fiduciary duty to the plaintiff, (3) the defendant's breach resulted in (a) injury to the plaintiff, or (b) benefit to the defendant.

77.    Corporate officers and directors owe fiduciary duties, including a duty of loyalty, to the company. Section 4.1 of the Company Operating Agreement provided that the ZroBlack would be managed by its managers, who would appoint a Chief Executive Manager who would have primary responsibility for the operations of the business. Section 4.5 further states that the Chief Executive Member had primary responsibility for managing the operations of the ZroBlack and carrying out the decisions of the members. Saenz was the Chief Executive Member and styled

himself as CEO of ZroBlack. He owed fiduciary duties, including a duty of loyalty, to the ZroBlack.

78.     Corporate officers or directors are held to an extreme measure of honesty, unselfishness, and good faith in any transaction involving self-dealing. An officer of a limited liability company must make a full disclosure of all pertinent information in relation to subject matter of any contract he or he negotiates with the company in which such officer or director has a personal interest.

79.     Section 4.7 of the Company Operating Agreement stated that members could hold ZroBlack property in their name as a nominee of ZroBlack. Saenz purchased ZroBlack's domain name in his capacity as Chief Executive Member/CEO and thus purchased it as ZroBlack's nominee. So long as Saenz did not breach any fiduciary duty to ZroBlack while holding the domain in his own name, any claim for breach of fiduciary duty was unaccrued or inchoate. Because the Release applies only to accrued claims, any claim for breach of fiduciary duty that had not accrued was not released. When, however, Saenz acted against ZroBlack's interests by hijacking the domain, he breached his duty of loyalty to the company.

80.     Additionally, subject to a declaration pursuant to 28 U.S.CA. § 2201 setting aside the Release (see below), Plaintiffs further allege that Saenz breached his fiduciary duty by engaging in self-dealing by taking payment for his own personal gain and not performing any work associated with ZroBlack, in which Plaintiff Villareal had a direct equity interest, the revenues of which were to have been eventually distributed to the members of ZroBlack.

81.     Also subject to a declaration setting aside the Release, Plaintiff's further allege that Saenz constantly engaged in conduct which defeated the reasonable expectation of Plaintiffs. Plaintiffs reasonably expected Defendant to work for ZroBlack and continue his services for them.

Yet Defendant used monies belonging to ZroBlack for the benefit of himself and now refuses to work for ZroBlack.

### Count 6: Negligence against Gunn Law Firm

82.     Plaintiffs hereby adopt and re-allege the allegations previously set forth in this Complaint as if fully set forth herein.

83.     Plaintiffs alternatively plead and allege that Mike Villareal and the Gunn, Lee law firm committed legal malpractice. The elements for a cause of action of legal malpractice are (1) the attorney owed the plaintiff a duty, (2) the attorney's negligent act or omission breached the duty, (3) the breach proximately caused the plaintiff's injury, and (4) the plaintiff suffered damages.

84.     Mike Villareal and the Lee, Gunn & Cave law firm owed Jonathan and ZroBlack a duty by virtue of a retainer contract whereby the Gunn, Lee agreed to provide legal services in exchange for a $1,000 retainer plus hourly fees, ultimately amassing a bill of at least $14,403.91, establishing an attorney-client relationship.

85.     Mike Villareal and the Gunn, Lee law firm breached the duty owed to Plaintiff by taking actions an ordinarily prudent attorney would not have taken under the same or similar circumstances. Here, the Gunn, Lee law firm failed to:

     a.  Include a carve-out provision in the Release that except from the Release Saenz's ongoing obligations to preserve the confidentiality of ZroBlack's trade secrets;

     b.  Include a requirement in the Release that Saenz return all intellectual property to ZroBlack;

     c.  Include a requirement in the Release that Saenz return all of ZroBlack's physical personal property, including the laptop computer;

     d.    Include a requirement that Saenz release to ZroBlack the ZroBlack domain name, web page, and email server; and

     e.    Include a requirement in the Release that Saenz return the $740,000 he took from ZroBlack.

86.    Gunn Law Firm's breach proximately caused Plaintiff injury. Plaintiff has incurred unnecessary attorney's fees in obtaining the undersigned counsel to file the lawsuit.

87.    ZroBlack's damages from Gunn Law Firm's breach include the $740,000.00 they allowed to be embezzled from the company, the value of ZroBlack's proprietary information, the laptop computer Saenz refuses to return, and ZroBlack's domain name for its webpage and email server.

### Count 7: Breach of Fiduciary Duty against the Gunn Law Firm and Michael Villareal

88.    Plaintiffs hereby adopt and re-allege the allegations previously set forth in this Complaint as if fully set forth herein. Mike Villareal and the Gunn, Lee law firm owed fiduciary duties to its clients, Saenz, Jonathan, and ZroBlack. The elements of a cause of action for breach of fiduciary duty are (1) the plaintiff and defendant had a fiduciary relationship, (2) the defendant breached its fiduciary duty to the plaintiff, (3) the defendant's breach resulted in (a) injury to the plaintiff, or (b) benefit to the defendant.

#### i.  Michael Villareal is an agent of the Gunn, Lee law firm

89.    At all times material to the events giving rise to his claim, Michael Villareal was an attorney with the Gunn, Lee law firm, and represented himself to be backed by the knowledge and expertise of the Gunn, Lee law firm. Any malfeasance or wrongdoing found against Michael Villareal was done under the supervision or in conjunction with his role at the Gunn, Lee law firm. His actions are therefore attributable to the firm under both respondeat superior and as an agent of

the Gunn, Lee law firm. The Gunn, Lee law firm is fully liable for all damages assessed against Michael Villareal.

### ii.   *Breach of Fiduciary Duty*

90.   Michael Villarreal and the Gunn, Lee law firm owed a formal fiduciary duty to Jonathan and ZroBlack. The duty, the highest recognized law, required the attorney and law firm to put the interest of its clients, Jonathan Villareal and ZroBlack, ahead of itself, or not take on representation of another client that would directly and adversely affect the representation of Jonathan Villareal and ZroBlack. However, for whatever reason, attorney Michael Villareal and Gunn, Lee law firm not only ignored their professional responsibility and duty to plaintiffs but negotiated agreements between Jonathan Villareal and Saenz and ZroBlack that put the Plaintiffs in a worse position than they were in prior to the agreements. The attorney and law firm also ignored the discussions between the members of ZroBlack with respect to qualifying the $740,000 that Saenz wrongfully took from the business.

91.   To the extent that Saenz claims that his settlement agreement excuses him from any obligation to repay the money he embezzled from ZroBlack, this was fully the fault of Michael Villareal and the Gunn, Lee law firm. Both the attorney and the law firm were clearly aware of Saenz's position with ZroBlack and they knew or should have known about the fiduciary duty that Saenz owed ZroBlack.

### Count 8: *Tortious Interference with Prospective Relations*

92.   Plaintiffs hereby adopt and re-allege the allegations previously set forth in this Complaint as if fully set forth herein.

93.   The elements for tortious interference with prospective relations are (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a

third person, (2) the defendant intentionally interfered with the relationship, (3) the defendant's conduct was independently tortious or unlawful, (4) the interference proximately caused the plaintiff's injury, and (5) the plaintiff suffered actual damage or loss.

94.     There is a reasonable probability that ZroBlack would have entered a business relationship with prospective businesses to sell its services. Saenz knew that his withholding of the website and email server would interfere with ZroBlack's prospective clients or knew that his actions were certain or substantially certain to cause interference.

95.     Saenz has stolen a ZroBlack laptop and maintains the only access to the ZroBlack website and email server. Saenz' actions proximately caused damage to ZroBlack. As shown above, his conduct was independently tortious or unlawful.

96.     Saenz's acts proximately caused ZroBlack injury. Saenz destroyed emails and documents pertaining to ZroBlack's business and that ZroBlack needed to fulfill obligations under an existing contract and to promote its products and services to other clients.

97.     Finally, ZroBlack has suffered damages or loss, including potential loss of profits.

***Count 9: Conversion***

98.     Plaintiffs hereby adopt and re-allege the allegations previously set forth in the Complaint as if fully set forth herein.

99.     The elements for conversion are (1) the plaintiff owned, possessed, or had the right to immediate possession of property, (2) the property was personal property, (3) the defendant wrongfully exercised dominion or control over the property, and (4) the plaintiff suffered injury.

100.    Plaintiff ZroBlack was the owner of the laptop at the time Saenz refused to return it. The laptop was the personal property of ZroBlack. Saenz has exercised dominion and control over the laptop to the exclusion of the rightful owner, ZroBlack. Saenz has and continues to

wrongfully exercise dominion or control over the laptop. Jonathan Villareal has made several attempts and demanded that Saenz return the laptop to no avail. ZroBlack has suffered injury due to Saenz' conversion of the laptop and trade secrets.

### Count 10: Violation of Texas Theft Liability Act.

101.    Plaintiffs hereby adopt and re-allege the allegations previously set forth in this Compliant as if fully set forth herein.

102.    A person who commits theft is liable for the damages resulting from the theft. TEX. CIV. PRAC. & REM. CODE §134.003(a). The elements of a cause of action under the Texas Theft Liability Act are (1) the plaintiff had a possessory right to property, (2) the defendant unlawfully appropriated, secured, or stole the plaintiff's property or services, (3) the unlawful taking was made with the intent to deprive the plaintiff of the property, and (4) the plaintiff sustained damages as a result of the theft. TEX. CIV. PRAC. & REM CODE. § 134.002; TEX. PEN. CODE § 31.03. A person commits theft under the Texas Penal Code if he unlawfully appropriates the property of another with the intent to deprive the owner of the property. TEX. PEN. CODE § 31.03) ("A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of the property"). "Appropriation of property is unlawful if … it is without the owner's effective consent."). TEX. P. CODE § 31.03(b)(1). A person means an individual, partnership, corporation, association, or other group, however organized. All parties involved are considered persons. TEX. CIV. PRAC. & REM. CODE §134.002(1).

103.    ZroBlack has a possessory right to the ZroBlack laptop. ZroBlack is the owner of the laptop. Defendant Saenz unlawfully appropriated the property by taking it and withholding it after demands were made to return it. Saenz appropriated the property without ZroBlack's

effective consent and with the intent to derive ZroBlack of the property. ZroBlack sustained damages as a result of the theft.

## VI.   REQUEST FOR DECLARATORY RELIEF TO SET ASIDE THE ZROBLACK OPERATING AGREEMENT AND RELEASE

104.   Plaintiff hereby adopts and re-alleges the allegations previously set forth in this Complaint as if fully set forth herein.

105.   Plaintiff seeks a declaration, pursuant to 28 U.S.CA. § 2201 that:

  a.   The ZroBlack, LLC Operating Agreement is void and/or unenforceable and should be set aside; and

  b.   The Release is void and/or unenforceable and should be set aside.

### A.   The ZroBlack, LLC Operating Agreement is void and/or unenforceable as it was induced by John Saenz's fraudulent misrepresentations

106.   "A contract is subject to avoidance on the ground of fraudulent inducement. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex.1990); Restatement (Second) of Contracts § 214 cmt. c (1981) ("What appears to be a complete and binding integrated agreement ... may be voidable for fraud...."). For more than fifty years it has been "the rule that a written contract [even] containing a merger clause can [nevertheless] be avoided for antecedent fraud or fraud in its inducement and that the parol evidence rule does not stand in the way of proof of such fraud." *Dallas Farm Mach. Co. v. Reaves*, 158 Tex. 1, 307 S.W.2d 233, 239 (1957) (citing *332 *Bates v. Southgate*, 308 Mass. 170, 31 N.E.2d 551, 558 (1941)); *accord* Restatement (Second) of Contracts § 214 cmt. c (1981) ("Such invalidating causes [including fraud] need not and commonly do not appear on the face of the writing." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 331–32 (Tex. 2011).

107.    A company operating agreement is a contract. Fraudulent inducement is grounds for setting a contract aside. The elements of a cause of action for fraud are (1) the defendant made a representation to the plaintiff, (2) the representation was material, (3) the representation was false, (4) when the defendant made the representation, the defendant (a) knew the representation was false or (b) made the representation recklessly, as a positive assertion, and without knowledge of its truth, (5) the defendant made the representation with the intent that the plaintiff act on it, (6) the plaintiff relied on the representation, and (7) the representation cause the plaintiff injury. To sustain a fraudulent inducement claim, plaintiff must establish a nexus between the fraud and the contract at issue. Plaintiff must also establish that it actually entered into a binding agreement based on the false representation.

108.    Saenz represented to Jonathan that he had the skill, training, experience, and expertise to act as CEO of ZroBlack. Saenz also represented that he had government and military contacts that would help ZroBlack expand its business. In fact, Saenz had none of the skill, training, experience, and expertise to act as the CEO of a technology company, and no government or military contacts with any authority or input into contract procurement. Those representations were false, and at the time he made them, Saenz knew the representations were false. The representations were material. A representation is material if a reasonable person would attach importance to it and be induced to act upon it in determining whether to make a transaction. Jonathan already had a partner, but Saenz told Jonathan that he (Saenz) could do a better job than Jonathan's (now former) partner, and he had the experience and training and contacts to grow ZroBlack. A potential CEO's background, experience, education, and personal contacts would be the type of information a reasonable person would rely attach importance to in deciding whether to partner with a potential

CEO in a limited liability company. Jonathan certainly relied on those representations, which turned out to be false.

109.    Saenz also made the representations with the intent that Jonathan rely on them. The whole purpose of making the representations was to demonstrate to Jonathan why he (Saenz) would be a better partner than the individual with whom Jonathan had been working. And, in fact, Jonathan did rely on the representations in deciding to execute the ZroBlack Operating Agreement with Saenz. Jonathan and ZroBlack were damaged when Saenz "took the money and ran" and refused to do any more work on the Foreign Customer project. For these reasons, Saenz's interest in ZroBlack in the ZroBlack Company Agreement should be set aside.

## B.    The Release Is Illegal Because Michael Villareal Had a Clear Conflict of Interest

110.    State and Federal courts have long recognized that "A contract to do a thing which cannot be performed without violation of the law" violates public policy and is void. *In re Kasschau*, 11 S.W.3d 305, 312 (Tex. App.—Houston [14th Dist.] 1999, no pet.) citing *Lewis v. Davis*, 145 Tex. 468, 199 S.W.2d 146, 148–49 (1947) and *Montgomery v. Browder*, 930 S.W.2d 772, 778 (Tex.App.—Amarillo 1996, writ denied). *See also Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77, 102 S. Ct. 851, 856, 70 L. Ed. 2d 833 (1982) ("There is no statutory code of federal contract law, but our cases leave no doubt that illegal promises will not be enforced in cases controlled by the federal law.").

111.    Rule 1.06 of the Texas Rules of Professional Disciplinary Conduct states "A lawyer shall not represent a person if the representation … involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm." TEX. PROF. R. DISC. CON. § 1.06(b)(1). A lawyer shall also not represent a person when it "reasonably appears to be or become adversely limited by the lawyer's or law firm's responsibilities to another client or to a third person or by the lawyer's or law firm's

own interests." TEX. PROF. R. DISC. CON. § 1.06(b)(2). An exception exists, however, when an attorney obtains a conflict of interest waiver, so long as "the lawyer reasonably believes the representation of each client will not be materially affected." TEX. PROF. R. DISC. CON. § 1.06(c)(2).

112.    Settlement Agreements have been set aside where a violation of the Professional Rules of Disciplinary Conduct (or their predecessor rules) have occurred. *See Quintero v. Jim Walter Homes, Inc.*, 709 S.W.2d 225 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.).

113.    Here, Jonathan, ZroBlack's and Saenz's interests were adverse under Rule 106 of the Texas Rules of Professional Disciplinary Conduct, and no attorney could reasonably believe under these facts that his representation of both clients would not be materially affected. At the heart of Jonathan's claim was Saenz's taking $740,000 from the ZroBlack contract and not doing any further work on the customer's project, other than being a from "time to time" as an "observer" or to offer "guidance." Nor did he do anything to develop new customers. Jonathan's pleas for the return of the $740,000 so that ZroBlack could perform under its contract continued even after execution of the Release. Saenz, for his part, wanted Jonathan to characterize the $740,000 as a gift for tax purposes, something clearly illegal under the Internal Revenue Code. Their interests were so adverse that the dispute continued after execution of the Release.

114.    Additionally, the Gunn, Lee law firm continued to profit from the deal because the firm would act as the escrow agent for funds paid by ZroBlack's customer under the PSA. Mike Villareal put the Gunn, Lee firm directly in the center of the deal, the conflict of interest notwithstanding.

115.    The conflict of interest also resulted in an unequal release. Mike Villareal failed to include express provisions in the Release for the return of ZroBlack's personal property,

maintenance of the confidentiality of proprietary information, while Saenz would continue to receive a 2% earn-out for the life of the PSA.

116.    Because the Release was procured through a violation of the Rules of Professional Disciplinary Conduct, the Release should be set aside.

**C.    The Release should be set aside due to mutual mistake.**

117.    Alternatively, the release should be set aside due to a mutual mistake. A contract may be set aside based on mutual mistake. To set a contract aside based on a mutual mistake, three criteria must be met. First, both parties must have the same misunderstanding. Here, the mutual mistake was disposition of the $740,000, with Saenz believing he could keep it, and Jonathan believing it would be returned to ZroBlack.

118.    Second, the mistake must involve a material part of the contract. Disposition was a material part of the Release.

119.    Finally, risk of the mistake must not be allocated to the defendant. A general release does not allocate the risk of mistake. Because of the existence of a mutual mistake, the Release should be set aside.

## VII.    DAMAGES & ATTORNEYS' FEES

120.    Plaintiffs seek to recover their actual and consequential damages in this suit, in an amount within the jurisdictional limits of this Court. Plaintiffs seek exemplary damages against Defendants as Defendants' actions were committed with malice as defined by Chapter 41 of the Texas Civil Practice & Remedies Code.

121.    Plaintiffs also seek to recover their attorney's fees and costs under the following statutory provisions:

a.    18 U.S.C. § 1836(b)(3)(D) [Defend Trade Secrets Act];

b.  15 U.S.C. § 1117(a) [Lanham Act and Anti-cybersquatting Consumer Protection Act];

c.  TEX. CIV. PRAC. & REM. CODE ANN. § 38.001;

d.  TEX. CIV. PRACT. & REM CODE ANN. § 134.005(b) [Texas Theft Liability Act];

e.  TEX. CIV. PRAC. & REM. CODE ANN. § 134A.005 [Texas Uniform Trade Secrets Act]; and,

f.  TEX. BUS. ORG. CODE ANN. § 21.561 [Derivative Proceeding].

122.   Plaintiffs are entitled to an award of attorney's fees under 18 U.S.C. § 1836(b)(3)(D) as Plaintiffs have shown that the misappropriation was made in bad faith and the trade secret was willfully and maliciously misappropriated. Additionally, exceptional circumstances exist justifying an award under TEX. CIV. PRAC. & REM. CODE ANN. § 134A.005.

123.   As a result of Defendants' conduct, Plaintiffs were forced to retain the undersigned counsel to pursue these causes of action. Plaintiffs seek to recover their reasonable attorneys' fees and costs, along with pre-judgment and post-judgment interest, under the statutes cited above or as otherwise allowed by law.

## VIII.   CONSTRUCTIVE TRUST

124.   Additionally, because Defendant Saenz has leached assets of ZroBlack, and used these assets to build a profit for himself in violation of federal and state statutes, Plaintiffs ask that the Court impose a constructive trust on the assets of Defendant to protect any interest in those assets which may belong to Plaintiffs.

125.   To impose a constructive trust, there must be (1) breach of an informal relationship of special trust or confidence arising prior to the transaction in question, or actual fraud, (2) unjust enrichment of the wrongdoer, and (3) tracing to an identifiable *res*. *Mowbray v. Avery*, 76 S.W.3d 663, 681 n. 27 (Tex. App.—Corpus Christi 2002, pet. denied). A constructive trust can arise out

of actual fraud, as well as a breach of a confidential or fiduciary relation. *Id*.

126.     Saenz occupied a position of trust and confidence as the chief executive officer of ZroBlack. As CEO, he had authority to negotiate sales on behalf of ZroBlack. Saenz breached that duty by engaging in self-dealing and misappropriating ZroBlack's property.

127.     Because of Saenz' breach of his duty of trust and confidence, Defendant was unjustly enriched because he acquired compensation for which he was not entitled to retain. Moreover, the *res* is easily traceable through records of his use of the money he stole from ZroBlack. Therefore, ZroBlack asks that a constructive trust be placed on the money received from ZroBlack to which Saenz was not entitled to keep for himself.

## IX.     JURY DEMAND

128.     Plaintiffs respectfully demand the right to have a trial by jury and hereby tender the appropriate jury fee to the district Clerk of Court for the U.S. District Court for the Western District of Texas.

## X.     PRAYER

129.     For these reasons, Plaintiffs ask that the Court issue citation for Defendants to appear and answer, and that Plaintiffs be awarded judgment against Defendants for the following:

1.   Actual, consequential and exemplary damages, as allowed by law;

2.   Pre-judgment and post-judgment interest;

3.   Reasonable attorneys' fees and costs of court;

4.   All other relief to which Plaintiffs may show themselves to be entitled to, in law or in equity.

Respectfully submitted,

THE VETHAN LAW FIRM, PC

By: /s/ *Charles M. R.  Vethan*
Charles M. R. Vethan
Attorney-in-Charge
Texas Bar No.  00791852
Steven A. Costello
Texas Bar No. 24062677
Two Memorial City Plaza
820 Gessner, Suite 1510
Houston, Texas 77024
Tel: (713) 526-2222
Fax: (713) 526-2230
Email: edocs@vwtexlaw.com


Joseph L. Lanza
Texas Bar No, 00784447
VETHAN LAW FIRM – SAN ANTONIO
11459 Huebner, Suite 101
San Antonio, Texas 78230
Tel: (210) 824-2220
Fax: (713) 526-2230
Email: edocs@vwtexlaw.com

***Attorneys for Plaintiffs***