**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JONATHAN VILLARREAL, | § | |
| Individually and derivatively on behalf | § | CASE NO. 20-571-OG |
| Of ZROBLACK, LLC | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| JOHN SAENZ, et al., | § | |
| Defendants. | § | |

**MOTION TO DISMISS WITH PREJUDICE ALL CLAIMS AND CAUSES OF ACTION
AGAINST DEFENDANTS MIGUEL VILLARREAL, JR. AND GUNN, LEE & CAVE,
P.C. PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**TO THE HON. ORLANDO GARCIA, UNITED STATES CHIEF DISTRICT JUDGE:**

NOW COME Defendants Miguel Villarreal, Jr. ("**M. Villarreal**") and Gunn, Lee, & Cave,

PC ("**Gunn Lee**", and together with M. Villarreal, the "**Gunn Lee Defendants**") and file their

*Motion to Dismiss with Prejudice all Claims and Causes of Action Against Defendants Miguel*

*Villarreal and Gunn, Lee, & Cave, PC Pursuant to Fed. R. Civ. P. 12(b)(6)* ("**Motion to Dismiss**")

and in support thereof, respectfully shows the Court as follows:

## I.    INTRODUCTION

1.    Plaintiff filed his Original Complaint ("**Complaint**") (Dkt. No. 1) on May 8, 2020

asserting the following federal and state law claims (Complaint, ¶3):

Count 1 - Defend Trade Secrets Act (18 U.S.C. § 1836) (*id.*, ¶¶ 49-59),

Count 2 - Computer Fraud and Abuse Act (18 U.S.C. § 1030(g)) (*id.*, ¶¶ 60-65),

Count 3 - Anti-cybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)) (*id.*, ¶¶ 66-69).

Count 4 - Breach of Contract (*id.*, ¶¶70-74).

Count 5 – Breach of Fiduciary Duty (*id.*, ¶¶75-81).

Count 6 – Negligence against Gunn Lee Firm (*id.*, ¶¶82-87).

Count 7 – Breach of Fiduciary Duty against the Gunn Lee Firm and Michael Villarreal (*id.*, ¶¶88-91).

Count 8 – Tortious Interference with Prospective Relations (*id.*, ¶¶92-97).

Count 9 – Conversion (*id.*, ¶¶98-100).

Count 10 - Violation of Texas Theft Liability Act (*id.*, ¶¶101-103).

2.      In his Complaint, Plaintiff Jonathan Villarreal ("**J. Villarreal**" or "**Plaintiff**")[1]

asserts that the Gunn Lee Defendants were negligent in the course of negotiations between J.

Villarreal and Defendant John Saenz ("**Saenz**") related to disputes about the business and assets

of ZroBlack, LLC ("**ZroBlack**"), a limited liability company in which J. Villarreal and Saenz were

equal members. *See generally*, Complaint.

## II.      BACKGROUND FACTS

3.      J. Villarreal and Saenz formed a business – called ZroBlack – and substantially

agreed to terms with a "Foreign Customer", all without the benefit of counsel.  Complaint ¶¶ 12-

14, 20, 21.  The agreement was for certain technology to be provided/sold by ZroBlack to the

Foreign Customer in exchange for money and other consideration to be determined.

4.      ZroBlack engaged M. Villarreal to represent ZroBlack at the tail end of the

negotiations with the Foreign Customer.  *Id.* ¶84.[2]  After about two weeks, a final agreement was

reached.  The final agreement was a Professional Services Agreement, dated April 15, 2019

("PSA").  *See*, Complaint ¶20.[3] The PSA included, *inter alia*, a payment to ZroBlack in the amount

of $1.5M dollars and also potential future earnings based on a certain percentage of certain revenue

generated from the sales of products incorporating the sold technology within a certain period of

---

[1] There is no familial relationship between M. Villarreal and J. Villarreal.

[2] A true and correct copy of the signed Engagement Letter, dated March 30, 2019, is attached as **Exhibit A** hereto and incorporated by reference herein.  The Engagement Letter is central to the Complaint and therefore, can be considered as evidence in adjudicating this Motion to Dismiss.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000).

[3] A true and correct copy of the PSA is attached as **Exhibit B** hereto and incorporated by reference herein.  The PSA is central to the Complaint and therefore, can be considered as evidence in adjudicating this Motion to Dismiss. *See Collins*, 224 F.3d at 498-499.

time following execution of the PSA.  *See id.*; *see also* **Ex B.**  J. Villarreal and Saenz were pleased with M. Villarreal's work and the result obtained.  *See* Complaint, ¶20.

5.      Almost three months would passed before ZroBlack—either via J. Villarreal or Saenz—contacted M. Villarreal again concerning the PSA.  Unfortunately, this time, the reason for reaching out to M. Villarreal was because a dispute had arisen between J. Villarreal and Saenz relating to complaints about the respective amount of work each of J. Villarreal and Saenz was contributing in relation to the PSA and whether the potential future earnings should continue to be equally divided among them.  *See id.* ¶¶ 23, 24.  Their disagreement reached an impasse.  They collectively agreed to reach out to M. Villarreal and asked for his assistance in resolving their differences.  *See id.* ¶ 29.

6.      The Texas Rules of Disciplinary Professional Conduct ("**Disciplinary Rules**") expressly provide for an attorney to serve as an intermediary between clients.  Disciplinary Rule 1.07, entitled "Conflict of Interest: Intermediary," provides, in pertinent part:

> (a) A lawyer shall not act as intermediary between clients unless:
>     (1) the lawyer consults with each client concerning the implications of the common representation, including the advantages and risks involved, and the effect on the attorney-client privileges, and obtains each client's written consent to the common representation;
>     (2) the lawyer reasonably believes that the matter can be resolved without the necessity of contested litigation on terms compatible with the client's best interests, that each client will be able to make adequately informed decisions in the matter and that there is little risk of material prejudice to the interests of any of the clients if the contemplated resolution is unsuccessful; and
>     (3) the lawyer reasonably believes that the common representation can be undertaken impartially and without improper effect on other responsibilities the lawyer has to any of the clients.

The Gunn Lee Defendants' conduct falls squarely within this Rule.

7.      After further requests, M. Villarreal indicated he could assist ZroBlack, J. Villarreal and Saenz only if each party waived any and all conflicts between them.  After this discussion, they agreed and engaged M. Villarreal in the capacity of an intermediary to help them resolve their disagreements consensually, waiving all conflicts – existing or potential – with the simultaneous representation.[4]  *See Complaint* ¶ 32.

8.      As set forth in the Conflict Waiver, M. Villarreal advised J. Villarreal and Saenz that the Gunn Lee Defendants could assist the parties in achieving a consensual resolution of their disputes relating to ZroBlack, that they could not advise one party at the expense of the other, and that the discussions with either party would not be privileged as to the other party.  *See* **Exhibit C** (Conflict Waiver).  Each party was provided the opportunity to retain separate counsel should they desire independent advice or wish to discuss matters privately, and was strongly recommended to seek independent counsel to advise that party as to the meaning and effect of the Conflict Waiver. *See id.*  J. Villarreal and Saenz each—both in their individual capacities and in their capacities as corporate representatives of ZroBlack—consented in writing to M. Villarreal acting as an "intermediary," as defined in Rule 1.07 of the Disciplinary Rules.

9.      With M. Villarreal's assistance, ZroBlack, J. Villarreal and Saenz resolved their disputes and entered into a Release.[5]  *See* Complaint ¶ 35; *see also* **Exhibit D**.  The Release, dated Aug. 9, 2019, resolved all issues between all parties and included the agreed upon further subdivision of the potential future earnings percentages as between J. Villarreal and Saenz, with

---

[4] A true and correct copy of the Waiver of Conflict letter, dated July 15, 2019, signed by all parties involved, is attached as **Exhibit C** hereto and incorporated by reference herein.  The Waiver of Conflict letter is central to the Complaint and therefore, can be considered as evidence in adjudicating this Motion to Dismiss.  *See Collins*, 224 F.3d at 498-499.

[5] A true and correct copy of the Release is attached hereto as **Exhibit D**.  The Release is central to the Complaint and therefore, can be considered as evidence in adjudicating this Motion to Dismiss.  *See Collins*, 224 F.3d at 498-499.

the lion's share of the subdivision of the potential future earnings percentages going to J. Villarreal. **Exhibit D** at Section 2.

10.     Another month passed before ZroBlack (via J. Villarreal) or Saenz would contact M. Villarreal again concerning the PSA and the Release.  *See* Complaint ¶42. J. Villarreal and Saenz once again requested M. Villarreal assist in resolving their differences.  *See id.* ¶44. Several attempts were made to bring J. Villarreal and Saenz together.  *See id.*  The parties were not able to resolve their differences.  *See id.* ¶45.

11.     The issues complained of by Plaintiff J. Villarreal against the Gunn Lee Defendants were not issues of dispute between the parties at the time the Release was executed.  *See, e.g.,* Complaint ¶¶ 39-42 (describing disputes that arose after execution of Release).  Nor were these issues brought to M. Villarreal's attention before the Release was executed.  *See id.* ¶ 43 (first allegation that M. Villarreal was made aware of the $740,000 dispute via email dated September 13, 2019).

12.     J. Villarreal now complains that the Gunn Lee Defendants were negligent because (a) the Release did not impose certain obligations on Saenz and/or (b) Saenz has not complied with his obligations in the Release.  However, those claims are not supported by well-pleaded facts or reasonable inferences drawn therefrom.  Further, the claims are barred by law.

13.     As set forth below, J. Villarreal has no cognizable claims against the Gunn Lee Defendants and allowing J. Villarreal to amend his pleading would be futile.  Accordingly, the Complaint should be dismissed with prejudice as to all claims against the Gunn Lee Defendants.

## III.     LEGAL STANDARD

14.     Fed. R. Civ. P. 12(b)(6) codifies the complete affirmative defense that a party has failed to state a claim upon which relief can be granted.  Under the liberal pleading standards of

the Federal Rules of Civil Procedure, while a complaint "does not need detailed factual allegations," the claimant's obligation to "provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[6]

15.     The Supreme Court has further explained that

> [u]nder Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  As the Court held in *Twombly*, the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

16.     The Fifth Circuit has construed these standards as requiring that a complaint

> contain sufficient factual matter, if accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Anderson v. Valdez*, 845 F.3d 580, 589 (5th Cir. 2016).  This standard comports with the Supreme Court's interpretation in *Iqbal* and *Twombly* that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

17.     The Complaint does not meet the standards of Fed. R. Civ. P. 8, as interpreted by *Iqbal*, *Twombly*, and their progeny.  Furthermore, because J. Villarreal cannot plead facially

---

[6] Unless otherwise noted, all internal quotation marks, citations, and brackets are omitted.

plausible claims, allowing him leave to amend his complaint would be futile.  *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012) (amendment would be futile where claims were barred as a matter of law).

## IV.    ARGUMENT & AUTHORITIES

18.    The majority of J. Villarreal's claims are asserted against Saenz, not the Gunn Lee Defendants.  For purposes of this Motion to Dismiss, the relevant Counts in the Complaint are:

- Count 6:  Negligence Against the Gunn Law Firm (Dkt. No. 1, ¶82-87).
- Count 7:  Breach of Fiduciary Duty against the Gunn Law Firm and Michael [sic] Villarreal (*Id.*, ¶88-91).

19.    This Court must apply substantive Texas law to evaluate the plausibility of J. Villarreal's claims under Count 6 and Count 7 because they are brought pursuant to this Court's supplemental jurisdiction as permitted by 28 U.S.C. § 1367.  *See* Complaint ¶4 (asserting supplemental jurisdiction over non-federal claims); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (under the *Erie* doctrine, federal courts exercising supplemental jurisdiction over state law claims are "bound to apply state law" in adjudicating those claims).

20.    The relevant factual allegations from the Complaint are as indicated in the **Appendix**, attached as **Exhibit E** hereto and incorporated by reference herein.  If the Court accepts the well-pleaded factual allegations as true, and draws every reasonable inference favorable to J. Villarreal, the Court should conclude that J. Villarreal has not – and cannot – plead plausible claims for relief against the Gunn Lee Defendants.

**A.    Plaintiff fails to state a plausible claim against the Gunn Lee Defendants for negligence.**

21.    In Count 6, J. Villarreal asserts the Gunn Lee Defendants were negligent because they failed to:

a. Include a carve-out provision in the Release that except[ed] from the Release Saenz's ongoing obligations to preserve the confidentiality of ZroBlack's trade secrets;

b. Include a requirement in the Release that Saenz return all intellectual property to ZroBlack;

c. Include a requirement in the Release that Saenz return all of ZroBlack's physical personal property, including the laptop computer;

d. Include a requirement that Saenz release to ZroBlack the ZroBlack domain name, web page, and email server; and

e. Include a requirement in the Release that Saenz return the $740,000 he took from ZroBlack.

Complaint ¶ 85.

22.    Under Texas law, to state a claim for relief for attorney negligence, the plaintiff must show: "the defendant owed the plaintiff a duty, the defendant breached that duty, the breach proximately caused the plaintiff's injury, and the plaintiff suffered damages." *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 112 (Tex. 2009); *see also* Complaint (Dkt. No. 1), ¶ 83 (reciting elements).

23.    J. Villarreal cannot state a plausible claim for attorney negligence based on the facts pleaded because the Complaint does not contain sufficient allegations to support the necessary finding of causation, *i.e.*, that any act or omission by the Gunn Lee Defendants was the proximate cause of any injury to J. Villarreal or ZroBlack. Specifically, J. Villarreal cannot plausibly plead that (a) if the Gunn Lee Defendants had acted differently, Saenz would have agreed to a Release with express terms requiring the return of $740,000 and other property to ZroBlack; (b) the alleged negligence of the Gunn Lee Defendants is the proximate cause of J. Villarreal's alleged injuries rather than the superseding actions of Saenz; and (c) J. Villarreal ever raised the issues or insisted they be included in the Release.

*1.  Plaintiff's Complaint does not sufficiently allege facts establishing that Saenz would have agreed to a Release that contained express terms requiring the return of $740,000 and other property to ZroBlack.*

24.    Under Texas law, to show that a lawyer's alleged negligence was the "cause in fact" of a client's injury requires examination of the hypothetical result if the lawyer had not acted negligently.  *See, e.g.*, *Rogers v. Zanetti*, 518 S.W.3d 394, 404 (Tex. 2017).  In this case, J. Villarreal must show that if the Gunn Lee Defendants had acted differently, Saenz would have (a) agreed to abide by the confidentiality obligations of ZroBlack's contracts, and (b) returned the $740,000 and other property allegedly belonging to ZroBlack, including intellectual property and the laptop computer.

25.    There is no plausible allegation of causation.  On its face, the Complaint does not allege that if Gunn Lee had done anything different, Saenz would have agreed to the conditions J. Villarreal alleges should have been included in the Release.  Moreover, the additional allegations of the Complaint indicate that Saenz would not have agreed to those terms and/or could not have complied with them.  Specifically, paragraph 27 of the Complaint alleges that well before the Gunn Lee Defendants were involved in assisting with the negotiation of the Release, Saenz had spent most of the $740,000 he transferred from ZroBlack to his personal account.  Additionally, paragraph 34 of the Complaint alleges that before the involvement of the Gunn Lee Defendants, Saenz was already asking the $740,000 be treated as a "gift" for tax purposes, indicating that the money was no longer available to Saenz.  Thus, on its face, the Complaint indicates that Saenz would not have agreed to return the money – or any portion of it – to ZroBlack, or that he could have complied with such an obligation even if he did agree to it.  *See Akin, Gump,* 299 S.W.3d at 112 (in a legal malpractice claim stemming from prior representation, "the plaintiff must prove and obtain findings as to the amount of damages that would have been recoverable *and collectible* if the other case had been properly prosecuted" (emphasis added)).

26.     Finally, in paragraphs 39, 40, 41, 43, 45, and 48, J. Villarreal alleges the consistent failure or refusal of Saenz to return to ZroBlack any of the complained of money or property. Saenz's alleged repeated refusals on multiple occasions demonstrate that Saenz would not have agreed to return either the money or property and/or would not have complied with such an agreement.  The Gunn Lee Defendants could not have done anything to change that.  Nor does Plaintiff's Complaint plausibly allege otherwise.  Thus, it is readily apparent that J. Villarreal cannot plausibly claim that Saenz would have agreed to the Release if it contained the obligations now demanded by J. Villarreal or that Saenz would have complied with such obligations if they were included in the Release.

### 2.  *The superseding acts of Saenz preclude the plausibility of any allegation in Plaintiff's Complaint that any alleged negligence of the Gunn Lee Defendants was the proximate cause of Plaintiff's alleged injuries.*

27.     The Complaint further maintains that when Saenz agreed to assign all his interest in ZroBlack as set forth in the Release, he was agreeing to return all property that he held on behalf of ZroBlack or arising out of his membership interest in ZroBlack.  *See* Complaint ¶¶ 36, 38, 72, 73.  Assuming for the sake of this Motion to Dismiss that J. Villarreal's position is correct, the failure to return tangible and intangible property as required under the terms of the Release is an intentional act by Saenz constituting a superseding cause that precludes the alleged negligence by the Gunn Lee Defendants as the proximate cause of any injury to J. Villarreal.

28.     Under Texas law, the intentional acts of a third party may be a superseding cause of the plaintiff's injury such that the allegedly negligent actor cannot be held liable to the plaintiff. *See generally Phan Son Van v. Pena*, 990 S.W.2d 751, 752 (Tex. 1999).  Relying on section 448 of the *Restatement (Second) of Torts*, the Texas Supreme Court explained that the intentional act of a third party is a superseding cause "unless the [alleged negligent] actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be

created, and that a third person might avail himself of the opportunity to commit" the intentional act. *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 550 (Tex. 1985).

29.     In *Phan Son Van*, the Texas Supreme Court recited the criteria set forth in section 442 of the *Restatement (Second) of Torts* to clarify when it should be foreseeable that a negligent act by one party would lead to intentional harmful acts by the third party.   990 S.W.2d at 754. Several of those factors weigh in favor of finding Saenz's intentional conduct to be a superseding case of the injury asserted by J. Villarreal.

> a.   *The intervening acts operated independently of any situation created by the Gunn Lee Defendants.*

30.     First, as to the $740,000, as pleaded in the Complaint, Saenz had allegedly transferred the money to his personal account (1) well before ZroBlack, J. Villarreal and Saenz came to M. Villarreal requesting assistance in resolving their difference, and (2) well before the Gunn Lee Defendants acted as an intermediary and brokered the Release.   By the time of the Release, Saenz had spent or invested the money (Complaint ¶27), and was already asking it to be treated as a gift for tax purposes (*id.* ¶¶ 34, 39, 113), so it could not have been returned to ZroBlack, even if the Release had required it to be returned.

31.     Similarly, as to the computer and intellectual property, Saenz's alleged failure or refusal to return these items is independent of any situation created by the Gunn Lee Defendants. As pleaded, Saenz threatened to "muck up" J. Villarreal's life *after* the Release had already been negotiated and signed. *See id*. ¶45.  Treating this allegation as true as required by Rule 12(b)(6), it can reasonably be inferred from these pleaded facts that Saenz is purposefully refusing to comply with the requirements of the Release because J. Villarreal/ZroBlack will not characterize the $740,000 distributed to Saenz as a gift for tax purposes.

32.     The Gunn Lee Defendants did not create the situation that makes it impossible for Saenz to comply with the obligation to return property (*i.e.*, they did not cause the money to be spent) nor the conditions that are allegedly motivating Saenz to willfully refuse to return property (*i.e.*, the alleged dispute over the characterization of the $740,000).  Plaintiff could not plausibly plead otherwise.

> b.     *Plaintiff's Complaint alleges independent statutory bases for Saenz's liability to Plaintiff, not simply breach of contract.*

33.     Second, the Complaint alleges that Saenz' conduct is independently wrongful, particularly with regard to Saenz's refusal to return the company's intellectual property.  Pertinent to this point, the Complaint alleges independent statutory bases for Saenz's liability to J. Villarreal, not simply breach of contract.  *See, e.g.,* Complaint, Counts 1-3.

34.     Significantly, there are no allegations in the Complaint that the Gunn Lee Defendants knew or should have known that Saenz would commit these alleged intentional acts (or acts like them) as a result of the Gunn Lee Defendants' alleged negligence, specifically, failing to include in the Release express provisions requiring the return of the tangible and intangible property.  In paragraph 44 of the Complaint, J. Villarreal cites from an email M. Villarreal sent on September 26, 2019, indicating M. Villarreal's belief that J. Villarreal and Saenz were "both willing to work in good faith" to resolve their apparent dispute about the meaning and/or requirements of the Release.  There is no well-pleaded factual allegation or a reasonable inference that the Gunn Lee Defendants could have anticipated Saenz's alleged intentional conduct.

> 2.  *Plaintiff's Complaint does not sufficiently allege facts establishing that Plaintiff insisted upon the inclusion of language in the Release requiring the return of the money and other property to ZroBlack or that Plaintiff deemed these issues important enough to even raise these as issues prior to or at the time the Release was executed.*

35.     As alleged, both J. Villarreal and Saenz treated the upfront payment from the Foreign Customer as their respective salaries for 2019.  *See* Complaint ¶ 21.  There is no allegation

in Plaintiff's Complaint that J. Villarreal informed M. Villarreal prior to August 9, 2019 that it was imperative for the Release to address the return of the $740,000 or the laptop.  The only dispute of which M. Villarreal was aware prior to the negotiation and execution of the Release was the dispute about the division of future payments.  *See* Complaint ¶¶ 24-27.

36.    The original disagreement between J. Villarreal and Saenz was the perceived disparity in the amount of work that was being done by each in connection with the PSA and the Foreign Customer.  *See id.*

37.    Accordingly, a substantial portion of the Release comprises compensation as between the parties.  *See* **Exhibit D** at 2 (heading entitled "**Compensation**") (providing that the parties would split Earn-Out Obligation payments "with . . . (12.5%) going to J. Villarreal and . . . (2%) going to Saenz")); *see also* Complaint ¶35 (describing the split of the Earn-Out Obligation payments memorialized in the Release).  Indeed, this is consistent with what J. Villarreal was complaining of:  that Saenz was not pulling his weight in the company and, therefore, did not deserve and should not continue to be entitled to half of the 14.5% of the Earn-Out payments going forward.  *See* Complaint ¶¶ 24-26. The Release properly and accurately memorialized and resolved the entirety of the dispute between ZroBlack, J. Villarreal and Saenz.

38.    Based on the foregoing, J. Villarreal has not pleaded sufficient facts to support a facially plausible claim that the Gunn Lee Defendant's alleged negligence is the proximate, legal cause of any injury to J. Villarreal or ZroBlack.  J. Villarreal does not plead that if the Gunn Lee Defendants had acted differently, Saenz would have agreed to the terms J. Villarreal now insists should have been included in the Release.  J. Villarreal does not contend that if Saenz had agreed to those terms, Saenz would have complied with those obligations.  Rather, the Complaint sets forth factual allegations that support a finding that Saenz's failure and/or refusal to return tangible

and intangible property to ZroBlack is a superseding cause that precludes holding the Gunn Lee Defendants liable for any injury suffered by J. Villarreal or ZroBlack.  The factual assertions, as currently pleaded, are insufficient to support a finding of causation against the Gunn Lee Defendants.  The negligence claim against them (Count 6 of the Complaint) warrants dismissal pursuant to Rule 12(b)(6).

39.     Moreover, the well-pleaded facts of the Complaint facially contradict any possible allegation that Saenz would have agreed to the express terms now demanded by J. Villarreal or that Saenz could have complied with those requirements if they had been agreed to and included in the Release.  Therefore, repleading would be futile and Count 6 of the Complaint should be dismissed with prejudice.

**B.  Plaintiff fails to state a plausible claim for breach of fiduciary duty as such claim violates the anti-fracturing rule and is, thus, barred under Texas law.**

40.     In Count 7 of the Complaint, Plaintiff contends the Gunn Lee Defendants breached their fiduciary duties to each of their clients – Saenz, J. Villarreal, and ZroBlack.  Count 7 contains additional relevant factual allegations found in Paragraphs 89, 90 and 91.  *See*,  **Exhibit E** (Appendix), at 5.

1. *The breach of fiduciary duty claim is identical to the negligence claim.*

41.     Count 7 is simply a recharacterization of the attorney negligence claim pleaded in Count 6, which is prohibited under the anti-fracturing rule.  Texas law is perfectly clear

> that a case arising out of an attorney's alleged bad legal advice or improper representation may not be split out into separate claims for negligence, breach of contract, or fraud (or any other non-negligence theory) because the real issue remains one of whether the professional exercised that degree of care, skill, and diligence that professionals of ordinary skill and knowledge commonly possess and exercise.

*Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 426–27 (Tex. App.—

Austin 2009, no pet.) (brackets omitted).  As the Texas Fourth Court of Appeals further explained,

> The rule against dividing or fracturing a negligence claim prevents
> legal-malpractice plaintiffs from opportunistically transforming a
> claim that sounds only in negligence into other claims.  If the gist of
> a client's complaint is that the attorney failed to exercise the degree
> of care, skill, or diligence that attorneys of ordinary skill and
> knowledge commonly possess, then the legal malpractice claim is
> based on negligence. Such a claim encompasses a cause of action
> based on an attorney giving a client bad legal advice or otherwise
> improperly representing the client.

*Riverwalk CY Hotel Partners, Ltd. v. Akin Gump Strauss Hauer & Feld*, *LLP*, 391 S.W.3d 229,

236 (Tex. App.—San Antonio 2012, no pet.).

42.     The face of the Complaint makes it clear that Count 7 is premised on the allegation

that the Gunn Lee Defendants failed to exercise the degree of care, skill, or diligence required of

attorneys.  In particular, J. Villarreal asserts that the alleged "breach of fiduciary duty" resulted in

an agreement between J. Villarreal and Saenz that did not accomplish what J. Villarreal contends

should have been agreed to and memorialized, especially with respect to J. Villarreal's argument

that Saenz could have – and should have – been made to agree to return $740,000 to ZroBlack

(despite the contrary factual allegations indicated that the money had long since been spent or

invested and was not available to Saenz, as discussed above).  As such, Count 7 is impermissible

"fracturing" of the negligence claim raised in Count 6.

### 2. *The Complaint does not – and cannot – assert an independent basis for a breach of fiduciary duty claim separate from the negligence claim.*

43.     There are no factual allegations that would support a breach of fiduciary duty claim

independent of the negligence claim.  There is no allegation that the Gunn Lee Defendants

subordinated the client's interest to their own, retained client funds, engaged in self-dealing,

improperly used client confidences, or made misrepresentations to achieve those ends, all of which

could give rise to an independent breach of fiduciary duty claim. *See id.* (citing *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 923 (Tex.App.-Fort Worth 2002, pet. denied).).

44.     Failing to disclose conflicts of interest *may* give rise to an independent claim for breach of fiduciary duty. *See id.* However, in this case, the Complaint admits that the potential conflict was expressly disclosed to both J. Villarreal and Saenz in both their individual capacities and in their capacities as corporate representatives of ZroBlack. *See* Complaint ¶ 32; **Exhibit C** (Waiver of Conflict). Moreover, "[u]nlike conflicts of interest between jointly represented clients, the types of conflicts of interest which could give rise to a breach of fiduciary duty are those in which the lawyer has a direct pecuniary interest in the litigation that is adverse to the client, and the attorney pursues his own interest to the client's detriment." *Riverwalk CY Hotel Partners*, 391 S.W.3d at 236 (citing *Beck*, 284 S.W.3d at 436). Therefore, even if there was a conflict that could not be waived effectively by the jointly represented clients, such conflict does not give rise to an independent claim for breach of fiduciary under Texas law.

45.     Notably, the Complaint does not allege that any conflict between J. Villarreal and Saenz was not waivable. Indeed, J. Villarreal admits he signed the Waiver of Conflict. *See* Complaint ¶ 32; **Exhibit C** (Waiver of Conflict).

### 3. *The Gunn Lee Defendants acted as an intermediary between J. Villarreal, ZroBlack, and Saenz, in conformance with Disciplinary Rule 1.07.*

46.     Finally, the joint representation in this instance meets the criteria under which an attorney may act as an intermediary to assist potentially adverse parties in consensually resolving their dispute: (a) each party provides written consent after consultation with the lawyer, (b) the lawyer reasonably believes that the matter can be resolved without litigation on terms compatible with the client's best interests, and (c) the lawyer reasonably believes that the common

representation can be undertaken impartially and without improper effect on other responsibilities the lawyer has to any of the clients.

47.     As to the first criterion, the Conflict Waiver – signed by each party individually and as a member of ZroBlack – establishes that the Gunn Lee Defendants advised the parties of the advantages and disadvantages of joint representation, including the effect on attorney-client privilege.  *See* **Exhibit C** (Conflict Waiver).

48.     As to the second criterion, the Complaint is devoid of any well-pleaded facts indicating that it was unreasonable for M. Villarreal to believe that the disputes between J. Villarreal and Saenz could be resolved without litigation in a manner compatible with the parties' best interests.  Bare, conclusory statements, such as those contained in paragraph 32 of the Complaint, do not constitute "well pleaded facts" for purposes of Rule 12(b)(6). *See Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (when adjudicating a motion to dismiss, the court does not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions").

49.     Indeed, the well-pleaded facts of the Complaint support an inference that it was reasonable for the Gunn Lee Defendants to believe that the parties could achieve a consensual resolution that served each parties' interests.  Prior to engaging the Gunn Lee Defendants as an Intermediary, J. Villarreal and Saenz had already determined that they needed to terminate their business relationship.  *See, e.g.*, Complaint ¶ 32.  The only question was how best to accomplish the business divorce.  The well-pleaded facts of the Complaint do not support a finding that either party was unable to make adequately informed decisions.

50.     Additionally, the well-pleaded facts of the Complaint do not support a finding that either party would have been materially prejudiced if the parties were unable to reach a consensual

resolution through the efforts of the intermediary.  Specifically, the negotiations between the parties took place just a few months after the actions complained of, well within the statute of limitations for any claims that J. Villarreal, ZroBlack, and Saenz had against each other.  Therefore, if the parties had been unable to reach a consensual resolution, their positions would not have been materially prejudiced.

51.     Finally, as to the third criterion, there are no well-pleaded factual allegations that support a finding that the Gunn Lee Defendants could not have reasonably believed that they could act impartially in the representation.

52.     Based on the foregoing, the Gunn Lee Defendants' representation of J. Villarreal and Saenz as an Intermediary to facilitate the consensual termination of their business relationship falls squarely within Disciplinary Rule 1.07 and does not present an impermissible conflict of interest that could give rise to an independent claim for breach of fiduciary duty under Texas law.

53.     The claim for breach of fiduciary duty asserted in Count 7 is barred as a matter of law.  As such, Plaintiff cannot allege any plausible facts to support this claim.  Claim 7 should be dismissed with prejudice.

### V.     AMENDMENT OF PLAINTIFF'S COMPLAINT WOULD BE FUTILE.

54.     Plaintiff's claims against the Gunn Lee Defendants (*i.e.*, Counts 6 and 7) fail because the Complaint lacks any factual basis to support a claim for negligence or for breach of fiduciary duty.  The former lacks any plausible factual allegations to support the necessary finding that any act or omission by the Gunn Lee Defendants was the proximate cause of any injury to Plaintiff.  The latter is barred as a matter of law under the anti-fracturing rule.  This is not a situation where Plaintiff inadvertently may have not alleged an element of his cause of action or provided too little of the applicable factual background.  There is simply no factual basis for Plaintiff's

causes of action.  Amendment of Plaintiff's Complaint would also be futile because no rephrasing of the applicable facts as alleged could make Plaintiff's claims plausible.  *Pisharodi v. Columbia Valley Healthcare Sys., L.P.*, 615 F. App'x 225, 226 (5th Cir. 2015) (stating that "an amendment is futile if it would fail to state a claim upon which relief could be granted") (internal quotation omitted); *Silver Gryphon, L.L.C. v. HSBC Bank USA, N.A.*, No. CIV.A. H-14-443, 2014 WL 2611811, at *6 (S.D. Tex. June 11, 2014), *appeal dismissed* (Sept. 15, 2014) ("Silver Gryphon's complaint fails because its claims lack any legal foundation, as opposed to being dismissed for pleading insufficient facts.  Indeed, the Fifth Circuit has dismissed similar claims in analogous cases, and any amended complaint by Silver Gryphon would be futile.").  Consequently, Plaintiff's claims as to the Gunn Lee Defendants should be dismissed.

## VI.   CONCLUSION

55.    Plaintiff has not met his pleading burden.  The Complaint does not – and cannot – assert facially plausible claims for relief against the Gunn Lee Defendants.  Plaintiff's claim of negligence (Count 6) suffers from fatal defects as to the element of causation.  First, the Complaint does not contain the necessary assertions that a different result could have been achieved if the Gunn Lee Defendants had acted differently.   To the contrary, the well-pleaded facts of the Complaint indicate that the results J. Villarreal now envisions could not have been realized under the factual circumstances as pleaded in the Complaint.  Second, the Complaint contains factual allegations that, if taken as true, establish Saenz's independent, intentional conduct as a superseding cause of the injuries complained of, such that the Gunn Lee Defendants cannot be held liable.  These defects cannot be cured by amending the Complaint, and therefore, Count 6 should be dismissed with prejudice.

56.     Additionally, the claim for breach of fiduciary duty asserted in Count 7 is barred under Texas law.  Count 7 is simply a re-casting of the negligence claim in Count 6, which violates the anti-fracturing rule.  There are no allegations in the Complaint that give rise to an independent breach of fiduciary duty that would be recognized under Texas law.  As with Count 6, there is no possibility that Count 7 could be amended to state a plausible claim for relief.  Therefore, Count 7 should also be dismissed with prejudice.

WHEREFORE, PREMISES CONSIDERED, the Gunn Lee Defendants respectfully pray that the Court enter an order dismissing Count 6 and Count 7 with prejudice, order that the Plaintiffs take nothing from the Gunn Lee Defendants, and for such other relief to which they are entitled at law or equity.

Dated July 13, 2020.

Respectfully submitted,

/s/ Natalie F. Wilson
**LANGLEY & BANACK, INCORPORATED**
745 E. Mulberry, Suite 700
San Antonio, Texas 78212
(210) 736-6600 Telephone
(210) 735-6889 Telecopier
Email:  nwilson@langleybanack.com

GEORGE H. SPENCER, JR.
State Bar No. 18921001
NATALIE F. WILSON
State Bar No. 24067769

COUNSEL TO MIGUEL VILLARREAL, JR., and
GUNN, LEE & CAVE, PC

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2020, a true and correct copy of the above and foregoing instrument was served via the Court's electronic transmission facilities and served via first class mail, postage prepaid on:

Steven A. Castello
Joseph L. Lanza
Charles M.R. Vethan

VETHAN LAW FIRM
11459 Huebner Road, Suite 101
San Antonio, TX 78230
210-824-2220
Fax: 713-526-2230

Counsel to Plaintiffs

David A. Vanderhider
Ryan J. Sullivan

DYKEMA COX SMITH
112 E. Pecan Street - Suite 1800
San Antonio, TX 78205
210-554-5484
Fax: 210-226-8395

Counsel to Defendant John Saenz

/s/ *Natalie F. Wilson*
NATALIE F. WILSON