IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JONATHAN VILLARREAL, | § | |
| Individually and derivatively on behalf | § | CASE NO. 19-640-OG |
| Of ZROBLACK, LLC | § | |
|         Plaintiffs, | § | |
| v. | § | |
| | § | |
| JOHN SAENZ, et al., | § | |
|         Defendants. | § | |

**APPENDIX TO MOTION TO DISMISS WITH PREJUDICE ALL CLAIMS AND CAUSES OF ACTION AGAINST DEFENDANTS MIGUEL VILLARREAL, JR. AND GUNN, LEE & CAVE, P.C. PURSUANT TO FED. R. CIV. P. 12(b)(6)**

| Paragraph | Allegation (relevant portions)[1] for Count 6 |
|---|---|
| 12 | "In January of 2019, [J. Villarreal] was negotiating with a foreign company ("Foreign Customer") for the licensing of the technology. Saenz … proposed forming a company as a vehicle to market the technology. That company was to be ZroBlack. [J. Villarreal] believed [Saenz] and, as a family member, trusted [Saenz]. They agreed to from a limited liability company to market the software to … Foreign Customer, with Saenz as CEO and [J. Villarreal] taking on the technology role." |
| 13. | "On January 11, 2019, Saenz purchased ZroBlack's domain name,www.zroblack.com, from GoDaddy. He held the name [on] behalf of ZroBlack. The login and password information for accessing ZroBlack's GoDaddy account is a trade secret of ZroBlack." |
| 14. | "On January 14, 2019, [J. Villarreal] and Saenz formed ZroBlack, LLC[.] … They were its founding members and each owned fifty percent." |
| 17. | "In connection with his duties as CEO, Saenz purchase [a] 15-inch Apple MacBook Pro on May 2, 2019, for $2,631.00. The purchase order reflects that the laptop was ordered [by] 'John Saenz, ZroBlack, at 1150 N. Loop 1604-W, Ste 108-259, San Antonio, Texas 78248,' which was ZroBlack's address. It was purchased with a debit card ending with the number 8032, which was a debit card issued in ZroBlack's name." |
| 20. | "ZroBlack and its Foreign Customer signed a Professional Services Agreement ("PSA") on or about April 15, 2019[.] … The contract price was [$1,500,000.00] up front and a [14.5%] earn out on new customer revenue and existing customer growth. The $1.5 million was wired into |

---

[1] As required for purposes of Fed. R. Civ. P. 12(b)(6), the well-pleaded facts of the Complaint are treated as true. The Gunn Lee Defendants, however, do not admit that any of the factual allegations recited herein are indeed true or have been established for any other purposes, such as summary judgment or trial.

| | |
|---|---|
| | ZroBlack's Wells Fargo business account. Saenz then transferred $740,000 of those funds to his personal account." |
| 21. | "ZroBlack retained the services of Gunn Lee & Cave … and specifically attorney [M. Villarreal] to advise them on the contract negotiations. Shortly before signing, on or about April 12, 2019, [J. Villarreal] emailed [M. Villarreal] discussing negotiations. In the email, [J. Villarreal] stated:<br><br>[Saenz] and I went through it last night, he had concerns, but at the end of our talks we worked out the logic behind the revenue sharing. I hope this closes today too, hard lessons have been learned for sure. If we sign today, it's basically as though we are getting a $750,000 salary each for 2019. Do you have a recommendation for an attorney that can set up a trust for me?<br><br>The email demonstrates that $1.5 million dollars was to constitute salary for [J. Villarreal] and Saenz through the end of 2019. The money was not a gift, nor was it deemed earned upon the signing of the contract." |
| 23. | "Although ZroBlack has signed the NDA and later the PSA (with its own confidentiality provisions) with its Foreign Customer, Saenz tried to shop the technology to others …. [J. Villarreal] warned Saenz that he was in violation of the NDA and the confidentiality provisions of the PSA. Saenz threatened to continue to try to market the code." |
| 24. | "…. After ZroBlack signed the contract with its Foreign Customer, Saenz took half of the upfront payment ($740,000) and then performed very little work for ZroBlack." |
| 25. | "[I]n May 2019, both [J. Villarreal] and Saenz were required to travel to Finland. Saenz initially refused to leave at the same time as [J. Villarreal], but eventually showed seven-days late. After arriving in Finland, Saenz sent ZroBlack's Foreign Customer an email stating that [J. Villarreal] would take care of 100% of the technical and that he (Saenz) would no longer be attending morning meetings but would check up from time to time . . ." |
| 26. | "[J. Villarreal] was required to return to Finland during the week of June 8 to 15, 2019; Saenz refused to accompany him. Saenz was also charged with completing tax returns and paying the quarterly business taxes; he did not." |
| 27. | "…. Upon information and believe, Saenz used most of the $740,000 he took from ZroBlack. Saenz invested around $305,000 into the stock market. Saenz also used around $423,850 in property renovations. As a result of Saenz's refusal to perform his work, on or about June 26, 2019, [J.] Villarreal notified Saenz by text message that he wished to dissolve ZroBlack…." |
| 28. | "…. Soon after ZroBlack entered the PSA with its Foreign Customer, however, [J. Villarreal] and Saenz came to cross purposes over Saenz's lack of performance and misappropriation of company funds." |
| 29. | "After [J. Villarreal] threatened to dissolve ZroBlack, Saenz got [M. Villarreal] further involved. Although an obvious conflict of interest |

| | |
|---|---|
| | existed, [M. Villarreal] and [Gunn Lee] undertook to represent both [J. Villarreal] and Saenz in negotiations to settle their dispute.  One of the main concerns was the $740,000.00 Saenz withdrew from the $1.5 million deposit that ZroBlack's Foreign Customer paid under the PSA. …" |
| 31. | "Because Saenz was married to [J. Villarreal]'s cousin, their falling out because to cause strife in the family.  The Family relationship was very important to [J. Villarreal], and [M. Villarreal] began pressuring [J. Villarreal] that he needed to settle with Saenz by 'thinking about the family.'" |
| 32. | "In about July 2019[, J. Villarreal] and Saenz decided it was time to part ways.  The money that Saenz had stolen from the company was to be returned, on a basis to be structured by [the Gunn Lee Defendants].  Although [M. Villarreal] represented both [J. Villarreal] and Saenz and issued a waiver of conflict letter, no reasonable lawyer could believe that such representation of each client would not be materially affected.  Moreover, [M. Villarreal] did not advise [J. Villarreal] or ZroBlack as to the consequences of what they were doing and structured an agreement that hurt both [J. Villarreal] and ZroBlack." |
| 34. | "Saenz began demanding that the $740,000 he took from ZroBlack be characterized as a 'gift' for tax purposes….  For example, in a text message July 27, 2019, Saenz offered to assign all interest in ZroBlack to [J. Villarreal] if the $740,000 would be characterized as a gift." |
| 35. | "[The Gunn Lee Defendants] eventually prepared a document titled 'Release.'  The Release stated that Saenz would receive as consideration 2% (and ZroBlack 12.5%) of the 14.5% Earn-Out Obligation under the PSA." |
| 36. | "Although the Release assigned all of Saenz's interest in ZroBlack to [J. Villarreal], it made no express provision for the return of $740,000 to ZroBlack.  The Release also contained no express requirement that Saenz return personal property to ZroBlack, which included not only the $740,000 and a laptop computer belonging to ZroBlack, but also ZroBlack's proprietary and trade secret information, as well as ZroBlack's domain name, webpage, and email server.  Although it is ZroBlack's contention that Saenz's assignment of all his interest in ZroBlack nonetheless requires return of the money, the computer and the trade secrets, and the domain name, webpage, and email server, the lack of an express provision in the Release in this regard has necessitated this lawsuit because Saenz has refused to return all of these things." |
| 37. | "[J. Villarreal] and Saenz executed the Release on August 9, 2019.  Section 7 of the Release states that 'Each Party hereto fully releases the other Parties from all claims and demands, known or unknown.' Section 7 goes on to discuss claims that are known and unknown.  It does not address inchoate claims or claims that have not yet accrued." |
| 38. | "[J. Villarreal] and Saenz also executed a Unanimous Written Consent in Lieu of Meeting by ZroBlack's membership (hereinafter, 'Consent'). …  Saenz assigned all his ownership interest to [J. Villarreal], and |

| | |
|---|---|
| | relinquished all claims of any ownership to ZroBlack's property." |
| 39. | "After the deal for Saenz to exit ZroBlack was struck, Saenz refused to return the $740,000. Instead, Saenz continued to want the money … to be construed as a 'gift.' [J. Villarreal] told Saenz that he ([J. Villarreal]) would never agree to qualify the $740,000 Saenz embezzled as a gift. In fact, [J. Villarreal] gave Saenz an ultimatum: return [the] stolen money, or face the harsh consequences. This was the same discussion he had with [the Gunn Lee Defendants]." |
| 40. | "On August 15, 2019, [J. Villarreal] asked Saenz to release ZroBlack's webpage. Saenz said he would 'look into it.' Despite requests for return, Saenz continues to hold the domain name. …" |
| 41. | "[J. Villarreal] asked Saenz to return the laptop computer belonging to ZroBlack. Saenz refused this request also." |
| 42. | "On September 13, 2019, [J. Villarreal] emailed [M. Villarreal] advising him that Saenz had deleted all of [J. Villarreal's] emails. Then, on September 13, 2019, [J. Villarreal] emailed [M. Villarreal] pleading for help. … [M. Villarreal] continued to try to negotiate a resolution between [J. Villarreal] and Saenz." |
| 43. | "On or about September 19, 2019, [J. Villarreal] again emailed Saenz, copying [M. Villarreal] demanding the return of ZroBlack's property, including the laptop containing proprietary code, ZroBlack's web domain and webpage, and ZroBlack's emails. He also demanded return of the $740,000 Saenz misappropriated from ZroBlack. [J. Villarreal] sent a similar email to Saenz and [M. Villarreal] on September 20, 2019, explaining why he believed Saenz should return the $740,000 and other property of ZroBlack." |
| 44. | "On or about September 26, 2019, [M. Villarreal] tried to arrange a meeting between [J. Villarreal] and Saenz to discuss settling their disagreement and offered his offices as a place to have the discussions. [M. Villarreal] gave his available days and stated that 'we are trying to resolved your difference, not attempting to take advantage of each other. I appreciate you both willing to show good faith on both your parts in coming together to see if a resolution can be reached.'" |
| 45. | "Despite promises to appear for a meeting, Saenz kept putting it off with a litany of excuses until [J. Villarreal], fed up, stated he would not be attending a meeting and decided to go in a different direction. As of the filing of the complaint, Saenz has not returned the money he took from ZroBlack, nor has he returned the web domain and webpage, emails, laptop, and proprietary information belonging to ZroBlack. Saenz continues to hold on to ZroBlack's property and refuses to return it, including the ZroBlack laptop containing proprietary information and trade secrets belonging to ZroBlack. Saenz also threatened [J. Villarreal] that he would 'muck up' his life if [J. Villarreal] did not turn over the company and assign it to him. [J. Villarreal] begged Saenz not to do this to him." |
| 46. | "Furthermore, [J. Villarreal] rightfully placed his absolute trust in [the |

|   |   |
|---|---|
|   | Gunn Lee Defendants].  [J. Villarreal] is not an attorney and is not familiar with legal issues. … He trusted and relied on [M. Villarreal] and his firm to guide him and navigate the transaction with Saenz.  At all times relevant and material to this lawsuit, [J. Villarreal] rightfully placed his trust in his lawyer and law firm, just as ZroBlack did with its corporate counsel." |
| 47. | "Unfortunately, [M. Villarreal] has a conflict of interest that he ignored.  He also failed to disclose the extent of his relationship with Saenz to [J. Villarreal]. [M. Villarreal]'s relationship with Saenz was so cozy that [M. Villarreal] was cutting Saenz a discount of the share of fees he charged Saenz, while charging [J. Villarreal] for the full amount of [J. Villarreal]'s share.  [M. Villarreal] continued to pressure [J. Villarreal] to resolve the dispute for 'the sake of the family.'" |
| 48. | "On or about February 22, 2020, [J. Villarreal] attempted to contact Defendant Saenz to collect back the money he had took [sic].  After the parties agreed to sign ZroBlack over to [J. Villarreal], Saenz failed to turn in all company assets to include, money, computers, email servers, website, non-disclosure agreements, company contacts, original documents, and everything else that belonged to ZroBlack." |
| 89. | "At all times material to the events giving rise to his [sic] claim, [M. Villarreal] was an attorney with [Gunn Lee] and represented himself to be backed by the knowledge and expertise of [Gunn Lee].  Any malfeasance or wrongdoing found against [M. Villarreal] was done under the supervision or in conjunction with his role at [Gunn Lee].  His actions are therefore attributable to the firm under both respondeat superior and as an agent of [Gunn Lee]." |
| 90. | "[The Gunn Lee Defendants] owed a formal fiduciary duty to [J. Villarreal] and ZroBlack.  The duty … required the attorney and law firm to put the interest of its clients, [J. Villarreal] and ZroBlack, ahead of itself, or not take on representation of another client that would directly and adversely affect the representation of [J. Villarreal] and ZroBlack.  However … [the Gunn Lee Defendants] not only ignored their professional responsibility and duty to plaintiffs, but negotiated agreements between [J. Villarreal] and Sanez and ZroBlack that put the Plaintiffs in a worse position than they were in prior to the agreements.  The [Gunn Lee Defendants] also ignored the discussions between the members of ZroBlack with respect to qualifying the $740,000 that Saenz wrongfully took from the business." |
| 91. | "To the extent that Saenz claims that his settlement agreement excuses him from any obligation to repay the money he embezzled from ZroBlack, this was fully the fault of [the Gunn Lee Defendants].  Both the attorney and the law firm were clearly aware of Saenz's position with ZroBlack and they knew or should have known about the fiduciary duty that Saenz owed to ZroBlack." |