## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| **JONATHAN VILLAREAL,** §<br>**individually and derivatively on behalf** §<br>**of ZROBLACK, LLC.** §<br> §<br>**Plaintiffs,** §<br> §<br>**v.** §<br> §<br>**JOHN SAENZ, MIGUEL** §<br>**VILLARREAL, JR., and GUNN, LEE,** §<br>**& CAVE, P.C.** §<br> §<br>**Defendants** § | **CIVIL ACTION NO. 5:20-cv-00571-OLG** |

### PLAINTIFFS' RESPONSE TO DEFENDANT JOHN SAENZ'S RULE 12(b)(6) MOTION TO DISMISS

**TO THE HON. ORLANDO GARCIA, UNITED STATES CHIEF DISTRICT JUDGE**:

Plaintiff, JONATHAN VILLAREAL, individually and derivatively on behalf of ZROBLACK, LLC, (collectively the "Plaintiffs"), by and through their undersigned counsel, file this Response to Defendant John Saenz's Rule 12(b)(6) Motion to Dismiss (Doc. 8).

### I. SUMMARY

1.      Defendant John Saenz's Motion should be denied because the Release only releases claims that existed at the time the release was signed, not claims that arose or accrued in the future, and because Defendant Saenz has executory obligations under the Release that he has not fulfilled. The Court should also deny Defendant's Motion because Plaintiffs' have alleged facts on each of their causes of action showing they are entitled to relief.

### II. RULE 12(B)(6) STANDARD

2.      Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint "for failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Motions to

Dismiss are disfavored and will only be appropriate in rare circumstances. *Sosa v. Coleman,* 646 F.2d 991, 993 (5th Cir. 1981). A Rule 12(b)(6) motion "is not a procedure for resolving contests about the facts or the merits of a case." *Askanase v. Fatjo,* 828 F. Supp. 465, 469 (S.D. Tex. 1993); *Mahone v. Addicks Util. Dist. of Harris Cty.*, 836 F.2d 921, 926 (5th Cir. 1988).

3.      "To survive a 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), (cert. denied, 552 U.S. 1182 (2008))). The court must construe the complaint in favor of the plaintiff, taking all facts pleaded as true, no matter how improbable. *In re Katrina Canal*, 495 F.3d at 205. "A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Vander Zee v. Reno*, 73 F. 3d 1365, 1368 (5th Cir. 1996); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Even where a court finds the pleadings insufficient, leave to re-file under Rule 15(a) is preferred, unless it is clear the defects are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Therefore, to the extent this Court may find that any claim is not sufficiently pled under the Federal Rules of Civil Procedure, Plaintiff respectfully requests leave to amend its Complaint.

### III. ARGUMENT & AUTHORITY

**A.  The Release does not bar future claims upon which Plaintiffs' claims are predicated.**

4.      The Fifth Circuit foreclosed this issue of when a release bars future claims. In *Starcraft Co., A Div. of Bangor Punta Operations, Inc. v. C.J. Heck Co. of Tex., Inc.*, the Court construed a release containing the following language:

> The parties hereby mutually release, discharge, and acquit one
> another of any and all claims, demands and causes of action,

> whether or not asserted in the above-referenced litigation, *and whether known or unknown*.

748 F.2d 982, 988 n. 1 (5th Cir. 1984) (emphasis added). The court held that this language did not release claims arising in the future. *Id.* at 988 n. 6 (5th Cir. 1984).[1]

5.      Importantly, the difference between this Release and the cases relied upon by Saenz is in the words—"all claims or demands, known or unknown." The cases cited by Saenz all address releases with language such as "future," "hereafter," or "arising hereafter." For example, *White v. Grinfas*, 809 F.2d 1157 (5th Cir. 1987), quoted by Saenz for the proposition that "settlement agreements and releases are a complete bar to any later action based on matters included therein", dealt with parties who released each other from "any and all claims … or losses … now … *or hereafter*." *Id.*[2] at 1160 (emphasis added). The use of the phrase "or hereafter" indicates the release is to include claims arising in the future. This comports with Texas law that generally a release applies to claims existing when it is executed, but if the parties choose, a release may encompass claims and damages that develop in the future. *Keck, Mehin, & Cate v. Nat'l Union Fire Ins. Company of Pittsburgh*, 20 S.W.3d 692, 698 (Tex. 2000). Furthermore, "a release does not necessarily or automatically include future claims without evidence of such intent." *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990) (discussing application of the defense of mutual mistake to a release).

6.      In *New York Pizzeria, Inc. v. Syal*, also relied upon by Saenz, the release language specifically contemplated future claims:

---

[1] In *Starcraft*—a three-sided dispute between a (1) business (Heck) and it owners, (2) a creditor (Starcraft), and (3) the business' bank—the Court held that a release between the business, its owners, and the creditor did not bar the creditor's claim against the bank under then UCC § 4-302(1) for missing a deadline to return a check. *Starcraft*, 748 F.2d at 989.

[2] Saenz attempts to parse the language of the *Grinfas* release but omits the language cited above.

> NYPI ... hereby irrevocably and unconditionally waives, releases, and forever discharges HEMBREE ... from any and all claims, charges, demands, sums of money, actions, rights, promises, agreements, cause of action [sic], obligations and liabilities of any kind or nature whatsoever, at law or in equity, whether known or unknown, existing or contingent, suspected or unsuspected, foreseen or unforeseen, apparent or concealed ... which NYPI now ***or in the future*** may have or claim to have against HEMBREE."

53 F. Supp. 3d 962, 965 (S.D. Tex. 2014) (emphasis added). Thus, the specific holding in the

*New York Pizzeria* case was "In Texas, 'a valid release *may* encompass unknown claims and

damages that develop in the future.'" *Id.* at 965-966 (quoting *Keck, Mahin & Cate v. Nat'l Union

*Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 698 (Tex. 2000)) (emphasis added).

    7.    Saenz's argument notwithstanding, the Release by its own language reveals it

applies only to claims existing on the date it was signed:



    8.    The first sentence, "Each party hereby fully releases the other Parties from all

claims and demands, known or unknown" frames the claims covered by the release—those claims

that are "known and unknown." The Release is silent as to "future" claims or claims "arising

hereafter" or even claims "arising later." The second sentence waives any statutory limits that

would otherwise apply to "claims that are known … when the release is signed." Finally, the third sentence applies specifically to claims that "are not known at the time [the] release is signed"— limiting the release to unknown claims on the date the release was signed. Thus, the very language of the release limits it to claims known or unknown that exist at the time the release is signed. Again, the Release is silent as to future claims or claims that might arise "hereafter" and further limits released claims to those existing (whether known or unknown) at the time the release is signed.

9.      Additionally, Saenz's argument focuses solely on the language of the Release but ignores the Unanimous Consent and the First Amendment to the Professional Services Agreement with ZroBlack's Foreign Customer. In so doing, Saenz disregards Texas' well-established rules of contract construction. Key among those rules is that documents pertaining to the same transaction may be read together even if they are executed at different times and do not reference each other. Courts may construe all the documents as if they were part of a single, unified instrument. *City of Houston v. Williams*, 353 S.W.3d 128, 137 (Tex. 2011); *In re Laibe Corp.*, 307 S.W.3d 314, 317 (Tex. 2010); *1464-Eight, Ltd. v. Joppich*, 154 S.W.3d 101, 105 n. 1 (Tex. 2004); *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex.2000).[3]

10.     The express provisions of the Unanimous Consent of ZroBlack's members support the conclusion that the Release intended to release only present existing claims:

> RESOLVED, that John Saenz hereby assigns his entire interest in ZroBlack LLC to Jonathan Villarreal pursuant to Article VII of the "Limited Liability Company Operating Agreement for ZroBlack LLC" dated January 14, 2019 and applicable laws; and

---

[3] The rules of contract construction apply to releases. *See URI, Inc. v. Kleberg City*, 543 S.W.3d 755, 763 (Tex. 2018); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 127 (Tex.App.-Houston [14th Dist.] 1997), *aff'd*, 20 S.W.3d 692 (Tex.2000).

11.     Thus, part of the Release, as shown by the Unanimous Consent, required John Saenz to assign all his ownership in ZroBlack to Jonathan Villareal—which includes all personal, real, and intellectual property owned by the ZroBlack. Furthermore, Saenz released any claim he might presently have personal, real, or intellectual property owned by ZroBlack.

12.     The First Amendment to the Professional Services Agreement between ZroBlack and its Foreign Customer also shows the Release only applied to existing claims. The PSA states:

> **WHEREAS**, Service Provider has notified ▮▮▮▮ of its desire to change the ownership and control structure of ZroBlack whereby John Saenz will assign ownership of ZroBlack entirely to Jonathan Villareal who shall become the sole owner and director.

> 2.     As of the Effective Date, ▮▮▮▮ releases John Saenz of any further performance for the delivery of the Deliverables and provision of the Services pursuant to the Professional Services Agreement, except for sections 7 and 9 of the Professional Services Agreement, which shall survive any termination and/or amendment in accordance with their respective terms.

13.     After acknowledging that Saenz is transferring all his ownership interest in ZroBlack to Villarreal, Plaintiff's Foreign Customer released Saenz from all obligations under the PSA except for those obligations under Sections 7 and 9 thereof, to wit, the obligation to not use or disclose the Foreign Customer's trade secrets, which are defined to include those licensed from ZroBlack, and that are in Saenz's possession. *See* Exhibit 17 to the Complaint. Contrary to Defendant's argument, Saenz's return of ZroBlack's property, including the trade secrets, is contemplated by the Release. Had the parties intended for Saenz to retain any rights in these trade secrets separate from ZroBlack, they would have provided differently in the First Amendment to the PSA. To the contrary, Saenz obligates himself to not use or disclose these items; the polar opposite of an indication of any right of possession or ownership by Saenz.

14.     Finally, courts must give effect to a contract's clear terms as they are written. *Sacks v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) ("An unambiguous contract will be enforced as written

. . ."); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) ("When construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent."); *see also Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980). The court must examine the entire writing to harmonize and give effect to all the provisions of the contract so that none are rendered meaningless. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 158 (Tex. 1951). All provisions must be considered with reference to the whole instrument and no single provision will be given controlling effect. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

15.     By holding that the release extinguished Plaintiffs' claims for return of the laptop, domain name and webpage, proprietary computer code, and the money taken from ZroBlack, the assignment in the Unanimous Consent is rendered meaningless, as are the confidentiality provisions contained in the 1st Amendment to the PSA. Saenz's argument that the release bars all claims for the return of ZroBlack's property cannot be harmonized with these two provisions. Because these provisions would be rendered meaningless and cannot be harmonized with Saenz's construction of the Release, Defendant's argument fail.

**B.  The Release imposed executory obligations on Saenz, including assignment of his interest in ZroBlack to Jonathan Villarreal; thus, the claim for failure to return ZroBlack's property had not accrued at the time the Release was signed.**

16.     A "cause of action does not exist until facts exist that authorize a person asserting the claim to seek relief in a court of competent jurisdiction." *Aviall Services, Inc. v. Cooper Indus., LLC*, 694 F. Supp. 2d 567, 576–77 (N.D. Tex. 2010). On the date the release was signed, Saenz had executory obligations—to wit, assignment of his ownership interest in ZroBlack to Jonathan. The Unanimous Consent executed on the same date as the Release fulfilled that obligation but carried with it the obligation to return any property owned by ZroBlack. After all, assignation of

ownership of ZroBlack is assignation ZroBlack's ownership of property. As shown by sec. 6 of the Release, the duty to assign property to ZroBlack doesn't arise until the Release is executed:

> **6.   Assignment**
>
> The Individuals will execute the Unanimous Written Consent in Lieu of Meeting of the Members of ZroBlack LLC attached as **Exhibit A**.

17.     It states the parties "will" execute the Unanimous Consent. Thus, execution of the Unanimous Consent is an executory obligation under the terms of the Release. A claim for failure to return that property cannot arise prior to the Release being signed. It can only arise after Saenz obligates himself to assign his ownership interest in ZroBlack to Jonathan and fails or refuses to do so. Claims for return of the property did not exist prior to execution of the Release and were not within the scope of claims released. See *Starcraft*, 748 F.2d at 988 n. 6 (5th Cir. 1984) ("although the release discharged all claims whether known or unknown, it did not purport to release claims that might arise in the future"). Therefore, execution of the Unanimous Consent and return of all ownership interest in ZroBlack and all property owned by ZroBlack is not within the scope of the claims released.

**C.  The Release is Void or Voidable**.

18.     Saenz cites *Wright v. Sydow*, 173 S.W.3d 534, 549 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) is support of his argument that a violation of the Disciplinary Rules does not void a release contracted for outside the attorney-client relationship. However, as pleaded by Plaintiffs, the Release was not contracted for outside of the attorney-client relationship. Defendants Gunn, Lee, & Cave, P.C. and Miguel Villarreal, Jr. represented <u>all</u> the parties—Saenz, Jonathan Villarreal, and ZroBlack—in the negotiation and execution of the Release. *Wright* involved a

violation of DRPC § 1.08(g) pertaining to a lawyer making a contract with a client limiting the lawyers' liability to the client. Those facts do not exist here. As cited in Plaintiffs' Complaint, ¶ 112, courts can and do set aside settlement agreements when an attorney violates the Rules of Disciplinary Conduct. *Quintero v. Jim Walter Homes, Inc.*, 709 S.W.2d 225 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.). Plaintiffs' allegations regarding Gunn, Lee, & Cave, P.C. and Villarreal, Jr. support setting aside the Release.

19.     Saenz's argument that the Release should not be set aside because of mutual mistake also fails. He argues that Plaintiffs' subjective belief is not a basis for mutual mistake. While correct as to subjective intent, the Texas Supreme Court, in *Williams v. Glash*, 789 S.W.2d 261 (Tex. 1990), further stated:

> … whether the parties to a release intended to cover an unknown injury cannot always be determined exclusively by reference to the language of the release itself. It may require consideration of the conduct of the parties and the information available to them at the time of signing. In a subsequent suit for an unknown injury, once the affirmative defense of release has been pleaded and proved, the burden of proof is on the party seeking to avoid the release to establish mutual mistake. The question of mutual mistake is determined not by self-serving subjective statements of the parties' intent, which would necessitate trial to a jury in all such cases, but rather solely by objective circumstances surrounding execution of the release, such as the knowledge of the parties at the time of signing concerning the injury, the amount of consideration paid, the extent of negotiations and discussions as to personal injuries, and the haste or lack thereof in obtaining the release.

*Id*. at 264. ZroBlack pleaded facts, not just subjective belief, supporting their claim that the Release should be set aside for mutual mistake. The objective evidence attached to the Complaint shows the parties had different understandings of the effect of the Release, as shown by ZroBlack's repeated requests for return of the money, laptop, trade secrets, and domain name. It is further shown by the Release section titled "Compensation" describing the consideration for the

Release—not including the $750,000—and the terms of the PSA. Because a Rule 12(b)(6) motion "is not a procedure for resolving contests about the facts or the merits of a case" *Askanase*, 828 F. Supp. at 469, the issue of mutual mistake cannot be decided here.

**D. Plaintiffs state causes of action for violation of the DTSA and TUTSA because Saenz acquired the trade secrets unlawfully**.

20.     Saenz contends that Plaintiffs failed to state a claim upon which relief can be granted on their DTSA cause of action because they have not alleged Saenz acquired the trade secrets by "theft, bribery, misrepresentation, breach or inducement of breach of a duty to maintain secrecy, or espionage through electronic or other means." Mtn. to Dismiss, p. 11 (Doc. 8). Saenz further contends that Plaintiffs' pleadings show he acquired the trade secrets lawfully.

21.     A person commits theft if "he unlawfully appropriates property with intent to deprive the owner of the property." TEX. PEN. CODE ANN. § 31.03(a). Furthermore, appropriation is unlawful if "it is without the owner's effective consent". TEX. PEN. CODE ANN. § 31.03(b)(1). Deprive means "to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner". TEX. PEN. CODE ANN. § 31.01(2)(A). "Appropriate," in the Penal Code, means "to acquire or otherwise exercise control over property other than real property". TEX. PEN. CODE ANN. § 31.01(4)(B).

22.     Plaintiffs pleaded that after Saenz parted ways with ZroBlack he refused requests to return the laptop and code, and that his continued possession was unauthorized. Compl. § 58. These pleadings sufficiently state a claim for theft under the Texas Penal Code and sufficient to state a claim under the DTSA and TUTSA for trade secret misappropriation.

23.     Thus, Saenz's argument that he acquired the trade secrets by lawful means while still CEO and a member of ZroBlack is without merit. Once he left ZroBlack and was no longer CEO, he had no legal right to retain the trade secrets. *See Complete Logistical Services, LLC v.*

*Rulh*, 350 F. Supp. 3d 512, 520 (E.D. La. 2018). By refusing to return them, Saenz misappropriated them within the meaning of the Texas Penal Code and, hence, the DTSA and TUTSA.

**E. Plaintiffs state a cause of action for violation of the CFAA because Saenz's authorization to access the laptop and domain were automatically revoked upon execution of the Release.**

24.     Saenz contends that the allegations regarding the deletion of ZroBlack's webpage and email server are not actionable under the CFAA because they have nothing to do with unauthorized access to a specific computer. He also contends that the Complaint does not allege how access was revoked, who revoked Saenz's right of access, and who had the right to revoke his access. He is wrong on both counts.

a)      *The CFAA will support a claim where a web-based account was accessed without authorization or where authorization was exceeded*.

25.     Courts have held that under the CFAA's broad language that access to web-based accounts can form the basis of a CFAA violation, even if the defendant had permission to use the physical computer in question. *Hill v. Lynn*, No. 17-C-06318, 2018 WL 2933636, at *3 (N.D. Ill June 12, 2018) (unauthorized/exceeded authorization to access to GitHib account supported CFAA claim);[4] *Estes Forwarding Worldwide LLC v. Cuellar*, 239 F. Supp.3d 918, 921, 926-27 (E.D. Va. 2017) (plaintiff sufficiently pled access to a "protected computer" when it alleged that defendant accessed a confidential Google Drive).[5]

---

[4] Citing *Brown Jordan Int'l, Inc. v. Carmicle*, 2016 WL 815827, at *3, *40-41 (S.D. Fla. Mar. 2, 2016) (liability when defendant accessed fellow employees' email through a web portal from his personal iPad) and *Hedgeye Risk Mgmt., LLC v. Heldman*, 2017 WL 4250506, at *7 (D.D.C. Sept. 23, 2017) (plaintiff pled access to a "protected computer" by alleging defendant accessed electronically stored emails and documents via computer connected to the internet).
5 Additionally, a court in this district allowed a CFAA claim to proceed (with amendment) where the allegations involved access to an Apple iCloud account—without questioning whether unauthorized access to a web-based account could support a violation of the CFAA. *Hovanec v. Miller*, No. SA-17-CV-766-XR, 2018 WL 1221486 (W.D. Tex. March 7, 2018).

26.     The *Estes* case is on point. Cuellar, an Estes employee, created a Google Drive account for Estes. He performed that work in the course and scope of his employment. Cuellar later quit his job and went to work for a competitor. He accessed the Google account, downloaded all the data, and then erased the data. In defending against a CFAA claim, he argued that he could not violate the CFAA because he created the account; he also argued that Google, not Estes, owned the account. The *Estes* court rejected both arguments. *Estes*, 239 F. Supp. 3d at 924.

27.     Saenz's circumstances are no different. He created the GoDaddy account in the course and scope of his work for ZroBlack, and to further ZroBlack's business. Like Cuellar in *Estes*, Saenz took data or deleted data from the account.

b)      *Where employment is ended, authorization is ended.*

28.     Plaintiffs pleaded that Saenz and Villarreal agreed to do business together and to form ZroBlack. Compl. ¶¶ 12, 14. Plaintiffs pleaded Saenz was CEO and his duties included client engagement and company promotion. Compl. ¶¶ 12, 14. Thus, Plaintiffs' pleading establishes the scope of Saenz's duties as CEO (though those weren't his only duties at CEO).

29.     Plaintiff also pleaded that Saenz purchased the "zroblack.com" domain name from GoDaddy and set up the ZroBlack web page and email server. Plaintiffs further pleaded that when ZroBlack requested return of the laptop, trade secrets, and GoDaddy domain, Saenz (1) accessed ZroBlack's GoDaddy account without authorization or exceeded his authorized access and deleted ZroBlack's webpage and email server and (2) accessed the ZroBlack laptop without authorization and misappropriated ZroBlack's trade secrets. Compl. ¶¶ 13, 40, 41, 64, 65.

30.     "[A]n employee is authorized to access a computer when his employer approves or sanctions his admission to that computer." *Id.* at 926-27 (citing *WEC Carolina Energy Sols., LLC*, 687 F.3d 199, 204 (4th Cir. 2012)). "Therefore, 'he accesses a computer 'without authorization'

when he gains admission to a computer without approval.'" *Id.* (citing *WEC Carolina Energy Sols., LLC*, 687 F.3d 199, 204 (4th Cir. 2012) (citing *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009)). Here, ZroBlack sanctioned Saenz's access to the computer and GoDaddy account so that he could carry out his duties as CEO—client engagement and company promotion. When he was no longer CEO and a member of ZroBlack those duties ended; thus, he was no longer approved to access the computer or GoDaddy account.

31.     In *U.S. v. John*, the Fifth Circuit held authorization "may encompass limits placed on the use of information obtained by permitted access ... when the user knows or reasonably should know that he or she is not authorized to access a computer and information obtainable from that access in furtherance of or to perpetrate a crime." 477 F.3d 263, 271 (5th Cir. 2010).

32.     Texas federal courts have followed this rule in civil disputes. *Absolute Energy Solutions, LLC v. Trosclair*, No. H-13-3358, 2014 WL 360503 (S.D. Tex. Feb. 3, 2014) is a good example and has facts similar to this case. In *Trosclair*, the plaintiff owned an oilfield services and consulting business. The defendant was employed by the business but was terminated. The plaintiff alleged that upon termination, defendant's authorization to access plaintiff's computer systems was revoked. The plaintiff alleged that the defendant accessed plaintiff's computer systems without authorization and received and forwarded emails belonging to plaintiff and engaged in a directly competing business endeavor using plaintiff's computer systems. *Id.* at *1. The defendant countered that the plaintiff failed to state a CFAA claim because his access to the plaintiff's computer and email system was authorized even after his termination, and the plaintiff did not promulgate guidelines that prohibited employees from emailing plaintiff's documents to other personal computers, that access was authorized because even after termination the defendant employee retained an ownership interest in the business and had a right to access its emails, and

finally that the defendant employee had no reason to believe that he was not authorized to continue using plaintiff's email system and that the plaintiff could have deactivated the email account but did nothing. *Id.* at *2. The district court rejected all these arguments, stating that plaintiff had plausibly alleged a violation of the CFAA.[6]

33.     Even if Saenz were authorized to access the GoDaddy account after he parted ways with ZroBlack and ceased to be CEO, his deletion of the webpage and email server clearly exceeded his authorized access—his authorization was defined by the scope of his duties—client engagement and company promotion. Deleting a webpage and email server he created for those purposes runs counter to the scope of his authority. As noted by the Fifth Circuit in *U.S. v. Phillips*, "[c]ourts have … typically analyzed the scope of a user' authorization to access a protected computer on the basis of the expected norms of intended use or the nature of the relationship established between the computer owner and user. 597 F.3d at 271. Applying that rationale here, on the facts pleaded, Saenz exceeded his authorized access by accessing the GoDaddy account and deleting the webpage and email server. Thus, Plaintiffs have stated a claim upon which relief can be granted. Saenz's motion to dismiss should be denied.

**F.  Plaintiffs state a cause of action for violation of the ACPA because use of ZroBlack's domain is the same as using an identical or confusingly similar name under the ACPA.**

34.     The ACPA provides a civil remedy for the owner of a trademark if a person has a bad faith intent to profit from that mark and registers, traffics in, or uses a domain name that at the time of registration of the domain name is identical or confusingly similar to or dilutive of the trademark. Nothing in the language of the ACPA suggests that hijacking an original domain name

---

[6] The court also held that defendant was attacking the factual underpinning of plaintiff's claim, specifically, whether defendant was authorized to access plaintiff's email system after termination, which could not be decided on a motion to dismiss. *Id.* at *3.

does not fall within its scope, or that bad faith intent must exist at the time of registration, as Saenz contends. Instead, his argument grafts onto the ACPA requirements contrary to its plain meaning. Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). As ably stated by Chief Justice Marshal two-hundred years ago, "[T]he intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words there is no room for construction. The case must be a strong one indeed, which would justify a court in departing from the plain meaning of words ... in search of an intention which the words themselves did not suggest." *United States v. Wiltberger*, 5 Wheat. 76, 95–96, 5 L.Ed. 37 (1820). Saenz's argument is precisely that—a search for legislative intent that does not exist.

35.    Saenz's parting shot, that Plaintiffs' pleading of bad faith in ¶ 69 is conclusory and is without merit. Plaintiffs alleged that he intended to divert customers to himself, and further, that he tried to sell the domain back to ZroBlack. The Fifth Circuit has already determined that intent to sell a domain name to the rightful owner of a mark is a bad faith attempt to profit from the registration. *E. & H. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 275-276 (5th Cir. 2002) (citing *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1325 (9th CIR. 1998)).

**G.  Plaintiffs state a cause of action for breach of contract because Saenz had an obligation to return ZroBlack's property after the release was signed**.

36.    Saenz argues that because Plaintiffs admit the Release does not have an express provision requiring the return of ZoBlack's return property to ZroBlack, including domain name, webpage, and email server, it has failed to state a claim upon which relief can be granted. Mtn. to Dismiss, p. 13-14 (Doc. 8). Simply because the Release may not expressly provide for the return

of property, however, does not mean he is not required to return the property. To pass title to property, a release must expressly state title is to be passed to a released party.

37.     As argued extensively in paragraphs III.A and III.B above, assignment of Saenz's "entire interest" in ZroBlack to Jonathan carried with it any claim to owning any of ZroBlack's personal property—including the laptop computer, domain name, webpage, email server, and trade secrets. Plaintiffs pleaded that they demanded return of the property and Saenz refused. This is enough to state a claim for breach of contract.

**H. Plaintiffs state a cause of action for breach of fiduciary duty because the claim did not accrue until after the execution of the Release**.

38.     Under Texas law, a "cause of action does not exist until facts exist that authorize a person asserting the claim to seek relief in a court of competent jurisdiction." *Aviall Services, Inc. v. Cooper Indus., LLC*, 694 F. Supp. 2d 567, 576–77 (N.D. Tex. 2010) (citing *W.K. v. M.H.K.*, 719 S.W.2d 232, 236 (Tex. Civ. App.—Houston [14th Dist] 1986, writ ref'd n.r.e.)). Plaintiffs alleged that Saenz held ZroBlack's domain name on behalf of ZroBlack, and that so long as he did not act against ZroBlack's interests while holding the domain name, he was not in breach of his fiduciary duties. As CEO Saenz owed a duty to ZroBlack not to act against its interests. *General Dynamic v. Torres*, 915 S.W.2d 45, 49 (Tex. App.—El Paso 1995, writ denied) (duty of loyalty); see also *General Dynamic v. Torres*, 915 S.W.2d 45, 49 (Tex. App.—El Paso 1995, writ denied) (corporate officers owe fiduciary duties). His obligation not to act against the company's best interest did not cease to exist upon the signing of the release. Rather, per the terms of the Unanimous Consent, he had an obligation to return ZroBlack's property. Instead, he destroyed it, acting against the company's best interests. Because he destroyed that property after execution of the Release, and because he refused to return other property, the cause of action accrued at that time, not prior to execution of the Release.

**I.  Plaintiffs state a claim for tortious interference**.

39.   Saenz argues here that Plaintiffs were required to allege facts supporting a reasonable probability that that the plaintiff would have entered into a business relationship but for defendant's conduct, and that instead Plaintiffs offered only a conclusory speculation.

40.   Defendant is in error, however, because "it need not be absolutely certain that the prospective contract would have been made were it not for such interference" *Verkin v. Melroy*, 699 F.2d 729, 732 (5th Cir. 1983).  Furthermore, Plaintiffs alleged facts supporting their claim, including that Saenz knew withholding of the website and email server would interfere with ZroBlack's prospective clients and knew that his actions were certain or substantially likely to cause interference. Compl. ¶ 94. Plaintiffs also pleaded that Saenz withheld the laptop containing login information for the domain, and destroyed emails and documents pertaining to ZroBlack's business and that ZroBlack needed to fulfill existing contractual obligations. Compl. ¶¶ 95, 96. This is not conclusory and is enough to state a claim for tortious interference.

**J.  Plaintiffs have stated a cause of action for conversion**.

41.   Saenz contends that Plaintiffs' Complaint fails to identify any damages stemming from Saenz's alleged conversion of the laptop, and that no alleged facts support the essential element of damages. Mtn. to Dismiss, p.16. Plaintiffs pleaded that Saenz purchased the laptop as part of his duties as CEO and using ZroBlack's debit card, that ZroBlack owned a laptop, that Saenz refused to return it and exercised dominion and control over the laptop to the exclusion of ZroBlack. Compl. ¶¶ 17, 39, 40. 41. 42, 43, 100. Attached to the Complaint as Exhibit 5 is the receipt for the purchase of the laptop using ZroBlack's debit card, along with the corresponding

bank statements showing the charge. In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Under Texas law, a plaintiff can seek damages equal to the value of the property converted, or have the property returned and recover damages for loss of use during the property's detention. *Winkle Chevy-Olds-Pontiac, Inc. v. Condon*, 830 S.W.2d 740, 746 (Tex. App.—Corpus Christi 1992, writ dism'd.); *see also United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147-48 (Tex. 1997) (damages for conversion is fair market value of the property). Exhibit 15 shows the value of the property. Additionally, Plaintiffs pleaded that Saenz detained the property, refused to return it, and that Plaintiff's lost use of the property because they could not access the domain hosting the webpage and email server.

**K. Plaintiffs state a cause of action for civil theft under the TTLA because the receipt for purchase of the laptop is proof of damages**.

42.     As above, so below. Saenz contends that Plaintiffs did not properly plead damages to support its TTLA claim. Mtn. to Dismiss, pp.16-17. Actual damages in the context of a TTLA claim mean those recoverable at common law. *In re TXCO Resources, Inc.*, 475 B.R. 781, 834 (Bankr. W.D. Tex. 2012) (citing *Beaumont v. Basham*, 205 S.W.3d 608, 619 (Tex. App.—Waco 2006, pet. denied)). Under the common law theory of conversion, damages are generally the market value of the property at the time of the conversion. *Id.* (*citing Soto v. Sea–Road Int'l, Inc.*, 942 S.W.2d 67, 74 (Tex. App.—Corpus Christi 1997, writ denied)). Thus, this argument fails for the same reason it fails for Plaintiffs' conversion claim.

**L. Plaintiffs' request for seizure and/or injunction relief does not fail because Plaintiffs showed (a) that relief per Rule 65 would be inadequate, (b) Plaintiffs did include the Rule 65(b)(1)(B) certification, (c) Plaintiffs did show irreparable harm, and (d) Plaintiffs showed a likelihood of success on the merits**.

a)   *Plaintiffs showed that relief per Rule 65 would be inadequate*.

43.     Saenz first argues that Plaintiffs have failed to show that an order pursuant to Rule 65 would be inadequate. They contend that if copying were all that was required for civil seizure than any electronic data of any kind would be subject to seizure. Mtn. to Dismiss, p. 17. They cite no case law. Plaintiffs, however, ***do*** cite case law supporting that very proposition. *Blue Star land Services v. Coleman*, No. CIV-17-931C, 2017 WL 11309528, *1 (W.D. Okla., August 31, 2017). In *Blue Star*, the plaintiff alleged that defendants downloaded trade secrets before leaving their employment and started a competing business. In its seizure order, the court specifically noted "Defendants could easily copy the information onto another computer or other storage media without the knowledge of Plaintiff or the Court." The court further stated, "Defendants' prior actions demonstrate a willingness to evade or ignore the law." Here, Saenz has demonstrated a similar disregard for the law by deleting ZroBlack's webpage and email server. Thus, Plaintiffs have shown that Rule 65 relief is inadequate.

b)   *Plaintiffs included the Rule 65(b)(1)(B) certification*.

44.     Plaintiffs' Rule 65(b)(1) certification is found in ¶ 79 of the Application for Seizure, Temporary Restraining Order, and Temporary Injunction. It is supported by the affidavit of Jonathan Villarreal which sets out the facts also set forth in the Application, which "clearly show that immediate and irreparable injury, loss, or damages will result to the movant before the adverse party can be heard in opposition. Furthermore, ¶ 79 states the reasons why notice should not be required, namely the risk that Saenz will copy or destroy the trade secrets on the laptop computer.

Plaintiffs' also contend that counsel's signature to the Complaint is enough to "certify" within the meaning of Rule 65.

    c)    *Plaintiffs showed irreparable harm*.

    45.    Plaintiffs have alleged and shown that Saenz is in possession of trade secrets and in a position to use them. As explained in Plaintiffs' Application, Defendants' prior actions demonstrate a willingness to evade or ignore the law. *Daniel Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013). State law determines whether harm is irreparable. *Heil Trailer Intern. Co. v. Kula*, 542 Fed. Appx. 329, 336 (5th Cir. 2013). When a defendant is in possession of trade secrets and in a position to use them, state courts have presumed irreparable harm will result absent injunctive relief. *Id*. As observed by the Fifth Circuit in *Heil Trailer*, Texas courts have frequently found irreparable harm in such cases, further noting that the Fifth Circuit itself had upheld similar findings by federal district courts. *Id*. at 336 (and cases cited therein). Because Plaintiffs have shown that Saenz has previously destroyed ZroBlack's data and is in possession of ZroBlack's trade secrets, Plaintiffs have demonstrated irreparable harm.

    d)    *Plaintiffs showed a likelihood of success on the merits*.

    46.    Saenz appears to contend that his prior arguments in his Motion to Dismiss show Plaintiffs have not demonstrated likelihood of success on the merits. Plaintiffs respectfully disagree, citing to their arguments in response, above. Furthermore, Plaintiffs extensively briefed likelihood of success on the merits in their Application, breaking down the elements of each claim for trade secret misappropriation, violation of the Computer Fraud and Abuse Act, Anti-Cybersquatting Consumer Protection Act, with citation to documentary evidence provided in support. Plaintiffs need only present a prima facie case to show likelihood of success on the merits. *Janvey v. Alguire*, 647 F.3d 585, 505-596 (5th Cir. 2011). Plaintiff has done so.

### IV. CONCLUSION AND PRAYER

47.     Based on the foregoing argument, Plaintiffs respectfully ask the Court to deny Defendant Saenz's Motion in its entirety. Should the Court conclude any of Defendant's arguments have merit, Plaintiffs respectfully request leave to amend their pleading. Plaintiffs further pray for all such other relief to which they may show themselves justly entitled at law or in equity.

Respectfully submitted,

THE VETHAN LAW FIRM, PC

By: /s/ *Joseph L. Lanza*

Charles M. R. Vethan
Attorney-in-Charge
Texas Bar No.  00791852
Steven A. Costello
Texas Bar No. 24062677
VETHAN LAW FIRM - HOUSTON
Two Memorial City Plaza
820 Gessner, Suite 1510
Houston, Texas 77024
Tel: (713) 526-2222
Fax: (713) 526-2230
Email: edocs@vwtexlaw.com


Joseph L. Lanza
Texas bar No. 00784447
VETHAN LAW FIRM – SAN ANTONIO
11459 Huebner, Suite 101
San Antonio, Texas 78230
Tel: (210) 824-2220
Fax: (713) 526-2230
Email: edocs@vwtexlaw.com

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed with the Court on the 14th day of July 2020, and electronically served on the date reflected in the ECF system upon all parties registered to receive notice pursuant to the Court's CM/ECF system.

David A. Vanderhinder
State bar No. 24070787
DVanderhinder@dykema.com
Ryan J. Sullivan
State Bar No. 24102548
RSullivan@dykema.com
DYKEMA GOSSETT PLLC
112 East Pecan St., Suite 1800
San Antonio, Texas 78205

**Attorney for Defendant John Saenz**

George R. Spencer, Jr.
State Bar. No. 18921001
gspencer@langleybanack.com
Natalie F. Wilson
State Bar. No. 24067769
nwilson@langleybanack.com

**Attorneys for Defendants Gunn, Lee & Cave, P.C.
And Miguel Villarreal, Jr.**

/s/ *Joseph L. Lanza*

Joseph L. Lanza