## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JONATHAN VILLAREAL, | § | |
| individually and derivatively on behalf of | § | |
| ZROBLACK LLC, | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | No. 5:20-CV-00571-OG |
| | § | |
| JOHN SAENZ; MIGUEL VILLAREAL, | § | |
| JR.; and GUNN, LEE & CAVE, P.C., | § | |
|    Defendants. | § | |

### DEFENDANT JOHN SAENZ'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS

Defendant John Saenz ("Saenz"), through his undersigned counsel, hereby submits this Reply in Support of His Motion to Dismiss Plaintiff's Original Complaint (the "Complaint") and Plaintiff's Application for Seizure, Temporary Restraining Order, Preliminary Injunction, and Permanent Injunctive Relief (the "Application"). In support thereof, Saenz states as follows.

### INTRODUCTION

Plaintiff's Response to Saenz's Rule 12(b)(6) Motion to Dismiss ("Response") (ECF No. 12) fails to address Saenz's primary argument that the Release bars the Complaint because the bases of the present dispute arose before Plaintiff and ZroBlack released all claims against Saenz. Moreover, the Response fails to explain why this Court should re-write the clearly written expression of the parties' intent to release each other from *all claims and demands, known or unknown*. Finally, the Response fails to state any facts or arguments sufficient to set aside the Release due to an alleged mutual mistake or an alleged violation of a disciplinary rule by co-defendants.

## ARGUMENT

### I.   THE RESPONSE FAILS TO ADDRESS THE RELEASE'S APPLICATION TO "KNOWN" CLAIMS.

Although Plaintiff devoted considerable effort to arguing that the Release does not bar claims arising in the *future*, Plaintiff did not address or dispute Saenz's principal argument that Plaintiff had actual knowledge of the factual bases for his claims prior to Plaintiff releasing all claims against Saenz on August 9, 2019.  *See* Release (ECF No. 2-15); Mot. (ECF No. 8) at §§ II.

Specifically, Plaintiff does not dispute that all of his claims against Saenz are based on three alleged actions: (1) Saenz refuses to return a distribution of $740,000, (2) Saenz possesses a laptop that is allegedly the property of ZroBlack, and (3) Saenz allegedly maintains access to and/or control of ZroBlack's online information, *e.g.*, domain name.  Mot. (ECF No. 8) at § II.

The declaration and text messages that Plaintiff filed with this Court clearly show that Plaintiff and Saenz argued about the $740,000 distribution to Saenz in July 2019—before Plaintiff signed the Release:

> After I [Plaintiff] threatened to dissolve the partnership, Saenz got Mike involved further. Mike and the Gunn Lee law firm undertook to represent both me and Saenz in negotiations **to settle our dispute**. One of my **main concerns was the $740,000** John Saenz withdrew from the $1.5 million paid to ZroBlack. Those monies were paid in advance, and ZroBlacks customer expected ZroBlack, Saenz, and I to perform under the contract, but Saenz refused to perform his obligations to ZroBlack and its customer. Furthermore, Saenz would not agree to take steps to ensure his performance, despite being told by Mike during a meeting in Mikes office **in July 2019** that he (Saenz) had **breached his fiduciary duty** to the company.

*See* Decl. of J. Villareal (ECF No. 2-1) at ¶¶21–25, 28 (emphasis added).[1]

---

[1] It is worth noting that Plaintiff's evidence also confirms that Plaintiff withdrew $740,000 for himself the same day that ZroBlack received payment of $1.5 million from its Foreign Customer, whereas Saenz did not completely withdraw his $740,000 until three days after the funds were received.  *See* Wells Fargo Account Summary (ECF No. 2-8), at p. 2 (evidencing ZroBlack's receipt of the funds, Plaintiff's in-person transfer of $740,000 to himself, and Saenz's transfers of $50,000, $60,000, and $630,000).

As discussed in the Motion (ECF No. 8), Plaintiff also knew since at least May 2, 2019 that Saenz purchased the laptop at issue and maintained its possession. *See* May 2, 2019 email from J. Saenz (ECF No. 2-5) at pp. 1–6. Plaintiff further knew that the laptop allegedly contains "trade secrets." Villareal Decl. at ¶¶9, 10. Similarly, Plaintiff knew that Saenz had access to ZroBlack's domain since January 2019. Villareal Decl. at ¶4. Finally, Plaintiff also knew Saenz was no longer a member of ZroBlack as of the date of the Release.  *See* Unanimous Written Consent (ECF No. 2-16) (assignment of Saenz's interest in ZroBlack to Plaintiff); Resp. at ¶16 ("The Unanimous Consent [was] executed on the same date as the Release.").

Though Plaintiff concedes that the Release applies "to claims existing on the date it was signed," Resp. at ¶7, the Response fails to: (1) address the timing or substance of any of these facts made the bases of Plaintiff's Complaint and Application, and (2) explain why the subsequent Release should not bar Plaintiff's claims. Instead, Plaintiff correctly points out that the Release "made no express provision for the return of the $740,000 to ZroBlack, . . . no express requirement that Saenz return property to ZroBlack, . . . [and] did not have an express provision requiring the return of ZroBlack's domain name, webpage, and email server." Villareal Decl. at ¶27.

Furthermore, even if the Court were to find that Plaintiff's claims against Saenz were not "known" when the parties signed the Release, the Release would still bar Plaintiff's claims because it covers "all claims and demands, known or unknown," between the parties. Release at §7.  Plaintiff does not dispute that "a general release that is not limited to a specific cause of action or occurrence, and broadly releases all claims and causes of action between two parties, is valid and enforceable."  *Southmark Corp. v. FDIC*, No. 96-11578, 1998 U.S. App. LEXIS 40474, at *11 (5th Cir. Apr. 20, 1998). Further, Plaintiff does not contest that "[p]ublic policy favors voluntary

settlement of claims and enforcement of releases." *Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 373 (5th Cir. 2002).

Therefore, even assuming that the factual allegations in the Complaint and Application are taken as true, Plaintiff is not entitled to any relief for two independent reasons: (1) Plaintiff is seeking relief from this Court based on known claims that were subject to the subsequent Release, and (2) the subsequent Release broadly bars all claims and demands, known and unknown. Plaintiff's claims against Saenz should be dismissed with prejudice.

## II.    PLAINTIFF INVITES THE COURT TO RE-WRITE THE RELEASE'S CLEAR TERMS.

Faced with the fact that Plaintiff's claims were known at the time of the Release and are subject to the Release in any event, Plaintiff next argues that "Saenz's return of ZroBlack's property, including the trade secrets, is contemplated by the Release." Resp. at ¶¶11, 13. Plaintiff also argues that Saenz released any claims Saenz may have to property owned by ZroBlack, which of course assumes that the Release is valid. *Id.* But Plaintiff fails to cite any language from the Release that discusses ZroBlack's property or requires Saenz to return any property to ZroBlack (after admitting that the Release contains no such requirement). The Response also fails to explain why the Court should read an obligation regarding the return of property into the Release where the parties chose not to include such language.

## III.   THE UNANIMOUS CONSENT AND THE AMENDED PSA HAVE NOTHING TO DO WITH THE SCOPE OF THE RELEASE OR THE CLAIMS FOR RETURN OF PROPERTY.

Plaintiff next contends Saenz had a duty under other documents to return property to ZroBlack. Specifically, Plaintiff argues that: (1) Saenz had "executory obligations" because the Release, through the Unanimous Consent, required Saenz to assign all property owned by ZroBlack, (2) Saenz's return of ZroBlack's property is contemplated by the Release because, under the First Amended Professional Services Agreement ("Amended PSA"), Saenz is prohibited from

using or disclosing a Foreign Customer's trade secrets, and (3) because of the foregoing, claims

for return of ZroBlack's property did not exist prior to execution of the Release.  Resp. at ¶¶9-17.

The parties do not dispute that Plaintiff and Saenz signed the Unanimous Consent and that

Saenz thereby fulfilled his obligation to assign his interest in ZroBlack to Plaintiff, nor do the parties

dispute that Saenz signed the Amended PSA. Villareal Decl. at ¶¶29–30; Resp. at ¶16. Neither the

Unanimous Consent nor the Amended PSA, however, require Saenz to return anything to ZroBlack

or Plaintiff, much less any money or property.  The Unanimous Consent is a one-page document

that exists solely to memorialize Saenz's assignment of his interest in ZroBlack to Plaintiff.  *See*

Unanimous Written Consent (ECF No. 2-16).   The Unanimous Consent does not mention the

Release, does not include the terms "release" or "property" or "return" anywhere in the document,

and does not impart any obligations on Saenz, future or otherwise.  *Id.*  The notion that the Unanimous

Consent somehow required Saenz to assign any property to ZroBlack after the date of the Release[2]

is contrary to the plain language of the document.   The Court should not accept Plaintiff's

invitation to add an obligation that does not exist to the terms of the Unanimous Consent. *See*

*Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 239 (Tex. 2016) (courts may not "interpolate or

. . . eliminate terms of material legal consequence") (internal citations omitted).

Similarly, the Amended PSA is a two-page document that exists to: (1) remove Saenz as a

signatory and party to the PSA with the Foreign Customer, and (2) provide releases between Saenz

and the Foreign Customer.  *See* Amended PSA (ECF No. 2-17).  Thus, the Amended PSA is clearly

intended for the benefit of another party, the Foreign Customer, who is not a party to the Release

or this lawsuit.  By its plain terms, the Amended PSA does not mention the Release, does not describe

or identify any property (of ZroBlack or otherwise), and has nothing to do with any of the claims at

---

[2] *See* Resp. at ¶¶11, 17.

issue in this lawsuit. *Id.* Other than purported confidentiality obligations for the benefit of the Foreign Customer (not ZroBlack) that relate to the Foreign Customer's information (not ZroBlack's), the Amended PSA does not attempt to impart any obligations on Saenz, future or otherwise. *Id.* The notion that the Amended PSA somehow required Saenz to return anything to ZroBlack after the date of the Release[3] is contrary to the plain language of the document. Finally, even if Plaintiff is correct about Saenz's obligations under the Amended PSA, Plaintiff admitted that any potential confidentiality obligation would prevent the *use or disclosure* of the *Foreign Customer's* trade secrets, not the alleged *possession* of *ZroBlack's* property which is the basis of Plaintiff's claims. Resp. at ¶13.

Finally, the Response does not explain how a plain reading of the Release's terms—barring "all claims and demands, known or unknown"—would render the Unanimous Consent and Amended PSA "meaningless." The Unanimous Consent still serves as an assignment of Saenz's interest in ZroBlack in any event, and the PSA is still operative as between the Foreign Customer, ZroBlack, and Plaintiff.

## IV.    THE RELEASE IS NOT VOID FOR MUTUAL MISTAKE.

Plaintiff claims that the Release fails because "the parties had different understandings of the effect of the Release." Resp. at ¶19. However, Plaintiff alleges no more than a subjective belief as to the Release's effect,[4] which Plaintiff admits is not a basis for mutual mistake.[5] Plaintiff's contention that he believed the Release required Saenz to return the $740,000 distribution[6] is contrary to the clear language of the Release, and even if Plaintiff genuinely was mistaken as to the Release's scope, such a unilateral mistake would not render the Release void. *See Johnson v. Snell*, 504 S.W.2d

---

[3] *See* Resp. at ¶¶12-13.
[4] *See* Mot. at pp. 9–10 (discussing basis for alleged mutual mistake).
[5] Resp. at ¶19.
[6] Compl. at ¶117.

397, 399 (Tex. 1973) ("A mistake by only one party to an agreement, not known to or induced by acts of the other party will not constitute grounds for relief.").

Further, "[t]o prove a mutual mistake, the evidence must show that both parties had the same misunderstanding of the same material fact." *ALG Enterprises v. Huffman*, 660 S.W.2d 603, 606 (Tex. App.—Corpus Christi 1983), *aff'd as reformed per curiam,* 672 S.W.2d 230 (Tex. 1984) (internal citations omitted). The mistake must be common to both parties to the contract, each laboring under the same misconception. *Id.* Plaintiff alleges that the "mutual mistake" was the disposition of the $740,000, "with Saenz believing he could keep it, and [Plaintiff] believing it would be returned to ZroBlack." Compl. ¶117.  Plaintiff's allegation that Plaintiff and Saenz had different understandings of the treatment of the $740,000 is conclusive proof that the parties were not laboring under same misconception about Saenz keeping those funds.  Thus, there is nothing in the Complaint or Application to support the requirement that both parties had the same misunderstanding of the same material fact.

Citing *Williams v. Glash*, 789 S.W.2d 261, Plaintiff further argues that the Court must consider objective circumstances in determining whether a release covering an unknown injury can be set aside for mutual mistake.  Resp. at ¶19. Plaintiff then argues, without citing to any allegations or evidence in the Complaint or Application, that the objective evidence supporting mutual mistake is: (1) ZroBlack's request for return of its property, and (2) the compensation section of the Release and the terms of the PSA.  *Id.*

As a threshold matter, *Williams* analyzes only whether and to what extent a release of *unknown* injuries may be set aside due to mutual mistake.  *Williams*, 789 S.W.2d at 262 ("The question presented is whether execution of the release for personal injuries in this cause bars a subsequent suit for an injury *unknown* at the time of signing.") (emphasis added). As demonstrated

in the Motion and discussed herein, Plaintiff did not address or dispute Saenz's principal argument that Plaintiff had actual knowledge of the factual bases for his claims prior to Plaintiff releasing all claims against Saenz.  Thus, the objective inquiry described by *Williams* is unnecessary.

But even if an objective inquiry was necessary, the objective circumstances surrounding the Release demonstrate that there was no mutual mistake as to the return of any money or property.  Specifically, Plaintiff and Saenz argued about the $740,000 distribution to Saenz in the weeks leading up to the Release being signed.  *See* Decl. of J. Villareal (ECF No. 2-1) at ¶¶21–25; Release at p. 6. It defies all logic that the parties would both be mistaken about their own contemporaneous argument and thereby mistakenly exclude the return of money or property from the Release.  And even to the extent there could have been a mistake, there is nothing to suggest it was mutual rather than unilateral.

Further, the fact that the Release addresses the parties' "compensation" and does not include a return of the $740,000 distribution is objective evidence that there was no mistake as to whether those funds should be returned.  Release at § 2. Specifically, the Release confirms that Saenz agreed to take smaller earn-outs on a going forward basis than Saenz would have been entitled to receive had Saenz retained his fifty percent interest in ZroBlack. Release at ¶2 (providing that ZroBlack's 14.5% earn-outs will be distributed at 12.5% to Plaintiff and just 2% to Saenz). Thus, the only objective evidence makes it is abundantly clear that Plaintiff and Saenz negotiated and memorialized any monetary points that were necessary to their agreement and business separation. The parties could have included an obligation for Saenz to return money or property, but the parties—without mistake—chose not to do so.

Finally, to adopt Plaintiff's reasoning would be to ensure the very type of "perverse result" about which the Fifth Circuit cautioned in *White v. Grinfas*, 809 F.2d 1157, 1160 (5th Cir. 1987).

There, in a subsequent action based upon allegedly previously unknown construction defects, the

claimants claimed a prior release was void for mutual mistake because the parties were unaware of

the particular defects. *Id.* The Fifth Circuit rejected this argument and held that the parties' failure "to

understand the scope of the release when the language is unambiguous, as it is here, does not support

a finding of mutual mistake." *Id*. For any or all of the foregoing reasons, the Release is not void for

mutual mistake.

V.      THE ALLEGED VIOLATION OF THE TEXAS DISCIPLINARY RULES OF PROFESSIONAL
        CONDUCT DOES NOT RENDER THE RELEASE VOID OR VOIDABLE.

Plaintiff asks the Court to set aside the Release for an alleged violation of the Texas

Disciplinary Rules of Professional Conduct. Compl. at ¶¶110–16. In the Response, Plaintiff's sole

factual argument in support is that the Release was "contracted for" within the attorney-client

relationship because Defendants Miguel Villareal and Gunn, Lee & Cave, P.C. (the "Law Firm

Defendants") represented all parties to the Release. Resp. at ¶18.

Regardless of whether the Law Firm Defendants represented all parties to the Release, the

Law Firm Defendants are not parties to the Release and did not sign the Release.  Release at p. 1,

6.  Thus, the Release—executed solely by and between Plaintiff, Saenz and ZroBlack—was not

executed within the attorney-client relationship with the Law Firm Defendants.  *See Wright v.*

*Sydow*, 173 S.W.3d 534, 549 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (holding that a

settlement agreement between former clients and their former attorney was not void even if it was

executed in violation of a disciplinary rule because it was a contract executed outside of the

attorney-client relationship"); *see also Alliantgroup, L.P. v. Solanji*, No. 01-12-00798-CV, 2014

Tex. App. LEXIS 2961, at *25-27 n.3 (Tex. App.—Houston [1st Dist.] March 18, 2014, no pet.)

(citing *Wright* for the proposition that "alleged violation of Disciplinary Rules does not necessarily

establish cause of action and does not void otherwise valid contract outside of attorney-client relationship").

In *Wright*, the party attempting to set aside the settlement agreement relied on the case on which Plaintiff relies in the Response, *Quintero v. Jim Walter Homes, Inc.*, 709 S.W.2d 225 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.).  The court in *Wright* declined to hold that a release made in contravention of the Texas disciplinary rules is invalid and unenforceable.  *Wright*, 173 S.W.3d at 548.  Finally, while it is the function of the legislature to declare public policy, courts should exercise judicial restraint in deciding whether to nullify a contract based on public policy grounds like those put forth by Plaintiff. *See Atmos Energy Corp. v. Paul*, 598 S.W.3d 431, 465-66 (Tex. App.—Fort Worth 2020, no pet.) (citing *Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 339 (Tex. 2020) and *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 553 (Tex. 2001), *superseded by statute*, Tex. Lab. Code Ann. § 406.033(e)).

## VI.   RE-PLEADING WOULD BE FUTILE.

Finally, Plaintiff requests leave to amend his Complaint in the event that the Court is inclined to grant the Motion.  Resp. at ¶¶3, 47. Although Federal Rule of Civil Procedure 15(a)(2) allows a party to amend its pleading upon leave of court, Plaintiff does not present the Court with a proposed amendment or explain how an amended complaint would permit any claims to survive. *Id.* When a party makes a bare request in opposition to a motion to dismiss, without any indication of the particular grounds on which the amendment is sought, such request does not constitute a motion within the contemplation of Rule 15(a). *See U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (internal citations omitted); *see also Nolasco v. CitiMortgage, Inc.*, 2012 U.S. Dist. LEXIS 119699, at *7 (S.D. Tex. Aug. 23, 2012).

Further, given that the Release acts as a complete bar to Plaintiff's claims and such claims therefore lack any legal foundation, any amended complaint would be futile and unwarranted.  *See*

*Silver Gryphon, L.L.C. v. HSBC Bank USA, Inc.*, 2014 U.S. Dist. LEXIS 79161, at *15-17 (S.D. Tex. June 11, 2014).

<u>**CONCLUSION**</u>

For the reasons set forth in the Motion and as further explained in this Reply, Defendant John Saenz respectfully requests that the Court: (1) dismiss Plaintiff's Complaint and Application with prejudice, (2) award Defendant Saenz his attorneys' fees and costs pursuant to Section 11of the Release and TEX. CIV. PRAC. & REM. CODE § 134.005(b), and (3) grant to Defendant Saenz such other and further relief to which he is entitled in law or in equity.

Respectfully submitted this 21st day of July 2020.　　By:　*/s/ David A. Vanderhider*

David A. Vanderhider
State Bar No. 24070787
DVanderhider@dykema.com
Ryan J. Sullivan
State Bar No. 24102548
RSullivan@dykema.com
DYKEMA GOSSETT PLLC
112 East Pecan St., Suite 1800
San Antonio, Texas 78205
(210) 554-5500 – Telephone
(210) 226-8395 – Facsimile

*Attorneys for John Saenz*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing was electronically filed with the Court on the 21st day of July 2020, and electronically served on the date reflected in the ECF system upon all parties registered to receive notice pursuant to the Court's CM/ECF system.

By:　*/s/ David A. Vanderhider*