## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **JONATHAN VILLAREAL,** | § | |
| **individually and derivatively on behalf** | § | |
| **of ZROBLACK, LLC.** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 5:20-cv-00571-OLG** |
| | § | |
| **JOHN SAENZ, MIGUEL** | § | |
| **VILLARREAL, JR., and GUNN, LEE,** | § | |
| **& CAVE, P.C.** | § | |
| | § | |
| **Defendants** | § | |

### PLAINTIFFS' RESPONSE TO DEFENDANTS GUNN, LEE& CAVE, P.C.'S AND MIGUEL VILLRREAL, JR.'S RULE 12(b)(6) MOTION TO DISMISS

**TO THE HON. ORLANDO GARCIA, UNITED STATES CHIEF DISTRICT JUDGE**:

Plaintiff, JONATHAN VILLAREAL, individually and derivatively on behalf of ZROBLACK, LLC, (collectively the "Plaintiffs"), by and through their undersigned counsel, file this Response to Defendants Gunn, Lee & Cave, P.C.'s and Miguel Villarreal, Jr.'s Rule 12(b)(6) Motion to Dismiss (Doc. 11).

### I. SUMMARY

1.     Defendants  Gunn, Lee & Cave, P.C.'s and Miguel Villarreal, Jr.'s  Motion should be denied because Defendants' arguments touch on factual disputes that are not appropriate subject matter for a Rule 12(b)(6) Motion to Dismiss, Plaintiffs have stated a claim for breach of fiduciary duty that falls within the exceptions to the rule against fracturing malpractice claims, and Plaintiffs' have alleged facts on each of their causes of action showing they are entitled to relief.

### II. RULE 12(B)(6) STANDARD

2.      Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint "for failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Motions to Dismiss are disfavored and will only be appropriate in rare circumstances. *Sosa v. Coleman,* 646 F.2d 991, 993 (5th Cir. 1981). A Rule 12(b)(6) motion "is not a procedure for resolving contests about the facts or the merits of a case." *Askanase v. Fatjo*, 828 F. Supp. 465, 469 (S.D. Tex. 1993); *Mahone v. Addicks Util. Dist. of Harris Cty.*, 836 F.2d 921, 926 (5th Cir. 1988).

3.      "To survive a 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), (cert. denied, 552 U.S. 1182 (2008))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id*. Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id*. at 679.

4.      The court must construe the complaint in favor of the plaintiff, taking all facts pleaded as true, no matter how improbable. *In re Katrina Canal*, 495 F.3d at 205.  "A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Vander Zee v. Reno*, 73 F. 3d 1365, 1368 (5th Cir. 1996); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Even where a court finds the pleadings insufficient, leave to re-file under Rule 15(a) is preferred, unless it is clear the defects are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean*

*Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Therefore, to the extent this Court may find that any claim is not sufficiently pled under the Federal Rules of Civil Procedure, Plaintiffs respectfully request leave to amend their Complaint.

### III.   ARGUMENT & AUTHORITY

**A.  *Plaintiffs have stated a plausible claim for attorney negligence against Defendants.***

Defendants contend that Plaintiffs cannot establish a plausible claim for attorney negligence based on the facts pleaded because the Complaint does not contain sufficient allegations to support the necessary finding of causation. This argument is premised on three theories. First, that Plaintiffs do not allege that, had Gunn, Lee acted differently, Defendant Saenz would have returned any of the property about which Plaintiffs complain. Mtn to Dismiss (Doc 11), p. 8-9, ¶¶ 24-25. Second, that Saenz's acts are a superseding cause of ZroBlack's injury, precluding negligence. Mtn. to Dismiss (Doc. 11), p. 10, ¶¶ 28-29. Third, that Jonathan Villarreal never insisted that provisions requiring the return of property be included in the Release. Mtn. to Dismiss, p. 12-14, ¶¶ 35-39. These are ultimately foreseeability arguments and shall be addressed in turn.

5.      Foreseeability is a component of proximate cause. *Western Invs. v. Urena*, 162 S.W.3d 547, 551 (Tx. 2005). The question of proximate cause is an issue of fact. *Millhouse v. Wiesenthal*, 775 S.W.2d 626, 627 (Tex. 1989). This rule also applies to legal malpractice claims. *Id*. Because Defendants' argument essentially disputes alleged facts, the motion should be denied.

**B.  *Whether Saenz would have agreed to the return of money and equipment is a fact issue to be determined by the jury and is therefore not an appropriate subject of Rule 12(b)(6) relief*.**

6.      Plaintiffs pleaded that Defendants did not include carve-out provisions for ZroBlack's personal and intellectual property in the Release, and that as a proximate cause of that failure, ZroBlack was damaged. Compl. (Doc. 1), p. 25-25, ¶¶ 85, 86. Plaintiff also alleged that

after signing the Release, Saenz refused to return ZroBlack's personal and intellectual property. Compl. (Doc. 1), p. 11-12, ¶¶ 39-40. These facts, taken as true, support an inference Defendants' failure to include carve-out provisions in the Release left ZroBlack no way to recapture its personal and intellectual property.

7.      Defendants' argument that Plaintiffs' Complaint does not sufficiently allege facts establishing that had they done anything different, Saenz would have agreed to return the personal and intellectual property (Mtn. to Dismiss (Doc. 11), p. 9, ¶ 25) relies upon facts which Defendants have inferred e.g. that because Saenz refused on other occasions to return ZroBlack's property, he would not have agreed to do so as part of the Release and because Saenz had spent most of the $740,000 and was requesting that it be treated as a gift for tax purposes, Saenz would not have agreed to return the money or any portion of it. Further, Defendants' inference leaves out multiple steps in the 'what if' chain of events. Had the Gunn, Lee Defendants not negligently failed to include carve outs for return of Plaintiffs' property in the Release and thereafter Saenz refused to agree to those terms, the parties would have kept negotiating or filed suit, but Plaintiffs would not have compromised their position without securing the return of their property. *Id.* As a premise, Defendants' inferences are flawed, but more importantly, these are questions of fact (actually worse, questions of hypothetical fact) that will eventually have to be decided by a jury. Therefore, it is not appropriate subject matter for a Rule 12(b)(6) motion. *Mahone v.  Addicks Util. Dist. of Harris Cty.*, 836 F.2d 921, 926 (5th Cir. 1988); *Askanase v. Fatjo*, 828 F. Supp. 465, 469 (S.D. Tex. 1993).Defendants are countering Plaintiffs' alleged facts with alleged facts of their own to dispute the allegations in the Complaint. Such fact-based inquiries are only appropriate at the summary judgment or trial stage. *Baker v. Putnel*, 75 F.3d 190, 197 (5th Cir. 1996) (plaintiffs' allegation in excessive force lawsuit that deceased did not point pistol at defendant officer and

defendant officer's allegation that he did was factual dispute not ripe for consideration at Rule 12(b)(6) stage, reversing grant of summary judgment on Rule 12(b)(6) motion); *see also In re Seitel, Inc. Securities Litigation*, 447 F. Supp. 2d 693, 713 (S.D. Tex. 2006) (court concluded defendants' disputes of facts alleged in complaint regarding necessary element of scienter were fact based and not subject matter for a Rule 12(b)(6) motion).

8.   Defendants' reliance on *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. 7 Research Corp.*, 299 S.W.3d 106 (Tex. 2009) for the proposition that a plaintiff must "prove and obtain findings as to the amount of damages that would have been recoverable and collectible if the other case had been properly prosecuted," *Id*. at 112, is misplaced. *Akin, Gump* addressed whether a jury's findings were sufficient to support its award against against the Akin, Gump law firm. *Akin, Gump* is not about pleading standards or whether a plaintiff pleaded enough facts to state a plausible claim. Nor does it stand for the proposition that a plaintiff must plead that it can recover damages if the underlying claim had been properly prosecuted.

9.   Even if *Akin, Gump* did stand for the proposition Defendants allege, Plaintiffs pleaded sufficient facts to support recovery (or "collection" of, if you will) of ZroBlack's property. Plaintiffs pleaded that Saenz refused to return the laptop <u>after</u> the Release was signed, refused to return the trade secrets <u>after</u> the Release was signed, refused to release the domain name to ZroBlack <u>after</u> the Release was signed, and that he deleted ZroBlack's webpage and email <u>after</u> the Release was signed. Because Plaintiffs alleged these things happened after the Release was executed and as a result of the failure to include provisions for the return of property, it is reasonable to infer they would not have happened had those provisions been included in the Release. Furthermore, if Plaintiffs were required to specifically plead that Saenz would have returned these things had Defendants included the carve-out provisions in the Release, then that is

a simple matter of amending the Complaint. This Honorable Court should not allow Defendants to confuse what Plaintiff must plead with what they must ultimately prove at trial.

10.     Defendants make essentially the same argument regarding the return of the $740,000, to wit, because Plaintiffs alleged Saenz has spent the money, Plaintiffs cannot not prove the $740,000 could be collected from Saenz. However, what the Complaint alleged is that on information and belief Saenz invested about $305,000 in the stock market and $423,850 in property renovations. Compl. (Doc. 1), p. 8, ¶ 27. The Complaint does not allege Plaintiff could not recover those sums. If the money is invested in the stock market or real estate, it might easily be recoverable.[1] Additionally, here again, Defendants are conflating what must be ultimately proved at trial with what must be alleged.

**C. *Saenz's alleged superseding acts are not relevant to causation because Defendants should have foreseen the risk of proprietary data being misused or destroyed*.**

11.     The Gunn, Lee Defendants argument here is (a) Saenz's intentional acts were a superseding cause of ZroBlack's injury and (b) Saenz's independent statutorily tortious conduct was a superseding cause of ZroBlack's injury. It is well-established in Texas law that third-party conduct is a superseding cause of damages arising from a defendant's negligence unless the third-party conduct is a foreseeable result of the defendant's negligence. *See e.g. See Phan Son Van v. Pena, 990 S.W.2d 751, 754 (Tex.1999); see also Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749 (Tex. 1998) (one who controls premises has a duty to use ordinary care to protect invitees from criminal acts of third parties if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee."); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 314

---

[1] Defendant might argue that recovering against the real property is unlikely because such property may be exempt, especially if the property involved is homestead property. But the Complaint does not allege the property was homestead or otherwise exempt. Absent such an allegation, the Court should not consider that possibility because it has not been raised.

(Tex.1987) (tortfeasor's negligence is not superseded when the criminal conduct is a foreseeable result of the negligence); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 550 (Tex.1985) (same). The arguments raised by Defendants here are foreseeability arguments; thus dismissal is not appropriate because whether Gunn, Lee should have foreseen the possibility Saenz would have misused or destroyed ZroBlack's proprietary data is a question of fact to be decided by the jury. Numerous online blogs and articles discuss the importance of re-capturing a firm's intellectual property when employment is severed. Gunn, Lee, which touts itself as an intellectual property firm, should have foreseen the possibility that Saenz possessed intellectual property, counseled ZroBlack to recapture that property, and provided carve-out provisions in the Release.[2]

12.    Moreover, The Gunn, Lee Defendants' arguments do not link the various interpretations of the superseding cause doctrine they cite to their conclusory statement suggesting the above black-letter law is in "favor of finding Saenz's intentional conduct to be a superseding cause of the injury asserted by [Jonathan]. Gunn, Lee Mtn. to Dismiss (Doc. 11) p. 11, ¶ 27-29. The Court should therefore give this argument no weight in deciding the motion to dismiss.

13.    The *Phan Son* factors cited by Defendants actually favor Plaintiffs. *Phan Son Van v. Peña*, 900 S.W.2d 751 (Tex. 1999). In *Phan Son*, the Texas Supreme Court identified factors from ¶ 448 of the Restatement (Second) of Torts to consider in determining whether an intervening force rises to the level of a superseding cause. *Id*. at 754 (Tex. 1999). Those factors are:

>    (a) the fact that the intervening force brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

---

[2]        https://www.natlawreview.com/article/protecting-intellectual-property-and-data-if-employee-separation-anticipated;        https://ogletree.com/insights/departing-employees-ensuring-protection-of-trade-secrets-and-intellectual-property/;

(b) the fact that the intervening force's operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of the force's operation;

(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

*Id*. Defendants claim that several of those factors weigh in favor of their argument. As will be explained, Plaintiffs respectfully disagree.

    a. *Whether the interfering acts operated independently of any situation created by the Gunn, Lee Defendants is not relevant to the standard of legal or professional care the Gunn, Lee Defendants should have exercised*.

14. Defendants first contend they did not create the situation that makes it impossible for Saenz to comply with the obligation to return property. First, they argue, the Complaint alleges that Saenz took the money before Gunn, Lee became involved and had already spent it by the time the Release was signed. Second, they contend, it is a reasonable inference from the pleadings that Saenz refused to return the laptop, proprietary code, and domain name for the webpage and email server because Jonathan Villarreal refused to characterize the $740,000 as a gift. These are circumstances they argue their alleged negligence did not create.[3]

---

[3] Additionally, Defendants' argument suggesting that Plaintiffs' theory of liability is exclusive to the factual understanding that the release required Saenz to return all property to ZroBlack and Jonathan is a misunderstanding of the Complaint on a fundamental level. Specifically, Plaintiffs' allege an alternate set of facts in their claims against the Gunn, Lee Law firm,

15.     Starting with the return of the laptop, proprietary code, and domain name, intellectual property theft by high-level officers and employees is a well-known and documented risk facing businesses, especially those that specialize in the creation of intellectual property (such as computer code). As shown above, articles and online blogs discuss the drafting of releases when the relationship between companies and such officers and employees ends. It is a reasonable inference from the pleadings that Defendants, who bill themselves as an intellectual property firm, were aware of such risks. Yet here, they utterly failed to account for those risks in the Release.

16.     Moreover, their argument that Saenz was motivated by Jonathan's refusal to characterize the $740,000 as a "gift" for tax purposes rings hollow. The Release should have provided for the return of the $740,000 as well as the property. Faced with language in the Release requiring that he return those things would have totally reframed the negotiation. The notion that Gunn Lee did not create the situation that made it impossible for Saenz to comply with the Release is backwards—their failure to include language requiring the return of the laptop, code, and domain created the environment where Saenz felt he did not have to return those things.

      b.    _Whether the Complaint alleges independent statutory bases for Saenz's liability to Plaintiff and not simply breach of contract is not relevant to the standard of legal of professional care the Gunn, Lee Defendants should have exercised._

---

claiming that the release is deficient and should have included specific language requiring Saenz to return any ZroBlack property in his possession. Comp.  (Doc. 1) p. 24-25, ¶ 83-87. The Rules of Federal Procedure specifically allow for pleading alternative theories of facts or claims. FED. R. CIV. P. 8(d). _Vasquez v. Bridgestone/Firestone, Inc._, 325 F.3d 665, 674 (5th Cir. 2003) ("Plaintiffs are permitted to plead in the alternative."); _see also Southwestern Bell Telephone Co. v. Fitch_, 643 F.Supp.2d 902, 908-909 (S.D. Tex. 2009) (citing FED. R. CIV. P. 8) (holding that dismissal of inconsistent theories is unwarranted at the 12(b)(6) stage of proceedings). Thus, the Gunn, Lee Defendants' arguments are not ripe for consideration.

17.     The Gunn, Lee Defendants argue here that there is no well-pleaded factual allegation or reasonable inference that the Gun, Lee Defendants could have anticipated Saenz's alleged intentional conduct. This is but a variation of the argument above.

18.     Given the sensitive nature of ZroBlack and Jonathan's business in computer code and Saenz's high position in ZroBlack, it was very likely that Saenz would continue to possess and use ZroBlack's property if a release made no provision for its return. The Gunn, Lee Defendants, because of their expertise in IP law, should have foreseen the risk of Saenz's actions here, and, because they were *also representing Plaintiffs* while drafting and executing the release, should have protected Plaintiffs' property interest. Based on the facts alleged, it is clear they did not do so and failed to meet the standard of care of a reasonably prudent intellectual property law firm.

**D.** ***Whether Plaintiffs' Complaint sufficiently alleges facts establishing that Plaintiffs insisted upon the return of ZroBlack's property or that Plaintiff deemed these issues important enough to raise them prior to or at the time the Release was executed is likewise irrelevant to the issue of the standard of care the Gunn, Lee Defendants should have exercised***.

19.     Part of an attorney's job is counseling and providing legal advice. An attorney and law firm drafting a release related to the departure of one of two members of a limited liability company whose primary assets were trade secrets and proprietary property, and having an online presence, should have foreseen the risks of the departing member keeping possession of proprietary company property. An attorney in that position should have advised of the need for language in a release carving out confidentiality requirements and addressing the return of property and access to online accounts. Yet, inexplicably, Defendants did not provide that advice or make provision in the Release to protect ZroBlack's proprietary property.

20.     Gunn, Lee, as an IP firm, should have known to include language in the release that specifically required Saenz to return the laptop, code, domain name, webpage, email server, and any other ZroBlack property in his possession given the proprietary and sensitive nature of

ZroBlack's property. Instead, the Gunn, Lee Defendants failed to do so and enabled Saenz to keep and use trade secrets and property rightfully belonging to ZroBlack and Jonathan.

**E.  *Plaintiffs have stated a plausible claim for breach of fiduciary duty because their factual allegations show the claim falls outside the Rule against fracturing legal malpractice claims*.**

21.    Defendants argue that Plaintiffs have pleaded no facts that would support an independent breach of fiduciary duty claim. While Defendants are correct that the fracturing of a malpractice claim is generally disfavored, exceptions do exist, such as when a claim against an attorney focuses on the attorney obtaining an improper benefit, as opposed to the attorney failing to adequately represent the claim. *Riverwalk CY Hotels Partners, Ltd. v. Akin Gump Strauss Hauer & Feld.*, LLP, 391 S.W.3d 229, 236 (Tex. App.—San Antonio 2012, no pet.). Breaches of fiduciary duty fall within that exception. *Id*. "A breach of fiduciary duty occurs when an attorney, among other things, subordinates his client's interest to his own, retains the client's funds, engages in self-dealing, improperly uses client confidences, fails to disclose conflicts of interest, or makes misrepresentations to achieve these ends." *Id*. "...the types of conflicts of interest which could give rise to a breach of fiduciary duty are those in which the lawyer has a direct pecuniary interest in the litigation that is adverse to the client, and the attorney pursues his own interest to the client's detriment." *Id*.; *see also Trousdale v. Henry*, 261 S.W.3d 221, 229 (Tex. App. — Houston [14th Dist.], 2008) (noting that a "breach of fiduciary duty by an attorney often involves the attorney's failure to disclose conflicts of interest...improper use of client confidences, taking advantage of the client's trust...and making misrepresentations."); *Vara v. Williams*, 2013 WL 1315035, at *3 (Tex. App. — Austin, 2013) (opining that the Texas "fracturing" rule does not preclude clients from asserting causes of action other than negligence *if supported by the facts*) (emphasis added).

22.    Plaintiffs alleged that Attorney Villarreal and co-Defendant Saenz had a pre-existing relationship, which Defendants did not disclose to Jonathan Villarreal. Compl. (Doc. 1),

p. 14, ¶ 47. Plaintiff also alleged that Defendants were cutting Saenz a discount on fees – a discount they did not give Plaintiffs. It is a reasonable inference from this that Defendants subordinated representation of Plaintiffs to their own self-interest—preserving their relationship with Saenz.

23.     Also, as made plain by *Riverwalk Cy Hotel Partners*, fraud with respect to billing practices will support a breach of fiduciary duty claim. In *Riverwalk Cy Hotel Partners*, the court found that an allegation regarding excessive fees, challenging the integrity of the defendant's billing practices is a sufficient allegation for a separate breach of fiduciary duty claim. *Riverwalk CY Hotel Partners*, 291 S.W.3d at 238-39; *See also Sullivan v. Bickel & Brewer*, 943 S.W.2d 477 (Tex. App. — Dallas, 1995) (holding that an allegation of fraudulent billing practices is sufficient to allege a breach of fiduciary duty claim). Here, Miguel Villareal had a conflict of interest that should have been disclosed as material to the representation of Jonathan. Miguel specifically chose to charge Jonathan more for his representation compared to that of Saenz. Moreover, Miguel also chose to pressure Jonathan to resolve the dispute "for the sake of the family," as Jonathan and Saenz were related. Compl. (Doc. 1) p. 14, ¶ 47. This conflict of interest specifically invokes the "quality of the billing practices" idea opined in *Akin Gump*, as Plaintiffs are alleging that Mike had a conflict of interest in charging Jonathan more for fees than he did for Saenz, and by pressuring Jonathan to settle the case, while the average attorney in Miguel's case could and would diagnose the conflict of interest here and either disclose it and obtain a waiver, or disclose it and withdraw from representation. Miguel did neither. In fact, the omission of a requirement that Saenz return the $740,000 to ZroBlack is evidence that Mike and the law firm deliberately chose to favor Saenz over Jonathan. As a result, Plaintiffs' Complaint states a claim for breach of fiduciary duty.

24.     Another case also sheds light on the difference between a legal malpractice claim and a breach of fiduciary duty claim. In *O'Donnell v. Smith*, the court reasoned that the difference

between each claim is that "the focus of a breach of fiduciary duty claim is whether an attorney obtained an improper benefit from representing a client, while a legal malpractice claim asks whether an attorney adequately represented a client." *O'Donnell v. Smith*, 234 S.W.3d 135, 146 (Tex. App. — San Antonio, 2007). The court further suggested that facts regarding an "attorney's failure to disclose conflicts of interest, failure to deliver client funds, *improper use of client confidences*, or engaging in self-dealing" also constitute a breach of a fiduciary duty to a client. *Id.* (*citing Cosgrove v. Grimes*, 774 S.W.2d 662, 665 (Tex. 1989).

25.     Here, Plaintiffs' Complaint alleges that the Gunn, Lee Defendants engaged in slanted billing practices by charging more for services rendered to Jonathan than to Saenz. (Doc. 1) p. 14, ¶ 47. Additionally, the Gunn, Lee Defendants' use of pressure to force Jonathan to settle the case with Saenz "for the sake of the family" based on Jonathan's anxiety and other mental health concerns. *Id.*; (Doc. 1) p. 12-13, ¶ 42. Defendants' "improper use of client confidences" likely shifted the equity of Jonathan and Saenz' relationship with Mike in favor of Saenz. Even more so, Miguel failed to disclose the extent of his prior relationship with Saenz, possibly alluding to the fact that Mike would hold Saenz's client relationship in higher regard than that of Jonathan. *Id.* at p. 14, ¶ 47. *Because* of the above allegations, Plaintiffs have sufficiently pled enough facts to survive the Gunn, Lee Defendants' motion to dismiss for failure to state a claim.

a.  **Fraud for failing to disclose prior relationship and conflict of interest**.

26.     Plaintiffs also state a valid and separate breach of fiduciary duty claim by alleging that Mike failed to disclose the extent of his relationship with Saenz prior to joint representation. In *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, the court held that the defendant's failure to disclose to plaintiff their conflict of interest constituted a breach of fiduciary duty claim. *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 190 (Tex. App. — Houston [14th Dist.], 2002). Attorneys

in the course of representation, the court reasoned, "owe their clients utmost good faith in their dealings with them, that attorneys owe their clients a duty to affirmatively disclose all material facts that would affect their relationship as well as the legal consequences of those facts, and that breach of this duty states a claim for constructive fraud." *Id.* (*citing Goffney v. Rabson*, 56 S.W.3d 186, 193-94 (Tex. App. — Houston [14th Dist.], 2001) (stating in dicta that failing to disclose conflicts of interest states a separate claim for breach of fiduciary duty from legal malpractice).

27.     Here, the same can be said regarding Miguel's relationship with Saenz prior to joint representation. Plaintiffs' Complaint alleges that Miguel failed to disclose the extent of his prior relationship with Saenz before he agreed to joint representation. Compl. (Doc. 1) p. 14, ¶ 47. This allegation on its face constitutes a plausible claim of breach of fiduciary duty, as Miguel "failed to disclose all material facts that would affect [his] relationship" with his clients. *Deutsch*, 97 S.W.3d at 190. Therefore, because Plaintiffs allege facts that constitute a distinct and separate claim for breach of fiduciary duty, Plaintiffs should survive the Gunn, Lee Defendants' motion to dismiss.

  b.     *The Gunn, Lee Defendants did not conform to DR 1.07.*

28.     First Criteria: that the defendants advised and received written consent from Jonathan and ZroBlack of the issues of joint representation. Here, Defendants suggest the conflict waiver signed by Jonathan established that the Gunn, Lee Defendants advised Jonathan and ZroBlack of the disadvantages of joint representation under Rule 1.07(a). The waiver, however, did not mention the prior relationship between Saenz and Mike, which affected representation.

29.     Second Criteria: "The lawyer reasonably believes that the matter can be resolved without the necessity of contested litigation on terms compatible with the client's best interests, that each client will be able to make adequately informed decisions in the matter and that there is little risk of material prejudice to the interests of any of the clients if the contemplated resolution

is unsuccessful." From the waiver's language and the facts of Mike/Gunn, Lee's representation of Jonathan and ZroBlack, there is ample evidence of material prejudice to Plaintiffs' interests, given that Mike showed deliberate indifference to their interests in the course of drafting the release, and in the representation thereafter. It is clear that based on the language of the release that the Gunn, Lee Defendants failed aid Jonathan and ZroBlack to make informed decisions regarding the release. Thus, the Gunn, Lee Defendants failed to meet the standard required under Rule 1.07(b).

30.     The commentary on Rule 1.07 also suggest that lawyers may only act as an intermediary to adjust a relationship between clients on an "amicable and mutually advantageous basis." TEX. R. PROF. CONDUCT, Rule 1.07, Comment 1. Based on the situation presented to the Gunn, Lee Defendants before representation, and the outcome of said representation, it is clear that Plaintiffs were not held in a "mutual and advantageous" position. Saenz wanted to keep the $740,000 while refusing to do any such work for ZroBlack for the money.

31.     Moreover, after Saenz and Jonathan's relationship deteriorated to the point of needing to assign Saenz's share in ZroBlack and obtain a release, there was not an amicable relationship between the parties. The parties were clearly in a position where dual representation was not possible. Saenz had possession of $740,000 he did not earn as well as ZroBlack property; most notably the laptop that contained the proprietary code responsible for ZroBlack's early economic success, and would continue to fuel ZroBlack's business for many years. Because of the sheer difference and animosity between Jonathan and Saenz leading up to joint representation and the stakes for ZroBlack, no reasonable lawyer could have adequately represented the disparate interests of Jonathan, Saenz, and ZroBlack. Thus, the Gunn, Lee Defendants violated Rule 1.07(2).

32.     Third: the lawyer reasonably believes that the common representation can be undertaken impartially and without improper effect on other responsibilities the lawyer has to any

of the clients. There is no possible way that, based upon the wording in the release, that Mike and Gunn, Lee could have carried out common representation impartially and without an improper effect on the responsibilities that Mike and the firm had to Jonathan and ZroBlack. Based on consequences of the signed release, and on the Gunn, Lee Defendants' arguments regarding the interpretation of the release, there is no feasible way the Gunn, Lee Defendants could have carried out common representation in an impartial and proper manner.

33.     As reiterated above, the sheer difference in priorities and desires of both Jonathan and Saenz suggests that a lawyer could not maintain impartiality during joint representation. Tex. R. Prof. Conduct, 1.07, Comment 7. Saenz wanted to keep the $740,000 he paid himself, while Jonathan wanted the very opposite. Jonathan also wanted the return of the computer code responsible for ZroBlack's existence. Without it, Jonathan could not continue his operation of ZroBlack. Based on the parties' difference in priorities, no lawyer could have reasonably believed that common representation could have been undertaken impartially. As a result, the Gunn, Lee Defendants are in violation of Rule 1.07(3).

   c.   *The Gunn, Lee Defendants' arguments regarding **Rule 1.07** are irrelevant, because it is not the legal standard by which attorney malpractice claims are judged*

34.     Attorney malpractice claims in Texas are based on Negligence. *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989). *See also Acevedo v. Commission For Lawyer Discipline*, 131 S.W.3d 99, 107 (Tex. App. — San Antonio, 2004) ("An attorney disciplinary action is 'not an attorney malpractice case where the standard of care is at issue. Rather, [it] is a disciplinary proceeding where the appropriate interpretation of the Rules of Conduct and a factual determination of whether the [attorney's] conduct met or violated the Rules at issue.'" (internal citations omitted).

35.     Additionally, violations of the Texas Disciplinary Rules do not give rise to a claim of attorney malpractice under the theory of negligence per se, as the rules do not authorize a private cause of action. *See Cuyler v. Minns*, 60 S.W.3d 209, 214 (Tex. App. — Houston [14th Dist.] 2001) (*citing* Tex. Disciplinary Rules of Professional Conduct, V.T.C.A. Govt. Code T.2, Subt. G. App. A, Art. 10 § 9, Preamble: Scope. Simply put, the Rules of Professional Conduct are not the medium in which Plaintiffs bring their claims. Plaintiffs raised their claims against the Gunn, Lee Defendants under the theory of attorney malpractice, which Texas courts examine as a traditional negligence claim. *Grimes*, 774 S.W.2d at 664. Thus, Defendants' arguments are irrelevant and fail.

d.   *Plaintiffs' claims against the Gunn, Lee Defendants do not suggest violation of Rule 1.07, but instead show a violation of the general conflict of interest rule, Rule 1.06.*

36.     Plaintiffs have also alleged a violation of Texas Rule of Professional Conduct 1.06. Paragraphs 110-116 relay the facts regarding Gunn, Lee Defendants' violation of Rule 1.06. Specifically, that "no attorney could reasonably believe under these facts that [the Gunn, Lee Defendants'] representation of both clients would not have been material affected" as a result of dual representation. Compl. (Doc. 1), p. 32, ¶ 113. Because Plaintiffs allege the facts necessary to constitute a claim of attorney malpractice based on allegations of a violation of Rule 1.06, this claim should survive Defendant's motion for dismissal. *Id.*

37.     Rule 1.06 provides that a lawyer shall not represent a person if representation of the person: (1) involves a substantially related matter in which that person's interests are materially and directly adverse to the interest of another client...; or (2) reasonably appears to be or become adversely limited by the lawyer's or law firm's responsibility to another client..."

38.     Plaintiffs' Complaint alleges that Jonathan, ZroBlack, and Saenz's interests were adverse under the definition of Rule 1.06. Compl. (Doc. 1) p. 32 ¶ 113. Plaintiffs specifically allege that Jonathan wanted the exact *opposite* of Saenz when negotiating the release. That is, the return

of the $740,000, the laptop, and the proprietary computer code. Saenz, on the other hand, wanted to keep the $740,000 and the laptop. Under Plaintiffs' allegations, the Gunn, Lee Defendants had waded into a conflict of client interests so directly adverse to each other, no reasonable lawyer could have represented Saenz, Jonathan, and ZroBlack in the way the Gunn, Lee Defendants attempted. Therefore, based on the allegations in Plaintiffs' Complaint, Plaintiffs' claims that the Gunn, Lee Defendants committed malpractice should not be dismissed.

39.     Plaintiffs' Complaint further alleges that the Gunn, Lee Defendants were in position to profit from the release at issue, because the firm would "act as the escrow agent for funds paid by ZroBlack's customer under the PSA." Compl. (Doc. 1) p. 32 ¶ 114. This circumstance puts the Gunn, Lee Defendants directly at the center of the deal between the parties, further entangling their involvement of ZroBlack, Jonathan, and Saenz The allegations above clearly suggest that the Gunn, Lee Defendants' had interests that were "materially and directly adverse" to the interests of ZroBlack and Jonathan. Because of these allegations, Plaintiffs have sufficient pled a claim that the Gunn, Lee Defendants have violated Texas Rule of Professional Conduct. 1.06.

## F.  Amendment of the Complaint Would Not Be Futile.

40.     In the alternative, if the Court were to determine that Plaintiffs' Complaint were defective, Plaintiffs could amend the Complaint to sufficiently state a claim for relief. Plaintiff is prepared to amend its pleading and allege that:

    a.  Saenz would have agreed to return the property if Defendants had acted differently. The factual issue brought up by the Defendants may be amended and would give rise to a reasonable inference that Saenz would have agreed to return the company's property back to it if Defendants had presented it to him.

b. Defendants knew or should have known to include a return of company property as part of the Release, and knew or should have known that failure to include provisions in the release for the return of the laptop, proprietary code, domain access to ZroBlack's webpage and email server, could lead to Saenz's use or misuse of that property.

c. Defendants failed to represent the individuals concurrently but rather drafted a Release strongly favoring Saenz and taking advantage of Plaintiffs.

d. It was unreasonable for Defendants to believe that the disputes between Plaintiffs and Saenz could be resolved without litigation in a manner compatible with the parties' best interests as Defendants knew the subject matter of the representation was inherently confrontational as both parties wanted a "business divorce".

e. The Defendants failed to represent Plaintiffs in a manner that conformed with Texas Rule of Professional Conduct 1.07. Specifically, that: (1) Defendants failed to inform Plaintiffs of the implications concerning common representation; Tex. R. Prof. Conduct 1.07(a); (2) Defendants could not have reasonably believed Plaintiffs could have made adequately informed decisions in the matter that there is little risk of material prejudice to the their own interests; Tex. R. Prof. Conduct 1.07(b); and (3) Defendants could not have reasonably believed that common representation could have been undertaken without improper effect on other responsibilities the lawyer has to any of the clients, specifically, Defendants' responsibilities to ZroBlack and Jonathan.

41.    Here, Plaintiffs, if requiring leave to amend their complaint, would meet the standard set forth above in Rule 12(b)(6). Likewise, the case law and Federal Rule of Civil Procedure 15(a) generally requires the trial court to allow amendment, and "the language of this rule evidences a bias in favor of granting leave to amend." *Legate v. Livingston*, 822 F.3d 207, 211

(5th Cir. 2016) (internal quotations omitted). Therefore, Plaintiffs request that even if the Court

finds that Plaintiffs' Complaint is deficient under Rule 12(b)(6), the Court should grant Plaintiffs

leave to amend the Complaint in accordance with Rule 15(a).

### IV. CONCLUSION AND PRAYER

42.    Based on the foregoing, Plaintiffs respectfully pray the Court denies Defendants

Gunn, Lee & Cave, P.C.'s and Miguel Villarreal's Motion in its entirety, that if the Court concludes

any of Defendants' arguments have merit, that Plaintiffs' be granted leave to amend, and finally,

for all other relief to which they may show themselves justly entitled at law or in equity.

Respectfully submitted,

THE VETHAN LAW FIRM, PC

By: /s/ *Joseph L. Lanza*

Charles M. R. Vethan
Attorney-in-Charge
Texas Bar No.  00791852
Steven A. Costello
Texas Bar No. 24062677
VETHAN LAW FIRM - HOUSTON
Two Memorial City Plaza
820 Gessner, Suite 1510
Houston, Texas 77024
Tel: (713) 526-2222
Fax: (713) 526-2230
Email: edocs@vwtexlaw.com

Joseph L. Lanza
Texas bar No. 00784447
VETHAN LAW FIRM – SAN ANTONIO
11459 Huebner, Suite 101
San Antonio, Texas 78230
Tel: (210) 824-2220
Fax: (713) 526-2230
Email: edocs@vwtexlaw.com

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed with the Court on the 3rd day of August 2020, and electronically served on the date reflected in the ECF system upon all parties registered to receive notice pursuant to the Court's CM/ECF system.

David A. Vanderhinder
State bar No. 24070787
DVanderhinder@dykema.com
Ryan J. Sullivan
State Bar No. 24102548
RSullivan@dykema.com
DYKEMA GOSSETT PLLC
112 East Pecan St., Suite 1800
San Antonio, Texas 78205

**Attorney for Defendant John Saenz**

George R. Spencer, Jr.
State Bar. No. 18921001
gspencer@langleybanack.com
Natalie F. Wilson
State Bar. No. 24067769
nwilson@langleybanack.com

**Attorneys for Defendants Gunn, Lee & Cave, P.C.
And Miguel Villarreal, Jr.**

/s/ *Joseph L. Lanza*
Joseph L. Lanza