**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JONATHAN VILLARREAL, | § | |
| **Individually and derivatively on behalf** | § | **CASE NO. 20-571-OG** |
| **Of ZROBLACK, LLC** | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| **JOHN SAENZ, et al.,** | § | |
| Defendants. | § | |

**MOTION TO DISMISS WITH PREJUDICE ALL CLAIMS AND CAUSES OF ACTION**
**AGAINST DEFENDANTS MIGUEL VILLARREAL, JR. AND GUNN, LEE & CAVE,**
**P.C. PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**TO THE HON. ORLANDO GARCIA, UNITED STATES CHIEF DISTRICT JUDGE:**

NOW COME Defendants Miguel Villarreal, Jr. ("**M. Villarreal**") and Gunn, Lee, & Cave,

PC ("**Gunn Lee**", and together with M. Villarreal, the "**Gunn Lee Defendants**") and file their

*Motion to Dismiss with Prejudice all Claims and Causes of Action Against Defendants Miguel*

*Villarreal and Gunn, Lee, & Cave, PC Pursuant to Fed. R. Civ. P. 12(b)(6)* ("**Motion to Dismiss**")

and in support thereof, respectfully shows the Court as follows:

## I.       INTRODUCTION

1.       Plaintiff filed his Original Complaint ("**Complaint**") (Dkt. No. 1) on May 8, 2020

asserting the following federal and state law claims:

Count 1 - Defend Trade Secrets Act (18 U.S.C. § 1836).
Count 2 - Computer Fraud and Abuse Act (18 U.S.C. § 1030(g)).
Count 3 - Anti-cybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)).
Count 4 - Breach of Contract.
Count 5 – Breach of Fiduciary Duty.
Count 6 – Negligence against Gunn Lee Firm.
Count 7 – Breach of Fiduciary Duty against the Gunn Lee Firm and Michael Villarreal.
Count 8 – Tortious Interference with Prospective Relations.
Count 9 – Conversion.
Count 10 - Violation of Texas Theft Liability Act.

2.      The Defendants all moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  *See* Dkts. 8, 11.  In response to those Motions, Plaintiffs sought leave to amend their Complaint, which was granted.  Plaintiffs filed the redacted version of their *First Amended Verified Complaint* [Dkt. 35] (the "**Amended Complaint**") on January 15, 2021.  In accordance with the stipulation entered into by the Parties, the Court established February 4, 2021 as the deadline for Defendants to either answer or respond to the Amended Complaint.

3.      In the Amended Complaint, Plaintiffs Jonathan Villarreal ("**J. Villarreal**")[1] and ZroBlack, LLC ("**ZroBlack**", and together with J. Villarreal, "**Plaintiffs**") assert that the Gunn Lee Defendants were negligent in the course of negotiations between J. Villarreal and Defendant John Saenz ("**Saenz**") related to disputes about the business and assets of ZroBlack, a limited liability company in which J. Villarreal and Saenz were equal members.  *See generally*, Amended Complaint.

4.      Only Counts 6 and 7 of the Amended Complaint pertain to the Gunn Lee Defendants.  *See* Amended Complaint, ¶¶ 200 - 231.

5.      The Amended Complaint does not cure the pleading defects raised in the Gunn Lee Defendants' initial Motion to Dismiss.  As the Gunn Lee Defendants previously argued, Plaintiffs' claims against them must fail as a matter of law, and no amount of repleading can alter that fundamental defect.  Further, because Plaintiffs have had an opportunity to amend the complaint, and because the claims are barred as a matter of law, dismissal with prejudice is warranted.

## II.      BACKGROUND FACTS

6.      J. Villarreal and Saenz formed a business – called ZroBlack – and substantially agreed to terms with a Foreign Customer, all without the benefit of counsel.  Amended Complaint

---

[1] There is no familial relationship between M. Villarreal and J. Villarreal.

¶¶ 18, 20-23, 29-30, 35.   The agreement was for certain technology to be provided/sold by ZroBlack to the Foreign Customer in exchange for a sum of money and other consideration.  *See* Amended Complaint, ¶ 31.

7.      ZroBlack engaged M. Villarreal to represent ZroBlack at the tail end of the negotiations with the Foreign Customer.[2]  *See id.*, ¶35.  Approximately two weeks later, ZroBlack and the Foreign Customer reached a final agreement in the form of a Professional Services Agreement, dated April 15, 2019 ("PSA").  *See id.* ¶30.[3] The PSA included, *inter alia*, a payment to ZroBlack in the amount of $1.5M dollars and also potential future earnings based on a certain percentage of certain revenue generated from the sales of products incorporating the sold technology within a certain period of time following execution of the PSA.  *See id.*, ¶31; *see also* **Exhibit B.**

8.      Almost three months passed before ZroBlack—either via J. Villarreal or Saenz—contacted M. Villarreal again concerning the PSA.  *See* Amended Complaint, ¶¶ 54, 58-59.  Unfortunately, this time, the reason for reaching out to M. Villarreal was because a dispute had arisen between J. Villarreal and Saenz relating to complaints about the respective amount of work each of J. Villarreal and Saenz was contributing in relation to the PSA and whether the potential future earnings should continue to be equally divided among them.  *See id.* ¶ 53.  Their disagreement reached an impasse.  ZroBlack, J. Villareal, and Saenz engaged M. Villarreal to assist them in resolving their disagreement consensually. *See id.* ¶¶ 54, 58-59.

---

[2] A true and correct copy of the signed Engagement Letter, dated March 30, 2019, is attached as **Exhibit A** hereto and incorporated by reference herein.  The Engagement Letter is central to the Amended Complaint and therefore, can be considered as evidence in adjudicating this Motion to Dismiss.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000).

[3] A true and correct copy of the PSA is attached as **Exhibit B** hereto and incorporated by reference herein.  The PSA is central to the Amended Complaint and is attached thereto as Exhibit 11 to the Appendix.  Therefore, it can be considered as evidence in adjudicating this Motion to Dismiss. *See Collins*, 224 F.3d at 498-499.

9.      The Texas Rules of Disciplinary Professional Conduct ("**Disciplinary Rules**") expressly provide for an attorney to serve as an intermediary between clients.  Disciplinary Rule 1.07, entitled "Conflict of Interest: Intermediary," provides, in pertinent part:

> (a) A lawyer shall not act as intermediary between clients unless:
>
>      (1) the lawyer consults with each client concerning the implications of the common representation, including the advantages and risks involved, and the effect on the attorney-client privileges, and obtains each client's written consent to the common representation;
>
>      (2) the lawyer reasonably believes that the matter can be resolved without the necessity of contested litigation on terms compatible with the client's best interests, that each client will be able to make adequately informed decisions in the matter and that there is little risk of material prejudice to the interests of any of the clients if the contemplated resolution is unsuccessful; and
>
>      (3) the lawyer reasonably believes that the common representation can be undertaken impartially and without improper effect on other responsibilities the lawyer has to any of the clients.

The Gunn Lee Defendants' conduct falls squarely within this Rule.

10.      M. Villarreal advised the parties that he could assist ZroBlack, J. Villarreal and Saenz only if each party waived any and all conflicts between them.  *See* **Exhibit C (Conflict Waiver).**[4]  After this discussion, they agreed and engaged M. Villarreal in the capacity of an intermediary to help them resolve their disagreements consensually, waiving all conflicts – existing or potential – with the simultaneous representation. *See id.*; *see also* **Exhibit C.**

11.      As set forth in the Conflict Waiver, M. Villarreal advised J. Villarreal and Saenz that the Gunn Lee Defendants could assist the parties in achieving a consensual resolution of their disputes relating to ZroBlack, that they could not advise one party at the expense of the other, and that the discussions with either party would not be privileged as to the other party.  *See* **Exhibit C**.

---

[4] A true and correct copy of the Waiver of Conflict letter, dated July 15, 2019, signed by all parties involved, is attached as **Exhibit C** hereto and incorporated by reference herein.  The Waiver of Conflict letter is central to the Amended Complaint and therefore, can be considered as evidence in adjudicating this Motion to Dismiss. *See Collins*, 224 F.3d at 498-499.

Each party was provided the opportunity to retain separate counsel should they desire independent advice or wish to discuss matters privately and was strongly recommended to seek independent counsel to advise that party as to the meaning and effect of the Conflict Waiver.  *See id.*  J. Villarreal and Saenz each—both in their individual capacities and in their capacities as corporate representatives of ZroBlack—consented in writing to M. Villarreal acting as an "intermediary," as defined in Rule 1.07 of the Disciplinary Rules.  *See id.*

12.    With M. Villarreal's assistance, ZroBlack, J. Villarreal and Saenz resolved their disputes and entered into a Release.[5]  *See* Amended Complaint ¶ 72; *see also* **Exhibit D**.  The Release, dated Aug. 9, 2019, resolved all issues between all parties and included the agreed upon further subdivision of the potential future earnings percentages as between J. Villarreal and Saenz, with the lion's share of the subdivision of the potential future earnings percentages going to J. Villarreal.  **Exhibit D** at Section 2.

13.    Another month passed before ZroBlack (via J. Villarreal) or Saenz would contact M. Villarreal again concerning the PSA (now amended twice without assistance of M. Villarreal) and the Release.  *See* Amended Complaint ¶97. J. Villarreal and Saenz once again requested M. Villarreal assist in resolving their differences.  *See id.* ¶¶101-103. Several attempts were made to bring J. Villarreal and Saenz together.  *See id.*  The parties were not able to resolve their differences. *See id.* ¶103.

14.    The issues complained of by Plaintiff J. Villarreal against the Gunn Lee Defendants were not issues of dispute between the parties at the time the Release was executed.  *See, e.g.,* Amended Complaint ¶¶ 86-100 (describing disputes that arose after execution of Release).  Nor

---

[5] A true and correct copy of the Release is attached hereto as **Exhibit D**.  The Release is central to the Amended Complaint and is attached thereto as Exhibit 15 to the Appendix.  Therefore, it can be considered as evidence in adjudicating this Motion to Dismiss.  *See Collins*, 224 F.3d at 498-499.

were these issues brought to M. Villarreal's attention before the Release was executed. *See id.* ¶ 97 (first allegation that M. Villarreal was made aware of the $740,000 dispute via email dated September 13, 2019).

15.     J. Villarreal now complains that the Gunn Lee Defendants were negligent because (a) the Release did not impose certain obligations on Saenz and/or (b) Saenz has not complied with his obligations in the Release.  However, those claims are not supported by well-pleaded facts or reasonable inferences drawn therefrom.  Further, the claims are barred by law.

16.     As set forth below, even after the Court granted J. Villarreal the opportunity to amend his complaint, J. Villarreal has no cognizable claims against the Gunn Lee Defendants. Allowing J. Villarreal to amend his again pleading would be futile.  Accordingly, the Amended Complaint should be dismissed with prejudice as to all claims against the Gunn Lee Defendants.

### III.     LEGAL STANDARD

17.     Fed. R. Civ. P. 12(b)(6) codifies the complete affirmative defense that a party has failed to state a claim upon which relief can be granted.  Under the liberal pleading standards of the Federal Rules of Civil Procedure, while a complaint "does not need detailed factual allegations," the claimant's obligation to "provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). [6]

18.     The Supreme Court has further explained that

> [u]nder Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  As the Court held in *Twombly*, the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-

---

[6] Unless otherwise noted, all internal quotation marks, citations, and brackets are omitted.

> unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

19.     The Fifth Circuit has construed these standards as requiring that a complaint

> contain sufficient factual matter, if accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Anderson v. Valdez*, 845 F.3d 580, 589 (5th Cir. 2016).  This standard comports with the Supreme Court's interpretation in *Iqbal* and *Twombly* that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  In addition to the face of the Amended Complaint, the Court may consider documents that are central to the Amended Complaint, admissions made in the original Complaint, and matters in the judicial record.  The Court may consider admissions in the original complaint, even if they do not appear in the amended complaint.  *See Collins*, 224 F.3d at 498-499 (documents central to complaint); *Abraham v. Leigh,* 17-CV-5429 (KPF), 2018 WL 3639930, at *4 (S.D.N.Y. June 27, 2018) (admissions in original complaint); *Devore v. Lyons*, 3:16-CV-01083-BN, 2016 WL 6277810, at *4 (N.D. Tex. Oct. 25, 2016) (matters of public record).

20.     The Complaint does not meet the standards of Fed. R. Civ. P. 8, as interpreted by *Iqbal*, *Twombly*, and their progeny.  Furthermore, because Plaintiffs cannot plead facially plausible claims, allowing them leave to further amend their complaint would be futile.  *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012) (amendment would be futile where claims were barred as a matter of law).

## IV.    ARGUMENT & AUTHORITIES

21.     The majority of J. Villarreal's claims are asserted against Saenz, not the Gunn Lee

Defendants.  For purposes of this Motion to Dismiss, the relevant Counts in the Complaint are:

- Count 6:  Negligence Against the Gunn Law Firm (Amended Complaint, ¶¶ 200 - 221).
- Count 7:  Breach of Fiduciary Duty against the Gunn Law Firm and Michael [sic] Villarreal (*Id.*, ¶¶ 222 - 231).

22.     This Court must apply substantive Texas law to evaluate the plausibility of J.

Villarreal's claims under Count 6 and Count 7 because they are brought pursuant to this Court's

supplemental jurisdiction as permitted by 28 U.S.C. § 1367.   *See* Amended Complaint ¶ 7

(asserting supplemental jurisdiction over non-federal claims); *United Mine Workers of Am. v.*

*Gibbs*, 383 U.S. 715, 726 (1966) (under the *Erie* doctrine, federal courts exercising supplemental

jurisdiction over state law claims are "bound to apply state law" in adjudicating those claims).

23.     The relevant factual allegations from the Amended Complaint are as indicated in

the **Appendix**, attached as **Exhibit E** hereto and incorporated by reference herein.  The Court

previously granted Plaintiffs the opportunity to amend their complaint to address the defects

asserted by the Gunn Lee Defendants.  If the Court accepts the well-pleaded factual allegations as

true, and draws every reasonable inference favorable to Plaintiffs, the Court should conclude,

despite Plaintiffs' amendment, that Plaintiffs still have not – and cannot – plead plausible claims

for relief against the Gunn Lee Defendants.  Plaintiffs cannot plead plausible claims for relief and

they have already had an opportunity to amend their complaint to address the defects asserted by

the Gunn Lee Defendants.  Further amendment is not warranted. Dismissal with prejudice is

appropriate at this juncture.

**A.    Plaintiff fails to state a plausible claim against the Gunn Lee Defendants for negligence.**

24.    In Count 6,[7] J. Villarreal asserts the Gunn Lee Defendants were negligent because they allegedly failed to:

> a. Include carve-out provision in the Release that except[ed] from the Release Saenz's ongoing obligations to preserve the confidentiality of ZroBlack's trade secrets;
>
> b. Include a requirement in the Release that Saenz return all intellectual property to ZroBlack;
>
> c. Include a requirement in the Release that Saenz return all of ZroBlack's physical personal property, including the laptop computer;
>
> d. Include a requirement that Saenz release to ZroBlack the ZroBlack domain name, web page, and email server; and
>
> e. Include a requirement in the Release that Saenz return the $740,000 he took from ZroBlack.

Amended Complaint ¶ 218.

25.    Under Texas law, to state a claim for relief for attorney negligence, the plaintiff must show: "the defendant owed the plaintiff a duty, the defendant breached that duty, the breach proximately caused the plaintiff's injury, and the plaintiff suffered damages." *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 112 (Tex. 2009).

26.    Plaintiffs cannot state a plausible claim for attorney negligence based on the facts pleaded because the Amended Complaint does not contain sufficient allegations to support the necessary finding of causation, *i.e.*, that any act or omission by the Gunn Lee Defendants was the proximate cause of any injury to Plaintiffs.  Specifically, Plaintiffs cannot plausibly plead that (a) if the Gunn Lee Defendants had acted differently, Saenz would have agreed to a Release with express terms requiring the return of $740,000 and other property to ZroBlack; (b) the alleged

---

[7] Plaintiffs assert that many of the facts underlying their negligence claim are "undisputed".  Plaintiffs provide no evidentiary support for the proposition that those facts are "undisputed."   In fact, many of those allegations are "disputed" and the contention that they are "undisputed" is not a well-pleaded fact that has to be taken as true.

negligence of the Gunn Lee Defendants is the proximate cause of Plaintiffs' alleged injuries rather than the superseding actions of Saenz; or (c) Plaintiffs ever raised the issues or insisted they be included in the Release.

### 1. Plaintiffs' Amended Complaint does not sufficiently allege facts establishing that Saenz would have agreed to a Release that contained express terms requiring the return of $740,000 and other property to ZroBlack.

27.     Under Texas law, to show that a lawyer's alleged negligence was the "cause in fact" of a client's injury requires examination of the hypothetical result if the lawyer had not acted negligently. *See, e.g.*, *Rogers v. Zanetti*, 518 S.W.3d 394, 404 (Tex. 2017).  In this case, Plaintiffs must show that if the Gunn Lee Defendants had acted differently, Saenz would have (a) agreed to abide by the confidentiality obligations of ZroBlack's contracts, and (b) returned the $740,000 and other property allegedly belonging to ZroBlack, including intellectual property and the laptop computer.

28.     There is no plausible allegation of causation.  On its face, the Amended Complaint does not allege that if Gunn Lee had done anything different, Saenz would have agreed to the conditions Plaintiffs allege should have been included in the Release.  Moreover, the additional allegations of the Amended Complaint indicate that Saenz would not have agreed to those terms and/or could not have complied with them.

29.     Specifically, paragraph 32 of the Amended Complaint alleges that well before the Gunn Lee Defendants were involved in assisting with the negotiation of the Release, Saenz had spent most of the $740,000 he transferred from ZroBlack to his personal account.  The original complaint specifically pleaded that, prior to the involvement of the Gunn Lee Defendants in the dispute between J. Villarreal and Saenz, Saenz had spent a significant portion of the $740,000 on

home renovations and invested most or all of the remainder in the stock market.[8]  *See* Amended Complaint ¶ 51-52.  Additionally, Plaintiffs allege that before the involvement of the Gunn Lee Defendants, Saenz was already asking the $740,000 be treated as a "gift" for tax purposes, indicating that the money was no longer available to Saenz.  *See* Amended Complaint, ¶ 71 (alleging that Saenz asked the $740,000 be treated as a gift as early as July 2019).  Thus, the facts pleaded by Plaintiffs in the Amended Complaint and Complaint indicate that Saenz would not have agreed to return the money – or any portion of it – to ZroBlack, or that he could have complied with such an obligation even if he did agree to it.  *See Akin, Gump,* 299 S.W.3d at 112 (in a legal malpractice claim stemming from prior representation, "the plaintiff must prove and obtain findings as to the amount of damages that would have been recoverable *and collectible* if the other case had been properly prosecuted" (emphasis added)).

30.     Finally, Plaintiffs allege the consistent failure or refusal of Saenz to return to ZroBlack any of the complained of money or property.  *See, e.g.*, Amended Complaint ¶¶ 86, 87, 89, 99, 100 & 104.  Saenz's alleged repeated refusals on multiple occasions demonstrate that Saenz would not have agreed to return either the money or property and/or would not have complied with such an agreement.  The Gunn Lee Defendants could not have done anything to change that.  Nor does the Amended Complaint plausibly allege otherwise.  Thus, it is readily apparent that Plaintiffs cannot plausibly claim that Saenz would have agreed to the Release if it contained the obligations now demanded by Plaintiffs or that Saenz would have complied with such obligations if they were included in the Release.

---

[8] Dkt. No. 1, ¶ 27.

**2.   The superseding acts of Saenz preclude the plausibility of any allegation in the Amended Complaint that any alleged negligence of the Gunn Lee Defendants was the proximate cause of Plaintiffs' alleged injuries.**

31.     The Amended Complaint further maintains that when Saenz agreed to assign all his interest in ZroBlack as set forth in the Release, he was agreeing to return all property that he held on behalf of ZroBlack or arising out of his membership interest in ZroBlack.  *See, e.g.,* Amended Complaint ¶¶ 159, 181, 183.  Assuming for the sake of this Motion to Dismiss that Plaintiffs' position is correct, the failure to return tangible and intangible property as required under the terms of the Release is an intentional act by Saenz constituting a superseding cause that precludes the alleged negligence by the Gunn Lee Defendants as the proximate cause of any injury to Plaintiffs.

32.     Under Texas law, the intentional acts of a third party may be a superseding cause of the plaintiff's injury such that the allegedly negligent actor cannot be held liable to the plaintiff.  *See generally Phan Son Van v. Pena*, 990 S.W.2d 751, 752 (Tex. 1999).  Relying on section 448 of the *Restatement (Second) of Torts*, the Texas Supreme Court explained that the intentional act of a third party is a superseding cause "unless the [alleged negligent] actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit" the intentional act.  *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 550 (Tex. 1985).

33.     In *Phan Son Van*, the Texas Supreme Court recited the criteria set forth in section 442 of the *Restatement (Second) of Torts* to clarify when it should be foreseeable that a negligent act by one party would lead to intentional harmful acts by the third party.  990 S.W.2d at 754.  Several of those factors weigh in favor of finding Saenz's intentional conduct to be a superseding case of the injury asserted by J. Villarreal.

   a. *The intervening acts operated independently of any situation created by the Gunn Lee Defendants.*

34. First, as to the $740,000, as pleaded in the Complaint and the Amended Complaint, Saenz had allegedly transferred the money to his personal account (1) well before ZroBlack, J. Villarreal and Saenz came to M. Villarreal requesting assistance in resolving their difference, and (2) well before the Gunn Lee Defendants acted as an intermediary and brokered the Release.  By the time of the Release, Saenz had spent or invested the money (Amended Complaint ¶¶ 51-52), and was already asking it to be treated as a gift for tax purposes (*id.* ¶ 71), so it could not have been returned to ZroBlack, even if the Release had required it to be returned.

35. Similarly, as to the computer and intellectual property, Saenz's alleged failure or refusal to return these items is independent of any situation created by the Gunn Lee Defendants. As pleaded, Saenz threatened to "muck up" J. Villarreal's life *after* the Release had already been negotiated and signed.  *See* Amended Complaint, ¶105.  Treating this allegation as true as required by Rule 12(b)(6), it can reasonably be inferred from these pleaded facts that Saenz is purposefully refusing to comply with the requirements of the Release because J. Villarreal/ZroBlack will not characterize the $740,000 distributed to Saenz as a gift for tax purposes.

36. The Gunn Lee Defendants did not create the situation that makes it impossible for Saenz to comply with the obligation to return property (*i.e.*, they did not cause the money to be spent) nor the conditions that are allegedly motivating Saenz to willfully refuse to return property (*i.e.*, the alleged dispute over the characterization of the $740,000).  Plaintiffs could not plausibly plead otherwise.

   b. *Plaintiff's Complaint alleges independent statutory bases for Saenz's liability to Plaintiff, not simply breach of contract.*

37. Second, the Amended Complaint alleges that Saenz' conduct is independently wrongful, particularly with regard to Saenz's refusal to return the company's intellectual property.

Pertinent to this point, the Amended Complaint alleges independent statutory bases for Saenz's liability to Plaintiffs, not simply breach of contract. *See, e.g.,* Amended Complaint, Counts 1-3.

38.     Significantly, there are no allegations in the Amended Complaint that the Gunn Lee Defendants knew or should have known that Saenz would commit these alleged intentional acts (or acts like them) as a result of the Gunn Lee Defendants' alleged negligence, specifically, failing to include in the Release express provisions requiring the return of the tangible and intangible property.  In paragraph 102 of the Amended Complaint, Plaintiffs cite from an email M. Villarreal sent on September 26, 2019, indicating M. Villarreal's belief that J. Villarreal and Saenz were "both willing to work in good faith" to resolve their apparent dispute about the meaning and/or requirements of the Release.  There is no well-pleaded factual allegation or a reasonable inference that the Gunn Lee Defendants could have anticipated Saenz's alleged intentional conduct.

> ### *3.   Plaintiff's Complaint does not sufficiently allege facts establishing that Plaintiff insisted upon the inclusion of language in the Release requiring the return of the money and other property to ZroBlack or that Plaintiff deemed these issues important enough to even raise these as issues prior to or at the time the Release was executed.*

39.     As alleged, both J. Villarreal and Saenz treated the upfront payment from the Foreign Customer as their respective salaries for 2019.  *See* Amended Complaint ¶ 35.  There is no allegation in the Amended Complaint that J. Villarreal informed M. Villarreal prior to August 9, 2019 that it was imperative for the Release to address the return of the $740,000 or the laptop The only dispute of which M. Villarreal was aware prior to the negotiation and execution of the Release was the dispute about the division of future payments.  *See* Amended Complaint ¶¶ 57 – 62 (alleging prior to the drafting of the Release, M. Villarreal suggested that J. Villarreal set specific tasks for Saenz or that the CEO duties be incorporated into the ZroBlack governing documents); *id*. ¶ 72 (alleging Release provided agreed division of future payments at 2% and 14.5% for Saenz and J. Villarreal, respectively).

40.    The original disagreement between J. Villarreal and Saenz was the perceived disparity in the amount of work that was being done by each in connection with the PSA and the Foreign Customer.  *See id.* ¶¶ 43, 46 – 53.

41.    Accordingly, a substantial portion of the Release comprises compensation as between the parties.  *See* **Exhibit D** at 2 (heading entitled "**Compensation**") (providing that the parties would split Earn-Out Obligation payments "with . . . (12.5%) going to J. Villarreal and . . . (2%) going to Saenz")); *see also* Amended Complaint ¶72 (describing the split of the Earn-Out Obligation payments memorialized in the Release).   Indeed, this is consistent with what J. Villarreal was complaining of:  that Saenz was not pulling his weight in the company and, therefore, did not deserve and should not continue to be entitled to half of the 14.5% of the Earn-Out payments going forward.  *See id.*.  The Release properly and accurately memorialized and resolved the entirety of the dispute between ZroBlack, J. Villarreal and Saenz.

42.    Moreover, pursuant to the Release, each Parties released all claims, whether known or unknown, against the other Parties and others affiliated with them, including without limitation "legal representatives" and "attorneys".  *See* **Exhibit D** at 4.

43.    Based on the foregoing, Plaintiffs have not pleaded sufficient facts to support a facially plausible claim that the Gunn Lee Defendant's alleged negligence is the proximate, legal cause of any injury to Plaintiffs.  They do not plead that if the Gunn Lee Defendants had acted differently, Saenz would have agreed to the terms Plaintiffs now insist should have been included in the Release.  Plaintiffs do not contend that if Saenz had agreed to those terms, Saenz would have complied with those obligations.  Rather, the Amended Complaint sets forth factual allegations that support a finding that Saenz's failure and/or refusal to return tangible and intangible property

to ZroBlack is a superseding cause that precludes holding the Gunn Lee Defendants liable for any injury suffered by Plaintiffs.

44.     These defects were raised in the Gunn Lee Defendants' prior motion to dismiss, Dkt. 11, but the Amended Complaint still failed resolve the deficiency.  The well-pleaded facts of the Amended Complaint facially contradict any possible allegation that Saenz would have agreed to the express terms now demanded by Plaintiffs or that Saenz could have complied with those requirements if they had been agreed to and included in the Release.  The factual assertions, as currently pleaded, are insufficient to support a finding of causation against the Gunn Lee Defendants.  A second opportunity to amend (Plaintiffs' *third* bite at the apple) would be futile. The negligence claim against them (Count 6 of the Amended Complaint) warrants dismissal with prejudice pursuant to Rule 12(b)(6).

**B.  Plaintiff fails to state a plausible claim for breach of fiduciary duty as such claim violates the anti-fracturing rule and is, thus, barred under Texas law.**

45.     In Count 7 of the Amended Complaint, Plaintiffs contend the Gunn Lee Defendants breached their fiduciary duties to each of their clients – Saenz, J. Villarreal, and ZroBlack.  For the reasons set forth below, the breach of fiduciary duty claim fails as a matter of law and should be dismissed with prejudice.

*1.  The breach of fiduciary duty claim is identical to the negligence claim.*

46.     Count 7 is simply a recharacterization of the attorney negligence claim pleaded in Count 6, which is prohibited under the anti-fracturing rule.  Texas law is perfectly clear

> that a case arising out of an attorney's alleged bad legal advice or improper representation may not be split out into separate claims for negligence, breach of contract, or fraud (or any other non-negligence theory) because the real issue remains one of whether the professional exercised that degree of care, skill, and diligence that professionals of ordinary skill and knowledge commonly possess and exercise.

*Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 426–27 (Tex. App.—Austin 2009, no pet.) (brackets omitted); *see also Murphy v. Gruber*, 241 S.W.3d 689, 698 (Tex. App.—Dallas 2007, pet. denied).  As the Texas Fourth Court of Appeals further explained,

> The rule against dividing or fracturing a negligence claim prevents legal-malpractice plaintiffs from opportunistically transforming a claim that sounds only in negligence into other claims.  If the gist of a client's complaint is that the attorney failed to exercise the degree of care, skill, or diligence that attorneys of ordinary skill and knowledge commonly possess, then the legal malpractice claim is based on negligence. Such a claim encompasses a cause of action based on an attorney giving a client bad legal advice or otherwise improperly representing the client.

*Riverwalk CY Hotel Partners, Ltd. v. Akin Gump Strauss Hauer & Feld, LLP*, 391 S.W.3d 229, 236 (Tex. App.—San Antonio 2012, no pet.).

47.     The face of the Amended Complaint makes it clear that Count 7 is premised on the allegation that the Gunn Lee Defendants failed to exercise the degree of care, skill, or diligence required of attorneys.  In particular, Plaintiffs assert that the alleged "breach of fiduciary duty" resulted in an agreement between J. Villarreal and Saenz that did not accomplish what J. Villarreal contends should have been agreed to and memorialized, especially with respect to J. Villarreal's argument that Saenz could have – and should have – been made to agree to return $740,000 to ZroBlack (despite the contrary factual allegations indicated that the money had long since been spent or invested and was not available to Saenz, as discussed above) and that "put Plaintiffs in a worse position" than they were in prior to the agreements.  *See* Amended Complaint ¶¶ 228-230. As such, Count 7 is impermissible "fracturing" of the negligence claim raised in Count 6.

### 2.   The Amended Complaint does not – and cannot – assert an independent basis for a breach of fiduciary duty claim separate from the negligence claim.

48.     There are no factual allegations that would support a breach of fiduciary duty claim independent of the negligence claim.  There is no well-pleaded allegation that the Gunn Lee

Defendants subordinated the client's interest to their own, retained client funds, engaged in self-dealing, improperly used client confidences, or made misrepresentations to achieve those ends, all of which could give rise to an independent breach of fiduciary duty claim.  *See id.* (citing *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 923 (Tex.App.-Fort Worth 2002, pet. denied).).

49.     Failing to disclose conflicts of interest *may* give rise to an independent claim for breach of fiduciary duty. *See id.* However, Plaintiffs judicially admitted that the potential conflict was expressly disclosed to both J. Villarreal and Saenz in both their individual capacities and in their capacities as corporate representatives of ZroBlack.   *See* Complaint ¶ 32; **Exhibit C**.[9] Moreover, "[u]nlike conflicts of interest between jointly represented clients, the types of conflicts of interest which could give rise to a breach of fiduciary duty are those in which the lawyer has a direct pecuniary interest in the litigation that is adverse to the client, and the attorney pursues his own interest to the client's detriment."  *Riverwalk CY Hotel Partners*, 391 S.W.3d at 236 (citing *Beck*, 284 S.W.3d at 436); *see also Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 436 (Tex. App.—Austin 2009, no pet.) (listing cases in which attorneys were found to have direct financial conflicts with the clients, which the attorneys did not disclose, such that independent claims for breach of fiduciary duty could proceed).  Therefore, even if there was a conflict that could not be waived effectively by the jointly represented clients, which the Gunn Lee Defendants do not concede, such conflict does not give rise to an independent claim for breach of fiduciary duty under Texas law.

---

[9] In the Amended Complaint, Plaintiffs maintain that "there was never a meaningful waiver of conflict" but that bare conclusion is not supported by any specific factual allegations and need not be taken as true for purposes of this motion to dismiss.

### 3. *Fabrications do not a well-pleaded allegation make.*

50.     The Amended Complaint alleges that M. Villarreal had a "cozy" relationship with Saenz and the Gunn Lee Defendants were discounting Saenz' share of the fees while charging J. Villarreal his full share.  *See* Amended Complaint ¶ 108-109.  These allegations are false.  There is no evidentiary support for this statement.  J. Villarreal's affidavit even states that "M. Villarreal failed to disclose the extent of his relationship with Saenz," but contains no explanation or evidence of that supposed close relationship.  *See* Dkt. 35-2, ¶ 52.  Yet, from fabricated allegations, Plaintiffs then extrapolate the accusation that the Gunn Lee Defendants favored Saenz to protect the Firm's financial interest in an ongoing relationship with Saenz.  The Court need not "strain to find inferences favorable to the plaintiff" and therefore, "to avoid a dismissal for failure to state a claim, a plaintiff must plead specific facts." *Greater Houston Transp. Co. v. Uber Techs.*, Inc., 155 F. Supp. 3d 670, 681 (S.D. Tex. 2015).  This conclusory allegation does not constitute a "well-pleaded" allegation that the Court must treat as true.  *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

51.     Here, the pertinent allegations are simply conclusory and false.  Plaintiffs' incorrect conclusions are wholly unsupported by any other well-pleaded facts in the Complaint.  There are no specific allegations, for example, that the Gunn Lee Defendants had previously represented Saenz in a particular matter or that Saenz recommended the Gunn Lee Defendants because he had worked with them previously.  Moreover, the Engagement Letter (**Exhibit A**) sets out that ZroBlack was the original client.  And the Conflict Waiver (**Exhibit C**) notes that Plaintiffs and Saenz ***together*** requested the assistance of the Gunn Lee Defendants in resolving issues between them provided the appropriate safeguard, *e.g.*, waiver of conflict, was in place.  In other words, the incorrect assumption that the Gunn Lee Defendants had a prior relationship with Saenz that

caused them to favor Saenz in connection with the Release is a naked conclusion not supported by any well-pleaded facts.  Therefore, the Court should not accept it is as true for purposes of adjudicating the Motion to Dismiss.

52.     Similarly, Plaintiffs have no direct knowledge of the Gunn Lee Defendants' billing practices.  The allegation that the Gunn Lee Defendants charged Saenz less than they charged Plaintiffs is not based on any other evidence or specific allegations.  It is an untrue, bare conclusion that the Court does not need to accept as true for purposes of the Motion to Dismiss.  Moreover, the Engagement Letter (**Exhibit A**) illustrates the falsity (implausibility) of this allegation as any invoices for service performed were sent to the client, *i.e.*, ZroBlack, named in the Engagement Letter.  How ZroBlack decided to pay the invoices or allocate the obligation amongst its members was beyond the control of the Gunn Lee Defendants.

53.     The unsupported (and untrue) allegation that the Gunn Lee Defendants discounted the fees charged to Saenz, but charged J. Villarreal their full fees, does not give rise to a separate claim for breach of fiduciary duty.  Based on the face of the Amended Complaint, it is apparent that Plaintiffs' claim denominated as "breach of fiduciary duty" is, in substance, an allegation that the Gunn Lee Defendants failed to properly advise and inform the Plaintiffs in connection with the Release.  *See, e.g.*, Complaint ¶32.  Under Texas law, that claim is a claim for professional negligence, not breach of fiduciary duty.

54.     Notably, the Amended Complaint does not allege that any conflict between J. Villarreal and Saenz was not waivable.  Indeed, J. Villarreal admits he signed the Waiver of Conflict.  *See* Complaint ¶ 32; **Exhibit C** (Waiver of Conflict).

55.     Additionally, while the Amended Complaint recites that the Gunn Lee Defendants' fiduciary duty required them to put the interests of the client above their own interests, there are

no factual allegations that the Gunn Lee Defendants pursued their own interests at the expense of their clients.  Any such claim fails to meet even the liberal pleading standard of Fed. R. Civ. P. 8.

### 4. The Gunn Lee Defendants acted as an intermediary between J. Villarreal, ZroBlack, and Saenz, in conformance with Disciplinary Rule 1.07.

56.     Finally, the joint representation in this instance meets the criteria under which an attorney may act as an intermediary to assist potentially adverse parties in consensually resolving their dispute:  (a) each party provides written consent after consultation with the lawyer, (b) the lawyer reasonably believes that the matter can be resolved without litigation on terms compatible with the client's best interests, and (c) the lawyer reasonably believes that the common representation can be undertaken impartially and without improper effect on other responsibilities the lawyer has to any of the clients.

57.     As to the first criterion, the Conflict Waiver – signed by each party individually and as a member of ZroBlack – establishes that the Gunn Lee Defendants advised the parties of the advantages and disadvantages of joint representation, including the effect on attorney-client privilege.  *See* **Exhibit C** (Conflict Waiver).

58.     As to the second criterion, the Amended Complaint is devoid of any well-pleaded facts indicating that it was unreasonable for M. Villarreal to believe that the disputes between J. Villarreal and Saenz could be resolved without litigation in a manner compatible with the parties' best interests.  Bare, conclusory statements, such as those contained in paragraph 68 of the Amended Complaint, do not constitute "well pleaded facts" for purposes of Rule 12(b)(6). *See Plotkin*, 407 F.3d at 696 (when adjudicating a motion to dismiss, the court does not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions").

59.     Indeed, the well-pleaded facts of the Amended Complaint support an inference that it was reasonable for the Gunn Lee Defendants to believe that the parties could achieve a

consensual resolution that served each parties' interests.  Prior to engaging the Gunn Lee Defendants as an Intermediary, J. Villarreal and Saenz had already determined that they needed to terminate their business relationship.  *See, e.g.*, Amended Complaint ¶ 67.  The only question was how best to accomplish the business divorce.  The well-pleaded facts of the Amended Complaint do not support a finding that either party was unable to make adequately informed decisions.

60.     Additionally, the well-pleaded facts of the Amended Complaint do not support a finding that either party would have been materially prejudiced if the parties were unable to reach a consensual resolution through the efforts of the intermediary.  Specifically, the negotiations between the parties took place just a few months after the actions complained of, well within the statute of limitations for any claims that J. Villarreal, ZroBlack, and Saenz had against each other. Therefore, if the parties had been unable to reach a consensual resolution, their positions would not have been materially prejudiced.

61.     Finally, as to the third criterion, there are no well-pleaded factual allegations that support a finding that the Gunn Lee Defendants could not have reasonably believed that they could act impartially in the representation.  The Amended Complaint alleges that M. Villarreal had a "cozy" relationship with Saenz and the Gunn Lee Defendants were discounting Saenz' share of the fees while charging J. Villarreal his full share.  *See* Amended Complaint ¶ 109.  As addressed above, this conclusory allegation does not constitute a "well-pleaded" allegation that the Court must treat as true.

62.     Furthermore, even if the Court did accept as true the unfounded allegations in the Complaint that the Gunn Lee Defendants had an undisclosed pre-existing relationship with Saenz and/or that the Gunn Lee Defendants billed Saenz less, those allegations are insufficient to support a plausible claim for a discrete breach of fiduciary duty claim under Texas law.

63.     Based on the foregoing, the Gunn Lee Defendants' representation of J. Villarreal and Saenz as an Intermediary to facilitate the consensual termination of their business relationship falls squarely within Disciplinary Rule 1.07 and does not present an impermissible conflict of interest that could give rise to an independent claim for breach of fiduciary duty under Texas law.

64.     The claim for breach of fiduciary duty asserted in Count 7 is an impermissi9ble attempt to fracture Plaintiffs' negligence claim.   Count 7 is barred as a matter of law.   Plaintiffs cannot allege any plausible facts to support this claim.   Claim 7 should be dismissed with prejudice.

## V.     ADDITIONAL AMENDMENT OF THE COMPLAINT WOULD BE FUTILE.

65.     Plaintiff's claims against the Gunn Lee Defendants (*i.e.*, Counts 6 and 7) fail because the Amended Complaint lacks any factual basis to support a claim for negligence or for breach of fiduciary duty.   The former lacks any plausible factual allegations to support the necessary finding that any act or omission by the Gunn Lee Defendants was the proximate cause of any injury to Plaintiffs.   The latter is barred as a matter of law under the anti-fracturing rule. This is not a situation where Plaintiffs inadvertently may have not alleged an element of his cause of action or provided too little of the applicable factual background.   There is simply no factual basis for Plaintiff's causes of action.   Plaintiffs had an opportunity to address these defects, but the Amended Pleading still does not state plausible claims for relief.   Further amendment of Plaintiffs' Complaint would be futile because no rephrasing of the applicable facts as alleged could make Plaintiffs' claims plausible.   *Pisharodi v. Columbia Valley Healthcare Sys., L.P.*, 615 F. App'x 225, 226 (5th Cir. 2015) (stating that "an amendment is futile if it would fail to state a claim upon which relief could be granted") (internal quotation omitted).   Consequently, Plaintiffs' claims as to the Gunn Lee Defendants should be dismissed with prejudice.

## VI.    CONCLUSION

66.    Plaintiffs failed to satisfy their pleading burden.  The Amended Complaint does not – and cannot – assert facially plausible claims for relief against the Gunn Lee Defendants. Plaintiffs' claim of negligence (Count 6) suffers from fatal defects as to the element of causation. First, the Amended Complaint does not contain the necessary assertions that a different result could have been achieved if the Gunn Lee Defendants had acted differently.  To the contrary, the well-pleaded facts of the Amended Complaint indicate that the results Plaintiffs now envision could not have been realized under the factual circumstances as pleaded in the Amended Complaint.  Second, the Amended Complaint contains factual allegations that, if taken as true, establish Saenz's independent, intentional conduct as a superseding cause of the injuries complained of, such that the Gunn Lee Defendants cannot be held liable.  These defects cannot be cured by further amending the Amended Complaint.  Count 6 should be dismissed with prejudice.

67.    Additionally, the claim for breach of fiduciary duty asserted in Count 7 is simply a re-casting of the negligence claim in Count 6, which violates the anti-fracturing rule and, thus, is barred under Texas law.  There are no allegations in the Amended Complaint that give rise to an independent breach of fiduciary duty that would be recognized under Texas law.  As with Count 6, there is no possibility that Count 7 could be amended to state a plausible claim for relief. Therefore, Count 7 should also be dismissed with prejudice.

WHEREFORE, PREMISES CONSIDERED, the Gunn Lee Defendants respectfully pray that the Court enter an order dismissing Count 6 and Count 7 with prejudice, order that the Plaintiffs take nothing from the Gunn Lee Defendants, and for such other relief to which they are entitled at law or equity.

Dated February 4, 2021.

Respectfully submitted,

/s/ *Natalie F. Wilson*
**LANGLEY & BANACK, INCORPORATED**
745 E. Mulberry, Suite 700
San Antonio, Texas 78212
(210) 736-6600 Telephone
(210) 735-6889 Telecopier
Email:  nwilson@langleybanack.com

GEORGE H. SPENCER, JR.
State Bar No. 18921001
NATALIE F. WILSON
State Bar No. 24067769

COUNSEL TO MIGUEL VILLARREAL, JR., and
GUNN, LEE & CAVE, PC

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 4, 2021, a true and correct copy of the above and foregoing instrument was served via the Court's electronic transmission facilities and via electronic on:

| | |
|---|---|
| Steven A. Castello<br>scastello@vethanlaw.com<br>Joseph L. Lanza<br>jlanza@vethanlaw.com<br>Charles M.R. Vethan<br>cvethan@vethanlaw.com<br><br>VETHAN LAW FIRM<br>11459 Huebner Road, Suite 101<br>San Antonio, TX 78230<br>210-824-2220<br>Fax: 713-526-2230<br><br>Counsel to Plaintiffs | David A. Vanderhider<br>dvanderhider@dykema.com<br>Ryan J. Sullivan<br>rsullivan<br><br>DYKEMA COX SMITH<br>112 E. Pecan Street - Suite 1800<br>San Antonio, TX 78205<br>210-554-5484<br>Fax: 210-226-8395<br><br>Counsel to Defendant John Saenz |

/s/ *Natalie F. Wilson*
NATALIE F. WILSON