## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JONATHAN VILLAREAL,** | § | |
| **individually and derivatively on behalf of** | § | |
| **ZROBLACK LLC,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 5:20-CV-00571-OG** |
| | § | |
| **JOHN SAENZ; MIGUEL VILLAREAL,** | § | |
| **JR.; and GUNN, LEE & CAVE, P.C.,** | § | |
| **Defendants.** | § | |

---

### DEFENDANT JOHN SAENZ'S MOTION TO DISMISS
### PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT AND APPLICATION FOR
### SEIZURE, TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION,
### AND PERMANENT INJUNCTIVE RELIEF

---

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant John Saenz ("Saenz") hereby submits this Motion to Dismiss Plaintiff's First Amended Verified Complaint (the "Complaint") filed at ECF No. 33 (sealed) and ECF No. 35 (redacted), and Plaintiff's First Amended Application for Seizure, Temporary Restraining Order, Preliminary Injunction, and Permanent Injunctive Relief (the "Application") filed at ECF No. 34 (sealed), ECF No. 35-1 (redacted), and ECF No. 37 (redacted).

### INTRODUCTION

The Complaint alleges that ZroBlack is an entity formed between Plaintiff and Saenz to monetize Plaintiff's expertise in accessing data remotely and the software code created to that effect. Compl. (ECF No. 35) at ¶¶1, 22. Saenz, in turn, successfully performed his business role by securing a lucrative contract with the Foreign Customer,[1] which Plaintiff had previously pursued to no avail.

---

[1] In the Original Complaint, Plaintiff referred to ZroBlack's foreign customer as the "Foreign Customer." In its redacted First Amended Complaint, Plaintiff redacted the name of the same Foreign Customer. For ease of reference and because of Plaintiff's redactions, Saenz maintains the reference to "Foreign Customer" in this document.

Compl. at ¶¶18-19, 22, 29-30; Company Agreement (ECF No. 35-4) (ZroBlack was formed with Saenz as a 50% owner on January 14, 2019); PSA with Foreign Customer (ECF No. 35-8) (contract Saenz signed on behalf of ZroBlack effective April 15, 2019, with $1.5 million payment to ZroBlack up front and continuing earn-out payments thereafter).

The basis for Plaintiff's claims against Saenz now, however, is that Plaintiff and ZroBlack are allegedly unable to do *any* business because Saenz remains in possession of a singular laptop and continues to have access to a GoDaddy account that housed the zroblack.com website and email "server"[2]—each of which were known by Plaintiff to be in Saenz's possession long before he and Saenz agreed to part ways via a comprehensive release agreement. Compl. at ¶¶2–5, 21–22, 27. At the same time, the Complaint alleges that ZroBlack continues to move forward with its Foreign Customer in pursuing (reasonably probable) contracts with other third parties related to the software code—code that apparently *became the proprietary information of* the Foreign Customer per the terms of the PSA—despite Plaintiff not having access to the subject laptop, website or email account for over 16 months. Compl. at ¶¶40, 118. These conflicting allegations make clear that Plaintiff has not been precluded from doing business and has not sustained any damages caused by Saenz. Rather, the reality is that, "soon after" securing the contract with the Foreign Customer with the result that the proprietary information no longer could be sold by ZroBlack, Plaintiff realized Saenz's business marketing role was no longer necessary and informed Saenz that he wished to dissolve the company. Compl. at ¶¶43, 53. Now, long after Saenz agreed to Plaintiff's demand to part ways and to settle their

---

[2] For clarification purposes, the email "server" referenced throughout the Complaint and Application is more accurately described as an email subscription service (rather than a physical device) hosted by GoDaddy. Decl. of J. Villareal (ECF No. 35-2) at ¶10 ("GoDaddy hosted ZroBlack's website and email server.").

differences via a comprehensive release, Plaintiff inexplicably brings this lawsuit in an attempt to set aside the terms of their arms-length transaction.

However, because the release broadly encompasses and precludes Plaintiff's claims in their entirety, and additionally because the allegations in the Complaint fail to state a claim for which relief can be granted, the Complaint should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND

The present dispute arises out of a business, ZroBlack, LLC ("ZroBlack"), that was jointly founded by Saenz and Plaintiff. Compl. at ¶¶20–23. Saenz and Plaintiff were the only two members of ZroBlack, each owning fifty percent. Compl. at ¶22. Plaintiff provided technical expertise, while Saenz served as Chief Executive Officer and handled business marketing, negotiations, and financial matters. Compl. at ¶¶20, 22. After successfully securing a large contract with the Foreign Customer, Saenz and Plaintiff began to disagree regarding ZroBlack. Compl. at ¶¶19, 20, 29-30, 43. To resolve their disagreements, Saenz, Plaintiff, and ZroBlack entered into a written release ("Release"). Compl. at ¶72–75, 82; *see also* Release (ECF No. 35-16).

Pursuant to the Release, Saenz and Plaintiff agreed to split certain future earn-out payments from the Foreign Customer at a rate of 12.5/14.5 going to Plaintiff, and 2/14.5 going to Saenz. Compl. at ¶72; Release at § 2. Most importantly, Saenz, Plaintiff, ***and ZroBlack*** fully released each other "from all claims and demands, known or unknown":

> Each Party hereby fully releases the other Parties from all claims and demands, known or unknown. Each Party understands that, as to claims that are known to that Party when the release is signed, any statutory provisions that would otherwise apply to limit this general release are hereby waived. Each Party also understands that this release extends to claims and demands that are not known at the time this release is signed. This release additionally applies to each Party's heirs, legal representatives, attorneys, assignees, owners, members, managers, directors, employees, spouses, and successors, and is binding on each Party's heirs, legal representatives, attorneys, assignees, owners, members, managers, directors, employees, spouses, and

successors. Each Party represents that it has not assigned any such claims or demands against the other Parties.

Release at § 7. Saenz and Plaintiff signed the Release on August 9, 2019, both on behalf of themselves individually and as members of ZroBlack. Release at p.6.

Now, months after signing the Release, Plaintiff asserts nine claims against Saenz: (1) misappropriation of trade secrets, (2) computer fraud and abuse, (3) violation of the Anti-Cybersquatting Consumer Protection Act, (4) breach of contract, (5) breach of fiduciary duties, (6) tortious interference with prospective relations, (7) conversion, (8) theft, and (9) fraud. Compl. at ¶¶137-199, 232-262. Plaintiff further seeks a declaration that the ZroBlack Operating Agreement and Release be set aside for fraud, illegality, and/or mutual mistake, as well as injunctive relief in the form of seizure of Saenz's computer, a temporary restraining order, a preliminary injunction, and a permanent injunction. Compl. at ¶¶263-66; Application at ¶153 (ECF No. 35-1).

In particular, Plaintiff alleges four actions by Saenz that form the factual basis for each of the claims asserted in the Complaint and the entirety of the Application: (1) Saenz maintains possession of a laptop that is allegedly the property of ZroBlack; (2) Saenz allegedly maintains access to and/or control of the zroblack.com webpage and email "server"; (3) Saenz received $740,000 from a shared ZroBlack account; and (4) prior to forming ZroBlack, Saenz allegedly misrepresented to Plaintiff his skills, experience and connections. Compl. at ¶¶2-5, 20, 67, 150, 261; Application at ¶¶2-5, 12, 27, 73, 87, 89. As discussed further below, each of the complained-of actions and claims are subject to the Release, which bars each of Plaintiff's claims. Release at § 7. Additionally, and in the alternative, even if the parties had not fully released each other from all claims and demands and even after obtaining leave to replead, Plaintiff fails to state claims upon which relief can be granted. Accordingly, the Complaint and Application should be dismissed with prejudice.

## **ARGUMENT**

Federal Rule of Civil Procedure 12(b)(6) serves as a defense to pleadings that "fail[] to state a claim upon which relief may be granted." To survive dismissal pursuant to Rule 12(b)(6), a complaint's factual allegations must consist of more than mere speculation. *Malik v. Cont'l Airlines, Inc.*, 305 F. App'x 165, 167 (5th Cir. 2008). Dismissal of a complaint "is appropriate when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face and has failed to raise a right to relief above the speculative level." *Shakeri v. ADT Sec. Servs.*, 816 F.3d 283, 290 (5th Cir. 2016). A court need not accept a plaintiff's "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Flying Crown Land Grp. v. Reed*, No. 3:15-CV-1225-M, 2015 U.S. Dist. LEXIS 104978, at *2 (N.D. Tex. Aug. 11, 2015).

## I.     THE RELEASE IS A COMPLETE BAR TO PLAINTIFF'S CLAIMS.

The Court should dismiss the Complaint and Application as to Saenz because the Release bars Plaintiff's claims.[3] Courts in the Fifth Circuit recognize "the strong policy favoring the resolution of disputes among opposing parties." *Martin v. Brown Sch. Educ. Corp.*, No. 3:02-CV-0144-G, 2003 U.S. Dist. LEXIS 3942, at *18 (N.D. Tex. Mar. 14, 2003); *see also Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 373 (5th Cir. 2002) ("Public policy favors voluntary settlement of claims and enforcement of releases."). To that end, the Fifth Circuit has explained that "settlement agreements and releases are a complete bar to any later action based on matters included therein." *White v. Grinfas*, 809 F.2d 1157, 1160 (5th Cir. 1987).

The rules of contract interpretation apply to releases, such as the Release at issue here. *See URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018). Courts must give effect to a contract's

---

[3] The one exception to the Release's complete bar on all claims is a claim for breach of the Release itself. Though Plaintiff claims Saenz breached the Release, this claim fails for the reasons discussed in Section III.D herein.

clear terms as they are written. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) ("When construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent."). Courts may not "interpolate or . . . eliminate terms of material legal consequence." *Dahlberg v. Holden*, 238 S.W.2d 699, 701 (Tex. 1951). A party to a contract is presumed to know its terms. *Perez v. Lemarroy*, 592 F. Supp. 2d 924, 933 (S.D. Tex. 2008) ("Parties to a contract have an obligation to protect themselves by reading what they sign and, absent a showing of fraud, cannot excuse themselves from the consequences of failing to meet that obligation. Generally, a party who signs a contract is presumed to know its contents.").

Therefore, a release is enforceable even if it is "broadly worded." *Southmark Corp. v. FDIC*, No. 96-11578, 1998 U.S. App. LEXIS 40474, at *9 (5th Cir. Apr. 20, 1998); *see also Chaplin*, 307 F.3d at 373 ("[A] general release of 'any and all' claims applies to all possible causes of action" unless a statute specifically and expressly requires a release to mention the statute for the release to bar a cause of action under the statute). Texas law "does not require particularized enumeration or detailed description" of released claims. *Stinnett v. Colo. Interstate Gas Co.*, 227 F.3d 247, 255 (5th Cir. 2000). A claim is subject to a release as long as the claim falls "within the express contemplation of the release provision when viewed in context of the contract in which the release provision is contained." *Id.* Thus, "a general release that is not limited to a specific cause of action or occurrence, and broadly releases all claims and causes of action between two parties, is valid and enforceable." *Southmark*, 1998 U.S. App. LEXIS 40474, at *11.

Here, Plaintiff, Saenz, and ZroBlack each undisputedly executed the Release, which is not limited to any particular causes of action and, instead, fully and broadly releases each of them "from all claims and demands, known or unknown." Release at §7. Though the Release broadly releases all claims and causes of action between Plaintiff, Saenz, and ZroBlack, it is nonetheless a

valid and enforceable agreement, as parties are not required to enumerate released claims with particularity or with a detailed description. *See Chaplin*, 307 F.3d at 373.

Thus, the scope of the Release is sufficiently broad to encompass all claims in existence, whether or not then known by Plaintiff. To this point, the Complaint and Application are based on four general factual allegations:

1) Saenz maintains possession of a laptop that is allegedly the property of ZroBlack. *See* Compl. at ¶¶158–59 (Count I based on Saenz's "continued possession" of the laptop); *id*. at ¶169 (Count II based in part on Saenz's "withholding of the computer"); *id*. at ¶181 (Count IV based in part on Saenz's possession of laptop); *id*. at ¶244 (Count VIII based in part on possession of laptop); *id*. at ¶250 (Count IX based entirely on Saenz's possession of laptop); *id*. at ¶255 (Count X based entirely on Saenz's possession of laptop); *id*. at ¶262 (Count XI based in part on Saenz's possession of software on laptop); Appl. at ¶¶45, 47, 52, 67, 68, 74, 81, 89, 93, 153 (request for seizure and other injunctive relief based on Saenz's possession of laptop);

2) Saenz allegedly maintains access to and/or control of the zroblack.com domain information, *e.g.*, webpage and email "server." *See* Compl. at ¶164 (Count II); *id*. at ¶¶177–78 (Count III); *id*. at ¶181 (Count IV); *id*. at ¶194-95 (Count V); *id*. at ¶243 (Count VIII); Appl. at ¶153;

3) Saenz refuses to give $740,000 to ZroBlack. *See* Compl. at ¶183 (Count IV); *id*. at ¶196-97 (Count V); and

4) Saenz allegedly misrepresented his skills, experience, and connections to Plaintiff prior to forming ZroBlack. *See* Compl. at ¶¶257, 259, 261-62 (Count XI based on Saenz's alleged misrepresentations).

As set forth in more detail below, the Complaint makes clear that, long before the Release was negotiated and signed, Saenz had already: (1) purchased and assumed control over the subject laptop (Compl. at ¶27), (2) established and assumed control over the subject zroblack.com domain, inclusive of the webpage and email (Compl. at ¶21), (3) received his portion of the upfront payment ($740,000.00) from the PSA with the Foreign Customer (Plaintiff also receiving his portion) (Compl. at ¶¶35, 46, 53), and (4) allegedly made false representations regarding his business experience and government contacts (Compl. at ¶¶20, 149, 257, 276-78). Even more telling is that the Complaint acknowledges that Plaintiff had *actual knowledge* of each of the foregoing at the

time of the Release by alleging that "[t]he Consent is part of the Release and [despite no such language existing] requires return of the money, the computer and trade secrets, and the domain name, webpage, and email server." Compl. at ¶78.

Accordingly, the Release is a complete bar to Plaintiff's claims, the underlying bases for which already existed at the time of signature. Indeed, Plaintiff correctly points out that the Release, which was negotiated and entered into because of these precise disputes between Plaintiff and Saenz, "made no express provision for the return of the $740,000 to ZroBlack, . . . no express requirement that Saenz return property to ZroBlack, . . . [and] did not have an express provision requiring the return of ZroBlack's domain name, webpage, and email server." Decl. of J. Villareal (ECF No. 35-2) at ¶33. The reason for this is that the parties instead chose to resolve their differences by releasing each other from "*all* claims and demands, known or unknown." Release at § 7 (emphasis added).

Saenz respectfully submits that the Court should recognize the public policy favoring finality in the "voluntary settlement of claims and enforcement of releases," *Chaplin*, 307 F.3d at 373, and enforce the Release's comprehensive bar against all claims and demands, known or unknown, by Plaintiff and ZroBlack against Saenz. For these reasons, the Complaint and Application should be dismissed with prejudice as to Saenz in their entirety.

**A. Plaintiff released Saenz from all claims and demands based upon Saenz's possession of the laptop.**

The Court may not grant relief based on Saenz's possession of the laptop because Plaintiff knew Saenz possessed the laptop when Plaintiff signed the Release. Since at least May 2, 2019, Plaintiff has known that Saenz purchased the laptop and maintained its possession. *See* May 2, 2019 email from J. Saenz (ECF No. 35-6) at pp. 1–6. Plaintiff further knew that the laptop allegedly contains "trade secrets." Decl. of J. Villareal at ¶¶14-15, 45. Therefore, when Plaintiff released

Saenz from "all claims and demands, known or unknown," he knew that Saenz purchased and possessed the laptop and that, according to Plaintiff, it allegedly contained "trade secrets." Release at § 7.

Plaintiff may not now obtain relief from this Court based on a known claim subject to the Release. *See Chaplin*, 307 F.3d at 373, 376 (affirming summary judgment based on broad release language). Even if Plaintiff had not known that Saenz possessed the laptop, the Release would still bar relief because the Release broadly encompasses "all claims and demands, known and unknown." Release at §7 ("Each Party also understands that this release extends to claims and demands that are not known at the time this release is signed."). Thus, Plaintiff is not entitled to any relief based on Saenz's possession of the laptop for two independent reasons: (1) Plaintiff is seeking relief from this Court based on a known claim subject to the Release, and (2) the Release broadly bars all claims and demands, known and unknown.

### B. Plaintiff released Saenz from all claims and demands based upon Saenz's alleged access to and/or control of the zroblack.com website and/or email.

The Court may not grant relief based on Saenz's alleged access to and/or control of the zroblack.com domain, inclusive of the website and email, because Plaintiff knew Saenz had access to and/or control of the same when Plaintiff signed the Release. Pursuant to Plaintiff's own declaration, Plaintiff knew that Saenz had access to the zroblack.com website and email since January 2019. Decl. of J. Villareal at ¶10 ("Saenz agreed to purchase ZroBlack's domain name, zroblack.com, from GoDaddy …. [O]n January 11, 2019, Saenz reserved ZroBlack's domain name, www.zroblack.com, from GoDaddy on behalf of ZroBlack …. GoDaddy hosted ZroBlack's website and email server."). Thus, when Plaintiff signed the Release, he knew that Saenz purchased and held the zroblack.com website and email from GoDaddy yet did not think it was necessary to require the return of the same. *See* Compl. at ¶¶74–75. The Release therefore bars

Plaintiff's claims based on Saenz's access to or control of the zroblack.com website and/or email. *See Chaplin*, 307 F.3d at 373, 376. Moreover, even if Plaintiff had not known that Saenz held the zroblack.com website or email, the Release would still bar relief because its broadly encompasses "all claims and demands, known and unknown." Release at § 7.

Thus, Plaintiff is not entitled to any relief based on Saenz's alleged control of or access to the zroblack.com website and/or email for two independent reasons: (1) Plaintiff is seeking relief from this Court based on a known claim subject to the Release, and (2) the Release broadly bars all claims and demands, known and unknown.

### C. Plaintiff released Saenz from all claims and demands based upon Saenz's receipt and possession of $740,000.

The Court may not grant relief based on Saenz's alleged refusal to return money to ZroBlack because the dispute regarding money predates the Release. In April 2019, after the Foreign Customer paid ZroBlack $1.5 million, ZroBlack distributed $740,000 each to Plaintiff and Saenz. Compl. at ¶¶31-34; *see also* ECF No. 35-9. Plaintiff's own declaration reveals that Plaintiff had "concerns" about Saenz's receipt of these funds prior to July 2019. Decl. of J. Villareal at ¶¶26-27. Plaintiff and Saenz discussed their dispute concerning Saenz's receipt of $740,000 in June and July 2019. *Id*. at ¶¶30-31; *see also* text messages (ECF No. 35-28, ECF No. 35-12). Only after Plaintiff and Saenz disagreed on how to qualify the $740,000 payment to Saenz did "the two members decide[] it was time to part ways." Compl. at ¶67. Therefore, Plaintiff's claims concerning Saenz's receipt of funds were indisputably "known" to Plaintiff when he signed the Release in August 2019, and the Release bars all claims based upon Saenz's receipt and possession of $740,000. *See Chaplin*, 307 F.3d at 373, 376 (affirming summary judgment based on broad release language).

Thus, Plaintiff is not entitled to any relief based on Saenz's alleged refusal to return money to ZroBlack for two independent reasons: (1) Plaintiff is seeking relief from this Court based on a known claim subject to the Release, and (2) the Release broadly bars all claims and demands, known and unknown.

### D. Plaintiff released Saenz from all claims and demands based upon Saenz's alleged misrepresentation of his experience and/or business contacts.

The Court may not grant relief based on Saenz's alleged misrepresentations to Plaintiff regarding his business experience and/or contacts because such alleged communications predate the Release, and indeed Plaintiff's business relationship with Saenz altogether. The Complaint and Plaintiff's own declaration allege that Saenz represented "he had the business experience and government contacts to market the technology to the government" and that "he could use his 'contacts' in the military and technology business sectors to bolster sales" prior to ZroBlack even being formed to market the subject software to the Foreign Customer. Compl. at ¶¶276-278; Decl. of J. Villareal at ¶9. Thereafter, in June and July 2019, Plaintiff expressed concerns about Saenz's alleged lack of performance and alleged inability or refusal to work for ZroBlack, and the parties then decided to "part ways." Decl. of J. Villareal at ¶¶ 26, 31-32; *see also* Coml. at ¶43. Plaintiff also contends that, in July 2019, Saenz was told that he had breached his fiduciary duty to ZroBlack. Compl. at ¶58. Accordingly, Plaintiff's claims concerning Saenz's alleged misrepresentations were indisputably "known" to Plaintiff when he signed the Release in August 2019, and the Release bars all claims based upon such alleged representations. *See Chaplin*, 307 F.3d at 373; *Wright v. Sydow*, 173 S.W.3d 534, 546 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) ("[Plaintiffs] cannot establish their fraud claim because they knew about the alleged fraudulent acts before they executed the Settlement Agreement.").

Thus, Plaintiff is not entitled to any relief based on Saenz's alleged misrepresentations to Plaintiff for two independent reasons: (1) Plaintiff is seeking relief from this Court based on a known claim subject to the Release, and (2) the Release broadly bars all claims and demands, known and unknown.

## II.   THE OPERATING AGREEMENT AND RELEASE ARE NOT VOID OR VOIDABLE AND SHOULD NOT BE SET ASIDE.

Plaintiff asks the Court to: (1) set aside an "Operating Agreement" on the basis that it was induced by fraud, thereby allegedly voiding Saenz's prior interest in ZroBlack, and (2) also set aside the Release due to an alleged violation of the Texas Professional Rules of Disciplinary Conduct by Saenz's co-defendants and/or because of an alleged mutual mistake. Compl. at ¶¶265-66, 282, 300, 302.

The sole basis by which Plaintiff asks the Court to set aside the Operating Agreement due to fraud is the allegation that Saenz did not have the skill, experience, or contacts to act as the CEO of ZroBlack despite alleged representations to the contrary. Compl. at ¶¶268-69, 274, 276; Operating Agreement (ECF No. 35-4). Such representations, to the extent they could have been made, necessarily would have been made at or near the time ZroBlack was formed and before the Release, and are thus covered by the Release. Compl. at ¶¶276-278; Decl. of J. Villareal at ¶9 (alleging that in December 2018, Saenz claimed he could fill "voids" and represented that he had the experience and contacts to market the technology to the government"); *Id.* at ¶¶ 26-28, 31-32 (Plaintiff expressing concerns in June and July 2019 about Saenz's alleged failures and alleged inability or refusal to work for ZroBlack); Release (executed on August 9, 2019). Accordingly, any complaints about the formation of, or inducement for, the Operating Agreement were released.

Plaintiff's argument is further without merit because, as is discussed in more detail in Section III.I, *infra*, Plaintiff has failed to state with particularly the alleged circumstances

constituting fraud. FED. R. CIV. P. 9(b). In fact, each of these conclusory and alleged misrepresentations are, on their face, mere opinions regarding Saenz's ability to help grow ZroBlack's business and are, therefore, not actionable. *Clardy Mfg. Co. v. Marine Midland Bus. Loans*, 88 F.3d 347, 359 (5th Cir. 1996); *see also* Compl. at ¶¶268-69, 273-76.

Plaintiff next contends that the Release, which was mutual and not one-sided, should be set aside due to an alleged breach of fiduciary duty by Defendants Miguel Villareal and Gunn, Lee & Cave, P.C. ("Law Firm Defendants") resulting from an alleged conflict of interest in representing both Saenz and Plaintiff. Compl. at ¶¶290-301. Even if the Court were to somehow find that the Law Firm Defendants violated the Texas Professional Rules of Disciplinary Conduct as Plaintiff alleges, however, such a violation would not void the otherwise valid Release. *See Wright v. Sydow*, 173 S.W.3d 534, 549 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) ("A violation of the Disciplinary Rules does not necessarily establish a cause of action, nor does it void an otherwise valid contract executed outside of the attorney-client relationship.").

Additionally, Plaintiff's conclusory allegations of fraudulent inducement on the part of the Law Firm Defendants are also not described with particularity, as is required under Federal Rule of Civil Procedure 9(b), nor is there any authority that would support of the argument that the Release should be set aside for such purported fraud or any related breach of fiduciary duty. Compl. at ¶¶286, 300. On the contrary, the Release itself: (1) clearly articulates the entirety of the compensation and obligations contemplated therein, with no mention of any return of the subject funds, computer, email accounts, or website domain, (2) additionally states that it applies to claims "known or unknown," and (3) is "irrevocable as of the Effective Date." Release at §§ 2, 6, 7, 8. Plaintiff's conclusory allegations of fraudulent inducement as to "how the $740,000 would be treated, what Saenz would do, and how the parties to the Release would proceed after the

execution" are, therefore, "directly contradicted by the contract's terms" and cannot support justifiable reliance as a matter of law. Compl. at ¶286; *Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 559 (Tex. 2019).

Furthermore, Plaintiff has judicially admitted in his Original Complaint that any conflicts of interest on behalf of the Law Firm Defendants were previously addressed in a waiver of conflict letter, which Plaintiff himself notes would constitute an exception to Texas Disciplinary Rule of Professional Conduct 1.06. *See* Original Complaint (ECF No. 1) at ¶32 ("Mike represented both Jonathan and Saenz and issued a waiver of conflict letter"); Compl. at ¶293. Plaintiff cannot now avoid this admission simply by omitting it from his Amended Complaint. *Andrews v. Metro N. C. R. Co.*, 882 F.2d 705, 707 (2nd Cir. 1989) ("The amendment of a pleading does not make it any the less an admission of the party."); *see* Compl. at ¶68 (omitting "and issued a waiver of conflict letter" from paragraph 32 to Plaintiff's Original Complaint).

Plaintiff further asks the Court to set aside the Release on the basis of mutual mistake. Compl. at ¶¶302-05. Plaintiff alleges that that "the mutual mistake was disposition of the $740,000, with Saenz believing he could keep it, and Jonathan believing it would be returned to ZroBlack." Compl. at ¶303. However, as Plaintiff admits, the Release "made no express provision for the return of the $740,000 to ZroBlack." Compl. at ¶73. Rather, the plain language of the Release states that Plaintiff releases Saenz from "all claims and demands, known or unknown." Release at §7. That Plaintiff subjectively believed Saenz would return the $740,000 to ZroBlack, even if true, would not render the Release void for mutual mistake. *See White v. Grinfas*, 809 F.2d 1157, 1160 (5th Cir. 1987) ("The failure of the parties to understand the scope of the release when the language is unambiguous, as it is here, does not support a finding of mutual mistake.").

III.    ADDITIONALLY, AND IN THE ALTERNATIVE, PLAINTIFF FAILS TO STATE ADEQUATE BASES
        FOR THE RELIEF REQUESTED.

Even if the Court were to set aside the Release, Plaintiff's Complaint and Application fail

for failure to state claims upon which relief may be granted. Where a complaint fails to allege facts

to support the essential elements of a claim, dismissal pursuant to Federal Rule of Civil Procedure

12(b)(6) is proper. *See Land & Bay Gauging, L.L.C. v. Shor*, 623 F. App'x 674, 683 (5th Cir.

2015). Here, even after an opportunity to amend, Plaintiff's factual allegations fail to support

Plaintiff's causes of action.

### A.  Plaintiff's claim for violations of the DTSA and TUTSA fails.

Plaintiff brings a cause of action for Saenz's alleged violation of the Defend Trade Secrets

Act, 18 U.S.C. § 1836 ("DTSA") and the Texas Uniform Trade Secrets Act ("TUTSA"). Compl.

at ¶¶137-161. A claim for violation of DTSA or TUTSA requires the plaintiff to prove that the

defendant misappropriated a trade secret by acquiring it through "theft, bribery, misrepresentation,

breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic

or other means." 18 U.S.C. §§ 1836, 1839(5), 1839(6); *see also* TEX. CIV. PRAC. & REM. CODE §

134A.001 *et seq*. Lawful means of acquisition does not constitute misappropriation. 18 U.S.C. §

1839(6)(B); TEX. CIV. PRAC. & REM. CODE § 134A.002(2).

The only alleged trade secrets that Plaintiff identifies are: (1) the software code and

hardware allegedly contained on the laptop, and (2) login and password information for accessing

the GoDaddy account. Compl. at ¶144. In particular, Plaintiff alleges that Saenz misappropriated

ZroBlack's trade secrets by refusing "to return the ZroBlack laptop that contained the software

code and schematics for the hardware." Compl. at ¶¶158-159. However, Plaintiff does not allege

that Saenz acquired the purported trade secrets by theft, bribery, misrepresentation, breach of a

duty to maintain secrecy, or espionage. Plaintiff alleges just the opposite, *i.e.*, that Saenz purchased

the laptop "[i]n connection with his duties as CEO" of ZroBlack. Compl. at ¶27.[4] Likewise, Plaintiff alleges that, while Saenz was a member of ZroBlack, Saenz "agreed to purchase ZroBlack's domain name, www.zroblack.com, from GoDaddy" and provided Plaintiff with access to the GoDaddy account.   Compl. at ¶21. Thus, when Saenz acquired the laptop and the zroblack.com credentials, he did so through lawful means—and certainly with Plaintiff's knowledge and consent. Because Plaintiff fails to plead facts supporting an essential element of the DTSA and TUTSA claims, the Court should dismiss them with prejudice.

Furthermore, the damages alleged by Plaintiff as resulting from any misappropriation of trade secrets cannot support a cause of action because they are wholly conclusory and speculative. Compl. at ¶161 (alleging that "Saenz's actions have caused ZroBlack to lose major contracts because he holds the key to the domain name" and "Jonathan has been unable to update the DUNS information confirming ZroBlack's ownership causing it to lose contracts"); *see also Principia Partners LLC v. Swap Fin. Grp., LLC*, No. 18 Civ. 7998 (AT), 2019 WL 4688711, at *11 (S.D. N.Y. Sept. 26, 2019) ("The claim that Plaintiff has suffered damages due to misappropriation of trade secrets is wholly conclusory. The Court concludes, therefore, that Plaintiff has failed to state a claim under the DTSA."). Moreover, these allegations are based on the false premise that Plaintiff could not unilaterally update ZroBlack's DUNS account information, despite the fact that he was specifically advised otherwise by federal agencies on multiple occasions, as set forth in n.7, *infra*.

---

[4] While Plaintiff alleges that Saenz made false promises and misrepresentations, these allegations relate solely to Saenz's ability to obtain government contracts for ZroBlack. *See* Compl. at ¶¶149-155. In addition to the fact that this alleged conduct clearly predates the Release and is subject to the Release, this alleged conduct does not relate, in any way, to Saenz acquiring the purported trade secrets (software code and hardware schematics on the laptop and the GoDaddy account credentials). To the contrary, Saenz's ability to obtain government contracts is not alleged to be ZroBlack's trade secret, and it has nothing to do with the acquisition of the laptop or the GoDaddy credentials at issue.

The Court should dismiss Plaintiffs' claims under the DTSA and TUTSA for these additional reasons as well.

### B.  Plaintiff's claim for violation of the CFAA fails.

Plaintiff brings a cause of action for Saenz's alleged violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g) ("CFAA"). Compl. at ¶¶162-173. To prevail on a CFAA claim, Plaintiff must prove that Saenz accessed a computer without authorization. 18 U.S.C. § 1030(a). Plaintiff's factual allegations regarding the alleged access to and deletion of the zroblack.com webpage and email account are not actionable under the CFAA because they have nothing to do with unauthorized access to any particular computer. Plaintiff has not stated which computer Saenz allegedly used, when Saenz allegedly accessed that computer, and why Saenz was not authorized to access that particular computer. With regard to accessing the laptop at issue, Plaintiff alleges that, after the Release was signed and the parties parted ways, "Saenz's authorization to access the laptop was revoked." Compl. at ¶¶166, 169. However, Plaintiff does not allege how Saenz's authorization allegedly was revoked, who allegedly revoked it, who, if anyone, then possessed authority to access the laptop, or even when and how Saenz has accessed the laptop. Plaintiff also does not allege that Saenz used the laptop—as opposed to any other authorized computer—to allegedly access and delete the zroblack.com webpage or email, which destroys any causal nexus between the facts alleged (deletion of the webpage and email account) and the statutory requirements (unauthorized access to a protected computer). Further, Plaintiff's own verified documents show that Saenz purchased the laptop and consistently maintained possession. *See* May 2, 2019 email from J. Saenz (ECF No. 35-6) at pp. 1–6 (Plaintiff does not allege that Saenz purchased the laptop illegally or inappropriately). Because Plaintiff must allege the elements of his claims "above the speculative level," *Shakeri*, 816 F.3d at 290, Plaintiff's failure to provide more than mere conclusory allegations as to Saenz's authority or access is fatal to his CFAA claim.

Plaintiff's claim under the CFAA additionally fails because the damages alleged are conclusory and speculative in nature and/or are not the type of investigative or service interruption damages contemplated by the CFAA. Compl. at ¶164 (making the conclusory statement that Plaintiff has lost over $5,000, the statutory threshold for a CFAA claim, without any factual support); *id.* at ¶173 (alleging non-CFAA damages in purported lost contracts for inability to update ZroBlack's DUNS account information); *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 776 (S.D. Tex. 2010) ("[T]he term 'loss' encompasses only two types of harm: costs to investigate and respond to a computer intrusion, and costs associated with a service interruption."). Plaintiff's CFAA claim should be dismissed with prejudice.

### C.  Plaintiff's claim for violation of the ACPA fails.

Plaintiff brings a cause of action for violation of the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA"). Compl. at ¶¶174-178. The ACPA imposes civil liability where a person "has a bad faith intent to profit from" another's domain name and registers, traffics in, or uses a domain name that "is identical or confusingly similar to" another's domain name. 15 U.S.C. § 1125(d). Plaintiff, though, does not allege that Saenz registered, trafficked in, or used a domain "identical or confusingly similar to" ZroBlack's. Rather, according to Plaintiff, "Saenz purchased ZroBlack's [*actual*] domain name in his capacity as Chief Executive Member/CEO and thus purchased it as ZroBlack's nominee" with Plaintiff's full knowledge in anticipation of forming ZroBlack. *See* Compl. at ¶192; Decl. of J. Villareal at ¶10. Plaintiff also does not allege that Saenz had a bad faith intent to profit from the domain at the time he registered the website. For either or both of these reasons, Plaintiff's claim for alleged violation of the ACPA should be dismissed with prejudice.

Further, although Plaintiff does allege that Saenz *presently* has bad faith, he fails to state more than a conclusory speculation of bad faith and fails to allege that Saenz has actually used the

domain or website for profit. Compl. at ¶177. In fact, Plaintiff's allegations that Saenz has "taken

the website down," "deleted the email server," and allegedly destroyed documents completely

undercuts Plaintiff's ACPA claim that Saenz used ZroBlack's domain with an intent to profit from

it.  Compl. at ¶178. Because conclusory speculation does not defeat a Rule 12(b)(6) motion to

dismiss—*see Shakeri*, 816 F.3d at 290; *Flying Crown Land Grp.*, 2015 U.S. Dist. LEXIS 104978,

at *2—the Court should dismiss Plaintiff's ACPA claim for this additional reason.

### D.  Plaintiff's claim for breach of contract fails.

Plaintiff claims Saenz breached the Release and is therefore liable for breach of contract.

Compl. at ¶¶179-184. Of course, this claim assumes that the Release is a valid and enforceable

contract rather than an instrument that should be set aside, as Plaintiff also contends in his

Complaint. Regardless, Plaintiff bases his claim on Saenz's refusal to return the laptop, the domain

name, and the $740,000 withdrawal to ZroBlack. *Id.* at ¶¶181, 183. As Plaintiff himself stated,

however, the Release "made no express provision for the return of the $740,000 to ZroBlack, . . .

no express requirement that Saenz return property to ZroBlack, which included . . . a laptop . . .

[and] did not have an express provision requiring the return of ZroBlack's domain name, webpage,

and email server." Decl. of J. Villareal at ¶33; *see also* Compl. at ¶¶73-75. Because Plaintiff bases

his claim on Saenz's refusal to perform actions that Plaintiff admits the Release did not require

Saenz to perform, Plaintiff fails to state a claim for breach of the Release.

Additionally, Plaintiff now alleges, for the first time, that Saenz breached the Operating

Agreement by refusing to return unspecified ZroBlack assets. Compl. at ¶182. As a threshold issue,

the Operating Agreement does not contain any obligation on the part of Saenz to return anything,

so there can be no breach by Saenz under the facts asserted by Plaintiff. *See generally* Operating

Agreement (ECF No. 35-4). Additionally, Plaintiff fails to plead facts supporting the following

required elements: (1) performance by Plaintiff, (2) breach by Saenz, and (3) damages sustained

by Plaintiff as a result of the breach.[5] *Sport Supply Group, Inc. v. Columbia Casualty Co.*, 335 F.3d 453, 465 (5th Cir. 2003); *Mendoza v. Franklin Credit Mgmt. Corp.,* Civ. No. 4:16-cv-276-O, 2016 U.S. Dist. LEXIS 155981, at *8-9 (N.D. Tex. May 27, 2016) (dismissing breach of contract claim because the plaintiff did not plead performance).

Additionally, even assuming that the Company Agreement is a contract subject to breach by Saenz, Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted because Plaintiff's generalized allegations of breach failed to identify any specific contractual provision that Saenz allegedly breached. *Sivertson v. Citibank, N.A.*, 390 F. Supp. 3d 769, 787 (E.D. Tex. Feb. 14, 2019) ("[A]s a general rule, a plaintiff suing for breach of contract must point to a specific provision in the contract that was breached by the defendant."); *Morse v. Commonwealth Land Title Ins. Co.*, Case No. 4:12CV375, 2013 U.S. Dist. LEXIS 137555, at *27 (E.D. Tex. Sept. 25, 2013) ("Without identification of the contract(s) at issue, the provisions breached, Defendants' specific actions constituting breach, or the damages that resulted, a breach of contract claim has not been stated and it should be dismissed").

Rather than identify any specific provision of the Operating Agreement that Saenz allegedly breached, Plaintiff summarily states that "the [Operating] Agreement expressly states that title to the Company's assets will be held in the Company's name or in the name of any nominee designated by the Members." Compl. at ¶182. Plaintiff, however, does not make any supporting allegation about title to the Company's assets. Such conclusory statements simply do

---

[5] Plaintiff's blanket statements about performance and damages clearly relate to the Release and not the Company Agreement.  *See* Compl. at ¶¶183-184. Regardless, Plaintiff's bare allegation that he "suffered damages as a result of Saenz's breach" is conclusory and is not tied to any specific fact or any specific breach of contract.

not go beyond mere "labels and conclusions" in pleading a breach of contract claim, and therefore Plaintiff's Complaint must be dismissed. *See Morse*, 2013 U.S. Dist. LEXIS 137555, at *26-28.

### E.  Plaintiff's claim for breach of fiduciary duties fails.

Plaintiff alleges that Saenz breached fiduciary duties owed to ZroBlack by engaging in unnamed and unspecified transactions that benefited Saenz, withholding unspecified company property or funds, and refusing to allow access to unspecified information. Compl. at ¶¶187, 191, 194-95, 197. These conclusory allegations, without any support, do not raise a right to relief above the speculative level that is necessary to support a claim. *See Shakeri v. ADT Sec. Servs.*, 816 F.3d 283, 290 (5th Cir. 2016). Additionally, to the extent that such claims are based on actions Saenz allegedly performed *prior* to the Release, Plaintiff implicitly concedes that they are subject to the Release. Compl. at ¶195 (noting that "these requests were made of Saenz after Saenz departed the company"); *id.* at ¶196 (noting that Plaintiff's arguments are subject to a declaratory claim setting aside the Release); *see also* Release at § 7; Decl. of J. Villareal at ¶27 (Plaintiff alleges that Defendant Miguel Villareal told Saenz in July 2019—prior to execution of the Release—that Saenz "breached his fiduciary duty to the company"). To the extent that such claims somehow could be based on actions Saenz allegedly performed *after* the Release, Saenz had assigned his interest in ZroBlack and no longer owed a fiduciary duty. *See* Decl. of J. Villareal at ¶36; Unanimous Written Consent (ECF No. 35-17); *see also Kilpatrick v. Kilpatrick*, No. 02-12-00206-CV, 2013 Tex. App. LEXIS 9189, *11, 16 (Tex. App.—Fort Worth July 25, 2013) (pet. denied) (confirming that partners owe no fiduciary duties to one another after their relationship ends, aside from duties related to winding up the partnership). Either way, the Complaint fails to allege facts upon which the Court may grant relief for Saenz's alleged breach of fiduciary duties.[6]

---

[6] To the extent Plaintiff's claim is based on Saenz allegedly "not performing any work associated with ZroBlack," Compl. at ¶196, the claim fails. On August 1, 2019, prior to execution of the

Plaintiff's claim for breach of fiduciary duty must also be dismissed because the only damages alleged are conclusory and speculative in nature. Compl. at ¶¶188, 195, 198 (alleging, without any factual support, damages for lost revenue, lost contract opportunities, and valuable resources expended); *Little v. KPMG LLP*, No. SA-07-CA-621-FB, 2008 WL 576226, at *15 (W.D. Tex. Jan. 22, 2008) ("Texas and federal law require plaintiffs to demonstrate non-speculative damages to pursue a claim. Damages which are conjectural will not survive a motion to dismiss.").

### F.   Plaintiff's claim for tortious interference with prospective business relations fails.

Plaintiff brings a cause of action against Saenz for tortious interference with prospective business relations. Compl. at ¶¶232–246. To survive a motion to dismiss on such claims, a plaintiff must allege facts supporting "a reasonable probability that the plaintiff would have entered into a business relationship" but for the defendant's conduct. *Flying Crown Land Grp.*, 2015 U.S. Dist. LEXIS 104978, at *5 (N.D. Tex. Aug. 11, 2015).

The United States District Court for the Northern District of Texas has explained the threshold pleading requirements for this essential element:

> Plaintiff has failed to allege facts on which the Court can conclude that there was a reasonable probability that Plaintiff would have entered into a business relationship, … with which the Defendants allegedly interfered. Although Plaintiff alleges in a conclusory form that, "[t]here was a reasonable probability that [Plaintiff] would have entered into a relationship with a third person," Plaintiff pleads no facts to support the conclusion that there was a "reasonable probability" such a relationship would be consummated. In response to Defendants' Motion to Dismiss, Plaintiff argues that it "could have utilized its time, expertise, and resources in other joint ventures and/or partnerships with other third parties in business endeavors that may or may not have related to redevelopment of property …." Such speculation cannot constitute a reasonable probability that Plaintiff

---

Release, Plaintiff and Saenz amended their contract with the Foreign Customer. Decl. of J. Villareal at ¶37. Pursuant to the amended contract, Saenz was released from his obligations to perform any further work. *Id.*; First Am. PSA (ECF No. 35-18) at ¶ 2 (requiring only that Saenz continue to adhere to the confidentiality clause and restrictive covenant).

would have entered into a business relationship, and thus cannot support a claim for tortious interference.

*Id.* at *5–6 (internal citations omitted). Likewise, a plaintiff must further demonstrate that something "more than mere negotiations took place." *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Though it is not necessary to prove that the contract would have certainly been made but for the interference, that result must have been reasonably probable, considering all of the facts and circumstances attendant to the transaction. *Id.* at 475-76.

Here, Plaintiff offers no more than conclusory speculation that, "[b]ut for Saenz's actions, there was a reasonable probability [a U.S. agency] would have entered into a contract with [Plaintiff], ZroBlack, and [the Foreign Customer]" and that "ZroBlack would have entered a business relationship with prospective businesses to sell its services." Compl. at ¶¶241, 242. While the Complaint does allege that Plaintiff, ZroBlack and the Foreign Customer "pursued a contract with the [U.S. agency]," Plaintiff wholly fails to demonstrate that *any* negotiations took place or that it even submitted a response to an agency solicitation, much less that "more than mere negotiations took place." Compl. at ¶234; *Richardson-Eagle*, 213 S.W.3d at 475. In this regard, Saenz respectfully requests that the Court take judicial notice of the open and competitive nature of the federal procurement process, which is set forth in the Federal Acquisition Regulation Program, and through which there can be no reasonable probability that any contract(s) would have been awarded to Plaintiff. *See* 48 C.F.R. § 1.100, *et seq.; id. at* § 6.101(b) ("Contracting officers shall provide for full and open competition through use of the competitive procedure(s) contained in this subpart that are best suited to the circumstances of the contract action and consistent with the need to fulfill the Government's requirements efficiently."). Because the

Complaint does not allege any facts supporting a reasonable probability that Plaintiff would have entered into a business relationship but for Saenz's conduct, the Complaint fails.

In addition, the entire basis for Plaintiff's tortious interference claim is that: (1) Saenz has simply not take any affirmative action to assist Plaintiff in resetting ZroBlack's DUNS account, despite the Release imposing no duty upon Saenz to do so,[7] and (2) Saenz allegedly has refused to return the website and email "server" from ZroBlack, despite the Release imposing no duty upon Saenz to do so. In particular, the Complaint alleges that Saenz has tortiously interfered by: (1) "refus[ing] all requests to confirm with Dun & Bradstreet that he is no longer a member of ZroBlack or to update the contact information for ZroBlack on its DUNS account," (2) "refus[ing] [Plaintiff's] requests to release the ZroBlack domain name to him so that he could update ZroBlack's information for Apple and Dun & Bradstreet," and (3) refusing to return the website and email "server." Compl. at ¶¶236, 238, 243. However, it is well settled that "[n]either silence, hostility, nor a failure to respond is sufficient to support the claim made by [Plaintiff]." *Am. Medical Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 338 (Tex. App.—Houston [14th Dist.] 1991, no writ); *see also Olabarrieta v. Compass Bank*, No. 13-11-00748-CV, 2013 WL 7864080, at *9 (Tex. App.—Corpus Christi Aug. 1, 2013, pet. denied) ("But mere silence alone is insufficient to constitute intentional interference."). Plaintiff's Complaint thus fails on this basis as well.

Plaintiff's tortious interference claim further fails because there is no evidence, nor even an allegation, of the requisite intent on behalf of Saenz. The third element of a claim for tortious

---

[7] Plaintiff's own communications with various agencies confirm that he was specifically informed he could unilaterally update ZroBlack's DUNS account information. ECF No. 35-37 at p. 4 ("If you ever need access you can do a notarized letter that we offer to gain access. The tier 3 team will advise how to proceed with getting access."); ECF No. 35-38 at p. 1 (suggesting that Plaintiff should "contact GSA and have them give you steps on how to prevent Mr. Saenz from having continued access to the registration and data contained within"). Any inaction on the part of Saenz cannot be the cause of any alleged damages.

interference is that the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct. *See Richardson-Eagle*, 213 S.W.3d at 475. In this regard, the Complaint does not allege that Saenz even knew of any third parties with whom ZroBlack and its Foreign Customer were pursuing contracts, much less any actual intent to prevent such a relationship from occurring. Indeed, there is no reasonable basis for such an allegation, as the Complaint makes clear that such contracts, if any, were not pursued until long after Plaintiff and Saenz went their separate ways. *See* Compl. at ¶113 ("After the Release was executed and Saenz and ZroBlack and [Plaintiff] parted ways, [Plaintiff], ZroBlack and [its Foreign Customer] pursued a contract with [a governmental agency]."). Instead, without any factual basis or support, the Complaint vaguely alleges that "Saenz knew that his withholding of the website and email server would interfere with ZroBlack's prospective clients or knew that his actions were certain or substantially certain to cause interference." Compl. at ¶243. This conclusory allegation, without any support, does not raise a right to relief above the speculative level that is necessary to support a claim. *See Shakeri v. ADT Sec. Servs.*, 816 F.3d 283, 290 (5th Cir. 2016).

Plaintiff's claim for tortious interference with prospective business relations must further be dismissed because the only damages alleged are conclusory and speculative in nature. Compl. at ¶¶240, 241, 245, 246 (alleging, without any factual support, damages for lost contract opportunities and potential loss of profits); *Sting Soccer Operations Grp. LP v. JP Morgan Chase Bank, N.A.*, No. 4:15-CV-127, 2016 WL 3917640, at *21 (E.D. Tex. July 20, 2016) ("A plaintiff seeking to recover for tortious interference with prospective business relationships must establish proximate causation and damages with evidence rising above mere suspicion or speculation."); *Little*, 2008 WL 576226, at *15.

### G.  Plaintiff's claim for conversion fails.

Plaintiff brings a cause of action against Saenz for conversion of a laptop. Compl. at ¶¶247-250. A plaintiff in a conversion action must allege facts supporting damages. *See WRR Indus. v. Aerodyne Corp.*, Civil Action No. 3:04-CV-2544-L, 2006 U.S. Dist. LEXIS 46210, at *30–31 (N.D. Tex. June 30, 2006) ("Damages are an 'essential element of a conversion claim' under Texas law.") (quoting *50-OFF Stores, Inc. v. Banques Paribas (Suisse, S.A.)*, 180 F.3d 247, 254 (5th Cir. 1999), *cert. denied*, 528 U.S. 1078 (2000)). A plaintiff's mere "inability to access and utilize [its] property" is insufficient to establish damages. *Id*. at *32.

Here, the Complaint fails to identify any specific damages stemming from Saenz's alleged conversion of the laptop. Rather, in conclusory fashion, Plaintiff simply states that "ZroBlack has suffered injury due to Saenz's conversion of the laptop and trade secrets in at least an amount equal to the value of the laptop and trade secrets." Compl. at ¶250. Plaintiff, however, fails to identify the current value of the laptop, the identity of any alleged trade secrets, or the value of any alleged trade secrets to support any allegation of damages. Plaintiff also makes a speculative and conclusory allegation that the "access and deletion of the email server and webpage caused a loss of more than $5,000 in data," but Plaintiff does not identify what specific data was deleted, when it was deleted, or the value of the data at the time it was deleted. *Id.* Because Plaintiff alleges no facts to support the essential element of damages, the claim for conversion fails. *Little*, 2008 WL 576226, at *15 ("Damages which are conjectural will not survive a motion to dismiss.").

Furthermore, to the extent Plaintiff's conversion claim is based on intangible "trade secrets," the claim fails to state a claim for which relief may be granted. *See Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (allegation of conversion of intellectual property was "outside the scope of Texas conversion law, which concerns only physical property").

### H.  Plaintiff's claim for violation of the Texas Theft Liability Act fails.

Plaintiff brings a cause of action against Saenz for violation of the Texas Theft Liability Act. Compl. at ¶¶251-255. Like conversion, the Texas Theft Liability Act requires a plaintiff to plead and prove damages. *Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 753 F. App'x 184, 190 (5th Cir. 2018) ("Proof of damages is an essential—and in this case missing—element of each of Transverse's three causes of action," including the Texas Theft Liability Act). Just as Plaintiff fails to identify any damages stemming from Saenz's alleged conversion of the laptop, Plaintiff similarly fails to identify damages resulting from Saenz's alleged theft. Compl. at ¶255. Again, Plaintiff simply states that "ZroBlack has suffered damages due to Saenz'[s] conversion of the laptop and trade secrets in at least an amount equal to the value of the laptop and trade secrets." *Id.* Plaintiff, however, fails to identify the current value of the laptop, the identity of any alleged trade secrets, or the value of any alleged trade secrets to support any allegation of damages. Plaintiff again makes a speculative and conclusory allegation that the "access and deletion of the email server and webpage caused a loss of more than $5,000 in data," but Plaintiff does not identify what specific data was deleted, when it was deleted, or the value of the data at the time it was deleted. *Id.* Because Plaintiff alleges no facts to support the essential element of damages, the claim for violation of the Texas Theft Liability Act fails. *Little*, 2008 WL 576226, at *15.

Moreover, as with claims for conversion, Texas law also bars a claim for civil theft of intangible intellectual property. *See Saragusti v. Hermes Trading Co.*, No. 7:14-CV-45, 2014 U.S. Dist. LEXIS 194122, at n.21 (S.D. Tex. July 29, 2014). Plaintiff's claim fails for this additional reason.

### I.  Plaintiff's claim for fraud fails.

Plaintiff brings a cause of action against Saenz for fraud. Compl. at ¶¶256-262. To state a claim for fraud, a plaintiff must allege the following elements: "(1) that a material representation

was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "The frequently stated, judicially-created standard for a sufficient fraud complaint … instructs a plaintiff to plead the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Grubbs*, 565 F.3d at 186. "Given the elements of reliance and damages, pleading common law fraud with particularity demands the specifics of the false representation – without the precise contents of the misrepresentation the plaintiff cannot show he relied on the misrepresentation to his detriment." *Id*. at 188-89. "In other words, common law fraud's elements of reliance and damages are intertwined with the misrepresentation and heighten the need for attention to the misrepresentation itself." *Id*. at 189.

Moreover, "[t]o be actionable, the misrepresentation must be one concerning a material fact; a pure expression of opinion will not support an action for fraud." *Clardy Mfg. Co. v. Marine Midland Bus. Loans*, 88 F.3d 347, 359 (5th Cir. 1996). Although an opinion may constitute fraud if the speaker knows that it is false or if the speaker purports to have special knowledge of facts that will occur in the future, "[a] promise to do an act in the future … is fraud only when made with the intention, design and purpose of deceiving, and with no intention of performing the act at the time the promise was made." *Id*. at 359-60.

Here, Plaintiff's fraud claim is based entirely on allegations that, "[p]rior to the formation of ZroBlack, Saenz represented to [Plaintiff] that he had the business acumen and government contacts to market the technology to the government" and that "he could use his 'contacts' in the military and technology business sectors to bolster sales." Compl. at ¶¶257, 261. "In reliance on this representation," Plaintiff alleges that he "trusted Saenz and formed ZroBlack, gave Saenz access to ZroBlack's software and allowed him to control the marketing and business operations of ZroBlack." *Id.* at ¶262. As a result of such reliance, Plaintiff alleges that Saenz "still maintains control over the software and operations of ZroBlack which has caused ZroBlack to lose contracts." *Id.*

These allegations do not satisfy the heightened pleading requirements of Rule 9(b). Not only do they not plead the time, place or contents of these purported representations, but they also do not allege any causal nexus or link between the purported misrepresentations, Plaintiff's alleged reliance thereon, and the allegedly resulting damages. Indeed, there is no theoretical connection that could tie (1) Saenz's alleged misrepresentations prior to ZroBlack's formation regarding his belief that he could help the company secure additional work, to (2) ZroBlack now failing to close deals without him after he was forced out of the company by Plaintiff. Further, Plaintiff does not even allege that it suffered any quantifiable damages; rather, Plaintiff includes an unsupported, conclusory allegation that Saenz's conduct caused ZroBlack to "lose" unspecified contracts of unspecified value. Compl. at ¶256. Accordingly, Plaintiff's claim for fraud fails.

In addition, the alleged misrepresentations are, on their face, mere opinions regarding Saenz's ability to help ZroBlack's business and are, therefore, not actionable. Compl. at ¶¶257, 259, 261; *Clardy Mfg. Co.*, 88 F.3d at 359. Furthermore, the Complaint does not allege that Saenz knew such alleged misrepresentations to be false at the time they were made, that Saenz purported

to have special knowledge of facts that would occur or exist in the future, that Saenz promised to do anything in the future with the intention, design and purpose of deceiving, or that Saenz had no intention of performing the act at the time the promise was made. *Clardy Mfg. Co.*, 88 F.3d at 359-60. For these additional and independent reasons as well, Plaintiff's claim for fraud fails.

### J. Plaintiff's application for injunctive relief fails.

Plaintiff acknowledges that injunctive relief is appropriate only where the movant demonstrates "the likelihood of success on the merits." Application at ¶105. For the reasons discussed at length above—including the parties' mutual release and Plaintiff's failure to allege facts supporting the essential elements of each claim—Plaintiff has failed to show a likelihood of success on the merits. Therefore, dismissal of Plaintiff's request for injunctive relief is proper.

## CONCLUSION

Plaintiff and Saenz broadly agreed to release each other from "all claims and demands, known or unknown." Public policy favors voluntary settlement of claims and enforcement of releases, including broadly worded releases such as the Release here. Because the Release bars Plaintiff's claims and is consistent with public policy, the Court must dismiss Plaintiff's Complaint and Application.

In the alternative, and even after obtaining leave to replead, the Complaint and Application nevertheless fail to state a claim upon which relief may be granted and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

WHEREFORE, because further repleading would be futile, Defendant John Saenz respectfully requests that the Court: (1) dismiss Plaintiff's Complaint as to Saenz with prejudice, (2) dismiss Plaintiff's Application for injunctive relief with prejudice, (3) award Saenz his attorneys' fees and costs pursuant to Section 11 of the Release and TEX. CIV. PRAC. & REM. CODE § 134.005(b), and (4) grant to Saenz such other relief to which he is entitled at law or in equity.

Respectfully submitted this 4th day of February 2021.

By:  /s/ David A. Vanderhider

David A. Vanderhider
State Bar No. 24070787
DVanderhider@dykema.com
Ryan J. Sullivan
State Bar No. 24102548
RSullivan@dykema.com
DYKEMA GOSSETT PLLC
112 East Pecan St., Suite 1800
San Antonio, Texas 78205
(210) 554-5500 – Telephone
(210) 226-8395 – Facsimile

*Attorneys for John Saenz*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed with the Court on the 4th day of February 2021, and electronically served on the date reflected in the ECF system upon all parties registered to receive notice pursuant to the Court's CM/ECF system.

By:  *s/ David A. Vanderhider*