IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| JONATHAN VILLAREAL, individually § <br> and derivatively on behalf of § <br> ZROBLACK, LLC. § <br> Plaintiffs, § <br> v. § <br> § <br> JOHN SAENZ, MIGUEL § <br> VILLARREAL, JR., and GUNN, LEE, § <br> & CAVE, P.C. § <br> Defendants § | CIVIL ACTION NO. 5:20-cv-00571-OLG |

## PLAINTIFF'S REPLY TO DEFENDANT JOHN SAENZ'S RESPONSE IN OPPOSITION TO PLAINTIFF'S FIRST AMENDED APPLICATION FOR SEIZURE, TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTIVE RELIEF

_____

Plaintiff JONATHAN VILLAREAL, individually and derivatively on behalf of ZROBLACK, LLC, (collectively the "Plaintiffs"), by and through its undersigned counsel, files this Plaintiff's Reply to Defendant John Saenz's Response in Opposition to Plaintiff's First Amended Application for Seizure, Temporary Restraining Order, Preliminary Injunction, and Permanent Injunctive Relief and would respectfully show the Court as follows:

### I.   INTRODUCTION

1. This dispute arises out of the business relationship between Plaintiff Jonathan Villarreal and Defendant John Saenz. Together, the pair formed Plaintiff ZroBlack, LLC, to market software technology developed by Jonathan. The software in question is capable of wirelessly accessing cell phones and tablets and erasing or recovering data. After signing a contract with an overseas technology security company (the "Foreign Customer"), Saenz took $740,000 from ZroBlack and stopped doing work. Saenz and Villarreal negotiated a Release through Defendant Gun, Lee & Cave, P.C. Among other things, the Release called for Saenz to assign all his interest

in ZroBlack to Jonathan. After the release was executed, Saenz refused requests to return a Mac laptop to ZroBlack. The laptop contained trade secrets, most notably the code, as well as access credentials to ZroBlack's domain, www.zroblack.com, hosted by GoDaddy. Without access to the domain, ZroBlack could not update its credentials with Dun & Bradstreet, Apple, or government websites and agencies. This suit resulted.

2. Defendant Saenz now claims that he "purchased the Computer and has consistently used it since as his personal laptop computer." (Doc. 42, p. 2). Saenz has also retained a third-party forensic analyst to inspect the computer. The analyst concluded "(1) the Computer does not contain any proprietary code, hardware schematics, or hardware drawings; (2) the Computer does not contain any non-factory-installed programming software; (3) the Computer does not contain any computer code, data or other trade secrets capable of performing ZroBlack's security services described in Plaintiff's Complaint and Application; and (4) there is no evidence or indication to suggest that any such code, data or other trade secrets have been deleted from the Computer." (Doc. 42, p. 4; Doc. 42-1, p. 3).

3. The reason that this expert has not been able to find the proprietary code is because the numbers and letters that make up the code are saved in a text file on the laptop. The code is not engrained into the laptop, but there is character for character copies of the code language contained on that computer. Exhibit 45 (Declaration of Jonathan Villarreal).

4. The proprietary code is stored in text files in the application Evernote,[1] a cross-platform note taking application similar to Windows "Notepad" or its more robust open-source

---

[1] https://evernote.com/

cousin "Notepad++."[2] Applications such as Evernote, Notepad, and Notepad++ are commonly used by programmers to edit raw source code.

5. The laptop was purchased on May 2, 2020. Exhibit 5 (Doc. 35-6). "TeamViewer" was used to access the laptop. TeamViewer is an application allows one to remotely access a computer over the Internet.[3] Exhibit 45. Jonathan remotely accessed the computer and uploaded the text files containing ZroBlack's proprietary code to the Evernote application. The code was stored in a private folder in an Evernote file format. There were six files: "ABD Device ID," "Clear MacOS iDevice Cached I/O," "Samsung ID – AT Commands, ADB Commands, Validation, Partial Diagnostics, Logging," LG Device ID – Analytics, Logging," "Full Device ID & Diagnostics IOS," and "OSI Full Hardware Diagnostics." Because this code was stored in text files, the Saenz's expert likely did not see it.

6. The code contained in the files performs the following:

> ABD Device ID
>
> > This code is used to access Android devices remotely.
>
> Clear MacOS iDevice Cached I/O
>
> > This code allows access to iPhones and iPads from a Mac and wirelessly to clear the devices.
>
> Samsung ID – AT Commands, ADB Commands, Validation, Partial Diagnostics, Logging
>
> > This code is used to perform forensics on Samsung Android devices.
>
> LG Device ID – Analytics, Logging
>
> > This code is used to perform forensics on LG phones, tablets, and TVs running Android.

---

[2] https://notepad-plus.org/
[3] https://www.teamvewer.com/en-us/

> Full Device ID and Diagnostics IOS
>
> > This code is used to perform forensics on IOS devices, both through a wired connection to the device and wirelessly.
>
> IOS Full Hardware Diagnostics
>
> > This code is used to perform forensics for hardware chipsets on IOS devices

See Exhibit 45.

7. The Evenote text files are shown in Exhibit 42, which is an upload using Evernote's WorkChat.

8. To utilize the code, the user copies and pastes the code from the corresponding Evernote file to the Mac laptop's terminal command line (similar to the command prompt in Windows systems and command shell in Linux systems, which are text interfaces to the computer operating system) and then executes the code. Attached are Exhibits 43 and 44, which is a picture of Saenz taken at the Foreign Customer's offices in Finland. Exhibit 44 is a magnified portion of Exhibit 43. In Exhibit 44, in the lower left-hand corner, the left-most icon shows a "dot" under it. The "dot" mean the application is open, and the icon is for the Mac's terminal command line. The terminal command line was open because Saenz and Villarreal were using the laptop to demonstrate the code to the Foreign Customer, rebutting Saenz's assertions that the laptop was for his personal use. Exhibit 45. In the picture, Saenz can be seen wearing his passport pouch around his neck, the power bar to the left of the laptop is for European plugs, and the bottled water, Novelle, is sold in Finland. Exhibit 43.

9.  Furthermore, the hardware schematics to which Jonathan refers are attachments to the iMessage application installed on the laptop's MacOS and are also attachments in Signal Messenger[4] and Mac mail, both of which are present on the laptop. Exhibit 45.

## II.  LEGAL STANDARD

### A. Civil Seizure Standard

10.  18 U.S.C. § 1836(b)(2)(A)(i) provides, in pertinent part, that a civil seizure may be granted upon *ex parte* application but only in extraordinary circumstances.[5] The order may provide for the seizure of property that is necessary to prevent the propagation or dissemination of a trade secret, in this instance, the ZroBlack lap in Saenz's possession and containing ZroBlack's trade secrets.

11.  Prior to issuing an *ex parte* seizure order, the court must find that:

   i. An order issued pursuant to Rule 65 of the Federal Rules of Civil Procedure or another form of equitable relief is inadequate because the Defendant would evade, avoid, or otherwise not comply with such an order;

   ii. Plaintiff has and will continue to suffer immediate and irreparable injury if seizure is not ordered;

   iii. The harm the Plaintiff of denying the application outweighs the harm to the legitimate interests of the Defendant and substantially outweighs the harm to any third parties who may be harmed by such seizure;

   iv. Plaintiff is likely to succeed in showing that the information is a trade secret and the person against whom seizure would be ordered misappropriated the trade by improper means;

---

[4] https://www.signal.org/

[5] Plaintiffs recognize that *ex parte* may be a misnomer under these unusual circumstances. At the time the Complaint was filed, Plaintiffs were seeking a *ex parte* order. No ruling was issued by the Court however, and Defendants quickly responded. Notwithstanding those facts, Plaintiffs believe seizure is appropriate under the factors set forth in the statute and discussed below.

    v. The person against whom seizure would be ordered has actual possession of the trade secret and any property to be seized;

    vi. Plaintiff can describe with reasonable particularity the matter to be seized and the location where the matter is to be seized;

    vii. The person against whom seizure would be ordered may destroy, move, hide, or otherwise make such matter inaccessible to the court if Plaintiff were to proceed and notify Defendant; and

    viii. Plaintiff has not publicized the requested seizure.

18 U.S.C. § 1836(b)(2)(A)(ii).

### B. Injunction Standard

12. A plaintiff seeking a preliminary injunction must establish that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) it has no adequate remedy at law, (4) the balance of equities tips in its favor, and (5) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "At the preliminary injunction stage, the procedures in district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence." *Sirius Computer Solutions, Inc. v. Sparks*, 138 F. Supp. 3d 821, 836 (W.D. Tex. 2015).

### III. ARGUMENT

#### A. The Motion to Dismiss SHOULD NOT BE GRANTED AS TO PLAINTIFF'S COMPLAINT AND APPLICATION

13. Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiffs hereby incorporate by reference the arguments and premises set forth in the Plaintiff's Response to Defendant John Saenz's Second Rule 12(b)(6) Motion to Dismiss (Doc. 41) as if fully set forth herein and respectfully requests that Plaintiff's Application be granted for the reasons stated therein. Specifically, the Motion to Dismiss should be denied because the Release only releases claims that existed at the time the release was signed, not claims that arose or accrued in the future, and

because Saenz has executory obligations under the Release that he has not fulfilled. The Court should also deny Defendant's Motion because Plaintiffs' have alleged facts on each of their causes of action as evidenced by the Plaintiffs' Amended Complaint showing they are entitled to relief.

**B. The Application Should Not Be Denied Because Plaintiff Is Substantially Likely to Prevail on the Merits and There is a Substantial Threat of Irreparable Harm if the Injunction is not Granted**

> *i.     Plaintiffs met the pleading requirements for seizure*

14.     Saenz argues that Plaintiff's Application for Seizure should be denied because Plaintiff "fails to show that an order pursuant to Federal Rule 65 would be inadequate" and that Plaintiff fails to show irreparable harm. (Doc. 42, p.6).

15.     18 U.S.C. § 1836(b)(2)(A)(i) provides, in pertinent part, that a civil seizure may be granted upon *ex parte* application but only in extraordinary circumstances.[6] The order may provide for the seizure of property that is necessary to prevent the propagation or dissemination of a trade secret, in this instance, the ZroBlack laptop in Saenz's possession and containing ZroBlack's trade secrets.

16.     Prior to issuing an *ex parte* seizure order, the court must find that an order issued pursuant to Rule 65 of the Federal Rules of Civil Procedure or another form of equitable relief is inadequate because the Defendant would evade, avoid, or otherwise not comply with such an order and Plaintiff has and will continue to suffer immediate and irreparable injury if seizure is not ordered. 18 U.S.C. § 1836(b)(2)(A)(ii).

---

[6] Plaintiffs recognize that *ex parte* may be a misnomer under these unusual circumstances. At the time the Complaint was filed, Plaintiffs were seeking a *ex parte* order. No ruling was issued by the Court however, and Defendants quickly responded. Notwithstanding those facts, Plaintiffs believe seizure is appropriate under the factors set forth in the statute and discussed below.

17.     Saenz argues that Plaintiff's Application for Seizure should be denied because Plaintiff "fails to show that an order pursuant to Federal Rule 65 would be inadequate." (Doc. 42, p.6).

      ii.     *Plaintiff met the Rule 65 requirement*

18.     Saenz argues that Plaintiffs have to show why an order under Federal Rule of Procedure 65 would be inadequate. As a preliminary matter, Plaintiffs' Rule 65(b)(1) certification is found in ¶¶ 66-70 of the Amended Application for Seizure, Temporary Restraining Order, and Temporary Injunction. (Doc. 37, p. 30-32), supported by the affidavit of Jonathan Villarreal, sets out the facts which clearly show that immediate and irreparable injury, loss, or damages will result to the movant before the adverse party can be heard in opposition. Furthermore, these paragraphs set forth the reasons why notice should not be required, namely the risk that Saenz will copy or destroy the trade secrets on the laptop computer. Plaintiffs' also contend that counsel's signature to the Complaint is enough to "certify" within the meaning of Rule 65.

19.     Plaintiffs further showed why the *ex parte* order is necessary. Plaintiffs demonstrated that Saenz had already deleted emails, taken down ZroBlack's website, and was refusing to return the laptop containing the trade secrets. These actions are enough to show a real risk of further destruction of information or misuse of the trade secrets. Finally, Plaintiffs also cited to federal case law holding that where a defendant could easily copy information from a computer, seizure was appropriate. *See Blue Star Land Services v. Coleman*, No. CIV-17-931-C, 2017 WL 11309528, * 1 (W.D. Okla., Aug. 31, 2017). Thus, Plaintiffs met their burden of showing why Rule 65 relief would be inadequate.

      iii.    *The twenty monthly delay is due primarily to Covid-19*

20.     Saenz also claims that a twenty-month delay is seeking seizure is evidence no actual or imminent harm is likely. What Saenz overlooks is that most of that delay is due to the Covid-

19 pandemic, circumstances beyond everyone's control. The pandemic began affecting the United States in February 2020, with shutdowns beginning in March 2020. Texas Governor Greg Abbott declared a state of disaster on March 13, 2020, pursuant to Sections 418.014 and 418.016, and 418.017 of the Texas Government Code.[7] On the same day, the Texas Supreme Court and Texas Court of Criminal Appeals issued their First Emergency Order Regarding the Covid-19 State of Disaster.[8] The Western District of Texas, also on March 13, 2020, issued its Order Regarding Court Operations Under the Exigent Circumstances Created by the Covid-19 Pandemic.[9]

21.     Texas has been under a state of disaster for nearly 12 months. That state of disaster has affected every citizen and business in the state, including plaintiffs, defendants, lawyers, and court staff. No one should be penalized for a 12-month delay that was entirely beyond anyone's control. Additionally, as shown by the pleadings, Saenz, Jonathan, and ZroBlack parted ways in early August 2019, and Jonathan was occupied until at least the end of September of the same year trying to negotiate a return of the laptop. Thus, the delay in seeking relief was only eight months, half of which (February 2020 through May 2020) were at the beginning of the Covid-19 pandemic.

### C. Plaintiffs met the pleading and evidentiary requirements for a temporary injunction

*iv.   Plaintiffs showed there was a substantial likelihood they would succeed on the merits*

22.     Plaintiffs extensively briefed likelihood of success on the merits in their Application, breaking down the elements of each claim for trade secret misappropriation, violation of the Computer Fraud and Abuse Act, Anti-Cybersquatting Consumer Protection Act, with

---

[7] https://gov.texas.gov/uploads/files/press/DISASTER_covid19_disaster_proclamation_IMAGE_03-13-2020.pdf
[8] https://www.txcourts.gov/media/1446056/209042.pdf
[9] https://www.txwd.uscourts.gov/wp-content/uploads/2020/03/Order-Re-COVID-19.pdf

citation to documentary evidence provided in support. Plaintiffs need only present a prima facie case to show likelihood of success on the merits. *Janvey v. Alguire*, 647 F.3d 585, 505-596 (5th Cir. 2011). Plaintiff has done so.

> v.  *Proprietary code is present on the laptop, and Plaintiffs identified the code and sufficiently described it in the pleadings*

23.    Saenz first argues that Plaintiffs' claims are based on a false premise that trade secrets are present on the laptop computer. This allegation is presumably based on their expert's forensic examination of the laptop computer. With all due respect, their expert is mistaken because he does not understand the nature of Jonathan's work or how the proprietary code is used.

24.    The proprietary code is stored on the laptop as text files in Evernote.

25.    The laptop was purchased on May 2, 2020. *See* Exhibit 5 (Doc. 35-6). Jonathan remotely accessed the computer and uploaded the text files containing ZroBlack's proprietary code. The code is stored in a private folder in an Evernote file format. *See* Exhibit 45, attached hereto.

26.    Saenz can still utilize or provide the code to others by copying the code from the corresponding Evernote file and send it to the highest bidder.

27.    Furthermore, the hardware schematics to which Jonathan refers are attachments to the iMessage application installed on the laptop's MacOS and are also attachments in Signal Messenger[10] and Mac mail, both of which are present on the laptop. *See* Exhibit 45.

28.    It is not the "ease of copying" that is the premise of Plaintiffs' Application. It is what the proprietary code can do and what could happen if and when it falls into the wrong hands. Thus, Plaintiff's have shown the "extraordinary circumstances" to warrant civil seizure.

---

[10] https://www.signal.org/

>   *vi.*    *The Inability to Access to the domain name and email server causes irreparable harm*

29. Saenz mocks the Plaintiffs when he states, "the suggestion that ZroBlack-a company that is purportedly world-class in computer programming and remote device access-is now wholly unable to do business without a simple website and email subscription after approximately eighteen months without them is a complete fabrication." (Doc. 42, p. 9). It is not just that Plaintiffs are unable to do business without a simple website and email subscription, it is also that the data and emails that have been lost and are currently under the control of Defendant. Plaintiff has made many attempts to remedy and fix the problems caused by access, he may have been able to remedy these damages if he had been given access.

30. As alleged in the Amended Complaint, Jonathan sought the release of ZroBlack's domain name information, from which he could himself update the Dun & Bradstreet information. Because Jonathan could not update ZroBlack's DUNS information, he could not confirm to Apple's satisfaction that he owned ZroBlack and so Apple refused him a developer's account.

31. Instead, Saenz refused Jonathan's requests to release the ZroBlack domain name to him so that he could update ZroBlack's information for Apple and Dun & Bradstreet. Saenz even went so far as to block Jonathan's email address.

32. ZroBlack has had to file complaints with the Federal Help Desk and Defense Logistics Agency because Saenz is effectively holding the SAM.gov login information and CAGE number hostage and has prevented ZroBlack from competing for government contracts.

33. Plaintiffs have made it clear why access to the domain name and email server are necessary to the operation of ZroBlack as a business. Saenz has taken down the website. Saenz also deleted the email server, thereby destroying thousands of emails and documents supporting Jonathan's claims, ZroBlack's projects for Blancco, and other matters. Saenz currently holds

ZroBlack's domain name hostage, so Jonathan has no access to the site and no opportunity to attempt to recover the webpage and emails. GoDaddy is the service provider.

34. Courts have granted Preliminary Injunctions and ruled that there is a threat of irreparable harm, even if a domain is not active, when there is a possibility that "the domain name is transferred, leased, or sold to a party…the domain name may be reactivated and could cause confusion, mistake, and/or deceive consumers…". *Pace v. Constellation Brands, Inc.*, Civil Action No.: 4:17-cv-00518, 2017 WL 8811749 at *2-3 (E.D. Tex. Dec. 13, 2017). This misuse of the domain can cause harm by "disruption of …business, loss of customer good will, and brand confusion." *Id*. Furthermore, "if the domain name is transferred, leased, or sold to a third-party, they will be forced to take additional steps to obtain the domain name from a new owner, spurring additional litigation." *Id.*

35. Irreparable harm has been found when a party it "not permitted to change its registration records, transfer the Domain Names, or otherwise monetize the names." *Domain Protection, LLC v. Sea Wasp, LLC*, Civil Action No. 4:18-cv-792, 2019 WL 3219939 at *9 (E.D. Tex. Jul. 17, 2019). Courts have recognized that by preventing a party from updating the registration information affiliated with a domain name to reflect that it is no longer working with a party, but the emails affiliated with that domain are being directed to the party, the inability to access the traffic data and emails, including business opportunities that may be time-sensitive, constitutes irreparable harm. *Id*.

    *vii. Saenz has access to the server and domain*

36. Saenz alleged that he "does not have access to any email "server." (Doc. 42, p. 8).

37. Saenz's own allegations prove the contrary. Saenz may not have access to any server, but he is the person who controls the access to it. Saenz states that he "purchased Microsoft 365 Email Essentials from GoDaddy and added this email subscription to the zroblack.com domain

under his existing GoDaddy account." (Doc. 42, p. 8). Saenz goes on to state that he "created the zroblack.com domain…and added it to his existing GoDaddy account". (Doc. 42, p. 8). It is clear from Saenz's own sworn testimony that he controls the access to the server and domain linked to his GoDaddy account.

### viii.   *Use of the trade secrets was alleged*

38.   Saenz argues that Jonathan and ZroBlack did not (1) define or adequately describe the proprietary code, (2) explain how or when the coded ended up on the Computer, (3) explain where the code is located or stored on the computer, or (4) explain what programs are required to use the code on the Computer. Plaintiffs are not aware, however, of any case law or rule that requires that degree of specificity. However, those details were disclosed, and are discussed above, and in Jonathan's most recent declaration. *See* Exhibit 45. Finally, contrary to Saenz's assertion paragraphs 7 and 8 of the Amended Application (Doc. 37) describes the software and explain what the software does.

### ix.   *Irreparable harm was shown*

39.   Plaintiffs have alleged and shown that Saenz is in possession of trade secrets and in a position to use them. As explained in Plaintiffs' Application, Defendants' prior actions demonstrate a willingness to evade or ignore the law. *Daniel Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013). State law determines whether harm is irreparable. *Heil Trailer Intern. Co. v. Kula*, 542 Fed. Appx. 329, 336 (5th Cir. 2013). When a defendant is in possession of trade secrets and in a position to use them, state courts have presumed irreparable harm will result absent injunctive relief. *Id*. As observed by the Fifth Circuit in *Heil Trailer*, Texas courts have frequently found irreparable harm in such cases, further noting that the Fifth Circuit itself had upheld similar findings by federal district courts. *Id*. at 336 (and cases cited

therein). Because Plaintiffs have shown that Saenz has previously destroyed ZroBlack's data and is in possession of ZroBlack's trade secrets, Plaintiffs have demonstrated irreparable harm.

## IV.   PRAYER

40.   Based on the foregoing argument, Plaintiffs respectfully ask the Court to grant Plaintiffs the relief requested. Plaintiffs further pray for all such other relief to which they may show themselves justly entitled at law or in equity.

> Respectfully submitted,
>
> THE VETHAN LAW FIRM, PC
>
> By: /s/ *Joseph L. Lanza*
>
> Charles M. R. Vethan
> Attorney-in-Charge
> Texas Bar No.  00791852
> Steven A. Costello
> Texas Bar No. 24062677
> VETHAN LAW FIRM - HOUSTON
> Two Memorial City Plaza
> 820 Gessner, Suite 1510
> Houston, Texas 77024
> Tel: (713) 526-2222
> Fax: (713) 526-2230
> Email: edocs@vwtexlaw.com
>
>
> Joseph L. Lanza
> Texas bar No. 00784447
> VETHAN LAW FIRM – SAN ANTONIO
> 11459 Huebner, Suite 101
> San Antonio, Texas 78230
> Tel: (210) 824-2220
> Fax: (713) 526-2230
> Email: edocs@vwtexlaw.com
>
> *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed with the Court on the 25th day of February 2021, and electronically served on the date reflected in the ECF system upon all parties registered to receive notice pursuant to the Court's CM/ECF system.

David A. Vanderhinder
State bar No. 24070787
DVanderhinder@dykema.com
Ryan J. Sullivan
State Bar No. 24102548
RSullivan@dykema.com
DYKEMA GOSSETT PLLC
112 East Pecan St., Suite 1800
San Antonio, Texas 78205

**Attorney for Defendant John Saenz**

George R. Spencer, Jr.
State Bar. No. 18921001
gspencer@langleybanack.com
Natalie F. Wilson
State Bar. No. 24067769
nwilson@langleybanack.com

**Attorneys for Defendants Gunn, Lee & Cave, P.C.**
**And Miguel Villarreal, Jr.**

/s/ *Joseph L. Lanza*
Joseph L. Lanza