**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **JONATHAN VILLAREAL, individually** | § | |
| **and derivatively on behalf of** | § | |
| **ZROBLACK, LLC.** | § | |
| **Plaintiffs,** | § | |
| **v.** | § | **CIVIL ACTION NO. 5:20-cv-00571-OLG** |
| | § | |
| **JOHN SAENZ, MIGUEL** | § | |
| **VILLARREAL, JR., and GUNN, LEE,** | § | |
| **& CAVE, P.C.** | § | |
| **Defendants** | § | |

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS GUNN, LEE & CAVE, P.C.'S AND**
**MIGUEL VILLARREAL'S SECOND RULE 12(B)(6) MOTION TO DISMISS WITH**
**PREJUDICE (DOC. 40)**

---

Plaintiff Jonathan Villareal, individually and derivatively on behalf of ZroBlack, LLC (hereinafter "Plaintiffs") files this Response to Defendants Gunn, Lee & Cave, P.C.'s and Miguel Villarreal's Rule 12(b)(6) Motion to Dismiss, and respectfully would show the court the following:

## I.   INTRODUCTION

1.      Plaintiff filed his Original Complaint (Doc. 1) on May 8, 2020.

2.      The Gun, Lee Defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 11).

3.      Plaintiff sought leave to amend the Complaint, which was granted. (Doc. 25). Plaintiff filed the redacted version of the First Amended Verified Complaint (Doc. 35) on January 15, 2021. The Gun, Lee Defendants filed their Rule 12(b)(6) Motion to Dismiss on February 4, 2021. (Doc. 40).

4.      Only Counts 6 and 7 of the Amended Complaint pertain to the Gunn, Lee

Defendants.

## II.   LEGAL STANDARD

5.      Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint "for failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Motions to Dismiss are disfavored and will only be appropriate in rare circumstances. *Sosa v. Coleman,* 646 F.2d 991, 993 (5th Cir. 1981). A Rule 12(b)(6) motion "is not a procedure for resolving contests about the facts or the merits of a case." *Askanase v. Fatjo*, 828 F. Supp. 465, 469 (S.D. Tex. 1993); *Mahone v. Addicks Util. Dist. of Harris Cty.*, 836 F.2d 921, 926 (5th Cir. 1988).

6.      "To survive a 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), (cert. denied, 552 U.S. 1182 (2008))).

7.      Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawful-harmed-me accusation." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)). "To survive a 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) cert. denied, 552 U.S. 1182 (2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

8.      The court must construe the complaint in favor of the plaintiff, taking all facts pleaded as true, no matter how improbable. *In re Katrina Canal*, 495 F.3d at 205.  "A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Vander Zee v. Reno*, 73 F. 3d 1365, 1368 (5th Cir. 1996); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Even where a court finds the pleadings insufficient, leave to re-file under Rule 15(a) is preferred, unless it is clear the defects are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Therefore, to the extent this Court may find that any claim is not sufficiently pled under the Federal Rules of Civil Procedure, Plaintiff respectfully requests leave to amend its Complaint.

### III.     ARGUMENT AND AUTHORITY

### I.     <u>Plaintiffs Have Stated a Plausible Claim for Negligence Against Defendants</u>

9.      The Gunn Lee Defendants' argument is premised on three theories. First, Plaintiff does not allege that had Gunn, Lee acted differently, Defendant Saenz would have returned any of the property about which Plaintiff complains. Mtn to Dismiss (Doc 40), p. 10-11, ¶¶ 27-30. Second, Saenz's acts are a superseding cause of ZroBlack's injury, precluding negligence. Mtn. to Dismiss (Doc. 40), p. 12-14, ¶¶ 31-38. Third, Jonathan Villarreal never insisted that provisions requiring the return of property be included in the Release. Mtn. to Dismiss (Doc. 40), p. 14-16, ¶¶ 39-44. These are ultimately foreseeability arguments and shall be addressed in turn.

10.     Generally, a legal malpractice action is composed of four elements: (a) the attorney owed the plaintiff a duty, (b) the attorney's negligent act or omission breached that duty, (c) the

breach proximately caused plaintiff's injury, and (d) the plaintiff suffered damages. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. National Dev. & Research Corp.*, 299 S.W.3d 106, 112 (Tex. 2009). The Gunn Lee Defendants' motion attacks the third element, causation. Mtn. to Dismiss (D0c. 40, p. 26, ¶ 26 ("Plaintiff cannot state a plausible claim for attorney negligence based on the facts because the Amended Complaint does not contain sufficient allegations to support the necessary finding of causation, *i.e.*, that any act or omission by the Gunn Lee Defendants was the proximate cause of injury to Plaintiffs").

11.     Foreseeability is a component of proximate cause. *Western Invs. v. Urena*, 162 S.W.3d 547, 551 (Tx. 2005). The question of proximate cause is an issue of fact. *Millhouse v. Wiesenthal*, 775 S.W.2d 626, 627 (Tex. 1989). This rule also applies to legal malpractice claims. *Id*. Because Defendants' argument essentially disputes alleged facts, the motion should be denied.

A.     *Whether Saenz would have agreed to the return of money and equipment is a fact issue to be determined by the jury and is therefore not an appropriate subject of Rule 12(b)(6) relief*

12.     Plaintiffs pleaded that Defendants did not include carve-out provisions for ZroBlack's personal and intellectual property in the Release, and that as a proximate cause of that failure, ZroBlack was damaged. Am. Compl. (Doc. 35), p.  17, ¶¶ 73, 74, 75 (alleging failure to include carve-out provisions), p. 19, ¶¶ 93, 94, 95 (alleging Saenz has taken down ZroBlack's webpage, deleted emails, and is holding domain name hostage), p. 41-42, ¶ 218 (alleging Gunn, Lee Defendants' failed to include in Release carve-out provision for property and require return of property), p. 42, ¶¶ 219, 220, 221 (alleging damages because of Gunn, Lee Defendants' acts or omissions). Plaintiff also alleged that after signing the Release, Saenz refused to return ZroBlack's personal and intellectual property. Am. Compl. (Doc. 35), p. 19, ¶¶ 90-95 (refusal to return domain name); p. 18, ¶¶ 96-98 (refusal to return computer), p. 20-21, ¶¶100-104 (refusal to return money), p. 21, § 105 (refusal to return property). Because the Rules require only notice pleading—that is,

"'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests'"—these facts, taken as true, support an inference Defendants' failure to include carve-out provisions in the Release left ZroBlack no way to recapture its personal and intellectual property. *Mahone v. Addicks Util. Dist. of Harris Cty.*, 836 F.2d 921, 926 (5th Cir.1988) (quoting in part *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), abrogated on other grounds, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561, 127 S.Ct. 1955, 1968, 167 L.Ed.2d 929 (2007)).

13.     Defendants counter, arguing the Amended Complaint does not state that had they done anything different, Saenz would have agreed to return the personal and intellectual property. Mtn. to Dismiss (Doc. 11), p. 9, ¶ 25. They also contend additional facts alleged indicate Saenz would not have agreed to such terms. *Id.* But Defendants are countering Plaintiff's alleged facts with alleged facts of their own, e.g., Saenz would not have agreed, rendering their contentions a fact-based argument that disputes the allegations in the Amended Complaint. As such, it requires a fact-based inquiry at the summary judgment or trial stage. *Baker v. Putnel*, 75 F.3d 190, 197 (5th Cir. 1996) (plaintiffs' allegation in excessive force lawsuit that deceased did not point pistol at defendant officer and defendant officer's allegation plaintiff was holding a pistol and clip, slid clip into pistol, and pointed pistol at officer was factual dispute not ripe for consideration at Rule 12(b)(6) stage, reversing grant of summary judgment on Rule 12(b)(6) motion); *see also In re Seitel, Inc. Securities Litigation*, 447 F. Supp. 2d 693, 713 (S.D. Tex. 2006) (addressing whether "state of mind" of scienter inquiry is appropriate at Rule 12(b)(6) stage in securities fraud litigation, which required pleading of "strong inference" of scienter, where court concluded defendants' disputes of facts alleged in complaint were fact based and not subject matter for a Rule 12(b)(6) motion).

14.     Defendants' argument also requires the Court to speculate as to what Saenz might or might not have done regarding the return of the computer and code, and release of the domain name and associated webpage and email server, and arguably as to the $740,000. What Saenz would or would not have agreed to is also a fact question. Would, for example, Saenz have agreed to return to laptop computer? Would he have transferred the domain name?  Would he have done all these things, or only some, or none? These are questions of fact that will eventually have to be decided by a jury. Therefore, it is not appropriate subject matter for a Rule 12(b)(6) motion. *Mahone v. Addicks Util. Dist. of Harris Cty.*, 836 F.2d 921, 926 (5th Cir. 1988); *Askanase v. Fatjo*, 828 F. Supp. 465, 469 (S.D. Tex. 1993).

15.     Defendants' reliance on *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. 7 Research Corp.*, 299 S.W.3d 106 (Tex. 2009) for the proposition that a plaintiff must "prove and obtain findings as to the amount of damages that would have been recoverable and collectible if the other case had been properly prosecuted," *Id*. at 112, is misplaced. *Akin, Gump* addressed whether a jury's findings were sufficient to support the jury's findings against the Akin, Gump law firm. *Akin, Gump* is not about pleading standards or whether a plaintiff pleaded enough facts to state a plausible claim. Nor does it stand for the proposition that a plaintiff must plead that it can recover damages if the underlying claim had been properly prosecuted.

16.     Even if *Akin, Gump* did stand for that proposition, Plaintiff nonetheless pleaded sufficient facts to support recovery (or "collection" of, if you will) of ZroBlack's property. Plaintiff pleaded that Saenz refused to return the laptop after the Release was signed, refused to return the trade secrets after the Release was signed, refused to release the domain name to ZroBlack after the Release was signed, and that he deleted ZroBlack's webpage and email after the Release was signed. Because Plaintiffs alleged these things happened after the Release was executed and

because of the failure to include express provisions for the return of property, it is reasonable to infer they would not have happened had those provisions been included in the Release. Furthermore, if Plaintiff was required to specifically plead that Saenz would have returned these things had Defendants included the carve-out provisions in the Release, then that is a simple matter of amending the Complaint. This Honorable Court should not, however, confuse what Plaintiff must plead versus what he must ultimately prove at trial, which is what Defendants have done.

17.     Defendants make essentially the same argument regarding the return of the $740,000, to wit, because Plaintiffs alleged Saenz has spent the money, Plaintiffs cannot not prove the $740,000 could be collected from Saenz. However, what the Amended Complaint alleged is that on information and belief Saenz invested about $305,000 in the stock market and $423,850 in property renovations. Am. Compl. (Doc. 35), p. 14, ¶¶ 41, 42. The Complaint does not allege Plaintiff could not recover those sums. If the money is invested in the stock market or real estate, it might easily be recoverable.[1] Additionally, here again, Defendants on conflating what must be ultimately proved at trial with what must be alleged.

B.     *Saenz's alleged superseding acts are not relevant to causation because Defendants should have foreseen the risk of proprietary data being misused or destroyed*

18.     The Gunn, Lee Defendants argument here is (a) Saenz's intentional acts were a superseding cause of ZroBlack's injury and (b) Saenz's independent statutory tortious conduct was a superseding cause of ZroBlack's injury. It is well-established in Texas law that third-party

---

[1] Defendant might argue that recovering against the real property is unlikely because such property may be exempt, especially if the property involved is homestead property. But the Complaint does not allege the property was homestead or otherwise exempt. Again, such an argument confuses what Plaintiff must prove at trial versus what he must allege to survive a Rule 12(b)(6) motion. Absent an allegation in the Complaint such property is exempt, the Court should not consider that possibility because it is beyond the record as it currently stands.

conduct is a superseding cause of damages arising from a defendant's negligence unless the third-party conduct is a foreseeable result of the defendant's negligence. *See e.g. See Phan Son Van v. Pena*, 990 S.W.2d 751, 754 (Tex.1999); *see also Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749 (Tex. 1998) (one who controls premises has a duty to use ordinary care to protect invitees from criminal acts of third parties if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee."); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 314 (Tex.1987) (tortfeasor's negligence is not superseded when the criminal conduct is a foreseeable result of the negligence); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 550 (Tex.1985) (same). The arguments raised by Defendants here are foreseeability arguments; thus dismissal is not appropriate because whether Gunn, Lee should have foreseen the possibility Saenz would have misused or destroyed ZroBlack's proprietary data is a question of fact to be decided by the jury. Numerous online blogs and articles discuss the importance of re-capturing a firm's intellectual property when employment is severed. Gunn, Lee, which touts itself as an intellectual property firm, should have foreseen the possibility that Saenz possessed intellectual property, counseled ZroBlack about the need to recapture that property, and provided carve-out provisions in the Release.[2]

19.    Moreover, The Gunn, Lee Defendants' arguments are not arguments in the slightest. Instead, Defendants cite to various interpretations of the superseding cause doctrine and end this section with a conclusory statement suggesting the above black-letter law is in "favor of finding Saenz's intentional conduct to be a superseding case of the injury asserted by [Jonathan].

---

2 For example, *see* https://www.natlawreview.com/article/protecting-intellectual-property-and-data-if-employee-separation-anticipated;   https://ogletree.com/insights/departing-employees-ensuring-protection-of-trade-secrets-and-intellectual-property/;

Gunn, Lee Mtn. to Dismiss (Doc. 11) p. 11, ¶ 27-29. This section of argument is no argument at all, and the Court should therefore give such no weight same in determining their motion to dismiss.

20.     The *Phan Son* factors cited by Defendants actually favor Plaintiffs. *Phan Son Van v. Peña*, 900 S.W.2d 751 (Tex. 1999). In *Phan Son*, the Texas Supreme Court identified several factors from ¶ 448 of the Restatement (Second) of Torts to be considered in determining whether an intervening force rises to the level of a superseding cause. *Id*. at 754 (Tex. 1999). Those factors are:

> (a)  the fact that the intervening force brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;
>
> (b)  the fact that the intervening force's operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of the force's operation;
>
> (c)  the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;
>
> (d)  the fact that the operation of the intervening force is due to a third person's act or to his failure to act;
>
> (e)  the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;
>
> (f)  the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

*Id*. Defendants claim that several of those factors weigh in favor of their argument. As will be explained, Plaintiffs respectfully disagree.

> a.  *Whether the interfering acts operated independently of any situation created by the Gunn, Lee Defendants is not relevant to the standard of legal of professional care the Gunn, Lee Defendants should have exercised*

21.     Defendants first contend they did not create the situation that makes it impossible

for Saenz to comply with the obligation to return property. First, they argue, the Complaint alleges that Saenz took the money before Gunn, Lee became involved and had already spent it by the time the Release was signed. Second, they contend, it is a reasonable inference from the pleadings that Saenz refused to return the laptop, proprietary code, and domain name for the webpage and email server because Jonathan Villarreal refused to characterize the $740,000 as a gift. These are circumstance they argue their alleged negligence did not create.[3]

22.    Starting with the return of the laptop, proprietary code, and domain name, intellectual property theft by high-level officers and employees is a well-known and documented risk facing businesses, especially those that specialize in the creation of intellectual property (such as computer code). As shown above, articles and online blogs discuss the drafting of releases when the relationship between companies and such officers and employees occurs. It is a reasonable inference from the pleadings that Defendants, who bills themselves as an intellectual property firm, was certainly aware of such risks. Yet here, they utterly failed to account for those risks in the Release.

23.    Moreover, their argument that Saenz was motivated by Jonathan's refusal to

---

[3] Additionally, Defendants' argument suggesting that Plaintiffs' theory of liability is exclusive to the factual understanding that the release required Saenz to return all property to ZroBlack and Jonathan is a misunderstanding of the Amended Complaint on a fundamental level. Specifically, Plaintiffs' allege an alternate set of facts in their claims against the Gunn, Lee Law firm, claiming that the release is deficient and should have included specific language requiring Saenz to return any ZroBlack property in his possession. Comp.  (Doc. 1) p. 24-25, ¶ 83-87. The Rules of Federal Procedure specifically allow for pleading alternative theories of facts or claims. FED. R. CIV. P. 8(d). *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 674 (5th Cir. 2003) ("Plaintiffs are permitted to plead in the alternative."); *see also Southwestern Bell Telephone Co. v. Fitch*, 643 F.Supp.2d 902, 908-909 (S.D. Tex. 2009) (citing FED. R. CIV. P. 8) (holding that AT&T Texas may bring alternative pleadings, even if inconsistent, and dismissal of inconsistent theories is unwarranted at the 12(b)(6) stage of proceedings). Thus, the Gunn, Lee Defendants' arguments are not ripe for consideration.

characterize the $740,000 as a "gift" for tax purposes rings hollow. Who knows what Saenz may have done had the Release contained provisions that he returns those things? Faced with language in the Release requiring that he return those things might have mitigated his anger at Jonathan's refusal. Furthermore, provisions that the computer, code, and domain be returns at the time the Release was signed would have allowed the return of those things prior to Saenz's ire reaching the point he would refuse to return them. The notion Gun. Lee did not create the situation that made it impossible for Saenz to comply with the Release is backwards—their failure to include language requiring the return of the laptop, code, and domain created the environment where Saenz felt he did not have to return those things.

24.    As to the $740,000, Plaintiff explained above whey their argument that the pleadings state that at the time of the Release, the $740,000 had already been spent and could not have been returned even if the Release required the return of the money is weak. The pleadings alleged on information and belief Saenz invested about $305,000 in the stock market and $423,850 in property renovations. Am. Compl. (Doc. 35), p. 14, ¶¶ 51, 52. The Complaint does not allege Plaintiff could not recover those sums. If the money is invested in the stock market or real estate, it might easily be recoverable.

> b.    _Whether the Complaint alleges independent statutory bases for Saenz's liability to Plaintiff and not simply breach of contract is not relevant to the standard of legal of professional care the Gunn, Lee Defendants should have exercised_

25.    The Gunn, Lee Defendants argue here that there is no well-pleaded factual allegation or reasonable inference that the Gun, Lee Defendants could have anticipated Saenz's alleged intentional conduct. This is but a variation of the argument above.

26.    Given the sensitive nature of ZroBlack and Jonathan's business in computer code, Saenz's high position in ZroBlack, it was very likely that Saenz would continue to possess and use

ZroBlack's property if a release made no express provision for its return. The Gunn, Lee Defendants, because of their expertise in IP law, should have foreseen the risk of Saenz's actions here, and, because they were *also representing Plaintiffs* while drafting and executing the release, should have protected Plaintiffs' property interest when drafting and executing the release. Based on the facts alleged, it is clear that they did not do so, and failed to meet the requisite standard of care of a reasonably prudent intellectual property law firm.

C.     *Whether Plaintiffs' Complaint sufficiently alleges facts establishing that Plaintiff insisted upon the inclusion of language in the Release requiring the return of the money and other property to ZroBlack or that Plaintiff deemed these issues important enough to even raise them as issues prior to or at the time the Release was executed is likewise irrelevant to the issue of the standard of care the Gunn, Lee Defendants should have exercise*

27.     Part of an attorney's job is counseling and providing legal advice. An attorney and law firm drafting a release related to the departure of one of two members of a limited liability company that possessed trade secrets and other proprietary property, and having an online presence, should have foreseen the risks of the departing member keeping possession of proprietary company property. An attorney in that position should have advised of the need for language in a release carving out confidentiality requirements and addressing the return of property and access to online accounts. Yet, inexplicably, Defendants did not provide that advice or make provision in the Release to protect ZroBlack's proprietary property.

28.     Gunn, Lee is an IP firm. Because they are an IP firm, they should know or should have known to include the language in the release that specifically required Saenz to return the computer laptop, the code, and the domain name with access to ZroBlack's webpage and email server, and any other ZroBlack property in his possession. However, based on the language provided in the release, the Gunn, Lee Defendants failed to do so, and thus, have enabled Saenz to keep and use trade secrets and property rightfully belonging to ZroBlack and Jonathan. Gunn, Lee,

as an allegedly reputable intellectual property law firm should have known to include such language in the release at issue here, given the proprietary and sensitive nature of ZroBlack's property.

D. **Plaintiffs have stated a plausible claim for breach of fiduciary duty because their factual allegations show the claims falls outside the Rule against fracturing legal malpractice claims**

29.     Defendants argue that Plaintiffs have pleaded no facts that would support an independent breach of fiduciary duty claim. While Defendants are correct in that the fracturing of a malpractice claim is generally disfavored, exceptions do exist, such as when a claim against an attorney focuses on the attorney obtaining an improper benefit, as opposed to the attorney failing to adequately represent the claim. *Riverwalk CY Hotels Partners, Ltd. v. Akin Gump Strauss Hauer & Feld.*, LLP, 391 S.W.3d 229, 236 (Tex. App.—San Antonio 2012, no pet.). Breaches of fiduciary duty fall within that exception. *Id.* "A breach of fiduciary duty occurs when an attorney, among other things, subordinates his client's interest to his own, retains the client's funds, engages in self-dealing, improperly uses client confidences, fails to disclose conflicts of interest, or makes misrepresentations to achieve these ends." *Id.* "…the types of conflicts of interest which could give rise to a breach of fiduciary duty are those in which the lawyer has a direct pecuniary interest in the litigation that is adverse to the client, and the attorney pursues his own interest to the client's detriment." *Id.*; *see also Trousdale v. Henry*, 261 S.W.3d 221, 229 (Tex. App. — Houston [14th Dist.], 2008) (noting that a "breach of fiduciary duty by an attorney often involves the attorney's failure to disclose conflicts of interest...improper use of client confidences, taking advantage of the client's trust...and making misrepresentations."); *Vara v. Williams*, 2013 WL 1315035, at *3 (Tex. App. — Austin, 2013) (opining that the Texas "fracturing" rule does not preclude clients from asserting causes of action other than negligence *if supported by the facts*) (emphasis added).

30.     Plaintiffs alleged that Attorney Miguel Villarreal and co-Defendant John Saenz had a pre-existing relationship, which Defendants did not disclose to Jonathan Villarreal. Am. Compl. (Doc. 35), p. 22, ¶ 109. Plaintiff also alleged that the relationship was so close, Defendants were cutting Saenz a discount on fees – a discount they did not give Plaintiffs. It is a reasonable inference from these allegations that Defendants subordinated their representation of Plaintiffs to their own self-interest—preserving their relationship with Saenz.

31.     Also, as made plain by *Riverwalk Cy Hotel Partners*, fraud with respect to billing practices will support a breach of fiduciary duty claim. In *Riverwalk Cy Hotel Partners*, the court found that an allegation regarding excessive fees, challenging the integrity of the defendant's billing practices is a sufficient allegation for a separate breach of fiduciary duty claim. *Riverwalk CY Hotel Partners*, 291 S.W.3d at 238-39; *See also Sullivan v. Bickel & Brewer*, 943 S.W.2d 477 (Tex. App. — Dallas, 1995) (holding that an allegation of fraudulent billing practices is sufficient to allege a breach of fiduciary duty claim). Here, Miguel Villareal had a conflict of interest that cannot be ignored nor must have been disclosed as material to the representation of Jonathan. Miguel specifically chose to charge Jonathan more for his representation compared to that of Saenz. Moreover, Miguel also chose to pressure Jonathan to resolve the dispute "for the sake of the family," as Jonathan Saenz were related. Am. Compl. (Doc. 35) p. 16, ¶ 66. This conflict of interest specifically invokes the "quality of the billing practices" idea opined in *Akin Gump*, as Plaintiffs are alleging that Mike had a conflict of interest in charging Jonathan more for fees than he did for Saenz, and by pressuring Jonathan to settle the case, while the average attorney in Miguel's case could and would diagnose the conflict of interest here and conclude he could not represent either party. Miguel did no such thing here. In fact, it can also be said that the deliberate omission of requiring Saenz to return the $740,000 to ZroBlack is evidence that Mike and the law

firm deliberately chose to favor one client (Saenz) over the other (Jonathan). As a result, the claims of fiduciary duty against the law firm are meritorious based on Plaintiffs' Complaint.

32.     Another case also sheds light on the difference between a legal malpractice claim and a breach of fiduciary duty claim. In *O'Donnell v. Smith*, the court reasoned that the difference between each claim is that "the focus of a breach of fiduciary duty claim is whether an attorney obtained an improper benefit from representing a client, while a legal malpractice claim asks whether an attorney adequately represented a client." *O'Donnell v. Smith*, 234 S.W.3d 135, 146 (Tex. App. — San Antonio, 2007). In further opining on breach of fiduciary duty, the court suggested that facts regarding an "attorney's failure to disclose conflicts of interest, failure to deliver client funds, *improper use of client confidences*, or engaging in self-dealing" also constitute a breach of a fiduciary duty to a client. *Id*. (*citing Cosgrove v. Grimes*, 774 S.W.2d 662, 665 (Tex. 1989).

33.     Here, Plaintiffs' Complaint alleges that the Gunn, Lee Defendants engaged in slanted billing practices by charging more for services rendered to Jonathan than to Saenz. (Doc. 1) p. 14, ¶ 47. Additionally, the Gunn, Lee Defendants' use of pressure to force Jonathan to settle the case with Saenz "for the sake of the family" based on Jonathan's anxiety and other mental health concerns. *Id*.; (Doc. 1) p. 12-13, ¶ 42. Because of these allegations, Plaintiffs' "improper use of client confidences" likely shifted the equity of Jonathan and Saenz' relationship with Mike in favor of Saenz. Even more so, Miguel failed to disclose the extent of his prior relationship with Saenz, possibly alluding to the fact that Mike would hold Saenz's client relationship in higher regard than that of Jonathan. *Id*. at p. 14, ¶ 47. Because of the above allegations, Plaintiffs have sufficiently pled enough facts to survive the Gunn, Lee Defendants' motion to dismiss for failure to state a claim.

a. *Fraud with respect to failing to disclose prior relationship and conflict of interest*

34.     Plaintiffs also state a valid and separate breach of fiduciary duty claim by alleging that Miguel Villarreal failed to disclose the extent of his relationship with Saenz prior to joint representation. In *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, the court held that the defendant's failure to disclose to plaintiff their conflict of interest constituted a breach of fiduciary duty claim. *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 190 (Tex. App. — Houston [14th Dist.], 2002). Attorneys in the course of representation, the court reasoned, "owe their clients utmost good faith in their dealings with them, that attorneys owe their clients a duty to affirmatively disclose all material facts that would affect their relationship as well as the legal consequences of those facts, and that breach of this duty states a claim for constructive fraud." *Id*. (*citing Goffney v. Rabson*, 56 S.W.3d 186, 193-94 (Tex. App. — Houston [14th Dist.], 2001) (stating in dicta that failing to disclose conflicts of interest states a separate claim for breach of fiduciary duty from legal malpractice).

35.     Here, the same can be said regarding Miguel's relationship with Saenz prior to joint representation. Plaintiffs' Complaint alleges that Miguel failed to disclose the extent of his prior relationship with Saenz before he agreed to jointly represent Jonathan and Saenz. Am. Compl. (Doc. 35) p. 21, ¶ 108. This allegation on its face constitutes a plausible claim of breach of fiduciary duty, as Miguel "failed to disclose all material facts that would affect [his] relationship" with his clients. *Deutsch*, 97 S.W.3d at 190. Therefore, because Plaintiffs allege facts that constitute a distinct and separate claim for breach of fiduciary duty, Plaintiffs should survive the Gunn, Lee Defendants' motion to dismiss.

i.   The Amended Complaint asserts an independent basis for a breach of fiduciary duty claim separate from the negligence claim

36.     There are factual allegations that support a breach of fiduciary duty claim

independent from negligence because the Gun, Lee Defendants breached their fiduciary duty of loyalty to the Plaintiff by acting adversely to their interest, which goes beyond the negligence claim asserted.

37.   The fact that the Gun, Lee Defendants acted adversely to their clients and did not consider their clients' interests in the highest regards gives rise to an independent breach of fiduciary duty claim. The Gunn, Lee Defendants ignored their professional responsibility to the Plaintiff and negotiated agreements between Jonathan Villareal and Saenz and ZroBlack which put the Plaintiff in a worse position than they were prior to the agreements. Further, the Gun, Lee Defendants ignored the discussions between the members of ZroBlack with respect to qualifying the $740,000 that Saenz wrongfully took from the business and that resulted in Saenz embezzling the money from the company.

38.   The above-mentioned actions warrant a breach of fiduciary duty claim that is independent and goes beyond the negligence claim.

      ii.   <u>Whether the claim there was an undisclosed pre-existing relationship between Saenz and Miguel Villarreal is a fabrication is a fact question</u>

39.   In a subheading titled "Fabrications do not a well-pleaded allegation make," the Gunn, Lee Defendants claim the allegations John Saenz and Miguel Villarreal had an undisclosed pre-existing relationship is false.

40.   The Amended Complaint alleges that the Gunn, Lee Defendants failed to disclose the extent of their relationship with Saenz to the Jonathan. This allegation is supported by the facts that the Gunn, Lee Defendants (1) were cutting Saenz a discount of the shares of fees while charging Jonathan for the full amount of Jonathan's share of the fees; (2) were favoring Saenz over Jonathan; and (3) were continuously pressuring Jonathan to resolve the dispute for "the sake of the family," instead of advocating for Jonathan and ZroBlack and trying to fulfill their interests and

requests in their capacity as attorneys.

41.     Although it is true the Jonathan and Saenz signed a Conflict Waiver, a condition to accepting that representation is whether "the lawyer reasonably believes the representation of each client will not be materially affected." TEX. PROF. R. DISC. CON. §1.06(c)(2). Additionally, under the Texas Disciplinary Rules of Professional Conduct, when it comes to non-litigation conflict situations, "a lawyer may not represent multiple parties to a negotiation whose interests are fundamentally antagonistic to each other..." As the allegations in the Amended Complaint and attached exhibits show, Jonathan's and Saenz's interests were plainly antagonistic to each other.

42.     The above facts show the allegations that the Gunn Lee, Defendants failed to disclose the extent of their relationship with Saenz which gave rise to a conflict of interest between the Gunn, Lee Defendants and Saenz. The facts are well-pleaded and provide a basis for a claim for relief against the Gunn, Lee Defendants.

> iii.   The Gunn Lee Defendants acted as an intermediary between J. Villarreal, ZroBlack, and Saenz, in conformance with Disciplinary Rule 1.07

43.     Rule 1.07 of the Texas Professional Rules of Disciplinary Conduct set forth three criteria for determining whether an attorney can represent persons with adverse interests. TEX. PROF. R. DISC. CON. §1.07. The first criteria is whether the Gunn, Lee Defendants advised and received written consent from Jonathan and ZroBlack of the issues of joint representation. Here, Defendants contend that the conflict waiver, while signed by Jonathan, established that the Defendants Gunn, Lee and Mike Villareal advised Jonathan and ZroBlack of the advantages and disadvantages of joint representation under Rule 1.07(a). The waiver, however, did not mention the prior relationship between Saenz and Mike, which could arguably affect that representation.

44.     The second criteria is whether "[t]he lawyer reasonably believes that the matter can be resolved without the necessity of contested litigation on terms compatible with the client's best

interests, that each client will be able to make adequately informed decisions in the matter and that there is little risk of material prejudice to the interests of any of the clients if the contemplated resolution is unsuccessful." Because of the waiver's language, and the facts of Mike/Gunn, Lee's representation of Jonathan and ZroBlack, there is ample evidence of material prejudice to the interests of Jonathan and ZroBlack, given that Mike showed a complete and deliberate indifference to their interests in the course of drafting the release, and in the representation thereafter. It is clear that based on the language of the release that the Gunn, Lee Defendants failed to inform the Jonathan and ZroBlack to make informed decisions regarding the release. In turn, the Gunn, Lee Defendants have failed to meet the standard required under Rule 1.07(b).

45.     The commentary on Rule 1.07 also suggest that lawyers may only act as an intermediary to adjust a relationship between clients on an "amicable and mutually advantageous basis." TEX. R. PROF. CONDUCT, Rule 1.07, Comment 1. Based on the situation presented to the Gunn, Lee Defendants before representation, and the outcome of said representation, it is clear that Jonathan and Saenz were not in a situation where they were coming from a "mutual and advantageous" position. Saenz wanted to keep the $740,000 for himself while refusing to do any such work for ZroBlack for the money.

46.     Moreover, after Saenz and Jonathan's relationship deteriorated to the point of needing to assign Saenz's share in ZroBlack and obtain a release, there was not an amicable relationship between the parties. The parties were clearly in a position where dual representation was not possible. Saenz had possession of $740,000 he did not earn, but he also maintained ZroBlack property in his possession; most notably the laptop that contained the proprietary code responsible for ZroBlack's early economic success, and would continue to fuel ZroBlack's business for many years. Because of the importance of the computer code as the crux of ZroBlack's

existence, and the need to recapture that property, a lawyer could not responsibly represent both sides to this dispute. Because of the sheer difference and animosity between Jonathan and Saenz leading up to joint representation, no reasonable lawyer could have adequately represented the disparate interests of Jonathan and Saenz, in violation of Rule 1.07(2).

47.     Finally, the lawyer must reasonably believe that the common representation can be undertaken impartially and without improper effect on other responsibilities the lawyer has to any of the clients. There is no possible way that, based upon the wording in the release, that Mike and Gunn, Lee could have carried out common representation impartially and without an improper effect on the responsibilities that Mike and the firm had to Jonathan and ZroBlack. This is evident by the language of the release, and Defendants' understanding of the release suggesting that Saenz did or need not return the property of ZroBlack in his possession, including the $740,000, the Mac laptop, and the computer code housed on the laptop. Based on consequences of the signed release, and on the Gunn, Lee Defendants' arguments regarding the interpretation of the release, there is no feasible way the Gunn, Lee Defendants could have carried out common representation in an impartial and proper manner, as they failed to protect the property interests of ZroBlack and Jonathan by failing to include language in the release requiring Saenz to return all ZroBlack property in his possession.

48.     As reiterated above, the sheer difference in priorities and desires of both Jonathan and Saenz suggests that a lawyer could not maintain impartiality during joint representation. TEX. R. PROF. CONDUCT, 1.07, Comment 7. Saenz wanted to keep the $740,000 he paid himself, while Jonathan wanted the very opposite. Jonathan also wanted the return of the computer code wholly dispositive for ZroBlack's existence. Without it, Jonathan could not continue his operation of ZroBlack after the dissolution of Saenz's share of the company. Based on the outcome of this

unfortunate situation and the difference in priorities of Jonathan and Saenz, no lawyer could have reasonably believed that common representation could have been undertaken impartially. As a result, the Gunn, Lee Defendants are in violation of Rule 1.07(3).

    iv.   <u>Furthermore, the Gunn Lee Defendants' argument regarding Rule 1.07 are</u>
<u>irrelevant, because it is not the legal standard by which attorney malpractice</u>
<u>claims are judged, and the Texas Professional Disciplinary Rules</u>

49.    Attorney malpractice claims in Texas are based on Negligence. *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989). *See also Acevedo v. Commission for Lawyer Discipline*, 131 S.W.3d 99, 107 (Tex. App. — San Antonio, 2004) ("An attorney disciplinary action is 'not an attorney malpractice case where the standard of care is at issue. Rather, [it] is a disciplinary proceeding where the appropriate interpretation of the Rules of Conduct and a factual determination of whether the [attorney's] conduct met or violated the Rules at issue.'" (internal citations omitted)).

50.    Additionally, a violation of the Texas Disciplinary Rules do not give rise to a claim of attorney malpractice under the theory of negligence per se, as the rules do not authorize a private cause of action. *See Cuyler v. Minns*, 60 S.W.3d 209, 214 (Tex. App. — Houston [14th Dist.] 2001) (*citing* Tex. Disciplinary Rules of Professional Conduct, V.T.C.A. Govt. Code T.2, Subt. G. App. A, Art. 10 § 9, Preamble: Scope. Simply put, the Rules of Professional Conduct are not the medium in which Plaintiffs bring their claims. Put another way, Plaintiffs raise their claims regarding the conduct of the Gunn, Lee defendants under the theory of attorney malpractice, or, as Texas courts have interpreted such as a traditional negligence claim. *Grimes*, 774 S.W.2d at 664. Thus, Defendants' arguments here are irrelevant and must fail.

> b. *Lastly, Plaintiffs' claims against the Gunn, Lee Defendants, do not suggest a violation of Rule 1.07, but instead insist on a violation of the general conflict of interest rule, Rule 1.06*

51.     Plaintiffs have also alleged a violation of Texas Rule of Professional Conduct 1.06. The Am. Compl. (Doc. 35), p. 51-52, ¶¶ 292-300 relates the facts regarding Gunn, Lee Defendants' violation of Rule 1.06. Specifically, that "no attorney could reasonably believe under these facts that [the Gunn, Lee Defendants'] representation of both clients would not have been material affected" as a result of dual representation. Am. Compl. (Doc. 35), p. 51, ¶ 295. Because Plaintiffs allege the facts necessary to constitute a claim of attorney malpractice based on allegations of a violation of Rule 1.06, this claim should survive Defendant's motion for dismissal. *Id.*

52.     Rule 1.06 provides that a lawyer shall not represent a person if representation of the person: (1) involves a substantially related matter in which that person's interests are materially and directly adverse to the interest of another client...; or (2) reasonably appears to be or become adversely limited by the lawyer's or law firm's responsibility to another client..."

53.     Plaintiffs' Complaint alleges that Jonathan, ZroBlack, and Saenz's interests were adverse under the definition of Rule 1.06. Plaintiffs specifically allege that Jonathan wanted the exact *opposite* of Saenz when negotiating the release. That is, the return of the $740,000, the MacBook Pro laptop, and the proprietary computer code. Saenz, on the other hand, wanted to keep the $740,000 the laptop, and the computer. Am. Compl. (Doc. 35) p. 51-52, ¶¶ 295-297. Under the set of facts alleged by Plaintiff, the Gunn, Lee Defendants had waded into a conflict of client interests so directly adverse to each other, no reasonable lawyer could have represented Saenz, Jonathan, and ZroBlack in the way The Gunn, Lee Defendants did so under these facts. Therefore, based on the allegations in Plaintiffs' Complaint, Plaintiffs' claims that the Gunn, Lee Defendants violated Rule 1.06 and fell below the professional standard of care.

54.    Plaintiffs' Complaint further alleges that the Gunn, Lee Defendants were in position to profit from the release at issue, because the firm would "act as the escrow agent for funds paid by ZroBlack's customer under the PSA." Am. Compl. (Doc. 35) p. 52 ¶ 298. This circumstance puts the Gunn, Lee Defendants directly at the center of the deal between the parties, further entangling their involvement of ZroBlack, Jonathan, and Saenz. The allegations above clearly suggest that the Gunn, Lee Defendants' had interests that were "materially and directly adverse" to the interests of ZroBlack and Jonathan. Because of these allegations, Plaintiffs have sufficient pled a claim that the Gunn, Lee Defendants have violated Texas Rule of Professional Conduct. 1.06.

### IV.    ADDITIONAL AMENDMENT OF THE COMPLAINT WOULD NOT BE FUTILE

55.    The Federal Rules of Civil Procedure is in favor of permitting amendments of pleadings, stating that such amendments should not be denied absent a "substantial reason" to do so. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Further, futility includes a circumstance in which a proposed amendment to assert a claim would fail to state a claim upon which relief could be granted under Rule 12(b)(6). *Stripling v. Jordan Prod. Co.*, LLC, 234 F.3d 863, 872-73 (5th Cir. 2000).

56.    The Gun, Lee Defendants' claim that additional amendments of the complaint would be futile because the Amended Complaint lacks factual basis to support a basis of negligence, and plausible factual allegations to support a claim for fiduciary duty. However, that is erroneous because as discussed above there are facts to support the claim that the Gunn, Lee Defendant's acted negligently when they did not conform to the "ordinarily prudent attorney," standard of care when negotiating the Agreement. Further, there are plausible factual allegations that support the basis of the breach of fiduciary duty when the Gun, Lee Defendants disregarded

the conflict of interest presented in representing both Plaintiff and Saenz. Given, that these are two separate claims, standards of care, and duties owed to the client it does not fall under the anti-fracturing rule. Due to the mentioned facts, the Gunn, Lee Defendants do not have substantial reason to request denial of additional amendments of the Complaint.

## V.   CONCLUSION AND PRAYER

Plaintiffs respectfully request that this Court to deny the Gun, Lee Defendants' Motion to Dismiss, or alternatively grant Plaintiff's request to further amend his Complaint.

Respectfully submitted,

THE VETHAN LAW FIRM, PC

By: /s/ *Joseph L. Lanza*

Charles M. R. Vethan
Attorney-in-Charge
Texas Bar No.  00791852
Steven A. Costello
Texas Bar No. 24062677
VETHAN LAW FIRM - HOUSTON
Two Memorial City Plaza
820 Gessner, Suite 1510
Houston, Texas 77024
Tel: (713) 526-2222
Fax: (713) 526-2230
Email: edocs@vwtexlaw.com

Joseph L. Lanza
Texas bar No. 00784447
VETHAN LAW FIRM – SAN ANTONIO
11459 Huebner, Suite 101
San Antonio, Texas 78230
Tel: (210) 824-2220
Fax: (713) 526-2230
Email: edocs@vwtexlaw.com
***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was electronically filed with the Court on the 25th day of February 2021, and electronically served on the date reflected in the ECF system upon all parties registered to receive notice pursuant to the Court's CM/ECF system.

David A. Vanderhinder
State bar No. 24070787
DVanderhinder@dykema.com
Ryan J. Sullivan
State Bar No. 24102548
RSullivan@dykema.com
DYKEMA GOSSETT PLLC
112 East Pecan St., Suite 1800
San Antonio, Texas 78205

**Attorney for Defendant John Saenz**

George R. Spencer, Jr.
State Bar. No. 18921001
gspencer@langleybanack.com
Natalie F. Wilson
State Bar. No. 24067769
nwilson@langleybanack.com

**Attorneys for Defendants Gunn, Lee & Cave, P.C.**
**And Miguel Villarreal, Jr.**

/s/ *Joseph L. Lanza*
Joseph L. Lanza