## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **JONATHAN VILLAREAL, individually** | § | |
| **and derivatively on behalf of** | § | |
| **ZROBLACK, LLC.** | § | |
| **Plaintiffs,** | § | |
| **v.** | § | **CIVIL ACTION NO. 5:20-cv-00571-OLG** |
| | § | |
| **JOHN SAENZ, MIGUEL** | § | |
| **VILLARREAL, JR., and GUNN, LEE,** | § | |
| **& CAVE, P.C.** | § | |
| **Defendants** | § | |

## PLAINTIFFS' RESPONSE TO DEFENDANT JOHN SAENZ'S RULE 12(B)(6) MOTION TO DISMISS (DOC. 41)

Plaintiff Jonathan Villareal, individually and derivatively on behalf of ZroBlack, LLC (hereinafter "Plaintiffs") files this Response to Defendant John Saenz's Rule 12(b)(6) Motion to Dismiss, and respectfully would show the Court the following:

### SUMMARY

1.      Defendant John Saenz's Rule 12(b)(6) Motion to Dismiss should be denied because the Release only releases claims that existed at the time the release was signed, not claims that arose or accrued in the future. The Court should also deny Defendant's Motion because Plaintiffs' have alleged facts on each of their causes of action as evidenced by the Plaintiffs' Amended Complaint showing they are entitled to relief.

### BACKGROUND

2.      This dispute arises out of the business relationship between Plaintiff Jonathan Villarreal ("Jonathan") and Defendant John Saenz ("Saenz"). Together, the pair formed Plaintiff ZroBlack, LLC ("ZroBlack"), to market software technology developed by Jonathan. The software in question is capable of wirelessly accessing cell phones and tablets and erasing or recovering

data. After ZroBlack signed a contract with an overseas technology security company (the "Foreign Customer"), Saenz took $740,000 from ZroBlack and stopped doing work. Saenz and Jonathan negotiated a Release through Defendant Gun, Lee & Cave, P.C. Among other things, the Release called for Saenz to assign all his interest in ZroBlack to Jonathan. After the release was executed, Saenz refused requests to return a Mac laptop to ZroBlack. The laptop contained trade secrets, most notably the code used to access cell phones and tablets, as well as access credentials to ZroBlack's domain, hosted by GoDaddy. Without access to the domain, ZroBlack could not update its credentials with Dun & Bradstreet, Apple, or government websites and agencies. This suit resulted.

**ARGUMENT AND AUTHORITY**

3.      Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint "for failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Motions to Dismiss are disfavored and will only be appropriate in rare circumstances. *Sosa v. Coleman,* 646 F.2d 991, 993 (5th Cir. 1981). A Rule 12(b)(6) motion "is not a procedure for resolving contests about the facts or the merits of a case." *Askanase v. Fatjo*, 828 F. Supp. 465, 469 (S.D. Tex. 1993); *Mahone v. Addicks Util. Dist. of Harris Cty.*, 836 F.2d 921, 926 (5th Cir. 1988).

4.      Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawful-harmed-me accusation." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)). "To survive a 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.

2007) cert. denied, 552 U.S. 1182 (2008) (quoting *Bell Atl. Corp.*, 550 U.S. at 570). "A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 663 (citing *Bell Atl. Corp.*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

5.      The court must construe the complaint in favor of the plaintiff, taking all facts pleaded as true, no matter how improbable. *In re Katrina Canal*, 495 F.3d at 205. When factual allegations are well-pleaded, the court must assume their veracity and determine whether they plausibly give rise to an entitlement to relief. *Ashcroft*, 566 U.S. at 678-679. "A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Vander Zee v. Reno*, 73 F. 3d 1365, 1368 (5th Cir. 1996); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Even where a court finds the pleadings insufficient, leave to re-file under Rule 15(a) is preferred, unless it is clear the defects are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Therefore, to the extent this Court may find that any claim is not sufficiently pled under the Federal Rules of Civil Procedure, Plaintiff respectfully requests leave to amend its Complaint.

I.    **BECAUSE THE RELEASE DID NOT EXTINGUISH FUTURE CLAIMS, IT DOES BAR TO CLAIMS THAT ACCRUED AFTER EXECUTION**

6.      Saenz argues that the Release bars all of Jonathan's and ZroBlack's claims. The Release does not stand in a vacuum, however, because under Texas law it must be construed with other documents relevant to the transaction—the formation of ZroBlack, the assignment of ownership interest in ZroBlack, and the First Amendment to the Professional Services Agreement

between ZroBlack and its Foreign Customer.

7.       It is black letter law in Texas that documents pertaining to the same transaction may be read together even if they are executed at different times and do not reference each other. Courts may construe all the documents as if they were part of a single, unified instrument. *City of Houston v. Williams*, 353 S.W.3d 128, 137 (Tex. 2011); *In re Laibe Corp.*, 307 S.W.3d 314, 317 (Tex. 2010); *1464-Eight, Ltd. v. Joppich*, 154 S.W.3d 101, 105 n. 1 (Tex. 2004); *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex.2000).[1]

8.       Paragraph 6 of the Release expressly states that "The Individuals will execute a Unanimous Written Consent in Lieu of Meeting of the Members of ZroBlack, LLC attached as Exhibit A." The terms of the Unanimous Consent in Lieu of Meeting of the Members of ZroBlack. LLC (herein after referred to as "Unanimous Consent") show that the Release contemplated the return of ZroBlack's property by reciting that "the undersigned wish to memorialize John Saenz's assignment of his entire interest in ZroBlack LLC to Jonathan Villarreal," and then stated:

> RESOLVED, that John Saenz hereby assigns his entire interest in ZroBlack LLC to Jonathan Villarreal pursuant to Article VII of the "Limited Liability Company Operating Agreement for ZroBlack LLC" dated January 14, 2019 and applicable laws; and

9.       Thus, the Release, as shown by the Unanimous Consent, required John Saenz to assign all his ownership in ZroBlack to Jonathan Villareal. Assignment of ownership interest in ZroBlack is assignment of any interest in its real, personal, or intellectual property unless stated otherwise. *See Lahman v. Cape Fox Corp.*, No. 4:17-cv-305, 2020 WL 1974249 (E.D. Tex. Apr.

---

1 The rules of contract construction apply to releases. *See URI, Inc. v. Kleberg City*, 543 S.W.3d 755, 763 (Tex. 2018); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 127 (Tex.App.—Houston [14th Dist.] 1997), *aff'd*, 20 S.W.3d 692 (Tex. 2000).

24, 2020) (holding that because defendant purchased 100% ownership interest in limited liability company, plaintiff's and former owner's conversion claim failed because defendant could not exercise dominion and control over company property it legally owned). Stated differently, by virtue of the assignment, it is Saenz, not ZroBlack, who released any claim he might have had to personal, real, or intellectual property owned by the company.

10.    The First Amendment to the Professional Services Agreement between ZroBlack and its Foreign Customer also shows the Release contemplated the return of ZroBlack's property:

> WHEREAS, Service Provider has notified ███ of its desire to change the ownership and control structure of ZroBlack whereby John Saenz will assign ownership of ZroBlack entirely to Jonathan Villareal who shall become the sole owner and director.

> 2.    As of the Effective Date, ███ releases John Saenz of any further performance for the delivery of the Deliverables and provision of the Services pursuant to the Professional Services Agreement, except for sections 7 and 9 of the Professional Services Agreement, which shall survive any termination and/or amendment in accordance with their respective terms.

11.    After acknowledging that Saenz was transferring all his ownership interest in ZroBlack to Villarreal, Plaintiff's Foreign Customer released Saenz from all obligations under the PSA except for those obligations under Sections 7 and 9 thereof, to wit, the obligation to not use or disclose the Foreign Customer's trade secrets, including those licensed from ZroBlack, and that are in Saenz's possession. *See* Exhibit 17 to the Amended Complaint. (Doc. 35). Contrary to Defendant's argument, Saenz's return of ZroBlack's property, including the trade secrets, is contemplated by the Release. Had the parties intended for Saenz to retain any rights in these trade secrets separate from ZroBlack, they would have provided differently in the First Amendment to the PSA. To the contrary, Saenz obligates himself to not use or disclose the trade secrets, the polar opposite of an indication of any right of possession or ownership by Saenz.

12.    Furthermore, by its terms, the Release does not apply to claims that accrue in the

future. The Fifth Circuit has foreclosed the issue of when a release bars a future claim. In *Starcraft Co., A Div. of Bangor Punta Operations, Inc. v. C.J. Heck Co. of Tex., Inc.*, the Court construed a release containing the following language:

> The parties hereby mutually release, discharge, and acquit one another of any and all claims, demands and causes of action, whether or not asserted in the above-referenced litigation, *and whether known or unknown*.

748 2d 982, 988 n. 1 (5th Cir. 1984) (emphasis added). The court held that this language did not release claims arising in the future. *Id.* at 988 n. 6 (5th Cir. 1984).

13.    Construction of this Release turns on the words— "all claims or demands, known or unknown." Under Texas law, a release applies to claims existing when it is executed. *Keck, Mehin, & Cate v. Nat'l Union Fire Ins. Company of Pittsburgh*, 20 S.W.3d 692, 698 (Tex. 2000). If the parties choose, however, a release may encompass claims and damages that develop in the future. *Id.* "[A] release does not necessarily or automatically include future claims without evidence of such intent." *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990) (discussing application of the defense of mutual mistake to a release).

14.    The Release here does not include future claim. The first sentence, "Each party hereby fully releases the other Parties from all claims and demands, known or unknown" frames the claims covered by the release—those claims that are "known and unknown." The Release is silent as to "future" claims or claims "arising hereafter" or even claims "arising later." The second sentence waives any statutory limits that would otherwise apply to "claims that are known … when the release is signed." Finally, the third sentence applies specifically to claims that "are not known at the time [the] release is signed"—limiting the Release to unknown claims on the date the release was signed. Thus, the very language of the Release limits it to claims known or unknown that exist at the time the Release is signed.

**A.**    <u>Plaintiff Did Not Release Saenz From All Claims and Demands Based Upon Saenz's Possession of the Laptop because the Claims Did Not Accrue Until After the Release Was Signed</u>

15.    The thrust of Saenz's argument here is that at the time he signed the Release, Jonathan (1) knew Saenz possessed the laptop, (2) knew Saenz had purchased the laptop and maintained its possession, and (3) knew the laptop contained trade secrets. Saenz characterizes the return of the laptop as a "claim" and argues that Jonathan, because he knew these things when he signed the Release, cannot now seek relief from the Court. This argument presumes the Unanimous Consent assigning Saenz's ownership interest in ZroBlack to Jonathan did not require the return of ZroBlack property at the time it was executed. As discussed above, the Unanimous Consent did contemplate the return of ZroBlack's personal property, including the laptop; thus, Saenz's argument is without merit.

16.    Even then, the Release applied to claims that existed at the time the Release was signed. Jonathan's claim for conversion and civil theft of the laptop did not exist at the time the release was signed; they accrued later.

17.    Generally, a claim accrues when a wrongful act causes some legal injury. *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 2001). A claim that has not accrued does not exist.

18.    In conversion cases where possession is initially lawful, the cause of action accrues upon demand and refusal. *Vanderpool v. Vanderpool*, 442 S.W.3d 756, 762 (Tex. App.—Tyler 2014, no pet.) (citing *Hofland v. Elgin–Butler Brick Co.*, 834 S.W.2d 409, 414 (Tex. App.—Corpus Christi 1992, no pet.) and *Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 702 (Tex. App.—Dallas 2012, no pet.)). Conversion is "the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights." *Lahman*, 2020 WL 1974249 at *12.

In *Lahman*, the Plaintiff's claim for conversion failed on its face because the Defendant had purchased 100% the Plaintiff's membership interests limited liability company. The court concluded the limited liability company property Plaintiff claimed to own rightfully belonged to the defendant via the purchase of Plaintiff's membership interest. *Id*.

19.      Saenz's possession of the laptop was initially lawful—he purchased the laptop using company funds and used it in his capacity as a member of ZroBlack and CEO of ZroBlack. Conversion occurred when Saenz refused to return the laptop, thus wrongfully exercising dominion and control over the laptop without ZroBlack's authorization and to the exclusion, or in a manner inconsistent with, ZroBlack's rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971); *Vanderpool*, 442 S.W.3d at 762. Saenz's argument that the claim existed prior to the execution of the Release is misplaced because his possession prior to execution of the Release was not wrongful.

20.      Because (1) Saenz assigned all his ownership interest in ZroBlack to Jonathan, including ownership of ZroBlack's property, (2) he was in lawful possession of the laptop up until the time the Release was executed, and (3) he refused to return the laptop after the Release was executed, thereby exercising dominion and control over it to the exclusion of ZroBlack, the claims regarding the laptop did not accrue until after the Release was executed and thus are not barred by the Release.

**B.   Plaintiff did not release Saenz from all claims and demands based upon Saenz's alleged access to and/or control of the zroblack.com website and/or email because the claims did not accrue until after the Release was signed**

21.      Saenz's argument here is similar. Jonathan knew (1) Saenz had access to the zroblack.com website and email since January 2019, (2) knew Saenz had reserved ZroBlack's domain name from GoDaddy on behalf of ZroBlack, and (3) knew GoDaddy hosted ZroBlack's

website, and knew these things at the time he signed the Release; ergo, the Release bars ZroBlack's claim to the domain.

22.     Here again, claim accrual is critical to determining whether the Release extinguished claims relating to the domain name and server. As previously stated, a cause of action accrues where some legal injury occurs. *S.V.*, 933 S.W.2d at 4.

23.     While employed by ZroBlack as its CEO and a managing member, Saenz's possession of the domain (with its associated webpage and email service) was proper. When Saenz transferred his interest in ZroBlack to Plaintiff, however, he no longer had any interest in the ZroBlack website or email, as they had become the property of the Plaintiff. *Open Source Group LLC v. Patel* is analogous in that the court stated that "while a defendant may be in possession of the internet domain, a claim for conversion permits a plaintiff to assert its entitlement to possession." 3:13-CV-3755-O, 2014 WL 11515584, at *8 (N.D. Tex. Oct. 6, 2014). It is established through the Unanimous Consent that any interest Saenz may have had in ZroBlack, including ZroBlack's property interests in the web domain, was transferred over to Plaintiff. *See* Exhibit 16. Thus, there is little doubt that the Plaintiff was entitled to possession of the web domain, which the Plaintiff had an interest in via his then 100% interest in ZroBlack. The claim under the ACPA accrued when Saenz refused to release the domain to ZroBlack, thereby using it which he has no rights to.

C.     <u>**Plaintiff did not release Saenz from all claims and demands based upon Saenz's receipt and possession of $740,000**</u>

24.     A claim for return of the $740,000 likewise did not accrue until after the Release was signed.

25.     While the facts show that Saenz's possession of the $740,000 was known to the Plaintiff, the transfer of interest and release occurred in tandem. The Plaintiff did in fact request

for the return of the $740,000. Prior to the transfer of interest and signing of the Release, Plaintiff was still requesting the Defendant perform work for the company, even requesting a work schedule from the Defendant. Am. Compl. (Doc. 35), p. 15, ¶ 59-61. At that point, there was a potential for the $740,000 to be earned as wages. However, after having failed to work on behalf of ZroBlack and failing to earn the amount, Saenz had failed to uphold his portion of the agreement. *See generally* Exhibit 3, the Operating Agreement. At the point Saenz had signed the transfer of interest in the Unanimous Consent, he had failed to earn the amount he had taken. *See* Exhibits 15 and 16.

26.     Once any interest Saenz possessed in ZroBlack was transferred back to the Plaintiff, Saenz had no more interest in the $740,000, either in possessing the amount or earning it. Thus, when Jonathan requested for the return of the funds and Saenz failed to return those funds, that was the moment which a claim had accrued.

**D.     Plaintiff did not release Saenz from all claims and demands based upon Saenz's alleged misrepresentation of his experience and/or business contacts**

27.     The fraudulent representations were not released because, if the Operating Agreement and Release are void due to these misrepresentations as shown below, they will survive. "A contract is subject to avoidance on the ground of fraudulent inducement." *Williams*, 789 S.W.2d at 264; Restatement (Second) of Contracts § 214 cmt. c (1981).

28.     Plaintiffs pleaded that Saenz's statements resulted in misrepresentation and induced Jonathan into forming ZroBlack. Saenz represented to Jonathan that he had the skill, training, experience, and expertise to act as CEO of ZroBlack. Additionally, he represented that he had government and military contacts that would help ZroBlack expand its business. The fact that Saenz did not in fact have military contact is a demonstrable falsehood, evident by the lack thereof. These fraudulent representations were not released because the Operating Agreement and Release are void due to these misrepresentations as shown below.

## II.    THE OPERATING AGREEMENT AND RELEASE ARE VOID OR VOIDABLE AND SHOULD BE SET ASIDE

29.    It is well settled law that the party to a contract induced by fraud may avoid the contract on the ground of fraudulent inducement. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 331 (Tex. 2011). It has been the rule that a written contract can be avoided for antecedent fraud or fraud in its inducement and that parol evidence rule does not bar such proof. *Id.* This Court has also repeatedly recognized that a fraud claim can be based on a promise made with no intention of performing, irrespective of whether the promise is later subsumed within a contract. *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998).

30.    There are facts showing that the Operating Agreement was entered into by Plaintiff due to his reliance on the fraudulent misrepresentations by Saenz that he could develop business for the company. Am. Compl. (Doc. 35), p. 45, ¶ 259. Saenz represented that he had the skill, training, experiences, and expertise to act as CEO of ZroBlack. Am. Compl. (Doc. 35), p. 21, ¶ 111. Saenz also represented further that he had "contacts" in the military and technology business sectors that would help bolster sales and proposed forming a company as a vehicle to market the technology. Am. Compl. (Doc. 35), p. 6, ¶ 20.

31.    These statements were material and false. The Plaintiff entered into an agreement with Saenz and created ZroBlack as joint owners in hopes to utilize Saenz's proposed assets, which were his business knowhows and "contacts." There is also little doubt as to the falsity of Saenz's representations. This became evident as Saenz had limited contacts in the U.S. military and could not, and did not, deliver on any of the contacts that were promised. In addition, Saenz proved to be poor at managing the affairs of the Foreign Customer contract as CEO, as seen by Plaintiff's desperate messages to try to engage Saenz to conduct business as per his duties. *See* Exhibits 11,

13, and 14.

32.     Where the Operating Agreement was void due to fraud, then Saenz had no interest in the property interests of ZroBlack. Saenz then had no interest to give as consideration for any agreement made.

33.     Given that there was fraudulent misrepresentation in Saenz' statements to Plaintiff when engaging him to do business, the foundation of their agreement, and thus the Operating Agreement and ultimately the Release secured based on the Operating Agreement, should become void.

A.     **Defendant's Representations Were Not Mere Opinions**

34.     Saenz claims that the representation he spoke when inducing an agreement with Plaintiff was mere opinion. The Supreme Court of Texas has stated that the question of whether a statement is an actionable statement of "fact" or merely one of "opinion" would depend on the circumstance in which it is made, stating "among the relevant circumstances are the statement's specificity, the speaker's knowledge, the comparative levels of the speaker's and the hearer's knowledge, and whether the statement relates to the present or the future." *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995).

35.     Saenz represented to Jonathan that he had the skill, training, experience, and expertise to act as CEO of ZroBlack. Additionally, he represented that he had government and military contacts that would help ZroBlack expand its business. Given the nature of Plaintiff's potential future business and given the level of knowledge Plaintiff had regarding military contacts, and more importantly whether Saenz had such contacts, could not be construed as mere opinion.

B.   **Plaintiff stated his fraud claim with particularity as required by the Rules**

36.   Plaintiff has stated his fraud claim with particularity in accordance with the rules as discussed in more detail in paragraph 116-112 below, *infra*.

C.   **Disciplinary Rules can establish breach of fiduciary duty as a basis to set aside a Release**

37.   Saenz cites *Wright v. Sydow*, 173 S.W.3d 534, 549 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) as support of his argument that a violation of the Disciplinary Rules does not void a release contracted for outside the attorney-client relationship. However, the Release was not contracted for outside of the attorney-client relationship. Defendants Gunn, Lee, & Cave, P.C. and Miguel Villarreal, Jr. represented all the parties—Saenz, Jonathan Villarreal, and ZroBlack— in the negotiation and execution of the Release. *Wright* involved a violation of DRPC § 1.08(g) pertaining to a lawyer making a contract with a client limiting the lawyers' liability to the client. Those facts do not exist here. As cited in Plaintiffs' Amended Complaint, ¶¶ 292-294, courts can and do set aside settlement agreements when an attorney violates the Rules of Disciplinary Conduct. *Quintero v. Jim Walter Homes, Inc.*, 709 S.W.2d 225 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.). Plaintiffs' allegations regarding Gunn, Lee, & Cave, P.C. and Villarreal, Jr. support setting aside the Release.

E.   **Mutual Mistake**

38.   Saenz's argument that the Release should not be set aside because of mutual mistake also fails. He argues that Plaintiff's subjective belief is not a basis for mutual mistake. While correct as to subjective intent, the Texas Supreme Court, in *Williams v. Glash*, further stated:

> … whether the parties to a release intended to cover an unknown injury cannot always be determined exclusively by reference to the language of the release itself. It may require consideration of the conduct of the parties and the information available to them at the time of signing. In a subsequent suit for an unknown injury, once the affirmative defense of release has been pleaded and proved, the burden of

proof is on the party seeking to avoid the release to establish mutual mistake. The question of mutual mistake is determined not by self-serving subjective statements of the parties' intent, which would necessitate trial to a jury in all such cases, but rather solely by objective circumstances surrounding execution of the release, such as the knowledge of the parties at the time of signing concerning the injury, the amount of consideration paid, the extent of negotiations and discussions as to personal injuries, and the haste or lack thereof in obtaining the release.

789 S.W.2d at 264.

39.   The Defendant repeats the argument in his motion to dismiss that the mistake was not mutual. While the language of the Release did not make express provisions for the return of the $740,000, the Plaintiff's mistake can be seen in Exhibit 16 (Doc. 35-17) which was required to be signed in tandem with Exhibit 15 (Doc. 35-16).

40.   The Unanimous Consent, found in Exhibit 16 (Doc. 35-17), clearly shows the Plaintiff's intent to have all of interests Defendant then possessed returned to ZroBlack. The failure to memorialize such intent in the Release only emphasizes the mistake. The earlier messages, shown in Exhibit 11 (Doc. 35-12), the redemption of interest in ZroBlack via the Unanimous Consent, shown in Exhibit 16 (Doc. 35-17), and ultimately the failure to memorialize such intent to return the $740,000, show a clear inconsistency explainable through the prism of mutual mistake. Plaintiff is no lawyer, so when he saw these documents signed in tandem and that the Unanimous Consent returned all of Saenz' interest in ZroBlack to the corporation, he simply assumed that included the return of the fund.

41.   A mutual mistake is determined in Texas courts "not by self-serving subjective statements of the parties' intent, … but rather solely by objective circumstances surrounding execution" of the contract. *Phoenix Network Techs. (Europe) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 617 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Williams*, 789 S.W.2d at 264).

42.   Present in these facts and evidence provided in the exhibited is the objective

circumstances indicating that there was a mistake belief on the part of the Plaintiff regarding the Release. Because a Rule 12(b)(6) motion "is not a procedure for resolving contests about the facts or the merits of a case", the issue of mutual mistake cannot be decided here. *Askanase*, 828 F. Supp. at 469. ZroBlack pleaded facts, not just subjective belief, supporting their claim that the Release should be set aside for mutual mistake. The objective evidence attached to the Complaint shows the parties had different understandings of the effect of the Release, as shown by ZroBlack's repeated requests for return of the money, laptop, trade secrets, and domain name. It is further shown by the Release section titled "Compensation" describing the consideration for the Release—not including the $750,000—and the terms of the PSA.

**III.   PLAINTIFF HAS STATED AN ADEQUATE BASES FOR THE RELIEF REQUESTED**

A.   <u>**Plaintiff's claim for violation of the DTSA and TUTSA do not fail**</u>

43.     Saenz contends that Plaintiffs failed to state a claim upon which relief can be granted on their DTSA and TUTSA causes of action because they have not alleged Saenz acquired the trade secrets by "theft, bribery, misrepresentation, breach or inducement of breach of a duty to maintain secrecy, or espionage through electronic or other means." Mtn. to Dismiss, p. 15 (Doc. 41). Saenz further contends that Plaintiffs' pleadings show he acquired the trade secrets lawfully.

   a.   <u>*Jonathan alleged that Saenz misappropriated the trade secrets by theft, bribery, misrepresentations, breach of a duty to maintain secrecy, or espionage*</u>

44.     Saenz's argument that he acquired the trade secrets by lawful means while still CEO and a member of ZroBlack is without merit. Most trade secret misappropriation claims involve scenarios where the defendant first lawfully acquired trade secrets—usually because of employment and during the course and scope of that employment—and later breached a duty of confidentiality imposed either by law or contract.

45.       In ¶ 157 of the Amended Complaint (Doc. 35, p. 29), Plaintiffs alleged that Saenz

had acquired the trade secrets "through breach of a duty of confidence imposed upon him by law." *Id*. Jonathan and ZroBlack further allege that Saenz was a managing member of ZroBlack, was the CEO of ZroBlack, and occupied a position of trust and confidence at ZroBlack. *Id*.

46.     Jonathan and ZroBlack also alleged Saenz acquired the trade secrets by misrepresentation. More specifically, in ¶¶ 149-156, Plaintiffs allege Saenz acquired the trade secrets by misrepresenting his business experience and government contacts as described above. (Doc. 35).

47.     Jonathan and ZroBlack also alleged Saenz acquired the trade secrets by theft (although they did not use the word theft in the Amended Complaint). Specifically, in ¶ 158 Plaintiffs alleged that Saenz refused to return the laptop that contained the trade secrets and refused to return the domain and login information. Plaintiffs further alleged that per the terms of the Release, Saenz had assigned all his ownership interest in ZroBlack to Jonathan, including all interest in any property owned by ZroBlack, that property included the laptop containing the trade secrets and login information, and that Saenz had refused to return the laptop. *Id*., p. 30.

48.     A person commits theft if "he unlawfully appropriates property with intent to deprive the owner of the property." TEX. PEN. CODE ANN. § 31.03(a). Furthermore, appropriation is unlawful if "it is without the owner's effective consent". TEX. PEN. CODE ANN. § 31.03(b)(1). Deprive means "to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner." TEX. PEN. CODE ANN. § 31.01(2)(A). "Appropriate," in the Penal Code, means "to acquire or otherwise exercise control over property other than real property." TEX. PEN. CODE ANN. § 31.01(4)(B). The allegations in ¶ 158, and others, show Saenz appropriated the property of ZroBlack without the effective consent of the owner.

49.     Once Saenz left ZroBlack and was no longer CEO, he had no legal right to retain the trade secrets. *See Complete Logistical Services, LLC v. Rulh*, 350 F. Supp. 3d 512, 520 (E.D. La. 2018). By refusing to return them, Saenz misappropriated them within the meaning of the Texas Penal Code and, hence, the DTSA and TUTSA.

b.     *The damages alleged by Plaintiffs are not wholly conclusory*

50.     Plaintiffs' complaint also adequately pleads damages. Paragraph ¶ 161 specifically stated that ZroBlack had lost contracts because of Saenz's misappropriation of the trade secrets. (Doc. 32-1, p. 30). More specifically, ¶¶ 113 through 131 discuss Jonathan and ZroBlack's pursuit of a contract with a specific government agency, and how Saenz's refusal to return their trade secret information, specifically, the domain login information, prevented them from winning that contract. *Id*. at p. 22-25. But more importantly, Rule 8 does not require a plaintiff to specifically identify its general damages. *Avitia v. Metropolitan Club*, 49 F.3d 1219, 1226 (7th Cir. 1995) (a plaintiff is not required to itemize damages in a complaint, except for special damages). General damages are those that naturally and necessarily flow from the defendant's wrongful conduct. *M.F. Patterson Dental Supply Co. v. Wadley*, 401 F.2d 167, 172 (10th Cir. 1968). Finally, because both TUTSA and DTSA provide a permanent injunction as a remedy for trade secret misappropriation. Tex. Civ. Prac. & Rem. Code § 134A.003; 18 U.S.C. § 1836(b)(3)(A). Damages may be awarded in addition to injunctive relief. Tex. Civ. Prac. & Rem. Code § 134A.004; 18 U.S.C. § 1836(b)(3)(B).

B.     **Plaintiff's claim for violation of the CFAA does not fail**

51.     Saenz contends that the allegations regarding the deletion of ZroBlack's webpage and email server are not actionable under the CFAA because they have nothing to do with unauthorized access to a specific computer. He also alleges that Jonathan does not allege which computer Saenz used, when he accessed the computer, and why he was not authorized to access

that particular computer. He further contends that the Complaint does not allege how access was revoked, who revoked Saenz's right of access, and who had the right to revoke his access. Rule 8 does not require that level of factual pleading. It requires only a plain statement showing entitlement to relief. FED. R. CIV. P. 8(a). Even if Rule 8 required that much detail, Saenz is nonetheless wrong on both counts.

   a. *The CFAA will support a claim where a web-based account was accessed without authorization or where authorization was exceeded*

52.     Courts have held that under the CFAA's broad language, access to web-based accounts can form the basis of a CFAA violation, even if the defendant had permission to use the physical computer in question. *Hill v. Lynn*, No. 17-C-06318, 2018 WL 2933636, at *3 (N.D. Ill June 12, 2018) (unauthorized/exceeded authorization to access to GitHib account supported CFAA claim);[2] *Estes Forwarding Worldwide LLC v. Cuellar*, 239 F. Supp.3d 918, 921, 926-27 (E.D. Va. 2017) (plaintiff sufficiently pled access to a "protected computer" when it alleged that defendant accessed a confidential Google Drive).[3]

53.     The *Estes* case is on point. Cuellar, an Estes employee, created a Google Drive account for Estes. Cuellar later quit his job and went to work for a competitor. He accessed the Google account, downloaded all the data, and then erased the data. In defending against a CFAA claim, he argued that he could not violate the CFAA because he created the account; he also argued

---

2 Citing *Brown Jordan Int'l, Inc. v. Carmicle*, 2016 WL 815827, at *40-41 (S.D. Fla. Mar. 2, 2016) (liability when defendant accessed fellow employees' email through a web portal from his personal iPad) and *Hedgeye Risk Mgmt., LLC v. Heldman*, 2017 WL 4250506, at *7 (D.D.C. Sept. 23, 2017) (plaintiff pled access to a "protected computer" by alleging defendant accessed electronically stored emails and documents via computer connected to the internet).

3 Additionally, a court in this district allowed a CFAA claim to proceed (with amendment) where the allegations involved access to an Apple iCloud account—without questioning whether unauthorized access to a web-based account could support a violation of the CFAA. *Hovanec v. Miller*, No. SA-17-CV-766-XR, 2018 WL 1221486 (W.D. Tex. March 7, 2018).

that Google, not Estes, owned the account. The *Estes* court rejected both arguments. 239 F. Supp.3d at 924.

54.       Saenz's circumstances are no different. He created the GoDaddy account in the course and scope of his work for ZroBlack, and to further ZroBlack's business. Like Cuellar in *Estes*, Saenz took data or deleted data from the account.

      b.   *Jonathan adequately pleaded what computer was accessed, when it was accessed, and why Saenz was not authorized to access the computer*

55.       Plaintiffs pleaded that the GoDaddy domain belonging to ZroBlack was accessed. Am. Compl. (Doc. 35), p. 31, ¶ 170. They pleaded that the domain was accessed through the laptop belonging to ZroBlack. Am. Compl. (Doc. 35), p. 30, ¶ 166, 168. They pleaded that it was accessed after execution of the Release in August 2019. Am. Compl. (Doc. 35), p. 30, ¶ 166, 168. Finally, the Plaintiffs pleaded that Saenz was without authority to access the computer and domain because he was no longer a managing member, CEO, or employee of ZroBlack. As discussed below, because he was no longer a member, CEO, or employee of ZroBlack, his right of access was revoked. Am. Compl. (Doc. 35), p. 30, ¶ 166.

      b.   *Where employment is ended, authorization is ended*

56.       Plaintiffs pleaded that Saenz was CEO and his duties included client engagement and company promotion. Am. Compl. (Doc 35) p. 7 ¶ 20, 22. Thus, Plaintiffs' pleading establishes the scope of Saenz's duties as CEO (though those were not his only duties at CEO).

57.       Plaintiffs further pleaded that when ZroBlack requested return of the laptop, trade secrets, and GoDaddy domain, Saenz (1) accessed ZroBlack's GoDaddy account without authorization or exceeded his authorized access and deleted ZroBlack's webpage and email server and (2) accessed the ZroBlack laptop without authorization and misappropriated ZroBlack's trade secrets. Am. Compl. (Doc 35) p. 19, 31-32, ¶ 68, 166, 168, 170, 172.

58.     "[A]n employee is authorized to access a computer when his employer approves or sanctions his admission to that computer." *Estes Forwarding Worldwide LLC*, 239 F. Supp.3d at 926-27 (citing *WEC Carolina Energy Sols., LLC v. Miller*, 687 F.3d 199, 204 (4th Cir. 2012)). "Therefore, 'he accesses a computer 'without authorization' when he gains admission to a computer without approval.'" *Id.* (citing *WEC Carolina Energy Sols., LLC*, 687 F.3d at 204 (citing *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009))). Here, ZroBlack sanctioned Saenz's access to the computer and GoDaddy account so that he could carry out his duties as CEO. When he was no longer CEO and a member of ZroBlack those duties ended; thus, he was no longer approved to access the computer or GoDaddy account.

59.     In *U.S. v. John*, the Fifth Circuit held authorization "may encompass limits placed on the use of information obtained by permitted access…when the user knows or reasonably should know that he or she is not authorized to access a computer and information obtainable from that access in furtherance of or to perpetrate a crime." 477 F.3d 263, 271 (5th Cir. 2010).

60.     Texas federal courts have followed this rule in civil disputes. *Absolute Energy Solutions, LLC v. Trosclair*, No. H-13-3358, 2014 WL 360503 (S.D. Tex. Feb. 3, 2014). In *Trosclair*, the plaintiff owned an oilfield services and consulting business at which defendant was employed and eventually terminated. The plaintiff alleged that upon termination, defendant's authorization to access plaintiff's computer systems was revoked. The plaintiff alleged that the defendant accessed plaintiff's computer systems and used them in a competing business. *Id.* at *1. The defendant countered and claimed his access to the plaintiff's computer and email system was authorized even after his termination because the plaintiff did not have guidelines that prohibited employees from using the computer systems, access was authorized because the defendant retained an ownership interest in the business and had a right to access its emails, and finally that the

defendant had no reason to believe that he was not authorized to continue using plaintiff's email system and that the plaintiff could have deactivated the email account but did nothing. *Id*. at *2. The district court rejected all these arguments, stating that plaintiff had plausibly alleged a violation of the CFAA.[4]

61.     Even if Saenz were authorized to access the GoDaddy account after he parted ways with ZroBlack and ceased to be CEO, his deletion of the webpage and email server clearly exceeded his authorized access as defined by the scope of his duties—client engagement and company promotion. Deleting a webpage and email server he created for those purposes runs counter to the scope of his authority. As noted by the Fifth Circuit in *U.S. v. Phillips*, "[c]ourts have … typically analyzed the scope of a user' authorization to access a protected computer on the basis of the expected norms of intended use or the nature of the relationship established between the computer owner and user." 477 F.3d 215, 219 (5th Cir. 2007). Applying that rationale here, on the facts pleaded, Saenz exceeded his authorized access by accessing the GoDaddy account and deleting the webpage and email server. Thus, Plaintiffs have stated a claim upon which relief can be granted. Saenz's motion to dismiss should be denied.

        d.      *Plaintiffs' damages are not speculative*

62.     Saenz contends that Plaintiffs' damages are speculative. Mtn. to Dismiss (Doc. 41), p. 18. He also argues that the damages Plaintiffs allege are not the type of damages contemplated by the CFAA (costs to investigate and respond to an intrusion and costs associated with a service interruption). Here again, a plaintiff is not required to itemize damages in a complaint. *Avitia*, 49

---

4 The court also held that defendant was attacking the factual underpinning of plaintiff's claim, specifically, whether defendant was authorized to access plaintiff's email system after termination, which could not be decided on a motion to dismiss. *Id*. at *3.

F.3d at 1226. Furthermore, in ¶ 164 of the Amended Complaint (Doc. 35), Plaintiffs alleged that Saenz's access and deletion of ZroBlack's webpage and email service interrupted GoDaddy's service to ZroBlack. They alleged that they spent more than $5,000 trying to obtain return of the laptop and domain name and trying to resolve the loss of emails, data, and documents resulting from the deletion. Am. Comp. ¶¶ 93-94. These are specific factual allegations and meet the damages pleading requirement for bringing a CFAA claim.

C.    **Plaintiffs' claim for violation of the ACPA does not fail**

   a.    *Plaintiffs do allege Saenz registered, trafficked in, or used a domain "identical or confusingly similar to" another's domain name*

63.    The ACPA provides a civil remedy for the owner of a trademark if a person has a bad faith intent to profit from that mark and registers, traffics in, or uses a domain name that at the time of registration of the domain name is identical or confusingly similar to or dilutive of the trademark. Nothing in the language of the ACPA suggests that hijacking an original domain name does not fall within its scope, or that bad faith intent must exist at the time of registration, as Saenz contends.

64.    Instead, his argument grafts onto the ACPA requirements contrary to its plain meaning. Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985). As ably stated by Chief Justice Marshal two-hundred years ago, "[T]he intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words there is no room for construction. The case must be a strong one indeed, which would justify a court in departing from the plain meaning of words ... in search of an intention which the words themselves did not suggest." *United States v. Wiltberger*, 5 Wheat. 76, 95–96, 5 L.Ed. 37 (1820). Saenz's argument is precisely that—

a search for legislative intent that does not exist.

      b.   *Jonathan's allegation that Saenz presently has bad faith is not conclusory*

65.     Saenz's argument that Plaintiffs' pleading of bad faith in ¶ 177 is conclusory is without merit. Plaintiffs alleged that Saenz tried to sell the domain back to ZroBlack. Am. Compl. (Doc. 35), p. 19, ¶ 92. The allegation that he attempted to sell the domain to ZroBlack is an allegation that he attempted to profit off it. *E. & H. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 275-276 (5th Cir. 2002) (citing *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1325 (9th Cir. 1998) (intent to sell a domain name to the rightful owner of a mark is a bad faith attempt to profit from the registration)).

D.    **Plaintiff's claim for breach of contract does not fail**

66.     Saenz argues that because Jonathan admits the Release does not have an express provision requiring the return of ZroBlack's property, including the domain name, webpage, and email server, he has failed to state a claim upon which relief can be granted. Mtn. to Dismiss, p. 19 (Doc. 41). Simply because the Release may not expressly provide for the return of property, however, does not mean Saenz is not required to return the property. To pass title to property to Saenz, the release must have expressly state title is to be passed to him.

67.     As argued extensively above, assignment of Saenz's "entire interest" in ZroBlack to Jonathan carried with it any claim to owning any of ZroBlack's personal property—including the laptop computer, domain name, webpage, email server, and trade secrets. Plaintiffs pleaded that they demanded return of the property and Saenz refused. This is enough to state a claim for breach of contract.

68.     Paragraph 181 on page 36 of the Amended Complaint (Doc. 35) Section 6 of the Release required execution by ZroBlack's members of the Unanimous Consent acknowledging the assignment of Saenz ownership interest to ZroBlack. The signed Unanimous Consent shows that

Jonathan fulfilled his obligation; he performed. He also performed by releasing then-existing claims against Saenz.

69.     Saenz then breached the Operating Agreement and Unanimous Written Consent by failing to return ZroBlack property upon the request by Plaintiff who had rightful and superior ownership rights due to the transfer of interest. Plaintiffs pleaded various damages, including Saenz's failure to return unearned misappropriated funds up to $740,000, his failure to return the laptop valued at $2,631.00 (Exhibit 8), and the trade secrets and intellectual property contained therein.

**F.     Plaintiff's state a cause of action for breach of fiduciary duty because the claim did not accrue until after the execution of the Release**

a. *Jonathan's allegations that Saenz breach fiduciary duties by engaging transactions that benefited Saenz, withholding unspecified company property or funds, and refusing to allow access to unspecified information are not conclusory or speculative and rise above the level necessary to state a claim*

70.     Saenz argues that ¶¶ 187 and 191 are conclusory because they alleged, he withheld unspecified company funds, engaged in unspecified and unnamed transactions that benefitted him, and refused to allow access to unspecified information. Mtn. to Dismiss (Doc. 41), p. 21. Plaintiffs alleged throughout the Amended Complaint that Saenz refused to return $740,000 to ZroBlack. They further alleged throughout the Amended Complaint that he refused to turnover a laptop computer containing trade secrets, identified as the proprietary code used to access cell phones and tablets, and refused to allow access to ZroBlack's domain name and email. Thus, Saenz's claim Plaintiffs did not allege these things is without merit.

b. *Saenz owed ZroBlack fiduciary duties that he breached after the Release was executed*

71.     Under Texas law, a "cause of action does not exist until facts exist that authorize a person asserting the claim to seek relief in a court of competent jurisdiction." *Aviall Services, Inc. v. Cooper Indus., LLC*, 694 F. Supp. 2d 567, 576–77 (N.D. Tex. 2010) (citing *W.K. v. M.H.K.*, 719

S.W.2d 232, 236 (Tex. Civ. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.)). Plaintiffs alleged that Saenz held ZroBlack's domain name on behalf of ZroBlack, and that, so long as he did not act against ZroBlack's interests while holding the domain name, he was not in breach of his fiduciary duties. As CEO Saenz owed a duty to ZroBlack not to act against its interests. *General Dynamic v. Torres*, 915 S.W.2d 45, 49 (Tex. App.—El Paso 1995, writ denied) (duty of loyalty); *see also General Dynamic v. Torres*, 915 S.W.2d 45, 49 (Tex. App.—El Paso 1995, writ denied) (corporate officers owe fiduciary duties). His obligation not to act against the company's best interest did not cease to exist upon the signing of the release. Rather, per the terms of the Unanimous Consent, he had an obligation to return ZroBlack's property. Instead, he destroyed it, acting against the company's best interests. Because he destroyed that property after execution of the Release, and because he refused to return other property, the cause of action accrued at that time, not prior to execution of the Release.

   c.   *Damages allegations are not conclusory*

72.   Saenz again complains that Plaintiffs' damages are conclusory and speculative. A plaintiff is not required to itemize damages in a complaint. *Avitia*, 49 F.3d at 1226. Plaintiffs identified at least one government contract they contend they lost due to Saenz's actions. That is sufficient under Rule 8.

**G.   Plaintiff's claim for tortious interference with prospective business relations does not fail**

   a.   *Plaintiffs' alleged facts supporting a "reasonable probability that plaintiff would have entered into a business relationship"*

73.   In the context of a tortious interference claim, a reasonable probability is not absolute certainty that a prospective contract would have been made but for the interference. *Verkin v. Melroy*, 699 F.2d 729, 732 (5th Cir. 1983) (citing *Martin v. Phillips Petroleum Co.*, 455 S.W.2d 429, 435 (Tex. Civ. App.—Houston [14th Dist.] 1970, no writ). Reasonable assurance

thereof in view of all the circumstances, is generally sufficient. *Id.*. Considering the circumstances surrounding the possible agreement with a governmental agency, it can be seen that there were enough facts and circumstances to raise the issue of whether there was a reasonable probability that the Plaintiff could have secured that contract. As stated in the Complaint, ZroBlack and its Foreign Customer had been in talks and had even performed demonstrations for the governmental agency. Am. Compl. (Doc. 35), p. 22, ¶ 118, Exhibit 28. However, Saenz refused all requests to confirm with Dun & Bradstreet that he is no longer a member of ZroBlack or to update the contact information for ZroBlack on its DUNS account. Am. Compl. (Doc. 35), p 22, ¶ 121-122.

74.     Because Dun & Bradstreet would not update the DUNS number information without confirmation from Saenz, Apple could not confirm ZroBlack and Jonathan as owner of the DUNS number. Am. Compl. (Doc. 35), p 23, ¶ 123-124. This is turn made it impossible for Jonathan, ZroBlack, and the Foreign Customer to compete for the government contract. Am. Compl. (Doc. 35), p 23, ¶ 124.

75.     Furthermore, Saenz's refusal to act directly disabled Jonathan, ZroBlack, and the Foreign Customer's ability to pursue the contract further. Saenz was the person of contact for ZroBlack and his cellphone number was listed under the contact information. When Dun & Bradstreet requested Saenz to confirm that he is no longer a member of ZroBlack or update the contact information for ZroBlack on its DUNS account, Saenz refused all such requests. Am. Compl. (Doc. 35), p. 23, ¶ 122.

76.     Saenz further refused Plaintiff's request to release the ZroBlack domain name to him, going further by blocking Plaintiff's email address. *See* Exhibit 31 (Doc. 35-32). These repeated intentional denial of responsibility and lack of cooperation directly resulted in Jonathan, Zroblack, and Foreign Customer losing a contract to which they had more than a reasonable

probability absent the hindrance.

      b. *Jonathan alleged the requisite intent of Saenz to interfere*

77.     The complaint properly alleges the requisite intent of Saenz to interfere with the prospective relationship. The amended complaint alleges various facts which, given their nature under the circumstances, shows Saenz's intent to interfere. The court in *BHL Boresight, Inc.,* states that "intentional interference does not require intent to injure, only that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." 4:15-CV-00627, 2016 WL 8648927, at *11 (S.D. Tex. Mar. 29, 2016), modified on reconsideration for other reasons, 4:15-CV-00627, 2017 WL 1177966 (S.D. Tex. Mar. 29, 2017).

78.     Saenz actively refused to confirm with Dun & Bradstreet that he was no longer a member of ZroBlack or to update the contact information. Am. Compl. ¶¶ 236. What must have given Saenz notice of the purpose of these requests was Jonathan's request for the release of ZroBlack's domain name to him so that he could update ZroBlack's information for Apple and Dun & Bradstreet. Am. Compl. ¶¶ 237. It would be illogical to presume at this point, given the repeated requests and Jonathan's personal request, that Saenz did not know the nature and purpose of why updating the contact information was vital.

      c. *Damages are not conclusory and speculative*

79.     The Plaintiff has alleged damages which are not conclusory. The damages included the web domain and the lost contract. The contract was not only possible, it was reasonably probable as argued above.

H.     **Plaintiffs' claim for conversion does not fail**

    a.  *Jonathan alleged damages for conversion of the laptop*

80.     Saenz contends that Plaintiffs' Complaint fails to identify any damages stemming from Saenz's alleged conversion of the laptop, and that no alleged facts support the essential element of damages. Mtn. to Dismiss, p. 26 (Doc. 41). Plaintiffs pleaded that Saenz purchased the laptop as part of his duties as CEO and using ZroBlack's debit card, that ZroBlack owned a laptop, that Saenz refused to return it and exercised dominion and control over the laptop to the exclusion of ZroBlack. Am. Compl. (Doc 32-10), ¶¶ 2, 27, 96, 98, 104, 105, 158. Attached to the Complaint as Exhibit 5 is the receipt for the purchase of the laptop using ZroBlack's debit card, along with the corresponding bank statements showing the charge.

81.     In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Furthermore, pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

82.     Under Texas law, a plaintiff can seek damages equal to the value of the property converted, or have the property returned and recover damages for loss of use during the property's detention. *Winkle Chevy-Olds-Pontiac, Inc. v. Condon*, 830 S.W.2d 740, 746 (Tex. App.—Corpus Christi 1992, writ dism'd.); *see also United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147-48 (Tex. 1997) (damages for conversion is fair market value of the property). Exhibit 15 (Doc. 35-16) shows the value of the property. Additionally, Plaintiffs pleaded that Saenz detained the property, refused to return it, and that Plaintiff's lost use of the property because they could not access the domain hosting the webpage and email server.

I.      <u>**Plaintiff's claim for violation of the TTLA does not fail**</u>

83.     As above, so below, Saenz contends that Plaintiffs did not properly plead damages to support its TTLA claim. Am. Mtn. to Dismiss (Doc. 41), p. 27. Actual damages in the context of a TTLA claim mean those recoverable at common law. *In re TXCO Resources, Inc.*, 475 B.R. 781, 834 (Bankr. W.D. Tex. 2012) (citing *Beaumont v. Basham*, 205 S.W.3d 608, 619 (Tex. App.—Waco 2006, pet. denied)). Under the common law theory of conversion, damages are generally the market value of the property at the time of the conversion. *Id.* (*citing Soto v. Sea–Road Int'l, Inc.*, 942 S.W.2d 67, 74 (Tex. App.—Corpus Christi 1997, writ denied)). Thus, this argument fails for the same reason it fails for Plaintiffs' conversion claim.

J.      <u>**Plaintiffs' claim for fraud does not fail**</u>

84.     Plaintiffs met Federal Rule of Civil Procedure 9's standard for pleading fraud. Plaintiff pleaded that Saenz made his representations regarding his experience and connections in December of 2018. Am. Compl. (Doc. 35), p. 7, ¶ 20. Saenz made the statements to Jonathan. Although the Amended Complaint does not state where the statements were made, it is a reasonable inference they were made in San Antonio where both Saenz and Jonathan live and where ZroBlack is located.

85.     Saenz represented to Jonathan that he could develop business for the company. Am. Compl. (Doc. 35), p. 45 ¶ 259. Saenz represented that he had the skill, training, experiences, and expertise to act as CEO of ZroBlack. Am. Compl. (Doc. 35), p. 21, ¶ 111.

86.     There is little doubt that the representation was material. "A false representation is material if a reasonable person would attach importance to and be induced to act on the information." *Shandon Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1033 (5th Cir. 2010) (citing *Citizens Nat'l Bank v. Allen Rae Invs.*, 142 S.W.3d 459, 478–79 (Tex.

App.—Fort Worth 2004, no pet.)). There is no question that Saenz false representing that he could use his "contacts" in the military and technology business sectors to bolster sales was material. Am. Compl. (Doc. 35), p. 6, ¶ 20. There is also little doubt as to the falsity of Saenz's representation. It became quickly evident that Saenz had limited contacts in the U.S. military, could not, and did not deliver on any of the contacts that were promised.

**PRAYER**

Plaintiffs respectfully request that this Court, based on the foregoing argument, to deny Defendant Saenz's Motion in its entirety. Should the Court conclude any of Defendant's arguments have merit, Plaintiffs respectfully request leave to amend their pleading. Plaintiffs further pray for all such other relief to which they may show themselves justly entitled at law or in equity.

Respectfully submitted,

THE VETHAN LAW FIRM, PC

By: /s/ *Joseph L. Lanza*

Charles M. R. Vethan
Attorney-in-Charge
Texas Bar No.  00791852
Steven A. Costello
Texas Bar No. 24062677
VETHAN LAW FIRM - HOUSTON
Two Memorial City Plaza
820 Gessner, Suite 1510
Houston, Texas 77024
Tel: (713) 526-2222
Fax: (713) 526-2230
Email: edocs@vwtexlaw.com

Joseph L. Lanza
Texas bar No. 00784447
VETHAN LAW FIRM – SAN ANTONIO
11459 Huebner, Suite 101
San Antonio, Texas 78230
Tel: (210) 824-2220

Fax: (713) 526-2230
Email: edocs@vwtexlaw.com
***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed with the Court on the 25th day of February 2021, and electronically served on the date reflected in the ECF system upon all parties registered to receive notice pursuant to the Court's CM/ECF system.

David A. Vanderhinder
State bar No. 24070787
DVanderhinder@dykema.com
Ryan J. Sullivan
State Bar No. 24102548
RSullivan@dykema.com
DYKEMA GOSSETT PLLC
112 East Pecan St., Suite 1800
San Antonio, Texas 78205

**Attorney for Defendant John Saenz**

George R. Spencer, Jr.
State Bar. No. 18921001
gspencer@langleybanack.com
Natalie F. Wilson
State Bar. No. 24067769
nwilson@langleybanack.com

**Attorneys for Defendants Gunn, Lee & Cave, P.C.**
**And Miguel Villarreal, Jr.**

/s/ *Joseph L. Lanza*
Joseph L. Lanza