UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JONATHAN VILLAREAL, | § | |
| individually and derivatively on behalf of | § | |
| ZROBLACK LLC, | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | No. 5:20-CV-00571-OG |
| | § | |
| JOHN SAENZ; MIGUEL VILLAREAL, | § | |
| JR.; and GUNN, LEE & CAVE, P.C., | § | |
|    Defendants. | § | |

**DEFENDANT JOHN SAENZ'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT AND FIRST AMENDED APPLICATION FOR SEIZURE, TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTIVE RELIEF**

Defendant John Saenz ("Saenz"), through his undersigned counsel, hereby submits this Reply in Support of his Motion to Dismiss Plaintiff's First Amended Verified Complaint (the "Complaint") and Plaintiff's First Amended Application for Seizure, Temporary Restraining Order, Preliminary Injunction, and Permanent Injunctive Relief (the "Application") (ECF No. 41). In support thereof, Saenz states as follows.

## ARGUMENT

**I.   THE RESPONSE FAILS TO ADDRESS THE RELEASE'S APPLICATION TO "KNOWN" CLAIMS.**

Although Plaintiff devoted considerable effort to arguing that the Release does not bar claims arising in the *future*, Plaintiff did not dispute Saenz's principal argument that Plaintiff had actual knowledge of the factual bases for his claims prior to Plaintiff releasing all claims and demands against Saenz. *See* Release (ECF No. 35-16); Mot. (ECF No. 41) at § I.

Specifically, in arguing that claims accruing after the Release would not be barred by the Release, Plaintiff acknowledges that "the Release only releases claims that existed at the time the

[R]elease was signed . . . ." *See* Pl.'s Resp. to Saenz's Rule 12(b)(6) Mot. to Dismiss ("Response") (ECF No. 46), at ¶1. Plaintiff also does not dispute that just four actions by Saenz form the basis for all of the claims and relief asserted in the Complaint and the Application: (1) Saenz maintains possession of a laptop that is allegedly ZroBlack's; (2) Saenz allegedly maintains access to and/or control of the zroblack.com website and email; (3) Saenz received $740,000 from ZroBlack; and (4) prior to forming ZroBlack, Saenz allegedly misrepresented to Plaintiff his skills, experience, and connections. Compl. at ¶¶2–5, 20, 67, 150, 261; Application at ¶¶2–5, 12, 27, 73, 87, 89.

Plaintiff also does not dispute that, prior to the Release, Plaintiff had actual knowledge that Saenz already possessed and controlled the laptop with alleged trade secrets, already had established and assumed control over the zroblack.com website and email, already had received and retained the distribution of $740,000, and already had allegedly misrepresented to Plaintiff his skills, experience, and connections. Compl. at ¶¶21, 27, 35, 46, 53, 149, 220, 257, 276–78. Plaintiff's claims should be dismissed based solely on Plaintiff's acknowledgment that: (1) the Release bars claims that existed when it was signed, and (2) Plaintiff had actual knowledge of the facts that form the basis of Plaintiff's claims at the time the Release was signed.

In particular, the declaration and text messages that Plaintiff filed with this Court clearly show that Plaintiff and Saenz argued about the $740,000 distribution to Saenz as of July 2019—before Plaintiff signed the Release:

> After I [Plaintiff] threatened to dissolve the partnership, Saenz got Mike involved further. Mike and the Gunn Lee law firm undertook to represent both me and Saenz in negotiations **to settle our dispute**. **One of my main concerns was the $740,000 John Saenz withdrew** from the $1.5 million paid to ZroBlack.… Furthermore, Saenz would not agree to take steps to ensure his performance, despite being told by Mike during a meeting in Mikes office **in July 2019 that he (Saenz) had breached his fiduciary duty** to the company.

Page **2**

*See* Villareal Decl. (ECF No. 35-2) at ¶¶27 (emphasis added).[1]

Furthermore, even if the Court were to find that Plaintiff's claims against Saenz were not "known" when the parties signed the Release, the Release would still bar Plaintiff's claims because it covers "all claims and demands, known or unknown," between the parties. Release at §7. Plaintiff does not dispute the breadth of the Release or that "a general release that is not limited to a specific cause of action or occurrence, and broadly releases all claims and causes of action between two parties, is valid and enforceable." *Southmark Corp. v. FDIC*, No. 96-11578, 1998 U.S. App. LEXIS 40474, at *11 (5th Cir. Apr. 20, 1998). Further, Plaintiff does not contest that "[p]ublic policy favors voluntary settlement of claims and enforcement of releases." *Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 373 (5th Cir. 2002). Therefore, even assuming that the factual allegations in the Complaint and Application are taken as true, Plaintiff's claims should be dismissed with prejudice for two independent reasons: (1) Plaintiff seeks relief from this Court based on known claims that were subject to the subsequent Release, and (2) the subsequent Release broadly bars all claims and demands, known and unknown.

**II.  THE UNANIMOUS CONSENT AND THE AMENDED PSA HAVE NOTHING TO DO WITH THE SCOPE OF THE RELEASE OR THE CLAIMS FOR RETURN OF MONEY OR PROPERTY.**

Faced with the fact that Plaintiff's claims are subject to the Release, Plaintiff argues that the Release "contemplated the return of ZroBlack's property." Resp. at ¶8. Specifically, Plaintiff argues that: (1) the Release, through the Unanimous Consent, required Saenz to assign all property owned by ZroBlack, (2) Saenz's return of ZroBlack's property is contemplated by the Release because, under the First Amended Professional Services Agreement ("Amended PSA"), Saenz is prohibited from using or disclosing a Foreign Customer's trade secrets, and (3) because of the foregoing,

---

[1] It is worth noting that Plaintiff's evidence also confirms that Plaintiff withdrew $740,000 for himself the same day that ZroBlack received payment of $1.5 million from its Foreign Customer. *See* Wells Fargo Account Summary (ECF No. 35-9), at p. 2.

Page 3

claims for return of ZroBlack's property did not exist prior to execution of the Release. Resp. at ¶¶6–14.

The parties do not dispute that: (1) Saenz signed the Unanimous Consent and thereby fulfilled his obligation to assign his interest in ZroBlack to Plaintiff, and (2) Saenz signed the Amended PSA. But Plaintiff fails to cite any language in the Release—or any other instrument—that discusses ZroBlack's property or requires Saenz to return any property or money to ZroBlack (after admitting that the Release contains no such requirement). Compl. at ¶¶73–75. Specifically, neither the Unanimous Consent nor the Amended PSA require Saenz to return anything to ZroBlack or Plaintiff. The Unanimous Consent is a one-page document that exists solely to memorialize Saenz's assignment of his interest in ZroBlack to Plaintiff. *See* Unanimous Written Consent (ECF No. 35-17). It does not mention the Release, does not include the terms "release" or "property" or "return," and does not impart any obligations on Saenz, future or otherwise. *Id.* The notion that the Unanimous Consent somehow required Saenz to turn over any property or funds to ZroBlack after the date of the Release (Resp. at ¶¶8–9) is contrary to the plain language of the document.

Similarly, the Amended PSA is a two-page document that exists to: (1) remove Saenz as a signatory and party to the PSA with the Foreign Customer, and (2) provide releases between Saenz and the Foreign Customer. *See* Am. PSA (ECF No. 35-18). Thus, the Amended PSA is clearly intended for the benefit of the Foreign Customer, who is not a party to the Release or this lawsuit. The Amended PSA does not mention the Release and does not describe or identify any property (of ZroBlack or otherwise). *Id.* Other than purported confidentiality obligations for the benefit of the Foreign Customer (not ZroBlack) that relate to the Foreign Customer's information (not ZroBlack's), the Amended PSA does not attempt to impart any obligations on Saenz, future or otherwise. *Id.* The notion that the Amended PSA somehow required Saenz to return anything to ZroBlack after the

date of the Release (Resp. at ¶¶10–11) is contrary to the plain language of the document. Further, even if Plaintiff is correct about Saenz's obligations under the Amended PSA, Plaintiff admitted that any potential confidentiality obligation would prevent the *use or disclosure* of the *Foreign Customer's* trade secrets, not the alleged *possession* of *ZroBlack's* property which is the basis of Plaintiff's claims. Resp. at ¶11. Simply put, the Complaint and Response fail to explain why the Court should add an obligation regarding the return of money or property into the Release, Unanimous Consent, or Amended PSA where the parties chose not to include such language. *See Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 239 (Tex. 2016) (courts may not "interpolate or . . . eliminate terms of material legal consequence") (internal citations omitted).

Finally, Plaintiff cites *Lahman v. Cape Fox Corp.*, No. 4:17-cv-305, 2020 U.S. Dist. LEXIS 72222 (E.D. Tex. Apr. 24, 2020) for the proposition that an assignment of ownership interest in ZroBlack is an assignment of any interests in real, personal, or intellectual property unless stated otherwise. Resp. at ¶9. Nowhere in this opinion does the court state the proposition Plaintiff asserts. In fact, the opinion does not even mention the word "assignment." Rather, this case involved the defendant's purchase of an interest in the plaintiff entity. *Id.* at *38–39. The court affirmed summary judgment for the defendant and held that the defendant (purchaser) was not liable for conversion to plaintiff (seller) because the property in question (assets) belonged to defendant. *Id.* But Saenz—the assignor here—is not arguing that Plaintiff (assignee) is liable for conversion or that Plaintiff does not otherwise have the right to possess assets of ZroBlack. Rather, Plaintiff's evidence and the applicable legal authorities cited by Saenz demonstrate that Plaintiff and ZroBlack released Saenz from any claims related to *Saenz's* possession or use of the laptop, zroblack.com email and website, and the $740,000. Thus, even assuming that an assignment of an interest is tantamount to an assignment of property—which is contradictory to the plain terms of

the Release and Unanimous Consent—it remains that Saenz was released from such claims. Further, contrary to Plaintiff's contention, Texas law is clear that Plaintiff did not receive an assignment of any real, personal, or intellectual property of ZroBlack by virtue of Saenz's assignment of his membership interest to Plaintiff. *See* TEX. BUS. ORG. CODE § 101.106(b) ("assignee of a membership interest in a limited liability company does not have an interest in any specific property of the company"). Thus, Plaintiff's argument fails in any event.

### III.  PLAINTIFF'S CLAIMS PRE-DATED THE RELEASE.

Plaintiff argues that the claims related to the laptop, zroblack.com email and website, and retention of $740,000 did not exist at the time the Release was signed and instead accrued later. Resp. at ¶¶15–26. Specifically, Plaintiff states that Saenz's possession was initially lawful and that the conversion and theft occurred when Saenz refused to return them after the Release was signed. *Id.*

In support, Plaintiff relies on *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 2001). That case simply affirms, for the purpose of applying the statute of limitations, the well-known rule that a cause of action accrues upon injury to a plaintiff. *Id*. (A "cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred."). Here, however, the issue is not when Plaintiff's claims "accrued" or whether they are barred by the statute of limitations. Rather, the issue here is whether Plaintiff's claims in this case fall within "all claims and demands, known or unknown," from which Plaintiff released Saenz.

The Release does not define the term "claim," though it is commonly understood to mean an "assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional." *See Hoffman v. AmericaHomeKey, Inc.*, No. 3:12-CV-3806-B, 2015 U.S. Dist. LEXIS 182997, at *5 (N.D. Tex. July 17, 2015) (citing Black's Law Dictionary (10th ed. 2014)).

Page **6**

Thus, a "claim" within the context of the Release encompasses more than merely an accrued cause of action, as Plaintiff erroneously asserts. Plaintiff's reliance on authority discussing accrual of causes of action for purposes of applying the statute of limitations is, therefore, inapposite.

More importantly, Plaintiff's argument that the claims post-date the Release again relies solely on the Unanimous Consent and presumes that Saenz's transfer of his ownership interest pursuant to that instrument requires Saenz to return the laptop, email and website credentials, and $740,000. Resp. at ¶¶15, 23, 25 (claiming that the Unanimous Consent required the return of funds and property). The Unanimous Consent (and the Release), however, do not reference these items and do not require Saenz to return or assign any property or money. Plaintiff's argument fails for the reasons previously addressed herein.

In addition, this argument ignores the fact that, in trying to defeat Saenz's grounds for dismissal of Plaintiff's DTSA and TUTSA claims, Plaintiff contends that Saenz's possession of the alleged trade secrets (laptop, website and email) was purportedly wrongful prior to the Release being signed as a result of Saenz allegedly acquiring them by misrepresentation near the time ZroBlack was formed. Resp. at ¶46; Compl. at ¶¶276–278; Decl. of J. Villareal at ¶9. If Saenz wrongfully acquired ZroBlack's alleged trade secrets by prior misrepresentation as Plaintiff alleges, then by Plaintiff's own admission Plaintiff could have asserted any claims for the return of the laptop, website, and email prior to the date of the Release. *See* Resp. at ¶¶19, 23 (arguing that conversion occurred when Saenz "wrongfully exercised dominion or control" over the laptop). The Release bars these claims.

With respect to the $740,000 distribution, the declaration and text messages that Plaintiff filed with this Court also clearly show that—prior to the Release—Plaintiff considered these funds to be part of the dispute that was settled by the Release. Decl. of J. Villareal at ¶27. Plaintiff also

states that, "[a]fter Saenz and I disagreed on how to quality the $740,000 from ZroBlack, we decided it was time to part ways." Decl. of J. Villareal at ¶31. Based on Plaintiff's own testimony and under common law, it is clear that Plaintiff knew that he could have sought the return of the $740,000—to the extent it could be the subject of any meritorious claim—long before the Release was signed. *See, e.g.*, *Smith v. Horne (In re Wilshire Homes Houston, Ltd.)*, 2013 U.S. Dist. LEXIS 130194, at *8-9 (S.D. Tex. Sept. 11, 2013) (derivative suit against *current* officers and directors of the harmed entity for alleged unauthorized transfers of funds). Because Plaintiff asserted an (alleged) existing right to the $740,000 prior to executing the Release, his claims concerning the $740,000 were known at the time of execution and therefore released.

### IV. THE OPERATING AGREEMENT AND RELEASE ARE NOT VOID OR VOIDABLE DUE TO ALLEGED FRAUDULENT MISREPRESENTATIONS BY SAENZ.

**A. Plaintiff's allegations of fraudulent misrepresentations were released.**

Notably, Plaintiff does not argue that the claims related to Saenz's alleged misrepresentations accrued after the date of the Release. Rather, Plaintiff's only argument in response to the Motion is that such representations were not released because the Operating Agreement and Release are void due to these same misrepresentations. Resp. at ¶¶27–28. This circular argument presumes and acknowledges that: (1) Plaintiff knew about the alleged fraudulent representations prior to the Release, and (2) such claims are otherwise barred by the Release.

Plaintiff instead argues that the Operating Agreement and Release should be set aside due to fraud because: (1) a contract induced by fraud can be set aside, and (2) Plaintiff entered into the Operating Agreement (and created ZroBlack) due to his reliance on Saenz's fraudulent misrepresentations. Resp. at ¶¶29–30. According to Plaintiff, if the Operating Agreement is void due to fraud, then Saenz had no interest in ZroBlack to assign. Resp. at ¶32.

Page **8**

Even assuming that the Operating Agreement was induced by fraud and that parties can at times avoid contracts on the grounds of fraudulent inducement, however, that does not change the fact that Plaintiff subsequently released any claim or allegation for fraud or fraudulent inducement by signing the Release after clearly knowing about the alleged fraudulent misrepresentations that induced the prior Operating Agreement. *See* Mot. at pg. 11. Contrary to Plaintiff's novel argument that Saenz never had an interest in ZroBlack, the Release contemplates that Saenz has an interest in ZroBlack, would assign that interest to Plaintiff, and would receive payouts. *See generally* Release. Plaintiff cannot and does not argue otherwise.

Further, Plaintiff does not even attempt to articulate how any alleged fraud supports setting aside the Release. The only argument Plaintiff makes is that "the Operating Agreement and ultimately the Release secured based on the Operating Agreement[] should become void." Resp. at ¶33. Plaintiff fails to: (1) connect the Operating Agreement and the Release in the context of any alleged fraud, and (2) allege any facts as to how or why the Release, specifically, was induced by fraud. Plaintiff's attempt to set aside the Release, therefore, fails for the same reasons that Plaintiff's attempt to set aside the Operating Agreement fails.

Finally, it is noteworthy that Plaintiff does not try to set aside the Unanimous Consent, which was signed on the same day as the Release and which, according to Plaintiff, must be "construed with" the Release. Resp. at ¶¶6-8. Without any legal or factual basis, Plaintiff inexplicably seeks to retain the benefit of Saenz's assignment under the Unanimous Consent while seeking to avoid all obligations under the contemporaneous Release.

**B. Plaintiff failed to plead allegations of fraud with required particularity.**

Additionally, Plaintiff's entire argument to set aside the Release and Operating Agreement fails because: (1) the allegations of fraud are the sole basis for Plaintiff's contention that the

Release and Operating Agreement should be set aside (Compl. at ¶¶267-282), and (2) Plaintiff did not plead any allegations or claims of fraud with particularity, as required. Mot. at pg. 27-30.

Although Plaintiff argues that he pleaded fraud with particularity (Resp. at ¶¶36, 84-86), Plaintiff did not even address several grounds that require dismissal of Plaintiff's allegations of fraud. Specifically, Plaintiff did not address the fact that Plaintiff did not plead the time, place or contents of the purported misrepresentations, and did not allege any causal nexus between the purported misrepresentations, Plaintiff's alleged reliance thereon, and any allegedly resulting damages. *Compare* Mot. at pg. 27-30 *with* Resp. at ¶¶84-86. In fact, Plaintiff admits that the Complaint does not state where the alleged statements were made, and instead Plaintiff improperly asks the Court to infer where they were made. Resp. at ¶84.

Furthermore, Plaintiff did not address Saenz's additional grounds for dismissal on the basis that the Complaint does not allege that Saenz knew such alleged misrepresentations to be false at the time they were made, that Saenz purported to have special knowledge of facts that would occur or exist in the future, that Saenz promised to do anything in the future with the intention, design and purpose of deceiving, or that Saenz had no intention of performing the act at the time the promise was made. *Clardy Mfg. Co. v. Marine Midland Bus. Loans*, 88 F.3d 347, 359-60 (5th Cir. 1996); Mot. at pg. 29-30. Likewise, Plaintiff did not even address Saenz's further grounds for dismissal on the basis that the Complaint does not allege that Plaintiff suffered any quantifiable damages. *Compare* Mot. at pg. 27-30 *with* Resp. at ¶¶84-86. Plaintiff's fraud claim—and the argument that the Release and Operating Agreement should be set aside—fail for any or all of the foregoing reasons.

Finally, despite Plaintiff's argument to the contrary, Saenz's alleged misrepresentations are not actionable because they are mere opinions. Plaintiff does not dispute that mere opinions are

not actionable. Resp. at ¶34. In fact, in the only case cited by Plaintiff on this point, the Texas Supreme Court held that an expression of opinion about monetary value was not actionable as fraud. *See Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276-78 (Tex. 1995). Plaintiff's blanket and unapplied recitation of certain factors to be considered, including "the nature of Plaintiff's potential future business," "the level of knowledge Plaintiff had regarding military contacts," and "whether Saenz had such contacts," does nothing to refute the fact that Saenz's alleged misrepresentations are—on their face—mere opinions that are not actionable.

Specifically, the two alleged misrepresentations are: (1) Saenz represented that he had the skill, training, experience and expertise *to act as CEO of ZroBlack*, and (2) Saenz represented that he had government and military contacts *that would help ZroBlack expand its business*. Resp. at ¶35. Assuming that these statements were made, they are clearly very general opinions about what Saenz believed ZroBlack needed in a CEO and whether Saenz believed he could help ZroBlack expand its business. They are statements of opinion, not actionable statements of fact.

## V. THE RELEASE IS NOT VOID FOR MUTUAL MISTAKE.

Plaintiff next claims that the Release fails because "the parties had different understandings of the effect of the Release." Resp. at ¶42. However, Plaintiff alleges no more than a subjective belief as to the Release's effect,[2] which Plaintiff concedes is not a basis for mutual mistake. Resp. at ¶38. Plaintiff's contention that he believed the $740,000 distribution "would be returned" to ZroBlack (Compl. at ¶303) is contrary to the clear language of the Release, and even if Plaintiff genuinely was mistaken as to the Release's scope, such a unilateral mistake would not render the Release void. *See Johnson v. Snell*, 504 S.W.2d 397, 399 (Tex. 1973) ("A mistake by only one party to an agreement, not known to or induced by acts of the other party will not constitute grounds for relief.").

---

[2] Resp. at ¶40 (Plaintiff "simply assumed" that the Release and Unanimous Consent included the return of $740,000).

Further, "[t]o prove a mutual mistake, the evidence must show that both parties had the same misunderstanding of the same material fact." *ALG Enterprises v. Huffman*, 660 S.W.2d 603, 606 (Tex. App.—Corpus Christi 1983), *aff'd as reformed per curiam,* 672 S.W.2d 230 (Tex. 1984) (internal citations omitted). The mistake must be common to both parties to the contract, each laboring under the same misconception. *Id.* Plaintiff alleges that the "mutual mistake" was the disposition of the $740,000, "with Saenz believing he could keep it, and [Plaintiff] believing it would be returned to ZroBlack." Compl. ¶303. Plaintiff also states that "[t]he objective evidence attached to the Complaint shows the parties had *different understandings* of the effect of the Release …." Resp. at ¶42 (emphasis added). Plaintiff's allegation that Plaintiff and Saenz had different understandings of the treatment of the $740,000 is conclusive proof that the parties were not laboring under same misconception about Saenz keeping those funds. Thus, there is nothing in the Complaint or Application to support the requirement that both parties had the same misunderstanding of the same material fact.

Citing *Williams v. Glash*, 789 S.W.2d 261 (Tex. 1990), Plaintiff further argues that the Court must consider objective circumstances in determining whether a release covering an unknown injury can be set aside for mutual mistake. Resp. at ¶38. Plaintiff then argues that the objective evidence supporting mutual mistake is: (1) ZroBlack's request for return of its property, and (2) the compensation section of the Release. *Id.* at ¶42.

As a threshold matter, *Williams* analyzes only whether and to what extent a release of *unknown* injuries at the time of signing may be set aside due to mutual mistake. *Williams*, 789 S.W.2d at 262. As demonstrated in the Motion and discussed herein, Plaintiff did not address or dispute Saenz's principal argument that Plaintiff had actual knowledge of the factual bases for his

Page **12**

claims prior to Plaintiff releasing all claims against Saenz. Thus, the objective inquiry described by *Williams* is unnecessary.

But even if an objective inquiry was necessary, the objective circumstances surrounding the Release demonstrate that there was no mutual mistake as to the return of any money. Specifically, Plaintiff and Saenz argued about the $740,000 distribution to Saenz in the weeks leading up to the Release being signed. *See* Decl. of J. Villareal at ¶¶26–27, 30–31; Release at p. 6. It defies all logic that *both* parties would be mistaken about their own contemporaneous argument about the $740,000 and thereby mistakenly exclude the return of money from the Release.

Further, the fact that the Release addresses the parties' "compensation" and does not include a return of the $740,000 distribution is objective evidence that there was no mistake as to whether those funds should be returned. Release at § 2. Specifically, the Release confirms that Saenz agreed to take smaller earn-outs on a going forward basis than Saenz would have been entitled to receive had Saenz retained his fifty percent interest in ZroBlack. Release at ¶2 (providing that ZroBlack's 14.5% earn-outs will be distributed at 12.5% to Plaintiff and just 2% to Saenz). Thus, the only objective evidence establishes that Plaintiff and Saenz considered, negotiated, and memorialized any monetary points that were necessary to their agreement and business separation. To the extent Plaintiff required return of the $740,000 distribution, that could and should have been part of the Release. The parties—without mistake—instead structured a reduced future earnout for Saenz.

Finally, to adopt Plaintiff's reasoning would be to ensure the very type of "perverse result" about which the Fifth Circuit cautioned in *White v. Grinfas*, 809 F.2d 1157, 1160 (5th Cir. 1987). There, in a subsequent action based upon allegedly previously unknown construction defects, the

claimants claimed a prior release was void for mutual mistake because the parties were unaware of the particular defects. *Id.* The Fifth Circuit rejected this argument and held that the parties' failure "to understand the scope of the release when the language is unambiguous, as it is here, does not support a finding of mutual mistake." *Id*. For any or all of the foregoing reasons, the Release is not void for mutual mistake.

## VI. THE ALLEGED VIOLATION OF THE TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT DOES NOT RENDER THE RELEASE VOID OR VOIDABLE.

Plaintiff asks the Court to set aside the Release for an alleged violation of the Texas Disciplinary Rules of Professional Conduct. Compl. at ¶¶292-301. In the Response, Plaintiff's sole factual argument in support is that the Release was "contracted for" within the attorney-client relationship because Defendants Miguel Villareal and Gunn, Lee & Cave, P.C. (the "Law Firm Defendants") represented all parties to the Release. *See* Resp. at ¶37.

Regardless of whether the Law Firm Defendants represented all parties who signed the Release, the Law Firm Defendants are not parties to the Release and did not sign the Release. Release at p. 1, 6. Thus, the Release—executed solely by and between Plaintiff, Saenz and ZroBlack—was not executed within the attorney-client relationship with the Law Firm Defendants. *See Wright v. Sydow*, 173 S.W.3d 534, 549 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (holding that a settlement agreement between former clients and their former attorney was not void even if it was executed in violation of a disciplinary rule because it was a contract executed outside of the attorney-client relationship"); *see also Alliantgroup, L.P. v. Solanji*, No. 01-12-00798-CV, 2014 Tex. App. LEXIS 2961, at *25-27 n.3 (Tex. App.—Houston [1st Dist.] March 18, 2014, no pet.) (citing *Wright* for the proposition that "alleged violation of Disciplinary Rules does not necessarily establish cause of action and does not void otherwise valid contract outside of attorney-client relationship").

In *Wright*, the party attempting to set aside the settlement agreement relied on the earlier case on which Plaintiff relies in the Response, *Quintero v. Jim Walter Homes, Inc.*, 709 S.W.2d 225 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.). The court in *Wright* declined to hold that a release made in contravention of the Texas disciplinary rules is invalid and unenforceable. *Wright*, 173 S.W.3d at 548. Further, while it is the function of the legislature to declare public policy, courts should exercise judicial restraint in deciding whether to nullify a contract based on public policy grounds like those put forth by Plaintiff. *See Atmos Energy Corp. v. Paul*, 598 S.W.3d 431, 465-66 (Tex. App.—Fort Worth 2020, no pet.) (internal citations omitted).

Finally, Plaintiff did not address or refute the fact that Plaintiff has judicially admitted in his Original Complaint that any conflicts of interest on behalf of the Law Firm Defendants were waived, which Plaintiff notes would constitute an exception to *Texas Disciplinary Rule of Professional Conduct* 1.06. *See* Mot. at pg. 14; Original Complaint (ECF No. 1) at ¶¶32, 111.

## VII. RE-PLEADING WOULD BE FUTILE.

Despite previously obtaining leave to replead, Plaintiff again requests leave to amend his Complaint in the event that the Court is inclined to grant the Motion. Resp. at ¶5. Plaintiff, however, does not present the Court with a proposed amendment or explain how an amended complaint would permit any claims to survive. *Id.* Courts may deny leave to amend when, as here, a party makes a bare request in opposition to a motion to dismiss without any indication of the particular grounds on which the amendment is sought or when a party fails to cure deficiencies by amendments previously allowed. *See U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (internal citations omitted); *see also Nolasco v. CitiMortgage, Inc.*, 2012 U.S. Dist. LEXIS 119699, at *24 (S.D. Tex. Aug. 23, 2012). Further, given that the Release acts as a complete bar to Plaintiff's claims and such claims therefore lack any legal foundation, any amended complaint would be futile and unwarranted. *See Silver Gryphon, L.L.C. v. HSBC*

*Bank USA, Inc.*, 2014 U.S. Dist. LEXIS 79161, at *15-17 (S.D. Tex. June 11, 2014). The Court should not permit Plaintiff to replead yet again.

## CONCLUSION

For the reasons set forth in the Motion and as further explained in this Reply, Defendant John Saenz respectfully requests that the Court: (1) dismiss Plaintiff's Complaint and Application with prejudice, (2) award Defendant Saenz his attorneys' fees and costs pursuant to Section 11 of the Release and TEX. CIV. PRAC. & REM. CODE § 134.005(b), and (3) grant to Defendant Saenz such other and further relief to which he is entitled in law or in equity.

| | |
|---|---|
| Respectfully submitted this 11th day of March 2021. | By: */s/ David A. Vanderhider*<br>David A. Vanderhider<br>State Bar No. 24070787<br>DVanderhider@dykema.com<br>Ryan J. Sullivan<br>State Bar No. 24102548<br>RSullivan@dykema.com<br>DYKEMA GOSSETT PLLC<br>112 East Pecan St., Suite 1800<br>San Antonio, Texas 78205<br>(210) 554-5500 – Telephone<br>(210) 226-8395 – Facsimile<br><br>*Attorneys for John Saenz* |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed with the Court on the 11th day of March 2020, and electronically served on the date reflected in the ECF system upon all parties registered to receive notice pursuant to the Court's CM/ECF system.

By: */s/ David A. Vanderhider*