IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JONATHAN VILLAREAL, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF ZROBLACK, LLC; | § § § § | |
| *Plaintiff*, | § § | 5-20-CV-00571-OLG-RBF |
| vs. | § § | |
| JOHN SAENZ, MIGUEL VILLARREAL, JR.,  GUNN, LEE & CAVE, P.C., | § § § | |
| *Defendants*. | § § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable Chief United States District Judge Orlando Garcia:**

This Report and Recommendation concerns the First Amended Application for Seizure, Temporary Restraining Order, Preliminary Injunction, and Permanent Injunctive Relief filed by Plaintiffs Jonathan Villarreal individually and derivatively on behalf of ZroBlack, LLC, Dkt. Nos. 34 (sealed copy) & 37 (redacted copy for the public record). This case was referred for resolution of all pretrial matters, including requests for injunctive relief, pursuant to Rules CV-72 and 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Dkt. Nos. 22 & 36. The Court has original federal question jurisdiction over Plaintiffs' claims for violation of the Defend Trade Secrets Act,18 U.S.C. § 1836, Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g), and Anti-cybersquatting Consumer Protection Act 15 U.S.C. § 1125(d). *See* 28 U.S.C. § 1331. Plaintiffs seek to invoke the Court's supplemental jurisdiction over their state law claims. *See* 28 U.S.C. § 1367.

For the reasons discussed below, it is recommended that Plaintiffs' Application, Dkt. Nos. 34 & 37, be **DENIED**.

## Factual and Procedural Background

This case concerns an employment dispute between former business partners Plaintiff Jonathan Villarreal[1] and Defendant John Saenz, and Saenz's alleged retention of company property and proprietary information after he assigned his interest in the company to Villarreal.

According to the Plaintiffs' live Verified Complaint, Villarreal is a computer programmer who developed and patented valuable and profitable technology that allows the user to remotely access, copy, erase, and recover data on password-protected and encrypted cell phones and tablets. *See* Amend. Compl. ¶¶ 15-16.[2] On January 14, 2019, Villarreal and Saenz formed the security engineering firm ZroBlack LLC, with each owning 50% of the company. *See id.* ¶ 22. Villareal was charged with performing all the in-house coding, hardware engineering, and servicing of the technology. Saenz was named ZroBlack's CEO and was charged with client engagement and company promotion. *See id.* ¶¶ 20, 22. The purpose of ZroBlack was to provide applications and services regarding cell-phone-data capture and erasure for both commercial and governmental use. *See id.* In furtherance of this purpose, Villarreal assigned his interest in the software he developed to ZroBlack. *See id.* ¶¶ 24, 26 & Ex. 4 to Amend. Compl. Saenz, in turn, purchased and set up the domain name www.zroblack.com. *See id.* ¶ 21. Saenz did so by adding the domain and an email subscription to his existing GoDaddy account. *See* Saenz Aff. ¶ 15 (Dkt. No. 42-1).

---

[1] Unless otherwise specified, any mention to "Villarreal" refers to Plaintiff Villarreal. The Court will refer to Defendant Miguel Villarreal as M. Villarreal where necessary.

[2] A sealed copy of the Amended Complaint is located at Dkt. No. 33. A redacted copy of it for the public record can be located at Dkt. No. 35.

On April 15, 2019, ZroBlack successfully negotiated and secured a large contract (the "PSA") on behalf of ZroBlack with a foreign customer.[3] *See* Amend. Compl. ¶ 30. In exchange for ZroBlack's consulting services, the foreign customer agreed to pay ZroBlack $1.5 million upfront and a 14% earn-out on new customer revenue and existing growth. *See id.* ¶ 31. The parties dispute ZroBlack's intention with respect to the majority of this upfront payment. Saenz contends that ZroBlack provided him and Villarreal a distribution of $740,000, consistent with their equal interests in the company. Plaintiffs contend the money constituted salary through the end of 2019 and, hence, wasn't yet earned. *Compare* Saenz Aff ¶ 7 *with* Amend. Compl. ¶ 36.

In May 2019, Villarreal and Saenz met the foreign customer to begin ZroBlack's consulting services. *See* Amend. Compl. ¶ 49. In furtherance of this meeting and "so that [the code] could be passed on to [ZroBlack's] foreign client's engineers," Villarreal contends that he remotely accessed Saenz's MacBook—a computer Saenz purchased with company funds in connection with his role as ZroBlack's CEO[4]— and uploaded text files containing ZroBlack's proprietary code to Saenz's computer. *See* Villarreal 2nd Aff. (Dkt. No. 44-4) ¶¶ 8, 17. Saenz, for his part, denies any knowledge of Villarreal's alleged copying of the code on the laptop. *See* Dkt. Nos. 42 & 54; Saenz Aff. ¶ 10, 13 (Dkt. No. 42-1). To that end, Saenz has submitted an affidavit from an independent forensic expert explaining there's no indication the computer has on it any proprietary code, hardware schematics, hardware drawings, or any non-factory-installed programming software. *See* Broderhausen Aff. (Dkt. No. 42-2).

Shortly after Villarreal and Saenz commenced their consulting work under the PSA, they began to disagree about Saenz's performance as ZroBlack's CEO. *See* Amend. Compl. ¶ 53 (citing Ex. 11). Ultimately, on June 26, 2019, Villarreal accused Saenz of "sit[ting] back and

---

[3] According to the parties, this foreign company's name and role in these proceedings is confidential and so, it will be treated as such.

[4] *See* Amend. Compl. ¶ 27 & Ex. 5.

expect[ing] a paycheck," and Villarreal threatened to dissolve the company as a result. *See id.* To resolve their disagreements, on August 9, 2019, the parties—with the assistance of attorney Defendant M. Villarreal of Gunn, Lee, & Cave PC— agreed that Saenz would "assign[] [] his entire interest in ZroBlack LLC to Villarreal." Ex. 15 to Amend. Compl (Release) ¶ 7; Ex. 16 to Amend. Compl. (Unanimous Consent). In exchange, Villarreal and Saenz agreed to split future earn-out payments from the foreign customer, and fully released each other "from all claims and demands, known or unknown." Release ¶¶ 2, 7. Notably, the Release makes no mention for the return of (1) the $740,000; (2) any company property, such as the laptop, or (3) ZroBlack's proprietary and trade secret information, domain name, webpage, or server. *See* Release; Amend. Compl. ¶¶ 73-74. Nevertheless, Plaintiffs take the position that these items were included in Saenz's assignment of interest and, further, the demand for them survives the execution of the Release. *See* Amend. Compl. ¶¶ 73-74, 82; *see also* Dkt. No. 46. Whether and to what extent the Release bars Plaintiffs' claims against Saenz is an issue raised by Saenz in a pending motion to dismiss. *See* Dkt. No. 41.

On August 15, 2019, and again on September 19 and 20, 2019, Villarreal requested that Saenz release ZroBlack's domain name and return the laptop, which allegedly contains ZroBlack's proprietary trade secrets. *See* id. ¶¶ 90, 99, 100 & Exs. 18-19, 22. Saenz allegedly refused to do so. *See id.* ¶¶ 91, 94-95. On August 15, 2019, Villarreal received an email from GoDaddy informing him that Saenz had, the day before, revoked Villarreal's access to the domain name. *See* Ex. 41 to Amend. Compl. Then, on or about September 12, 2019, Villarreal learned Saenz had allegedly deleted thousands of emails and documents on ZroBlack's email server and had also taken down its webpage. *See* Amend. Compl. ¶¶ 94, 97, 170, 178; Ex. 20.

Without access to the domain, Plaintiffs contend they are unable to update ZroBlack's credentials with Dun & Bradstreet, Apple, or government websites and agencies, which in turn

has prevented, and will likely prevent in the future, ZroBlack from competing for government contracts. *See* Amend. Compl. ¶¶ 4, 123-129. Additionally, Plaintiffs allege that Saenz's actions in taking the website down have "effectively terminate[d] ZroBlack's ability to gain new clients." Villarreal 1st Aff. ¶ 40 (Dkt. No. 33-1). Finally, Plaintiffs are "deeply concerned that the software contained on the laptop may fall into the wrong hands or be used for unlawful purposes." Application ¶ 74 (Dkt. No. 34).

Saenz's refusal to return the laptop, funds, code, and domain access led Villarreal to again enlist the assistance of attorney M. Villarreal to help settle the dispute. *See* Ex. 21 to Amend. Compl. On or about September 26, 2019, M. Villarreal attempted to arrange a meeting between Villarreal and Saenz. *See id.* ¶ 102; Ex. 24. Saenz, however, "kept putting [the meeting] off with a litany of excuses." *Id.* ¶ 103. Ultimately, Villarreal became "fed up" with Saenz's antics and informed M. Villarreal on October 3, 2019, that "he would not be attending a meeting and had decided to go in a different direction." *Id.* (citing Ex. 25).

Over seven months later, on May 8, 2020, Plaintiffs sued Saenz, requesting *ex parte* preliminary and permanent injunctive relief. *See* Dkt. Nos. 1-2. On August 24, 2021, the case was referred for resolution of all pretrial matters, save for requests for injunctive relief. *See* Dkt. No. 22. On October 14, 2020, the Court held a status conference in this case at which Plaintiffs requested leave to amend their complaint and application for injunctive relief—a request the Court granted. *See* Dkt. No. 25. Thereafter, the District Court referred this case for all purposes, including requests for injunctive relief. *See* Dkt. No. 36. Plaintiffs filed their amended complaint and application for injunctive relief on January 15, 2021.[5]

---

[5] Pursuant to the parties' agreement, the Application became ripe on March 11, 2021. *See* Dkt. No. 48-49.

Plaintiffs' live complaint raises claims against Saenz for (1) violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 and the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.002(6) (Count 1); (2) violations of the Computer Fraud and Abuse Act, 18 U.S.C § 1030(g) (Count 2); (3) violations of the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (Count 3); (4) breach of contract (Count 4); (5) breach of fiduciary duty (Count 5); (6) tortious interference with prospective business relations (Count 8; (7) Conversion (Count 9); (8) violation of the Texas Theft Liability Act (Count 10); and (9) fraud (Count 11). Plaintiffs also bring state law legal malpractice and breach of fiduciary duty claims against Defendants M. Villarreal, and Gunn, Lee and Cave for their role in drafting the Release and advising Villarreal and ZroBlack on it (Counts 6 & 7). Finally, Plaintiffs seek a declaration pursuant to 28 U.S.C. § 2201 that the ZroBlack Operating Agreement and Release are void and unenforceable. Through their Application, Plaintiffs seek an order—pursuant to Federal Rule of Civil Procedure 65 and the civil seizure provision of the DTSA, 18 U.S.C. § 1836(b)(2)— requiring Saenz to (1) return the laptop and any alleged trade secrets on it; (2) release and assign the ZroBlack domain, including the email server and webpage, to ZroBlack; (3) return and not use or disclose any software code or trade secret belonging to ZroBlack.

On April 13, 2021,[6] the Court held a hearing on Plaintiffs' Application, as well as on Defendants' pending motions to dismiss, Dkt. Nos. 40 & 41.

### Analysis

Plaintiffs' Application should be denied. Plaintiffs have failed to demonstrate there's a substantial threat that irreparable injury would occur if their request for injunctive relief and civil

---

[6] The Court originally set the hearing for March 23, 2021 but continued it at Plaintiffs' request due to a conflict with the hearing date. *See* Dkt. No. 52 & Mar. 15, 2021 text order.

seizure isn't granted. Because no irreparable injury is threatened, the Court need not address the merits of Plaintiffs' claims.

To obtain the "extraordinary remedy" of injunctive relief, Plaintiffs must "clearly carry the burden of persuasion" on each of four requirements set forth in *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567 (5th Cir. 1974), including a substantial threat of irreparable injury. *Miss. Power & Light Co. v. United Gas Pipe Line Co*., 760 F.2d 618, 621 (5th Cir. 1985); *see also Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 371 (5th Cir. 2008). Plaintiffs must also demonstrate irreparable harm to obtain civil seizure pursuant to 18 U.S.C. § 1836(b)(2). *See Ctr. for Advancing Innovation, Inc. v. Bahreini*, No. GJH-18-1119, 2018 WL 2100279, at *3 (D. Md. May 4, 2018). Irreparable harm in this context means "harm for which there is no adequate remedy at law"; an injury that can be remedied by money damages typically is not irreparable. *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C*., 710 F.3d 579, 585 (5th Cir. 2013). In this case, several circumstances militate against a finding of irreparable harm.

*The Extensive Delay*. First, Plaintiffs have delayed extensively in seeking the requested relief. "'A long delay by plaintiff after learning of the threatened harm [] may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction.'" *Embarcadero Techs., Inc. v. Redgate Software, Inc*., 1:17-CV-444-RP, 2017 WL 5588190, at *3 (W.D. Tex. Nov. 20, 2017) (quoting CHARLES ALAN WRIGHT & ARTHUR R. MILLER, *ET AL*., 11A FEDERAL PRACTICE & PROCEDURE § 2948.1 (3d ed., April 2017 update)). The Fifth Circuit has recognized that "laches may defeat claims for injunctive relief." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626 (5th Cir. 2013). Accordingly, "[d]istrict courts in this circuit have generally declined to grant injunctive relief where a plaintiff, without sufficient explanation, delayed for five months or more in seeking injunctive relief." *Ronaldo Designer*

*Jewelry, Inc. v. Cox*, No. 1:17-CV-2-DMB-DAS, 2017 WL 3879095, at *10 (N.D. Miss. Sept. 5, 2017).

Here, Plaintiffs contend that Saenz refused as early as mid-August of 2019 to return the laptop with ZroBlack's proprietary code and restore ZroBlack's access to the domain and website. Plaintiffs waited nearly nine months before seeking injunctive relief.  This delay casts doubt on the irreparability of the harm alleged.

Plaintiffs' proffered explanations for the delay—the COVID-19 pandemic and attempts to informally negotiate resolve this dispute[7] —aren't sufficiently persuasive. First, Texas didn't declare a state of disaster in connection with COVID-19 until March 13, 2020, which was seven months *after* Saenz refused to return the laptop as well as domain credentials and deleted the website. Second, according to Villarreal, negotiations between the parties aimed at avoiding litigation ceased by September 26, 2019. Plaintiffs fail to offer any explanation for the nearly six-month delay in seeking relief between the cessation of negotiations and the national emergency caused by COVID-19.  Accordingly, the unexplained substantial delay here demonstrates that there is no apparent urgency for the request for injunctive relief.

*Plaintiffs' Lack of Mitigation Efforts*. Plaintiffs' failure to reasonably mitigate or avoid the alleged harm is also relevant.[8]  Avoidable harm isn't irreparable. Saenz alleges—and Plaintiffs don't dispute—that he suggested Villarreal create a separate GoDaddy account and then request a transfer of the ZroBlack domain and website to that account from Saenz's personal GoDaddy account. *See* Saenz Aff. ¶ 16. Villarreal, however, refused. *See id.* Instead,

---

[7] *See* Dkt. No. 44 at 8-9.

[8] *See, e.g., Bellin v. La Pensee Condo. Ass'n, Inc*., No. 05-80071-CIV, 2005 WL 8156021, at *9 (S.D. Fla. Oct. 13, 2005), *report and recommendation adopted*, 05-80071-CIV, 2006 WL 8433644 (S.D. Fla. Jan. 6, 2006) ("[I]t is well settled that avoidable harm is not irreparable harm; if Plaintiff can mitigate the threatened 'irreparable harm,' she cannot refuse to do so and yet still claim that she would be irreparably injured absent an injunction").

Villarreal continues to insist that Saenz turn over the entirety of his personal, preexisting GoDaddy account, which Saenz contends contains information and credentials for domains irrelevant to ZroBlack. Furthermore, although Plaintiffs contend that their lack of a website and email means existing and potential customers can't contact ZroBlack,[9] they also apparently haven't attempted to set up a new website or email account to temporarily remedy the issue. *See* Saenz Aff. ¶ 17.

It also bears mention that the foreign customer that allegedly owns the code at issue never requested that Saenz return all items and copies containing or embodying proprietary information, including all deliverables and work in progress. The First Amended PSA imposes this requirement on ZroBlack, Villarreal, and Saenz "as otherwise requested by [the foreign customer]," and that PSA provides that a breach of this provision "will cause irreparable harm to [the foreign customer]" and entitle it to injunctive relief.[10] By signing the Release, Saenz agreed to be bound by this obligation after his departure from the ZroBlack.[11] There's no evidence that Plaintiffs even *asked* the foreign customer to invoke this provision of the PSA, let alone that Saenz refused, and Plaintiffs conceded as much at the April 13 hearing.[12]

*Speculative Harm.* Plaintiffs contend they are "deeply concerned that the software contained on the laptop may fall into the wrong hands or be used for unlawful purposes."

---

[9] *See* Application ¶ 73.

[10] *See* 1st Amend. PSA ¶ 2 (relieving Saenz of any further performance under the PSA except with respect to sections 7 and 9); PSA ¶ 7.2.

[11] *See* Release ¶ 1 ("The parties agree to accept and perform all obligations assigned to them, respectively, under the 1st Amended PSA").

[12] Although Plaintiffs' live Complaint provides that the foreign customer sent Saenz a demand letter reminding him of his obligation to return the proprietary property, *see* Amend Compl. 132, the evidence doesn't support this contention. Instead, it appears the foreign customer merely reminded Saenz of his ongoing confidentiality obligations and the ongoing restrictive covenants he remained subjected-to. *See* Ex. 35 to Amend. Compl.

Application ¶ 74. But to constitute irreparable harm, the threatened injury must be "more than mere speculation." *Janvey v. Alguire*, 647 F.3d 585, 601 (5th Cir. 2011). Plaintiffs haven't presented any evidence that Saenz—in the one year and eight months since his departure from the company—has attempted to misuse the code, and Saenz has denied doing so under oath. *See* Saenz Aff. ¶ 13. Moreover, as mentioned, even a forensic computer analyst couldn't find the code on the laptop. *See* Broderhausen Aff. Accordingly, it seems unlikely that Saenz—a person with no coding experience—has the technical ability to access and use it. *See* Saenz Aff. 14 ("[E]ven if any such code, programming software or trade secrets were located on the Computer, I would not know how to recognize, access, use or alter the same, and I have not done so.). Plaintiffs' speculative allegations that Saenz attempted to "shop the technology to others, including an individual named Roger Graham" *before* he assigned his interest in the company[13] doesn't suggest there is a reasonable likelihood he would do so now.[14]

*Past Harm and Availability of Monetary Damages*. Finally, "[t]he purpose of an injunction is to prevent future violations" and harms that can't fully be repaired by money damages. *United States v. W. T. Grant Co*., 345 U.S. 629, 633 (1953); *Humana, Inc. v. Avram A. Jacobson, M.D., P.A.,* 804 F.2d 1390, 1394 (5th Cir. 1986). Much of the harm that Plaintiffs have allegedly suffered here has already occurred. According to Plaintiffs, Saenz has already taken down the ZroBlack webpage and deleted thousands of documents. Plaintiffs haven't submitted any evidence suggesting they might be able to recover these documents if access to the domain is restored. Plaintiffs also haven't offered any evidence explaining why Saenz's actions

---

[13] *See* Amend. Compl. 160 (referencing 1st Villarreal Aff. ¶ 22.).

[14] *See Sec. & Exch. Comm'n v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978) ("The critical question in issuing the injunction and also the ultimate test on review is whether defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future. To obtain injunctive relief [plaintiff] must offer positive proof of the likelihood that the wrongdoing will recur. . . [Plaintiff] needs to go beyond the mere fact of past violations.").

in allegedly preventing ZroBlack from competing for government contracts or obtaining new clients can't be adequately remedied by monetary damages.

For all these reasons, Plaintiffs have failed to prove a substantial likelihood of irreparable injury if injunctive relief isn't granted, rendering preliminary injunctive relief under Rule 65 and civil seizure § 1836(b)(2) improper. And Plaintiffs' request for permanent injunctive relief is premature at this juncture. *See ITT Educ. Services, Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008) ("A permanent injunction is generally only granted where, as here, a full trial on the merits has occurred.").

### Conclusion and Recommendation

For these reasons, it is recommended that Plaintiffs' First Amended Application for Seizure, Temporary Restraining Order, Preliminary Injunction, and Permanent Injunctive Relief, Dkt. Nos. 34 (sealed copy) & 37 (redacted copy for the public record), be **DENIED**. Plaintiffs may re-urge their request for permanent injunctive relief at an appropriate juncture when the issue is ripe for decision.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the

district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

   **IT IS SO ORDERED**.

   SIGNED this 14th day of May, 2021.


   RICHARD B.  FARRER
   UNITED STATES MAGISTRATE JUDGE