IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JONATHAN VILLAREAL,        §
INDIVIDUALLY AND DERIVATIVELY §
ON BEHALF OF ZROBLACK, LLC;    §         5-20-CV-00571-OLG-RBF
                          §
*Plaintiff*,              §
                          §
vs.                        §
                          §
JOHN SAENZ, MIGUEL VILLARREAL, §
JR.,  GUNN, LEE & CAVE, P.C.,   §
                          §
*Defendants*.           §

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable Chief United States District Judge Orlando Garcia:**

      This Report and Recommendation concerns (1) the Motion to Dismiss filed by Defendant

John Saenz, Dkt. No. 41, and (2) the Motion to Dismiss filed by Defendants Miguel Villarreal,

Jr. and Gunn, Lee & Cave, PC (collectively, the "Law Firm Defendants"), Dkt. No. 40. This case

was referred for resolution of all pretrial matters, including requests for injunctive relief,

pursuant to Rules CV-72 and 1 of Appendix C of the Local Rules of the United States District

Court for the Western District of Texas. *See* Dkt. Nos. 22 & 36. The Court has original federal

question jurisdiction over Plaintiffs' claims for violation of the Defend Trade Secrets Act

("DTSA"),18 U.S.C. § 1836, Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(g),

and Anti-cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). *See* 28

U.S.C. § 1331. Plaintiffs seek to invoke the Court's supplemental jurisdiction over state law

claims asserted against Defendant Saenz and the Defendants Law Firm Defendants. *See* 28

U.S.C. § 1367.

For the reasons discussed below, it is recommended that Saenz's Motion to Dismiss, Dkt. No. 41, be **GRANTED IN PART**. Plaintiffs' claims against Saenz for violations of the DTSA and TUTSA, breach of fiduciary—to the extent such claim is premised on conduct allegedly committed while Saenz served as ZroBlack's CEO—conversion, fraud, breach of contract, tortious interference, violations of the Texas Theft Liability Act, CFAA, ACPA—to the extent Plaintiffs' CFAA and ACPA are premised on Saenz's refusal to return ZroBlack's laptop—and request for declaratory relief should be **DISMISSED**. But Plaintiffs' claims for breach of fiduciary duty and for violations of the CFAA and ACPA—in so far as these claims are premised on Saenz's alleged conduct after the parties executed the Release—should remain at issue, at least at this juncture.

It is further recommended that Plaintiffs' state law legal-malpractice and breach-of-fiduciary-duty claims asserted against the Law Firm Defendants should be **SEVERED AND DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction or because the Court should decline to exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(c). Accordingly, the Law Firm Defendants' Motion to Dismiss, Dkt. No. 40, should be **DISMISSED AS MOOT**.

## Factual and Procedural Background

This case concerns an employment dispute between former business partners Plaintiff Jonathan Villarreal[1] and Defendant John Saenz, and Saenz's alleged retention of company property and proprietary information after he assigned his interest in the company to Villarreal.

According to the live Complaint, Villarreal is a computer programmer who developed and patented valuable and profitable technology, which allows the user to remotely access, copy,

---

[1] Unless otherwise specified, any mention to "Villarreal" refers to Plaintiff Villarreal. The Court will refer to Defendant Miguel Villarreal as M. Villarreal where necessary.

erase, and recover data on password-protected and encrypted cell phones and tablets. *See* Amend. Compl. ¶¶ 15-16.[2] In October 2018, Villarreal—with the help of an associate—began negotiating with a foreign international data security company[3] for the licensing of this technology. *Id.* ¶¶ 18-19. Unfortunately, the associate wasn't able to perform his obligations, and Villarreal parted ways with him before the technology could be sold. *See id.* A few months later, Villarreal discussed the technology with his cousin's husband, Defendant Saenz. *See id.* ¶ 20. Saenz, in turn, represented that he had the business experience and government contacts to market the technology to the government. *See id.* To that end, Saenz claimed that he could use his contacts in the military and technology business sectors to bolster sales, and he proposed forming a company as a vehicle to market the technology. *See id.* Relying on Saenz's representations and trust in Saenz as a family member, Villarreal agreed to form the security engineering firm ZroBlack LLC with Saenz. *See id.*

On January 14, 2019, Villarreal and Saenz together formed ZroBlack, with each owning 50% of the company. *See id.* ¶ 22-23 (incorporating by reference Ex. 3 ¶ 4.7). The purpose of ZroBlack was to provide applications and services regarding cell phone data capture and erasure for both commercial and governmental use. *See id.* Villareal was charged with performing all the in-house coding, hardware engineering, and servicing of the technology. *See id.* Saenz was tasked with client engagement and promoting the company. *See id.* In furtherance of ZroBlack's formation, Saenz purchased (and set up) the domain name www.zroblack.com from GoDaddy.com and provided Villarreal with access to it. *See id.* On March 31, 2019, Villarreal

---

[2] A sealed copy of the Amended Complaint is located at Dkt. No. 33. A redacted copy of it for the public record can be located at Dkt. No. 35.

[3] According to the parties, this foreign company's name and role in these proceedings is confidential.

assigned his intellectual property interest in the software he developed to ZroBlack. *See id.* ¶¶ 24, 26.

On April 15, 2019, ZroBlack and the foreign customer entered into a Professional Services Agreement ("PSA"). *See id.* ¶ 30. Attorney M. Villarreal of Gunn, Lee, & Cave advised ZroBlack on the contract negotiations with the foreign customer. *See id.* ¶ 35. Pursuant to the PSA, ZroBlack agreed to "pass down its knowledge of mobile devices, consult with [the foreign customer] on its software development and coding, hardware development, and organize and document the process of supporting ability to identify, diagnose, clear, and validate certain devices." *Id.* In exchange, the foreign customer agreed to pay ZroBlack $1.5 million up front and a 14% earn-out on new customer revenue and existing growth. *See id.* ¶ 31. At Saenz's instruction, the $1.5 million was initially transferred into a Wells Fargo business account.[4] *Id.* ¶ 32 (incorporating Villarreal Aff. ¶ 17[5]). Saenz then withdrew $740,000 and transferred the money to his personal account. *Id.* Villarreal, on the other hand, transferred $740,000 to a newly formed distribution account "according to the terms of the LLC agreement." *Id.* 33-34. According to Plaintiffs, the distributions to both Villarreal and Saenz constituted their salary through the end of 2019 and, hence, the $740,000 Saenz withdrew wasn't yet earned. *See id.* ¶¶ 35-36, 86.

On May 2, 2019, in connection with his duties as ZroBlack's CEO, Saenz purchased a 15-inch Apple MacBook with ZroBlack's funds. *See id.* ¶ 27. According to Plaintiffs, the laptop contains "proprietary information and trade secrets belonging to ZroBlack," including the code related to ZroBlack's phone-security project. *Id.* ¶ 96; Villarreal Aff. ¶¶ 50, 58.

---

[4] Presumably the business account was in ZroBlack's name although Plaintiffs' Complaint is unclear on this aspect.

[5] Villarreal's affidavit is attached to the live complaint and therefore, is properly considered in evaluating the merits of Defendants' motions to dismiss.

Shortly after Villarreal and Saenz commenced their consulting work under the PSA, they began to disagree regarding Saenz's performance as ZroBlack's CEO. *See* Amend. Compl. ¶¶ 46- 53 (citing Ex. 11). According to Plaintiffs, Saenz missed key customer meetings while providing little to no services for ZroBlack. *See id.* Ultimately, on June 26, 2019, Villarreal accused Saenz of "sit[ting] back and expect[ing] a paycheck," and Villareal threatened to dissolve the company. *See id.* Saenz, in response, reached out to M. Villarreal to help resolve the dispute. *See id.* ¶ 54. Plaintiffs contend that "an obvious," nonwaivable conflict of interest existed for M. Villarreal. *Id.* But M. Villareal, according to Plaintiffs, nonetheless undertook to represent both Saenz and Villarreal in negotiations to resolve their disagreements. *See id.*

Ultimately, Saenz and Villarreal decided to part ways. In furtherance of this decision, M. Villarreal prepared a document entitled, "Release" that Saenz and Villarreal, on behalf of themselves and ZroBlack, executed on August 9, 2019. *See id.* ¶ 72 & Ex. 15 (Release). Pursuant to the Release, the parties agreed that Saenz would "assign[] [] his entire interest to ZroBlack LLC to Villarreal." Release. Contemporaneous with the Release, the parties executed a document entitled "Unanimous Written Consent In Lieu of Meeting of The Members of ZroBlack LLC," which "memorialize[d]" the assignment of Saenz's "entire interest." Ex. 16 to Amend. Compl. (Unanimous Consent). Villarreal and Saenz agreed to split future earn-out payments from the foreign customer, and they then fully released each other "from all claims and demands, known or unknown." Release ¶¶ 2, 7. The Release doesn't mention the following: (1) the $740,00; (2) any company property, such as the laptop; or (3) ZroBlack's proprietary and trade secret information, domain name, webpage, or server. *See* Release; Amend. Compl. ¶¶ 73-75. By failing to include these matters, Plaintiffs claim the Law Firm Defendants "create[d] a

vague and ambiguous document that made it unclear ZroBlack still owned these things and that Saenz was required to return them." Amend. Compl. ¶ 76.

On August 15, 2019, and again on September 19 and 20, 2019, Villarreal requested that Saenz release ZroBlack's domain name and return the laptop, which allegedly contains ZroBlack's proprietary trade secrets. *See* id. ¶¶ 90, 99, 100 & Exs. 18-19, 22. Saenz allegedly refused to do so. *See id.* ¶¶ 91, 94-95. On August 15, 2019, Villarreal received an email from GoDaddy informing him that Saenz had, the day before, revoked Villarreal's access to the domain name. *See* Ex. 41 to Amend. Compl. Then, on or about September 12, 2019, Villarreal learned Saenz had allegedly deleted thousands of emails and documents on ZroBlack's email server and had also taken down its webpage. *See* Amend. Compl. ¶¶ 94, 97, 170, 178; Ex. 20. According to Plaintiffs, Saenz has "blackmailed ZroBlack over the domain name, webpage, and email server, offering to sell it back to ZroBlack for $7,000." *Id.* ¶¶ 92, 95. Without access to the ZroBlack domain, Plaintiffs contend they are unable to update ZroBlack's credentials with Dun & Bradstreet, Apple, or government websites and agencies, which in turn has prevented—and will likely in the future continue to prevent—ZroBlack from competing for government contracts, according to Villareal. *See id.* ¶¶ 4, 111-130.

On May 8, 2020, Plaintiffs sued Saenz, requesting *ex parte* preliminary and permanent injunctive relief. *See* Dkt. Nos. 1-2. Plaintiffs' live Complaint raises the following claims against Saenz: (1) violations of the DTSA and TUTSA (Count 1); (2) violations of the CFAA (Count 2); (3) violations of the ACPA (Count 3); (4) breach of contract (Count 4); (5) breach of fiduciary duty (Count 5); (6) tortious interference with prospective business relations (Count 8); (7) Conversion (Count 9); (8) violation of the Texas Theft Liability Act (Count 10); and (9) fraud (Count 11). Plaintiffs also bring state law legal malpractice and breach-of-fiduciary-

duty claims against the Law Firm Defendants for their role in drafting the Release and advising Villarreal and ZroBlack on it (Counts 6 & 7). Finally, Plaintiffs seek a declaration pursuant to 28 U.S.C. § 2201 that the ZroBlack Operating Agreement and Release are void and unenforceable due to fraud and mutual mistake.

## Analysis

As discussed further below, the Release bars all of Plaintiffs' claims against Saenz, except for claims premised on Saenz's conduct after executing the Release and for breaching the Release. Moreover, Plaintiffs fail to plausibly plead claims for breach of contract and tortious interference. At this juncture, however, Plaintiffs' claims for breach of fiduciary duty and for violations of the CFAA and ACPA—to the extent those claims are predicated on Saenz's access to and use of the domain and deletion of documents after the parties executed the Release—don't merit dismissal. Finally, there is no basis to exercise supplemental jurisdiction over Plaintiffs' distinct claims against the Law Firm Defendants.

A.     Saenz's Motion to Dismiss

1.     *The Release*. At issue in Saenz's Motion is whether and to what extent the Release bars Plaintiffs' claims against him. Paragraph 7 of the Release provides, in relevant part:

> Each party hereby fully releases the other Parties from *all claims and demands, known or unknown*. Each Party understands that, as to claims that are known to that Party when the release is signed, any statutory provisions that would otherwise apply to limit this general release are hereby waived. Each Party also understands that this release extends to claims and demands that are not known at the time this release is signed.

Release at 4 (emphasis added). A "broadly worded general release[]" that is unlimited to a specific cause of action or occurrence—such as the one at issue here—is typically valid and enforceable under Texas law. *Southmark Corp. v. F.D.I.C.*, 142 F.3d 1279 (5th Cir. 1998). Moreover, unless otherwise prohibited by statute, a release of "any and all" claims applies to "all

possible causes of action." *Chaplin v. NationsCredit Corp*., 307 F.3d 368, 373 (5th Cir. 2002); *see also Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*., 20 S.W.3d 692, 698 (Tex. 2000) (noting, "broad-form release[s]" that purport to cover "all demands, claims or causes of action of any kind whatsoever do not need to "mention" the claim to be effective). A release, however, "does not necessarily or automatically include future claims," unless the intent to do so is evidenced. *Flores v. Hansen*, No. 2-09-465-CV, 2010 WL 3618737, at *4 (Tex. App.—Fort Worth Sept. 16, 2010, no pet.).

Saenz doesn't contend that the Release was intended to bar future claims. Moreover, the Release's express reference to claims known and unknown "at the time this release is signed" and corresponding silence regarding future claims evince an intent to release only claims existing at the time of its execution. *See id*.; *see also A2D Techs. Inc. v. MJ Sys., Inc*., 269 Fed. App'x 537, 542 (5th Cir. 2008). At the same time, Plaintiffs don't argue that a statute otherwise prohibited them from releasing any or all of their current claims against Saenz. Setting aside for the moment arguments about fraud and mutual mistake, and to the extent Plaintiffs' known or unknown claims or demands against Saenz existed at the time of the Release, the Release is a "complete bar" to Plaintiffs' claims against Saenz. *See White v. Grinfas*, 809 F.2d 1157, 1160 (5th Cir. 1987).

        **a.**      **The Release covers most—but not all—of Plaintiffs' claims**. According to Plaintiffs' live Complaint, the majority of the facts on which Plaintiffs premise their claims against Saenz existed at the time Plaintiffs signed the Release. Specifically, Plaintiffs allege that Saenz: (1) purchased and assumed control over the at-issue laptop in May 2019, and the alleged trade secrets were placed on the device before the parties executed the Release, Amend. Compl. ¶¶ 2, 27; (2) embezzled the $740,000 in or around April 2019, after ZroBlack executed the PSA

with the foreign customer, *id.* ¶¶ 32, 35, 46, 53; (3) made false representations regarding Saenz's business experience and government contacts in December 2018, leading to the formation of ZroBlack, *id.* ¶ 20; and (4) engaged in self-dealing to ZroBlack's detriment, *id.* ¶¶ 58, 187, 191. Accordingly, any claims premised on these facts would've been known at the time Plaintiffs executed the Release.

That some or all of Plaintiffs' claims might not have accrued for statute-of-limitations purposes is distinguishable from whether the claims existed at the time. *See, e.g.*, *Performance Dealerships, L.P. v. Mitsubishi Motors N. Am.*, Inc., CIV.A. H-05-4211, 2006 WL 964730, at *5 (S.D. Tex. Apr. 12, 2006) (applying California law and noting that "[t]he accrual of a cause of action for statute of limitations purposes is not required for the claim to exist as an unknown claim"). Regardless, the parties here released not only all known and unknown claims but also all know or unknown *demands*. At the time of the Release, Plaintiffs could've—but didn't—demand return of the laptop, return of the $740K, a declaration that the ZroBlack Operating Agreement is void for fraud, and a transfer of the ZroBlack domain.

Continuing in this analysis to accept the allegations in Plaintiffs' live Complaint as true, which the Court must do at this stage, the Release doesn't preclude claims premised on Saenz's *later* revocation of Villarreal's access to the domain and deletion of documents on the server. These events, according to Plaintiffs, occurred *after* the parties executed the Release. Any claims or demands surrounding these occurrences wouldn't have exist at the time. *See* Amend. Compl. ¶¶ 21, 91, 170.  Moreover, as Saenz concedes, the Release can't bar Plaintiffs' claims for breach of the Release. *See* Dkt. No. 41 at 5 n. 3.

        **b.**    **There is no basis presented to set the Release aside**. Plaintiffs' contentions that the Release should be set aside due to mutual mistake, fraud, or considerations

of public policy are unpersuasive. To start, Plaintiffs haven't alleged any facts to plausibly suggest a mutual mistake. At most they allege facts that might support a unilateral mistake, a legal basis for which they offer no argument. *See White*, 809 F.2d at 1160 ("The failure of the parties to understand the scope of the release when the language is unambiguous, as it is here, does not support a finding of mutual mistake."). Nor do Plaintiffs adequately explain or allege how Saenz's alleged fraudulent inducement of the ZroBlack Operating Agreement—several months prior to the Release's execution—could possibly bear on the validity of a Release that Plaintiffs knowingly and voluntarily signed; Plaintiffs don't argue that the Release was induced by fraud. *Cf. Lesbrookton, Inc. v. Jackson*, 796 S.W.2d 276, 287 (Tex. App.—Amarillo 1990, writ denied) (stating, "a release is subject to being set aside if it was induced by fraud").

Finally, the Release shouldn't be voided as a matter of public policy, based on the arguments raised here. Relying on *Quintero v. Jim Walter Homes, Inc*., 709 S.W.2d 225 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.), Plaintiffs urge the Court to set aside the Release on the grounds that the Law Firm Defendants allegedly drafted it in contravention of Rule 1.06 of the Texas Rules of Professional Disciplinary Conduct. But *Quintero* isn't binding or persuasive in these circumstances. As the preamble to the disciplinary rules recognizes, "[v]iolation of a rule does not give rise to a private cause of action nor does it create any presumption that a legal duty to a client has been breached." *Garcia v. Garza*, 311 S.W.3d 28, 43 (Tex. App.—San Antonio 2010, pet. denied) (quoting Tex. Disciplinary Rule Prof'l Conduct preamble ¶ 15). Thus, although courts *may* use these rules as a measure of public policy, they aren't required to do so. *See id.* (refusing to void a deed because it was executed in violation of the Texas Disciplinary Rules). In the absence of any plausible allegation that the Release's terms were themselves the

product of fraud or misrepresentation by the Law Firm Defendants or anyone else, there is no basis presented to void the Release as a matter of public policy.

For all these reasons, Plaintiffs' claims against Saenz for violations of the DTSA and TUTSA, breach of fiduciary duty—to the extent such claim is predicated on Saenz's conduct as ZroBlack's CEO—conversion, fraud, breach of the Company Agreement, and violations of the Texas Theft Liability Act, CFAA, ACPA—to the extent Plaintiffs' CFAA and ACPA are premised on Saenz's refusal to return the laptop—and for declaratory relief are barred by the Release. And for essentially these same reasons, affording Plaintiffs an additional opportunity to further amend these claims would be futile; the Release's terms are clear and unambiguous in this regard. Moreover, Plaintiffs have already availed themselves of an opportunity to amend their pleadings in response to the motion to dismiss. Further amendment is therefore not warranted.

Plaintiffs' claims for tortious interference, breach of the Release and Unanimous Consent, breach of fiduciary duty, and for violations of the CFAA and ACPA—insofar as Plaintiffs' fiduciary duty, CFAA, and ACPA claims are premised on Saenz's alleged conduct after the Release—survive the Release.

2.    *Evaluating the Merits of Plaintiffs' Surviving Claims*. Having concluded that some of Plaintiffs' claims survive the Release, the Court now turns to the merits of those claims in light of the dismissal motion. Because Plaintiffs have failed to plausibly plead claims for breach of contract and tortious interference, those claims should be dismissed. Saenz's motion to dismiss Plaintiffs' claims for breach of fiduciary duty and for violations of the CFAA and ACPA, however, should be denied.

a.      **Breach of the Release and Unanimous Consent**. Pursuant to the Release and Unanimous Consent, Saenz "assign[ed] [] his entire interest in ZroBlack LLC" to Villarreal pursuant to Article VII of the ZroBlack Operating Agreement. Release ¶ 7; Unanimous Consent. These documents don't define the term "interest." At the same time, the documents don't indicate an intent to otherwise obligate Saenz to return any alleged company funds, property, or trade secrets, including as the $740,000 and laptop. And Plaintiffs concede as much on this latter point. *See* Amend. Compl. ¶¶ 73-75. Nevertheless, Plaintiffs take the position that these items would've necessarily been included within Saenz's assignment and, therefore, Saenz breached the agreements by refusing to return them.

There is only one reasonable interpretation of Saenz's "entire interest in ZroBlack LLC," as that phrase is used in the documents. Based on the contracts' plain language and the pleadings before the Court viewed in Saenz's favor, when Saenz assigned "his entire interest in ZroBlack LLC" to Villarreal, Saenz assigned his membership interest in the company itself. This interest is defined under Texas law to *exclude* any supposed personal "interest" he had in company property. *See Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017); Tex. Bus. Orgs. Code § 101.106(b). To interpret either contract as Plaintiffs suggest would impose a contractual obligation on Saenz that isn't reflected by the terms of either agreement. But courts may not "insert language or provisions the parties did not use," or "otherwise rewrite private agreements." *Great Am.*, 512 S.W.3d at 893.

To be clear, Saenz's mere status as a member of ZroBlack did not mean he owned any kind of "interest" in any specific property of the company that he would have the power to assign when acting in an individual capacity to execute the Release. *See* Tex. Bus. Orgs. Code § 101.106(b) ("A member of a limited liability company or an assignee of a membership interest in

a limited liability company does not have an interest in any specific property of the company"). And nothing in the pleadings suggests any other basis to conclude Saenz had any other kind of assignable "interest" in ZroBlack's property. That Villarreal believed—or believes now in hindsight—that Saenz's "interest" in ZroBlack LLC included an assignable personal "interest" in the company's property isn't helpful to Villareal's position. The plain language in both agreements is at odds with any such subjective belief. And a "contract's plain language controls, not what one side or the other alleges they intended to say but did not." *Great Am.*, 512 S.W.3d at 893 (quotations omitted). The breach-of-contract claim, therefore, should be dismissed.

   **b.** **Tortious Interference with Prospective Contracts**. Plaintiffs' tortious-interference claim similarly fails. To state a claim for tortious interference with prospective business relations, Plaintiffs must plead and ultimately be able to prove there was "a reasonable probability" they would've entered into a relationship with the government entity. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). "Though it is not necessary to prove that the contract would have certainly been made but for the interference that result must have been reasonably probable, considering all of the facts and circumstances attendant to the transaction." *Mill Creek Press, Inc. v. The Thomas Kinkade Co.*, No. CIVA.3:04-CV-1213-G, 2004 WL 2607987, at *11 (N.D. Tex. Nov. 16, 2004).

   Here, Plaintiffs allege that "[b]ut for Saenz's actions, there was a reasonable probability the [government agency][6] would've entered into a contract with [Villareal], ZroBlack, and [the foreign customer]." Amend. Compl. ¶ 130. But Plaintiffs haven't provided any other pleaded facts to support this bare allegation, even after being afforded an opportunity to amend the pleadings. Accordingly, the allegations fall far short of stating a claim on which relief may be

---

[6] According to Plaintiffs, the name of the agency is confidential.

granted. *See Flying Crown Land Grp. v. Reed*, No. 3:15-CV-1225-M, 2015 WL 4750786, at *2 (N.D. Tex. Aug. 11, 2015) (dismissing tortious interference claim where plaintiff simply alleged "[t]here was a reasonable probability that [Plaintiff] would have entered into a relationship with a third person").

Permitting Plaintiffs a further opportunity to amend their pleadings on this issue also appears futile because Plaintiffs concede that they weren't even able to compete for the contract by submitting a bid. *See* Amend. Compl. ¶¶ 234-36 (explaining they attempted to "pursue" a contract with the federal agency but Saenz's refusal to either update ZroBlack's contact information with Dun & Bradstreet or confirm that he is no longer a member of the company made it "impossible" for Plaintiffs to compete for this contract); Pl. Resp. (Dkt. No. 46) at 26. The fact that ZroBlack had "been in talks" and performed demonstrations for the governmental agency is insufficient to satisfy the reasonable-probability standard. *See Domain Prot., LLC v. Sea Wasp, LLC*, 426 F. Supp. 3d 355, 388 (E.D. Tex. 2019) (noting, "mere negotiations" won't support a claim for tortious interference).

          **c.**      **Breach of Fiduciary Duty**. Plaintiffs' claim for breach of fiduciary duty, however, should survive the Motion to Dismiss, at least based on the current briefing. As discussed, any claim premised on Saenz's conduct as ZroBlack's CEO before the parties executed the Release is barred by the Release's plain terms. But Plaintiffs also argue that Saenz violated his fiduciary duties by maintaining dominion and control over ZroBlack's domain and email server to the company's detriment *after* the parties executed the Release. Citing case law on partnerships, Saenz contends that his fiduciary duties to ZroBlack ceased once he assigned his interest in the LLC to Villarreal. *See* Dkt. No. 41 at 21. But under Texas law, "[a] member of a limited liability company may not withdraw or be expelled from the company."

Tex. Bus. Org. Code § 101.107. Further, "an assignor member does not cease to be a member merely by assigning the member's interest." Miller & Ragazzo, 13 Tex. Prac., Texas Methods of Practice § 59:2 (3d ed. 2021) (citing *id.* § 101.111(a)). At the same time, the Operating Agreement refers to an assignor as an "exiting member" without defining that term or discussing its implications. *See* Dkt. No. 33-3 at 9. Ultimately, Saenz hasn't addressed the interplay between Texas law on LLCs and the language in the Operating Agreement. Accordingly, on the present briefing, the Court can't conclude as a matter of law that Saenz didn't owe ZroBlack any fiduciary duties after he assigned his interest in the company to Villarreal.

The Court also isn't persuaded at this juncture by Saenz's contention that Plaintiffs' breach-of-fiduciary duty claim necessarily fails because the claimed damages are too speculative. Whether and to what extent Plaintiffs can or could ultimately prove that Saenz's actions proximately caused Plaintiffs' damages and the extent of those alleged damages isn't sufficiently addressed at this early stage in the proceedings to warrant dismissal on the pleadings.

    **d.**  **CFAA**. Plaintiffs' CFAA claim—to the extent premised on Saenz's conduct after execution of the Release[7]—also doesn't warrant dismissal. The CFAA prohibits unauthorized access to protected computers for the purpose of obtaining information, causing damage, or perpetrating fraud. *See* 18 U.S.C. § 1030(a)(2), (a)(4) & (a)(5). The CFAA provides a private civil cause of action to obtain compensatory damages and injunctive or other equitable relief to "[a]ny person who suffers damage or loss by reason of a violation of [the CFAA]" if the conduct results in damages involving one of the factors listed in § 1030(a)(5)(B)(i)-(v). 18 U.S.C. § 1030(g); *see also Fiber Sys. Int'l., Inc. v. Roehrs*, 470 F.3d

---

[7] To the extent however, Plaintiffs' CFAA claim rests on Saenz's refusal to return the laptop, *see* Amend. Compl. ¶¶ 166-169, the claim barred by the Release for the reasons discussed above.

1150, 1157 (5th Cir. 2006). Those factors include "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I).

Here, Plaintiffs plead that after executing the Release, Saenz—without Plaintiffs' authorization—intentionally accessed ZroBlack's domain on GoDaddy and deleted ZroBlack's webpage and email server, in violation of § 1030(a)(2)(c), (a)(5)(B), and (a)(5)(C). *See* Amend. Compl. ¶¶ 164, 170, 172.[8]  Saenz's actions, according to Plaintiffs, caused a "loss of more than $5,000 in data." *Id.* 164. Accordingly, Plaintiffs have stated a plausible claim under the CFAA. *See* 28 U.S.C.§ 1030(a)(5)(B), (C).[9]

The fact that Plaintiffs haven't pled that Saenz used a specific computer to access the domain or how this was accomplished isn't of consequence. First, it is claims brought under § 1030(a)(4)—not at issue here—that need to be pled with particularity. *See Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 765 (N.D. Ill. 2009) (noting that Fed. R. Civ. P. 9(b) applies to § 1030(a)(4), not §§ 1030(a)(2) and (a)(5)). Regardless, Plaintiffs plead that Saenz's once-authorized access became unauthorized after he assigned his interest in ZroBlack. Deletion of the website and the documents in these circumstances wouldn't have been an "intended use" of Saenz's authorization. *See U.S. v. Phillips*, 477 F.3d 215, 219 (5th Cir. 2007) (defining the term "unauthorized access" by looking to the "scope of a user's authorization to access a protected computer on the basis of the expected norms of intended use or the nature of the relationship established between the computer owner and the user."). Finally, courts have held that

---

[8] Plaintiffs also plead that Saenz's retention of the laptop violates § 1030(a)(4), however, as discussed above, this claim is barred by the Release.

[9] The Court questions whether Plaintiffs have stated a viable claim under §1030(a)(2)(c) because that section requires a defendant to have obtained "information" from the unauthorized access. *See Sw. Airlines Co. v. BoardFirst, L.L.C.*, No. 3:06-CV-0891-B, 2007 WL 4823761, at *15 (N.D. Tex. Sept. 12, 2007) (plaintiff's CFAA claim failed on summary judgment where there was no evidence defendant obtained information as a result of unauthorized use). Nevertheless, Saenz hasn't moved for dismissal on this ground and so it need not be addressed here.

unauthorized access to web-based accounts can form the basis of a CFAA violation, even if the defendant had permission to use the physical computer in question. *See Hill v. Lynn*, No. 17 C 06318, 2018 WL 2933636, at \*3 (N.D. Ill. Jun. 12, 2018) (§1030(e)(1)'s definition of computer includes online data storage facilities operating in conjunction with what is ordinarily thought of as a computer.).

Saenz fails to persuade with his argument that Plaintiffs' CFAA claim fails because the damages alleged are conclusory, speculative, and aren't of the type contemplated by CFAA. Plaintiffs plead that "ZroBlack has spent in excess of $5,000 trying to obtain return of the laptop computer and domain name and trying to resolve the loss of emails and documents resulting from the deletion." Amend. Compl. ¶ 164. These types of losses appear sufficiently cognizable under CFAA for purposes of the present motion. *See, e.g.*, *In re Thundervision, LLC*, No. 09-11145 A, 2010 WL 2219352, at \*8 (Bankr. E.D. La. Jun. 1, 2010) ("The meaning of 'loss' [under CFAA] has consistently meant the cost of investigating or remedying damage to a computer or a cost incurred because the computer's service was interrupted.") (ellipses omitted); *see also* 18 U.S.C. § 1030(e)(11) (defining the term "loss").

**e.     ACPA.**  Finally, Plaintiffs' ACPA claim doesn't merit dismissal based on the arguments lodged in Saenz's motion to dismiss. A person is liable under the ACPA if the person "registers, traffics in, or uses a domain name" that is "identical or confusingly similar" to a distinctive mark with the "bad faith intent to profit from that mark." 15 U.S.C. § 1125(d)(1)(A). Saenz doesn't dispute that the ZroBlack mark is distinctive or that ZroBlack is the owner of the mark. Rather, Saenz unpersuasively argues that Plaintiffs' ACPA claim fails as a matter of law because he registered the *actual* domain at issue and Plaintiffs fail to plead that he possessed the requisite bad faith.

First, Saenz hasn't pointed to any authority suggesting that hijacking an original domain name necessarily doesn't fall within the scope of the statute. Second, according to Plaintiffs, after assigning his interest in the company, "Saenz blackmailed ZroBlack over the domain name, webpage, and email server, offering to sell it back to ZroBlack for $7,000." Amend Compl. ¶ 178. Accordingly, Plaintiffs have pled facts plausibly suggesting that Saenz is acting in bad faith. *See* 15 U.S.C. § 1125(d)(B)(i)(I) § 1125(d)(B)(i)(VI) (explaining that in determining whether a person has a bad faith intent, the court may consider the person's rights to the trademark and whether the person offered to sell the domain name to the mark owner for financial gain without intending to use it).

Whether Plaintiffs have plausibly pled that Saenz "register[ed], traffic[ked] in or use[d]" the ZroBlack domain name is a closer call. It's undisputed that Saenz didn't possess the requisite bad faith when he registered the domain name. Although Plaintiffs allege that Saenz has since re-registered the ZroBlack domain name without authorization, *see* Villarreal Aff. ¶ 42, at least one court has held that re-registering a mark doesn't fall within the scope of the ACPA. *See GoPets Ltd. v. Hise*, 657 F.3d 1024, 1031 (9th Cir. 2011). Moreover, there's no allegation here that Saenz "trafficked" the domain name as that term is defined by the ACPA. *See* 15 U.S.C. § 1125(d)(1)(E) ("the term 'traffics in' refers to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration"). Further, Plaintiffs' allegation that Saenz has "taken the website down," Amend. Compl. 93, suggests that Saenz may not be "using" the mark. But at the same time,  the ACPA doesn't define the term "use" and Saenz hasn't briefed the issue. Accordingly, there isn't a sufficient basis to dismiss Plaintiffs' ACPA claim at this juncture.

B.      Claims Against the Law Firm Defendants

As mentioned, Plaintiffs rely on the Court's exercise of supplemental jurisdiction over state law legal-malpractice and breach-of-fiduciary duty claims asserted against the Law Firm Defendants. Section 1367(a) of Title 28 of the United States Code grants the district court supplemental jurisdiction "in any civil action of which the district courts have original jurisdiction . . . over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." "The question under section 1367(a) is whether the supplemental claims are so related to the original claims that they . . . 'derive from a common nucleus of operative fact.'" *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). Generally, claims are "so related" where a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Gibbs*, 383 U.S. at 725.

Assuming the District Court adopts this Report and Recommendation, the claims for which the Court may exercise original jurisdiction rest on Saenz's alleged conduct after the parties executed the Release. That conduct involves Saenz's alleged revocation of Villarreal's access to ZroBlack's domain and deletion of documents. In contrast, Plaintiffs' claims against the Law Firm Defendants concern the Law Firm Defendants' alleged negligence and breach of fiduciary duty in drafting and advising Plaintiffs regarding the Release. Accordingly, these two sets of claims concern distinct conduct, differing time frames, different alleged tortfeasors, and distinct legal issues.

The only facts the claims have in common involve Saenz's attempt to use the Release to bar Plaintiffs from raising claims against him *in this litigation*. Such a tenuous connection is

insufficient to confer jurisdiction under these circumstances. Although in practice, "§ 1367 requires only that the jurisdiction-invoking claim and the supplemental claim have some loose factual connection . . . the standard is not without limit." Wright & Miller, 13D Fed. Prac. & Proc. Juris. § 3567.1 (3d ed. 2021). In this case, adjudication of Plaintiffs claims against the Law Firm Defendants will require separate factual and legal determinations than those underlying Plaintiffs' federal claims. Moreover, a plaintiff under these circumstances wouldn't be expected to try these separate claims in one proceeding. *See Gibbs*, 383 U.S. at 725. Accordingly, subject matter jurisdiction here is lacking.

Even if the Court had supplemental jurisdiction over the state law claims asserted against the Law Firm Defendants, the Court could decline to exercise jurisdiction, and the Court should do just that under these circumstances. Pursuant to § 1367(c), district courts may decline to exercise supplemental jurisdiction over a state law claim if (among other circumstances not presented here) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction" or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." § 1367(c)(2), (4). Courts should also consider "the balance of the relevant factors of judicial economy, convenience, fairness, and comity that the Supreme Court outlined in *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350-51 (1988), [10] and *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)." *Batiste v. Island Records Inc.*, 179 F.3d 217, 226-227 (5th Cir.1999). Here, there is no efficiency or expediency to

---

[10] *See Cohill*, 484 U.S. at 350, ("Under *Gibbs*, a federal court should consider and weigh in each case, at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state law claims . . . As articulated in *Gibbs*, the doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values.").

be gained in exercising supplemental jurisdiction over Plaintiffs' claims against the Law Firm Defendants. To the contrary, permitting the claims to proceed here would require a determination of a two sets of facts and issues along with the application of differing legal standards, resulting in a waste of federal judicial resources. On the other hand, requiring Plaintiffs to litigate their claims against the Law Firm Defendants in state court wouldn't raise fairness or comity concerns. The Court would've already decided any issues regarding the interpretation and impact of the Release before severing and dismissing the claims against the Law Firm Defendants. Under these circumstances, there is no reason to justify exercising supplemental jurisdiction over these claims.

### Conclusion and Recommendation

For the reasons above, it is recommended that Saenz's Motion to Dismiss, Dkt. No. 41, be **GRANTED IN PART** as set forth herein. It is further recommended that Plaintiffs' state-law claims asserted against the Law Firm Defendants be **SEVERED** and **DISMISSED** either for lack of subject matter jurisdiction or pursuant to 28 U.S.C. § 1367(c). Accordingly, the Law Firm Defendants' Motion to Dismiss, Dkt. No. 40, should be **DISMISSED AS MOOT**.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A

party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 18th day of May, 2021.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE