IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JONATHAN VILLARREAL, <br> INDIVIDUALLY AND DERIVATIVELY <br> ON BEHALF OF ZROBLACK, LLC; <br><br> *Plaintiff,* <br><br> vs. <br><br> JOHN SAENZ, MIGUEL VILLARREAL, <br> JR., GUNN, LEE & CAVE, P.C., <br><br> *Defendants.* | §§§§§§§§§§§§§ | 5-20-CV-00571-OLG |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Chief United States District Judge Orlando Garcia:**

This Report and Recommendation concerns the Motion for Attorney's Fees filed by Defendant John Saenz. *See* Dkt. No. 85. This motion was referred for resolution pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Apr. 13, 2022 Text Order. No response to the motion has been filed. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, Saenz's Motion, Dkt. No. 85, should be **GRANTED IN PART AND DENIED IN PART**. Saenz should be awarded $38,766.00 in attorney's fees. Saenz does not request any costs and none should be awarded.

**Factual and Procedural Background**

Defendant John Saenz and Plaintiff Jonathan Villarreal formed ZroBlack LLC in January 2019 as equal partners, but later that year decided to part ways. On August 9 of that year, ZroBlack, Saenz, and Villarreal entered into a contract entitled, "Release and Modification" that they intended to resolve their disputes. Dkt. No. 35, Ex. 15 at 6 (hereinafter "Release"). Saenz

assigned his entire interest in ZroBlack to Villarreal in exchange for a broad release "from all claims and demands, known or unknown." Release § 7. The Release contained a choice-of-law provision selecting Texas law, and it also contained the following attorney's fees provision:

> In any action or proceeding to enforce rights under this Agreement, the prevailing party will be entitled to recover reasonable costs and attorneys' fees.

Release § 11.

Villarreal, acting individually and on behalf of ZroBlack, filed suit against Saenz and others on May 8, 2020. Villarreal raised federal claims under the Defend Trade Secrets Act ("DTSA"), the Computer Fraud and Abuse Act ("CFAA"), and the Anticybersquatting Consumer Protection Act ("ACPA"), in addition to breach of contract and other state law claims, such as violating the Texas Theft Liability Act ("TTLA"). *See* Dkt. No. 1 ¶¶ 49-103. Most of Villarreal's claims were based on events that allegedly occurred prior to the Release, which he argued was unenforceable. *See* Dkt. No. 1 ¶¶ 104-119. Villarreal also requested injunctive relief. *See* Dkt. No. 2. In response, Saenz moved to dismiss on the basis that the Release was enforceable and barred all of Villarreal's claims. *See* Dkt. No. 8 at 4-11. Villarreal then filed an Amended Complaint, raising substantially the same claims but with additional documentation. *See* Dkt. No. 35. Saenz again moved to dismiss. *See* Dkt. No. 41 at 5-14.

On April 13, 2021, the Court held a hearing on Saenz's motion to dismiss. The Court then issued a Report and Recommendation on May 18. The Court found that the Release was valid and enforceable, and therefore the Court recommended granting in part Saenz's motion to dismiss insofar as Villarreal's claims were premised on events that occurred before the Release's execution. *See* Dkt. No. 59 at 2. The only claims that survived Saenz's motion to dismiss at that juncture were Villarreal's CFAA, ACPA, and fiduciary-duty claims. *See* Dkt. No. 59 at 14-18. Saenz filed objections to the Report and Recommendation, arguing that the District Court should

also dismiss the claims for breach of fiduciary duty and ACPA violations, and that Saenz should be awarded attorney's fees. *See* Dkt. No. 61.

Shortly after issuance of the Report and Recommendation, Villarreal's counsel filed a motion to withdraw, which the Court granted on June 25. *See* Dkt. Nos. 60, 62. The Court explicitly informed Villarreal that he could not sustain claims on behalf of ZroBlack without obtaining new counsel for the LLC. *See* Dkt. No. 62. Now acting *pro se*, Villarreal requested, on July 26, additional time to obtain new counsel for ZroBlack. *See* Dkt. No. 66.

On August 4, the District Court adopted the Report and Recommendation in full. *See* Dkt. No. 67. The District Court indicated that Saenz could request attorney's fees at the conclusion of the case. Dkt. No. 67 at 7.

On September 21, Villarreal filed a motion for sanctions. *See* Dkt. No. 71. The Court summarily denied his motion "for failure to comply with Rule 11's safe harbor provision" as well as other reasons. Nov. 5, 2021 Text Order. Villarreal has filed nothing in the case since, and all mail to his address has been returned as undeliverable.

On November 18, 2021, in light of Villarreal's failure to obtain new counsel for ZroBlack or comply with court orders, the Court recommended dismissal of all claims by ZroBlack against Saenz. *See* Dkt. No. 74. The District Court adopted this recommendation in full on December 9. *See* Dkt. No. 76. After some additional housekeeping, including Saenz's motion to dismiss his counterclaims without prejudice, *see* Dkt. No. 81, the District Court dismissed all of Villarreal's claims with prejudice and entered final judgment in favor of Saenz on March 29, 2022. *See* Dkt. No. 83.

Saenz now moves for attorney's fees.

## Analysis

Saenz argues that he is entitled to attorney's fees for successfully defending against Villarreal's claims. Saenz bases his fees request on the TTLA as well as the attorney's fees clause in the Release. Saenz argues that counsel spent 410.5 hours on the case through December 13, 2021, plus additional "work in progress" through April 12, 2022, resulting in a total bill of $165,801.00. Because Saenz voluntarily withdrew his counterclaim against Villarreal, Saenz includes a 50% reduction for the time spent drafting his Original Answer and Counterclaim. All told, Saenz seeks $161,606.00 in attorney's fees. *See* Dkt. No. 85 at 10. Saenz does not request the reimbursement of any costs. Villarreal has filed no opposition to Saenz's request, nor has he filed anything since September 2021.

### A.   Attorney's Fees Are Authorized.

Where state law provides the basis for awarding attorney's fees, federal courts apply state law to determine the award and reasonableness of attorney's fees. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Under Texas law, "litigants may recover attorney's fees only if specifically provided for by statute or contract." *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011); *accord In re Velazquez*, 660 F.3d 893, 895-96 (5th Cir. 2011). Texas litigants are generally required to segregate fees between recoverable and unrecoverable claims, although failure to do so does not preclude an award of fees under the TTLA. *See Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 992 F.3d 336, 346 (5th Cir. 2021); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313-14 (Tex. 2006) ("[I]t is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated.").

4

Saenz first requests fees under the TTLA's attorney's fees provision, which provides that "[e]ach person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees." Tex. Civ. Prac. & Rem. Code § 134.005(b). A defendant qualifies for attorney's fees "when it obtains dismissal of a [TTLA] claim" against it. *Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*, 23 F.4th 529, 540 (5th Cir. 2022). Saenz also requests fees under the Release's attorney's fees provision, which states that "the prevailing party will be entitled to recover reasonable costs and attorney's fees." Dkt. No. 35-16 at 5. For a defendant in a contract dispute, the term "prevailing party" in a contract provision awarding attorney's fees requires "a permanent, inalterable change in the parties' legal relationship to the defendant's benefit," which would include dismissal with prejudice. *Epps*, 351 S.W.3d at 868-69.

Saenz is undoubtedly the prevailing party for purposes of both the TTLA and the Release. Saenz successfully defended against Villarreal's claims based on the broad language of the Release, resulting in dismissal of most of Villarreal's complaint, including the TTLA claim. *See* Dkt. Nos. 41, 59, 67. Villarreal's remaining claims against Saenz were also eventually dismissed with prejudice. *See* Dkt. No. 83. Although both the TTLA and the Release provide for reasonable attorney's fees, Saenz has not segregated his attorney's fees—indeed, Saenz argues that the Release does not so require. *See* Dkt. No. 85 at 12-14. Because Saenz does not segregate his TTLA fees, and because he obtained dismissal of Villarreal's TTLA claim solely because the Court concluded it was "barred by the Release," Dkt. No. 59 at 11, the Court views any claim for an award of TTLA attorney's fees as subsumed by the Release's broader attorney's fee provision. Saenz cannot separately be awarded fees twice for the same legal work. Accordingly, attorney's fees are authorized, and the Court need only address Saenz's arguments under the Release.

B.     **Reasonable Attorney's Fees Shall Be Awarded.**

Federal courts typically apply the lodestar method in calculating reasonable attorney's fees under Texas law. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (describing the lodestar as the "most useful starting point for determining the amount of a reasonable fee"); *Rappaport v. State Farm Lloyds*, No. 00-10745, 2001 WL 1467357, at *3 (5th Cir. 2001) (per curiam) (applying the loadstar approach under *Hensley*); *Gordon v. Quicksilver Jet Sales, Inc.*, No. A-09-CA-409-SS, 2010 WL 3239266, at *1 (W.D. Tex. Aug. 16, 2010) (using the lodestar to calculate attorney's fees for Texas law breach of contract claim). Under this approach, the "starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019); *see also La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (citing *Hensley*, 461 U.S. at 433). Once the lodestar figure is initially determined, the court may adjust upward or downward as necessary in light of several enunciated factors. *La. Power,* 50 F.3d at 324. The burden is on the party seeking attorney's fees to demonstrate the amount sought, including any enhancement. *Jackson v. Host Int'l, Inc.*, 426 Fed. App'x 215, 226 (5th Cir. 2011). An award of attorneys' fees is entrusted to the "sound discretion" of the district court. *Tex. Commerce Bank Nat'l Ass'n v. Capital Bancshares, Inc.*, 907 F.2d 1571, 1575 (5th Cir. 1990).

1.     <u>Hours Claimed</u>

As a fee applicant, Saenz bears the burden of proving the reasonableness of the number of hours expended. *Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990). To meet that burden, he must submit evidence supporting the time spent and the services performed. *Hensley,* 461

U.S. at 433-34; *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). Additionally, Saenz has an obligation to demonstrate billing judgment, which is "the practice of a law firm's writing off unproductive, excessive, or redundant hours." *Fathergill v. Rouleau*, No. CIV.A. 3:03-CV-0879-, 2003 WL 22342718, at *7 (N.D. Tex. Oct. 14, 2003) (citing *Walker v. United States Dep't of Housing & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996)). The Court must then review the records and exclude all time that is excessive, duplicative, or inadequately documented. *Watkins*, 7 F.3d at 457. "The hours surviving this vetting process are those reasonably expended on the litigation." *Id.*

      a.  *The Release's Language Is Limited in Scope.*

  Although the Release's clause is broad enough to encompass and subsume Saenz's TTLA fee award, that language is not unlimited. Indeed, the Release only covers attorney's fees for "any action or proceeding to *enforce rights* under this Agreement." Release § 7 (emphasis added). On May 18, 2021, the Court recommended fully enforcing the parties' broad release of claims by dismissing all pre-Release claims against Saenz raised by Villarreal. *See* Dkt. No. 59. The District Court adopted this recommendation in full on August 4, 2021. *See* Dkt. No. 67. The only claims against Saenz remaining at that point were those allegedly arising after the Release was signed. In other words, because the attorney's fees clause in the Release is limited to actions necessary "to enforce rights under" the Release, at most Saenz is entitled to attorney's fees through August 4, 2021, when the District Court adopted the Report and Recommendation to dismiss all claims against Saenz that were barred by the Release itself.

  The Court must also take into account Villarreal's *pro se* status. In the context of assessing attorney's fees against *pro se* litigants, "courts accord significant weight to [a party's] lack of representation." *Yee v. Passline Servs., LP*, No. EP-17-CV-317-PRM, 2018 WL 2027749,

7

at *3 (W.D. Tex. Apr. 30, 2018); *see also Hughes v. Rowe*, 449 U.S. 5, 15 (1980) ("An unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims."); *Miller v. Los Angeles Cnty. Bd. of Educ.*, 827 F.2d 617, 620 (9th Cir. 1987) (reversing award of attorney's fees where district court did not take into account party's *pro se* status). As of June 25, 2021, Villarreal's counsel of record had withdrawn, leaving Villarreal unrepresented. *See* Dkt. Nos. 60, 62. And because Villarreal could not obtain new counsel, the remaining claims he asserted on behalf of ZroBlack were barred for reasons unrelated to the Release. *See* Dkt. Nos. 78, 80. Moreover, the last filing by Villarreal in this case was his *pro se* Motion for Sanctions filed September 21, 2021. *See* Dkt. No. 71. The Court summarily denied that motion for failure to comply with the applicable court rules. *See* Nov. 5, 2021 Text Order.

     For these reasons, the Court does not consider any of the hours counsel billed after August 4, 2021, as reasonably necessary for the enforcement of Saenz's rights under the Release. Villarreal was unrepresented at that point, and Saenz cannot seek attorney's fees for additional and unnecessary motion practice after Villarreal effectively ceased to prosecute the case. For the same reasons, the Court eliminates 10.3 hours from May and June 2021 devoted to drafting objections to the Report and Recommendation based on unsuccessful arguments unrelated to enforcing the Release. *See* Dkt. Nos. 61, 67. The Court also removes 5.9 hours of duplicate billing for two attorneys to attend the 2.5-hour hearing on April 13, 2021. *See Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) ("The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted."). Accordingly, within the relevant timeframe covered by the Release's attorney's fees clause, Saenz's counsel billed 333.6 hours.

                b.       *The Billing Information Is Partially Illegible Due to Redactions.*

Even after reducing the claimed hours to the timeframe covered by the Release, the Court can only award attorney's fees for hours that Saenz shows were reasonably necessary. Fee applicants must supply documentation containing "the specificity needed for the trial court to make a meaningful lodestar determination." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012). This means that "[w]hen seeking affirmative relief, the attorney-client privilege cannot be used both as a shield and a sword." *McGibney v. Rauhauser*, 549 S.W.3d 816, 823 n.24 (Tex. App. 2018). Accordingly, "in instances where the redactions make it so the Court cannot determine the reasonableness of the entry," effectively rendering such billing entries "unintelligible," courts have discretion to strike those hours. *Bates Energy Oil & Gas, LLC v. Complete Oil Field Servs.*, LLC, No. 5:17-CV-808-RCL, 2021 WL 3137421, at *7 (W.D. Tex. Feb. 22, 2021); *see also Pers. v. MC-Simpsonville*, SC-1-UT, LLC, No. 03-20-00560-CV, 2021 WL 3816332, at *9 (Tex. App. Aug. 27, 2021) (concluding that "redacted billing records" are generally "not sufficient . . . to allow the trial court to evaluate the reasonableness and necessity of hours worked"); *Matter of Est. of Poe*, 591 S.W.3d 607, 650 (Tex. App. 2019) (upholding probate court's 80% reduction in reasonable attorney's fees due to heavy redactions), *aff'd in part, rev'd in part on other grounds*, 648 S.W.3d 277 (Tex. 2022); *McGibney*, 549 S.W.3d at 822 (describing entries such as "Review [Redacted]" as "so heavily redacted as to be meaningless").

The Court does not employ a draconian approach to redacted billing entries—indeed, nearly every entry in the billing information here is at least partially redacted. But the Court will not award fees where the redactions effectively render the billing entries unintelligible. For example, one entry for June 17, 2020, billed at $325 for 2.7 hours simply says "Research [Redacted] Research [Redacted] Research [Redacted]." Dkt. No. 85, Ex. 1 at 17. This pattern of

9

unhelpful redactions continues, with 2.9 hours on July 14, 2020, devoted to "Review and Analyze [Redacted] Research [Redacted]." Dkt. No. 85, Ex. 1 at 22. Roughly half of all entries are so heavily redacted that the Court cannot discern the purpose of the work billed. As for block-billed entries containing multiple tasks with redactions, the Court exercises its discretion to reduce the hours billed by up to half, depending on the severity of the redactions. After these adjustments, the Court can identify 184.6 hours that are sufficiently legible to support an award of attorney's fees.

      c. *Failure to Exercise Billing Judgment, Despite the Straightforward Nature of the Legal Issues, Counsel in Favor of Further Reductions.*

Saenz must also exercise professional billing judgment when seeking attorney's fees. Billing judgment requires fee applicants to write off hours that are "unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). This inquiry includes whether attorneys billed time for tasks that could have been delegated to paralegals. *See Preston Expl. Co., LP v. GSP, LLC*, No. CIV.A. H-08-3341, 2013 WL 3229678, at *9 (S.D. Tex. June 25, 2013) (reducing fee award by 20% when "partners performed many tasks that were more suited to associates or paralegals"). Where the fee applicant fails to establish that the billed hours were necessary through evidence of billing judgment, a percentage reduction is the appropriate remedy. *Saizan*, 448 F.3d at 799-800 (affirming 10% reduction for "failure to provide evidence of billing judgment"); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 336 (5th Cir. 1995) (affirming 15% reduction for "overstaffing").

Saenz asserts that all the hours billed were necessary, and that billing judgment was exercised by applying a 50% reduction to hours partly spent on non-recoverable tasks. Dkt. No. 85 at 10. But the Court observes that the billing documentation includes numerous entries for email correspondence, telephone calls, and discussing or coordinating with clients or other

counsel. Some of those entries are already billed at reduced rates, and the vast majority of billing entries for conversations have already been eliminated due to extensive redactions rendering them unintelligible. But the Court nonetheless takes into consideration counsel's failure to exercise billing discretion by routinely block-billing ministerial and non-substantive tasks.

Saenz also seeks to recover hours billed by paralegals. The term "attorney's fee" generally includes paralegal services, but only "if the work is legal rather than clerical." *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001); *see also Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 582 (2008). Fee applicants must additionally show that the paralegals are qualified to perform substantive legal work through training or experience. *See Jones v. Armstrong Cork Co.*, 630 F.2d 324, 325-26 (5th Cir.1980); *Davis v. Perry*, 991 F. Supp. 2d 809, 839 (W.D. Tex. 2014), *supplemented*, No. CIV. SA-11-CA-788, 2014 WL 172119 (W.D. Tex. Jan. 15, 2014), *and rev'd sub nom. on other grounds*, *Davis v. Abbott*, 781 F.3d 207 (5th Cir. 2015).

Here, Saenz seeks to recover hours billed to paralegals at rates ranging from $160 to $265 per hour depending on experience. Dkt. No. 85 at 9. Saenz explains that the paralegals and attorneys involved in this case had a "combined total of 98.5 years of experience." Dkt. No. 85 at 9. And yet from a review of Saenz's billing information, the two paralegals representing over half of that combined experience—Barbie Celaya with 32 years of paralegal experience and Dina Foster with 18—were rarely utilized. Of the 349.8 hours billed through August 4, 2021, those two paralegals accounted for only 10.5 hours, or roughly 3% of the time. In contrast, lead attorney David Vanderhider with 13 years of experience billed 186.8 hours—over half the total billed hours—at the highest rate sought. The Court views this as a matter of billing discretion. Assuming these paralegals were properly qualified to perform legal work as Saenz asserts,

11

counsel severely underutilized such highly experienced paralegals who could have conducted much of the basic work that attorneys billed at higher rates.

The Court also takes into consideration the difficulty of the matter at hand when considering whether the total hours are reasonable. *See, e.g.*, *Shipes v. Trinity Indus.*, 987 F.2d 311, 321 (5th Cir. 1993) (reasoning that in most situations "novelty and difficulty of the case" should be "adequately reflected in the number of hours billed"); *Kirk v. Miss. Dep't of Pub. Safety*, No. 3:14-CV-537-WHB-RHW, 2018 WL 4656292, at *2 (S.D. Miss. Sept. 27, 2018) (reducing hours by 25% for excessive billing on "non-complex tasks and generic research"). As far as Saenz was concerned, the crux of this case was the broad language of the Release. This was a straightforward issue of contract interpretation, as reflected in the Court's orders granting his motion to dismiss. *See* Dkt. Nos. 59, 67. Although Saenz points to the number of pages in Villarreal's Amended Complaint and attached exhibits, that does not determine the substantive difficulty of the tasks involved. Indeed, Saenz's renewed motion to dismiss remained largely unchanged even after the Amended Complaint. *See* Dkt. Nos. 8, 41. Moreover, this case never proceeded past the initial phase. The legal issues at this nascent stage did not necessitate extensive research. Despite Saenz's representations to the contrary, this dispute was neither "complex" nor particularly "high-stakes." The Court therefore concludes that a further reduction in the number of reasonably necessary hours is warranted in consideration of the relative simplicity of Saenz's defense where Villarreal's claims were clearly barred by the Release.

In light of the above considerations, the Court in its discretion believes that an across-the-board reduction of 30% is warranted. This results in a total of 129.22 hours reasonably necessary to advance the litigation.

12

        2.        <u>Rates Charged</u>

Saenz requests rates of $325 to $375 for attorneys involved in the litigation and rates of $160 to $265 for paralegals, based on their respective levels of experience. Dkt. No. 85, Ex. 1 at 7-8. But due to counsel's practice of rendering nearly half of the billing entries illegible through redactions, it is impossible to apply the requested varying rates to the hours charged. Moreover, because the Court has already reduced the total number of reasonable hours for failure to efficiently utilize paralegals and associates, the Court does not need to separately award fees based on the timekeeper. Instead, the Court must determine a single hourly rate by which to multiply the reasonably expended hours, given the nature of the timekeeping involved here.

Courts applying the lodestar method must determine a reasonable rate based on "the prevailing market rates in the relevant community," as opposed to what the attorneys have charged their client. *Rohrmoos*, 578 S.W.3d at 493 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)). Federal courts in Texas routinely take judicial notice of Texas State Bar surveys for calculating reasonable hourly rates. *See, e.g.*, *Bates Energy Oil & Gas, LLC v. Complete Oil Field Servs., LLC*, No. 5:17-CV-808-RCL, 2021 WL 3137421, at *12 (W.D. Tex. Feb. 22, 2021) (relying on 2015 Fact Sheet); *Rodriguez v. Mech. Tech. Servs., Inc.*, No. 1:12-CV-710-DAE, 2015 WL 8362931, at *6 (W.D. Tex. Dec. 8, 2015) ("Judges in the San Antonio Division regularly take judicial notice of the Rate Report."). According to the Texas State Bar's most recent information, the median hourly rate for San Antonio in 2019 was $285.[1] Recent attorney's fee awards in the Western District of Texas have also found similar rates reasonable. *See, e.g.*, *Bates Energy*, 2021 WL 3137421, at *15 (applying $300 rate for attorneys with 30

---

[1] *2019 Income and Hourly Rates*, TEX. B. ASS'N 10 (2020), https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=54237 (last visited Oct. 28, 2022).

years of experience); *Calderon v. Bank of New York Mellon*, No. 5-17-CV-00933-DAE, 2019 WL 6037256, at *6 (W.D. Tex. July 18, 2019), *report and recommendation adopted sub nom. Calderon v. Bank of New York Mellon*, No. 5:17-CV-933-DAE, 2019 WL 6015316 (W.D. Tex. Aug. 12, 2019) (approving of $265 rate). Taking into consideration counsel's experience, the Court in its discretion concludes that a rate of $300 per hour for all professional services involved is reasonable.

### 3. Lodestar Calculation

Based on the Court's calculation of 129.22 hours reasonably and necessarily incurred pursuant to the Release's attorney's fees clause and a reasonable rate of $300 per hour, the lodestar in this case is $38,766.00. Compared with attorney's fees awards in other contract disputes not proceeding beyond the motion-to-dismiss stage, this amount appears more than reasonable.

### 4. No Adjustment to the Lodestar is Appropriate Under the Circumstances.

After determining the initial lodestar figure, a court may then make upward or downward adjustments. Under both federal and Texas law, however, the lodestar is a presumptively reasonable fee. *See Pembroke v. Wood Cty.*, 16 F.3d 1214 (5th Cir. 1994) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)); *El Apple*, 370 S.W.3d at 765. In actions governed by Texas law, federal courts must analyze the factors set forth in *Arthur Andersen* to determine whether an adjustment to the lodestar is warranted. *See Plains Cotton Coop. Ass'n v. Gray*, No. 16-10806, 2016 WL 7093943, at *4 n.4 (5th Cir. Dec. 5, 2016). These factors include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily

charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). Because the analysis under the *Arthur Andersen* factors is so similar to the analysis under *Johnson* in the Fifth Circuit, the Court may draw upon federal precedent in determining whether an enhancement is appropriate. *See, e.g., Plains Cotton,* 2016 WL 7093943, at *4 n.4; *Northwinds Abatement, Inc. v. Emp'rs Ins. of Wausau,* 258 F.3d 345, 354 n. 9 (5th Cir. 2001) (noting that the *Arthur Andersen* factors are "virtually identical to those examined by federal courts in awarding attorneys' fees").

Saenz does not request any adjustment to the lodestar. And after careful review of the *Arthur Andersen* factors, the Court does not believe that any such adjustment is warranted here. *See, e.g., Sanders v. Barnhart*, No. 04-10600, 2005 WL 2285403, at *2 (5th Cir. Sept. 19, 2005) ("[I]t is not necessary for a district court to examine each of the [*Johnson*] factors independently if it is apparent that the court has arrived at a just compensation based upon appropriate standards."). To the extent that certain *Arthur Andersen* factors may warrant an adjustment, those factors are already subsumed within the lodestar calculation. *See Blum v. Stenson*, 465 U.S. 886, 898 (1984) (noting that the novelty and complexity of the issues, special skill and experience of counsel, and quality of representation are generally subsumed within the lodestar calculation); *Shipes*, 987 F.2d at 321-22 (noting that the skill required, special time limits imposed, and preclusion of employment are generally included in the lodestar amount).

**Conclusion and Recommendation**

For the reasons discussed above, it is recommended that Saenz's Motion, Dkt. No. 85, be **GRANTED IN PART AND DENIED IN PART**. Saenz should be awarded $38,766.00 in attorney's fees.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the objections with the clerk of the court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 30th day of November, 2022.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE